23

United States District Court
Southern District of Texas
FILED

MAY 1 8 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC., | § | |
|     Plaintiff/Counter-defendant, | § | |
| | § | CASE NO. B-04-048 |
| v. | § | |
| | § | Admiralty Rule 9(h) |
| CHARLES DOUGLAS PHILLIPS, | § | |
|     Defendant/Counter-claimant. | § | |

## CHARLES DOUGLAS PHILLIPS' BRIEF IN SUPPORT OF MOTION FOR ARREST AND SEIZURE OF VESSEL, AND, IN THE ALTERNATIVE, TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

TO THE HONORABLE DISTRICT JUDGE:

COMES NOW, CHARLES DOUGLAS PHILLIPS, Defendant/Counter-claimant in the above-styled and numbered cause, and files this his Brief in Support of Arrest and Seizure of Vessel, and, in the alternative, Temporary Restraining Order and Preliminary Injunction, and in support thereof would respectfully show unto this honorable Court as follows:

## I.

### PROCEDURAL HISTORY

On or about March 12, 2004, Zapoteca Energy, Inc. (herein "ZAPOTECA") filed this action seeking a Temporary Restraining Order and Preliminary Injunction against Charles Douglas Phillips (herein "PHILLIPS") alleging that PHILLIPS was withholding documentation pertaining to ZAPOTECA and the Rig ENERGY ZAPOTECA.

ZAPOTECA brought this action pursuant to Admiralty Rule 9(h), stating:

"Jurisdiction is proper in this honorable Court, as this is an Admiralty cause of action within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure <u>as the matter centers around services of a Master of a jack-up oil rig designed and built for offshore drilling.</u>" (emphasis added).  (See ZAPOTECA'S Original Complaint for Temporary Restraining Order and Preliminary Injunction).

After hearing held, an Agreed Order with regard to ZAPOTECA'S complaint was entered.

On or about April 12, 2004, PHILLIPS filed his Original Answer.

On or about April 21, 2004, PHILLIPS filed his Original Counterclaim against ZAPOTECA, *in personam*, and the Rig ENERGY ZAPOTECA, her engines, tackle, apparel, etc., *in rem*, seeking damages for back due and owing wages, breach of contract, wrongful termination, and quantum meruit, as well as seeking the arrest and seizure of the Rig ENERGY ZAPOTECA based on a maritime lien for wages and Special Admiralty Supplemental Rule B of the Federal Rules of Civil Procedure.

On or about April 26, 2004, and pursuant to Rule 15 of the Federal Rules of Civil Procedure, PHILLIPS filed his First Amended Counterclaim stating the same causes of action and seeking the same damages, but removing his prayer for the seizure of the Rig ENERGY ZAPOTECA based on a maritime lien for wages.  However, in PHILLIPS' First Amended Counterclaim he continues to seek the arrest and seizure of the Rig ENERGY ZAPOTECA based on Special Admiralty Supplemental Rule B of the Federal Rules of Civil Procedure.

On the same date PHILLIPS filed his First Amended Counterclaim, PHILLIPS also filed a Motion for Arrest and Seizure of Vessel and Appointment of Substitute Custodian directed at the Rig ENERGY ZAPOTECA, along with a Fiat, Order granting said motion, and Order of Notice.

On or about April 28, 2004, this honorable Court ordered ZAPOTECA to respond to PHILLIPS' Motion by no later than May 5, 2004.

On or about April 30, 2004, PHILLIPS filed his Motion for Clarification, or, in the alternative, Application for Emergency Hearing on Temporary Restraining Order and Preliminary Injunction.

On or about May 3, 2004, ZAPOTECA filed its (1) Response to Motion for Arrest and Seizure of Vessel; and (2) Response to Motion for Clarification, or, in the alternative, Application for Emergency Hearing on Temporary Restraining Order and Preliminary Injunction.

On May 4, 2004, this honorable Court ordered that ZAPOTECA not move or sell the Rig ENERGY ZAPOTECA and, further, ordered that a hearing to be held on all pending motions on May 7, 2004.

On May 7, 2004, a hearing was held and all parties to this action were present, along with their respective counsel of record. At said hearing, this honorable Court made several orders respecting the parties to this case and, further, ordered supplemental briefing of certain issues before this honorable Court.

## II.

## THE PROVISIONS OF SUPPLEMENTAL RULE B ARE SATISFIED

Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty & Maritime Claims, Rule B. Attachment and Garnishment: Special Provisions ("Rule B" herein) states in pertinent part:

> "(1) When Available; Complaint, Affidavit, Judicial Authorization, and Process. In an in personam action: (a) If a defendant is not found within the district, a verified complaint may contain a prayer for process to attach the defendant's tangible or

intangible personal property - up to the amount sued for - in the hands of garnishees named in the process."

### A.    PHILLIPS' Claims against ZAPOTECA Sound in Admiralty.

The Supreme Court has recognized the distinction between a contract to build a vessel and a contract to repair a vessel. *Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81, S.Ct. 886, 890, 6 L.Ed.2d 56 (1961). A contract to repair a ship is maritime, but a contract to build a ship is not. *Id.* at 365 U.S. 735. The contract for which ZAPOTECA employed PHILLIPS as Master, Owners' Representative, and ultimately, Legal Representative in Mexico, was for the refitting of the Rig ENERGY ZAPOTECA and its sailing to Texas. (See Exhibit A, "Affidavit of Charles Douglas Phillips", attached hereto, and by way of reference incorporated herein for all purposes). The Rig ENERGY ZAPOTECA had already been built and placed in navigation for use as a jack-up oil rig. It was already registered with a provisional navigation certificate and flagged in Panama. PHILLIPS was hired by ZAPOTECA to act as Master of the Rig ENERGY ZAPOTECA and oversee the performance of repairs and have the Rig ENERGY ZAPOTECA moved and used for intended purpose.

PHILLIPS claims arise from his employment contract with ZAPOTECA to serve as Master, as well as Owners' Representative and Legal Representative, for the Rig ENERGY ZAPOTECA. "A contract dispute falls within admiralty jurisdiction if the subject matter of the contract is maritime." *Goodman v. 1973 26 Foot Trojan Vessel,* 859 F.2d 71, 72 (8th Cir. 1988); *citing Royal Ins. Co. of America v. Pier 39 Ltd. Partnership,* 738 F.2d 1035, 1036 (9th Cir. 1984). The subject matter of PHILLIPS employment contact with ZAPOTECA  is maritime, in that, it pertains directly to his service as Master of the vessel the Rig ENERGY ZAPOTECA.

PHILLIPS' latest complaint makes allegations both *in rem* against the Rig ENERGY ZAPOTECA and *in personam* against ZAPOTECA for past due and owing wages, wrongful termination, breach of contract and quantum meruit based on his employment with ZAPOTECA as Master, as well as Owners' Representative and Legal Representative, for the Rig ENERGY ZAPOTECA.  (See PHILLIPS' First Amended Counter-claim).  Further, ZAPOTECA recognizes that the relationship of the parties sounds in admiralty in that they brought their claims pursuant to Admiralty Rule 9(h), and it would be contradictory for ZAPOTECA to now assert that PHILLIPS' claims are not sounded in Admiralty.  (See ZAPOTECA'S Original Complaint for Temporary Restraining Order and Preliminary Injunction).

PHILLIPS was the Master, Owners' Representative, and Legal Representative of the Rig ENERGY ZAPOTECA.  (See  Exhibit A).  "Under the common law, seamen had a maritime lien against the vessel to secure their wages, which are enforceable by an action *in rem.*"  *Governor and Company of the Bank of Scotland v. Sabay,* 211 F.3d 261, 268,200 A.M.C. 1532 (5th Cir.2000), *rehearing denied; citing Leon v. Galceran,* 78 U.S. (11Wall.) 185, 187, 20 L.Ed. 74 (1870); *Sheppard v. Taylor,* 30 U.S. (5 Pet.) 675, 709-710, 8 L.Ed. 269 (1831); *Irving Trust Co. v. The GOLDEN SAIL,* 197 F.Supp. 777, 779 (D.Or. 1961).  Accordingly, PHILLIPS' claims for past due and owing wages gives rise to a maritime lien against the Rig ENERGY ZAPOTECA *in rem.*

PHILLIPS' claims were also brought against ZAPOTECA *in personam* based on his employment relationship as Master, Owners' Representative, and Legal Representative on the Rig ENERGY ZAPOTECA. (See PHILLIPS' First Amended Complaint and Exhibit A).  PHILLIPS *in personam* actions are for all the services he provided as Master, Owners' Representative, and Legal Representative on the Rig ENERGY ZAPOTECA in Tuxpan, Mexico, and all the resulting damages

he suffered as a result of this employment relationship with ZAPOTECA. (See Exhibit A). PHILLIPS' additional claims for wrongful termination, breach of contract and quantum meruit are all predicated on his role as Master, Owners' Representative, and Legal Representative on the Rig ENERGY ZAPOTECA, and, thus, sound in admiralty. (See Exhibit A).

Finally, ZAPOTECA, through its agent, admits that PHILLIPS is a seaman and his wage claim is protected under the law of admiralty. (See Exhibit B, February 10, 2004 Email from Ed Nelson to PHILLIPS attached hereto, and by way of reference incorporated herein for all purposes). This admission by ZAPOTECA bars them from now asserting that this is not an admiralty case, and merely a case based on diversity of jurisdiction.

**B.    ZAPOTECA Cannot be "Found within the District"**

ZAPOTECA raises the issue that because they are a party to this litigation, they are "found within the District" and, thus, Rule B does not apply. The Fifth Circuit, in *LaBanca v. Ostermunchner*, adopted the federal case law approach that there is a two (2) prong test in determining if a defendant may be "found within the district":

> "First, can the defendant be found within the district in terms of jurisdiction? Second, can the defendant be found within the district for service of process? If the answer to both questions is affirmative, then the defendant can be found "within the district" for the purposes or Rule B(1), and the process of attachment and garnishment is not available to the plaintiff." *LaBanca v. Ostermunchner*, 664 F.2d 65, 67, 1982 A.M.C. 205 (5th Cir. 1981); *citing Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580 (2nd Cir. 1963); *State of Oregon, State Highway Commission v. Tug Go Getter*, 398 F.2d 873 (9th Cir. 1968). (Emphasis added).

While PHILLIPS concedes that service of process may be had on ZAPOTECA within the district pursuant to the Federal Rules of Civil Procedure, PHILLIPS does not concede that ZAPOTECA may be found within the district in terms of jurisdiction.

ZAPOTECA is a foreign corporation, incorporated under the laws of the Country of Liberia with no assets, agents, representative, officers, shareholders or property within the United States, other than the Rig ENERGY ZAPOTECA. (See ZAPOTECA'S Original Complaint for Temporary Restraining Order and Preliminary Injunction and Exhibit A). ZAPOTECA'S filing of its Original Complaint for Temporary Restraining Order and Preliminary Injunction was merely a mechanism in which it could evade and hide from the attachment of its sole asset. Accordingly, equity and fair play should prevail and a warrant for arrest or attachment of the Rig ENERGY ZAPOTECA issue.

While ZAPOTECA pleads that it is present within the district through PHILLIPS' presence in the district, once PHILLIPS was terminated, ZAPOTECA failed to maintain any assets, agents, representative, officers, shareholders or property within the United States, other than the Rig ENERGY ZAPOTECA. (See Response to Defendant's Motion for Arrest and Seizure of Vessel and Exhibit A). Additionally, ZAPOTECA maintains that it has sufficient minimum contacts to the district to satisfy the requirement of due process. (See Response to Defendant's Motion for Arrest and Seizure of Vessel). This is not so, ZAPOTECA has no ties to the district whatsoever. They do not maintain any assets, agents, representative, officers, shareholders or property within the United States, other than the Rig ENERGY ZAPOTECA, and they do not conduct any business or commerce within the district, other than the mooring of their sole asset, the Rig ENERGY ZAPOTECA, in Sabine Pass, Texas. Accordingly, the minimum contacts requirement of due process is not met, and ZAPOTECA cannot be found within the district.

The Fifth Circuit, in analyzing the application of Rule B and a defendant being "found within the district" has recognized that attachment serves two (2) purposes: "(1) securing the defendant's appearance and (2) <u>assuring satisfaction in case the plaintiff's suit is successful</u>." (Emphasis added).

*Heidmar, Inc. v. Anomina Ravennate Di Armamento*, 132 F.3d 264, 268 (5th Cir. 1998); *citing Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 693, 70 S.Ct. 861, 867, 94 L.Ed. 1206 (1950). The Court continued, "[t]hus, the appearance of the defendant <u>before</u> seizure is effected does not entirely vitiate the justification for attachment."    (Emphasis added). *Id.* Accordingly, the fact that ZAPOTECA is already a party to this action does not waive the ability of the Court to arrest and seize the Rig ENERGY ZAPOTECA pursuant to Rule B.

Alternatively, Rule B Section (e) provides that a "plaintiff may invoke state-law remedies under Rule 64 for seizure of person or property for the purpose of securing satisfaction of the judgment." Rule B(e). PHILLIPS has made claims for past due and owing wages, wrongful termination, breach of contract and quantum meruit in excess of $1,715,000.00. (See Exhibit A and Exhibit C, "Charles Douglas Phillips' Calculation of Damages" attached hereto, and by way of reference incorporated herein for all purposes). The Texas Civil Practice and Remedies Code supplies a mechanism whereby a plaintiff can seize or otherwise attach property of a defendant in order to secure payment of a judgment. Specifically, Texas Civil Practice and Remedies Code Section 61.002 states:

> "Attachment is available if:
> (1) the defendant is not a resident of this state or is a foreign corporation or is acting as such;
> (2) the defendant is about to move from this state permanently and has refused to pay or secure the debt due the plaintiff;
> (5) the defendant is about to remove his property from this state without leaving an amount sufficient to pay his debts; or
> (8) the defendant is about to convert all or part of his property into money for the purpose of placing it beyond the reach of his creditors." Tex.Civ.Prac. & Rem. Code § 61.002.

In the case at bar, and as stated above, ZAPOTECA is a foreign corporation with only one asset, the Rig ENERGY ZAPOTECA. The Rig ENERGY ZAPOTECA is capable of moving beyond the reach of the Court in that it is a jack-up barge/rig, and if sold would covert all of the property of ZAPOTECA into money beyond the reach of the Court. Further, ZAPOTECA has not placed any security to satisfy any judgment PHILLIPS may obtain.

**III.**

## THE RIG ENERGY ZAPOTECA IS A "VESSEL" SUBJECT TO A WARRANT FOR ATTACHMENT OR ARREST

It has been established by the Fifth Circuit that there is a two (2) prong test for deciding what is a "vessel". "In determining what is a vessel, we consider the purpose for which the craft is constructed and the business in which it is engaged." *Blanchard v. Engine and Gas Compressor Services,* 575 F.2d 1140, 1142 (5th Cir. 1978); *citing The Robert W. Parsons,* 1903, 191 U.S. 17, 30, 24 S.Ct. 8, 12, 48 L.Ed. 73, 78; *Hicks v. Ocean Drilling and Exploration Co.,* 512 F.2d. 817, 823, 1975 A.M.C. 1378, 1385, (5th Cir. 1975), cert. denied, 1976, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 639; *Cook v. Belden Concrete Products, Inc.* 472 F.2d 999, 1001, 1973 A.M.C. 285, 288 (5th Cir. 1973), cert. denied, 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116.

**A.    The Rig ENERGY ZAPOTECA was Constructed for the Purpose of Serving as a Jack-up Oil Drilling Rig**

The first prong of the *Blanchard* test is met, in that, the Rig ENERGY ZAPOTECA was constructed for the purpose of serving as a jack-up oil rig. Specifically, the Rig ENERGY ZAPOTECA is a Friede & Goldman L-780 Independent Leg Jack-up Barge/Rig. (See Exhibit A). Further, ZAPOTECA admits that the Rig ENERGY ZAPOTECA was designed to operate as a

vessel. (See Response to Defendant's Motion for Arrest and Seizure of Vessel). Accordingly, the

first prong of the *Blanchard* test is satisfied.

**B.      The Rig ENERGY ZAPOTECA is Engaged in the Business of Serving as a Jack-up Oil Drilling Rig**

The second prong of the *Blanchard* test requires a look at the business in which the craft is

engaged. As stated above, the Rig ENERGY ZAPOTECA was designed to serve as a jack-up oil

rig. At the time of PHILLIPS hiring as Master of the Rig ENERGY ZAPOTECA, the rig was

located at the Port of Tuxpan, Mexico. It had suffered a "blow-out", but was capable of moving or

being towed. (See Exhibit A). Additionally, at the time of PHILLIPS arrival in Tuxpan, Mexico, the

Rig ENERGY ZAPOTECA had been certified for navigation and was flagged a Panamanian vessel.

(See Exhibit A).

**1.      The Rig ENERGY ZAPOTECA is Not a "Dead Ship" or "Mothballed"**

ZAPOTECA argues that because the Rig ENERGY ZAPOTECA had suffered a "blow-out"

and was moored Tuxpan, Mexico for a period of time before PHILLIPS was hired, it was a "dead

ship" or "mothballed". In support of this argument ZAPOTECA relies on several cases from various

circuits and district courts. One of these case, *Goodman,* involves an assertion of a maritime lien for

wharfage on a certain pleasure boat that had sunk. *Goodman v. 1973 26 Foot Trojan Vessel,* 859

F.2d 71 (8th Cir. 1988). In finding that the pleasure boat was a vessel, the Eight Circuit rejected the

dead ship argument despite the fact that the boat's registration had expired and was need in repair.

"Under the dead ship doctrine, a ship loses its status as a vessel when its function is so changed that

it has no further navigation function." *Id.* at 73. In the instant case, the Rig ENERGY ZAPOTECA

had not lost its navigation function, as it was still capable of being moved or towed, and was, in fact,

being prepared for voyage to Galveston, Texas. (See Exhibit D, "November 17, 2000, Surveyors Report of John Lebourhis & Associates, Inc.", attached hereto and by way of reference incorporated herein for all purposes, and Exhibit A).

A second case upon which ZAPOTECA relies is *Royal Insurance Company of America v. Pier 39 Limited Partnership,* 738 F.2d 1035 (9th Cir. 1984). In *Royal,* an insurer filed a declaratory judgment action against the insured on the issue of coverage for damages suffered to a floating breakwater and dock owned by the insured. The court held that because the floating breakwater and dock were a fixed to the floor of the San Francisco bay, and not in danger of moving, they were not "vessels". *Id.* "Because the breakwater and dock, unlike vessels, are immobile, an insurer dealing on the credit of the structures does not need the in rem process of admiralty to prevent her leaving port before he can enforce his claim." *Id.* at 1038. In the instant case, the Rig ENERGY ZAPOTECA is mobile and capable of leaving prior to PHILLIPS enforcement of his claim. Accordingly, the reasoning in *Royal* would lend itself to support the arrest and seizure of the Rig ENERGY ZAPOTECA.

Another case cited by ZAPOTECA is *McAllister Towing of Virginia, Inc., Limitation Proceedings,* 2000 A.M.C. 2164 (E.D.Va. 2000). In *McAllister,* the Court presented the definition of a "dead ship" as follows: "A 'dead ship' for purposes of jurisdiction is a ship that 'loses its status as a vessel when its function is so changed that [it] has no further navigation function." *Id.* at 2; *citing Goodman v. 1973 26 Foot Trojan Vessel,* 859 F.2d 71, 73 (8th Cir. 1988); *Noel v. Isbrandtsen Co,* 287 F.2d 783, 785 (4th Cir. 1961), cert. den., 366 U.S. 975 (1961). In the case at hand, the function of the Rig ENERGY ZAPOTECA had not changed. It was constructed for the purpose of preforming the services of an offshore drilling rig, and at the time of PHILLIPS hiring, that was still

the purpose of the Rig ENERGY ZAPOTECA (Exhibit A). While PHILLIPS concedes that the Rig ENERGY ZAPOTECA had remained idle for a period of time, the Rig ENERGY ZAPOTECA'S function had never changed.

### 2.    Intended Use of the Rig ENERGY ZAPOTECA

In the cases of *Kilb v. Menke* and *Hayford v. Doussony*, the Fifth Circuit looked at the intended use of the vessel to determine if it was subjected to admiralty jurisdiction. *Kilb v. Menke*, 121 F.2d 1013 (5th Cir. 1941); *Hayford v. Doussony*, 32 F.2d 605, (5th Cir. 1929). In both *Kilb and Hayford*, the Courts discussed the intention of the owner of the vessels to navigate them again and importance of the vessels' permanently being taken out of navigation. *Kilb v. Menke*, 121 F.2d 1013 (5th Cir. 1941); *Hayford v. Doussony*, 32 F.2d 605, (5th Cir. 1929). In the case at bar, the Rig ENERGY ZAPOTECA was never intended to be permanently taken out of navigation. The Rig ENERGY ZAPOTECA was purchased by ZAPOTECA to be refit and placed back into use for its intended purpose as a jack-up oil rig. In fact, the Rig ENERGY ZAPOTECA has been refitted and moved to Sabine Pass, Texas in preparation for its sale and use. (See Exhibit A). Therefore, the Rig ENERGY ZAPOTECA was never intended to be a "dead ship" or "mothballed".

### 3.    Rig ENERGY ZAPOTECA is a "Vessel"

As stated above, the Rig ENERGY ZAPOTECA is a jack-up oil barge/rig. (See Exhibit A). The Fifth Circuit, in a case involving injuries suffered by a roughneck while working aboard a mobile drilling platform or barge, found that the drilling platform or barge was a "vessel" giving rise to the question of fact as to the status of the injured party as a "seaman". *Offshore Company v. Robinson*, 266 F.2d 769 (5th Cir. 1959). In *Robinson*, the Court recognized that the drilling platform or barge had no means of movement (other than by tow) and that at the time of the alleged injury, it was

resting on the sea floor. "At the time of the accident it was resting firmly on the bottom of the Gulf

of Mexico, about three miles from the Texas coast." *Id.* at 772. While not conclusive, *Robinson*

would substantiate that at the time of PHILLIPS hiring as Master on the Rig ENERGY ZAPOTECA,

despite having its legs down, was a "vessel".

## III.

## STATE LAW CLAIMS

**A.    Attachment Pursuant to Texas Civil Practice & Remedies Code Chapter 61**

As stated above, Rule B allows for the imposition of state law remedies. Rule B(e).

PHILLIPS would urge the Court, in the alternative to the arrest and seizure of the Rig ENERGY

ZAPOTECA, to attach ZAPOTECA'S assets presently in the United States pursuant to Texas Civil

Practice & Remedies Code Chapter 61.

**1.    Texas Civil Practice & Remedies Code § 61.002:**

"Attachment is available if:
(1) the defendant is not a resident of this state or is a foreign corporation or is acting
as such;
(2) the defendant is about to move from this state permanently and has refused to pay
or secure the debt due the plaintiff;
(5) the defendant is about to remove his property from this state without leaving an
amount sufficient to pay his debts; or
(8) the defendant is about to convert all or part of his property into money for the
purpose of placing it beyond the reach of his creditors." Tex.Civ.Prac. & Rem. Code
§ 61.002.

**2.    ZAPOTECA is a Foreign Corporation with Only One Asset**

ZAPOTECA is a foreign corporation formed under the laws of the Country of Liberia. It

maintains no employees, agents, representatives, officers, shareholders, or place of business in the

United States. ZAPOTECA'S sole asset is the Rig ENERGY ZAPOTECA. (See Exhibit A).

**3.    ZAPOTECA is about to Move from this State Permanently and has Refused to Pay or Secure the Debt Owed to PHILLIPS**

ZAPOTECA'S only connection with the United States is its sole asset, the Rig ENERGY ZAPOTECA. ZAPOTECA is in the process of attempting to sell said asset, and upon the sale of said asset it will permanently be beyond the reach of this honorable Court. ZAPOTECA has refused to pay or secure the debt owed to PHILLIPS for past due and owing wages.

**4.    ZAPOTECA is about to Remove its Property from this State Without Leaving an Amount Sufficient to Pay its Debt to PHILLIPS**

ZAPOTECA'S only asset, the Rig ENERGY ZAPOTECA, is readily movable. During the pendency of this action, it has moved from Tuxpan, Mexico to Sabine Pass, Texas. (See Exhibit A). ZAPOTECA is attempting to sell its only asset to a buyer of unknown origin and location. Once sold, the Rig ENERGY ZAPOTECA will more than likely be removed from the reach of this honorable Court and PHILLIPS.

**5.    ZAPOTECA is about to Convert All or Part of its Property into Money for the Purpose of Placing it Beyond the Reach of its Creditors**

ZAPOTECA is attempting to sell the Rig ENERGY ZAPOTECA, its only asset. Once sold, the money generated from the sale of the Rig ENERGY ZAPOTECA will be placed beyond the reach of ZAPOTECA'S creditors, in that, ZAPOTECA is a Liberian Corporation with no ties to the United States besides the Rig ENERGY ZAPOTECA.

**6.    Attachment Should Issue against the Property of ZAPOTECA**

Based on the foregone, and pursuant to Texas Civil Practice & Remedies Code Chapter 61, attachment should issue against the property of ZAPOTECA, the Rig ENERGY ZAPOTECA, in order to protect PHILLIPS.

**B.      Injunctive Relief Against ZAPOTECA**

In the alternative to arrest and seizure of the Rig ENERGY ZAPOTECA, PHILLIPS would argue that the Court, siting in equity, utilize its power to enjoin ZAPOTECA from moving or otherwise selling or disposing of its property during the pendency of this matter.

**1.      PHILLIPS has No Adequate Remedy at Law**

ZAPOTECA is a foreign corporation with only a single asset, the Rig ENERGY ZAPOTECA.  In the event that the Rig ENERGY ZAPOTECA is moved or sold, there will be nothing in which PHILLIPS may pursue in the even he obtains a judgment.  PHILLIPS is making claims against ZAPOTECA in the amount of $1,715,000.00 for damages suffered as a direct result of ZAPOTECA'S actions.  (See Exhibit C).  In the event that PHILLIPS is successful in obtaining a judgment, and the Rig ENERGY ZAPOTECA has been moved or sold, ZAPOTECA will not have any assets from which to recover.

**2.      PHILLIPS Will Suffer Irreparable Harm ZAPOTECA Not be Enjoined**

In the event ZAPOTECA is not enjoined from moving, selling or otherwise disposing of its assets in the United States, PHILLIPS will suffer irreparable harm, in that, should he be successful in the prosecution of his case and obtains a judgment, ZAPOTECA will have no assets in which to satisfy said judgment.  ZAPOTECA, being a foreign corporation, has not ties to the United States, other than the Rig ENERGY ZAPOTECA, and beyond the reach of the jurisdiction of this Court should PHILLIPS obtain a judgment.

## IV.

## CONCLUSION

The provisions of Supplemental Rule B are satisfied, in that: (1) PHILLIPS claims, both *in rem* and *in personam,* sound in admiralty as they relate to his service as Master, Owners' Representative, and Legal Representative, on the Rig ENERGY ZAPOTECA; and (2) ZAPOTECA cannot be "found within the District" despite its being a party to this action.

At the time of PHILLIPS starting his employment with ZAPOTECA, the Rig ENERGY ZAPOTECA was a "vessel" subject to a warrant for attachment or arrest. The Rig ENERGY ZAPOTECA was (1) constructed for the purpose of serving as a jack-up oil drilling rig, and that purpose has not changed; and (2) it is engaged in the business of serving as a jack-up oil drilling rig. The Rig ENERGY ZAPOTECA was not a "dead ship" or "mothballed" in that its function as a jack-up oil drilling rig never changed and it could, at all times relevant, be moved. Furthermore, the intended use of the Rig ENERGY ZAPOTECA never changed and it was never permanently taken out of navigation (as evident by its movement from Tuxpan, Mexico to Sabine Pass, Texas). Accordingly, it is subject to a warrant for attachment or arrest.

Alternatively, under state law, this honorable Court has the authority to attach the Rig ENERGY ZAPOTECA pursuant to Texas Practice & Remedies Code, Chapter 61, in that, ZAPOTECA (1) is a foreign corporation with only one asset; (2) ZAPOTECA is readily moveable with no ties to the United States, other than its one asset; (3) its sole asset is readily moveable; and (4) there is insufficient security to satisfy any judgment PHILLIPS may obtain. Additionally, this honorable Court has the power to enjoin ZAPOTECA from moving or otherwise selling or disposing

of its asset because PHILLIPS has no adequate remedy at law and will suffer irreparable harm if ZAPOTECA is not enjoined from moving or otherwise selling or disposing of its asset.

WHEREFORE, PREMISES CONSIDERED, Defendant/Counter-claimant, CHARLES DOUGLAS PHILLIPS, requests that, after hearing heard, this honorable Court grant his Motion for Arrest and Seizure of Vessel, the Rig ENERGY ZAPOTECA, or in the alternative, grant a Temporary Restraining Order and Preliminary Injunction against Plaintiff/Counter-Defendant, ZAPOTECA ENERGY, INC., together with any all further relief to which CHARLES DOUGLAS PHILLIPS may be entitled, both at law and in equity.

Respectfully submitted,

By: _____

     C. Frank Wood
     State Bar No. 24028136
     Federal Bar No. 29870
     Dennis Sanchez
     State Bar No. 17569600
     Federal Bar No. 1594

ATTORNEYS FOR CHARLES DOUGLAS PHILLIPS

**OF COUNSEL:**

SANCHEZ, WHITTINGTON, JANIS
& ZABARTE, LLP
100 North Expressway 83
Brownsville, TX 78521
Tel: (956) 546-3731
Fax: (956) 546-6765/66

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Charles Douglas Phillips' Brief in Support of Motion for Arrest and Seizure of Vessel, And, in the Alternative, Temporary Restraining Order and Preliminary Injunction** has been served upon counsel listed below☒by placing a true and correct copy of same in the United States Mail, certified, return receipt requested, with postage fully prepaid, and/or ☐ by facsimile to the number listed below, and/or ☐ by hand delivery, on this _18th_ day of _MAY_____, 2004:

Mr. Edwin K. Nelson, IV
ATTORNEY AT LAW
3814 Sun Valley Drive
Houston, Texas 77025
Fax No. (713)668-5110

C. Frank Wood

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC., | § | |
| Plaintiff/Counter-defendant, | § | |
| | § | |
| v | § | CASE NO B-04-048 |
| | § | |
| CHARLES DOUGLAS PHILLIPS, | § | |
| Defendant/Counter-claimant. | § | |

## AFFIDAVIT OF CHARLES DOUGLAS PHILLIPS

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared CHARLES PHILLIPS, who being by me duly sworn on oath stated and said the following:

1.  My name is CHARLES DOUGLAS PHILLIPS, I am over eighteen, am competent to make this affidavit, and have personal knowledge of the facts herein stated.

2.  In May 2000, I was hired by SOUTHERN INTERNATIONAL, INC to act as Project Manager on the Rig ENERGY ZAPOTECA in Tuxpan, Mexico. In June of 2000, I was appointed Master of the Rig ENERGY ZAPOTECA by Christian Kongsii, one of the shareholders (Owners) of ZAPOTECA ENERGY, INC. In December of 2000, I was hired by ZAPOTECA ENERGY, INC. to remain as Master on the Rig ENERGY ZAPOTECA and also serve as the Owners' Representative of the Rig ENERGY ZAPOTECA. In May of 2001, I was given a general Power of Attorney to handle all legal matters for ZAPOTECA ENERGY, INC. in Mexico.

3.  The terms of my employment with ZAPOTECA ENERGY, INC. were that I was to receive a salary of twelve thousand and no/100 dollars ($12,000.00) per month, plus a per-diem in Mexico in the amount of $2,000.00 Pesos per week, housing allowance of $15,000.00 Pesos per month, and car allowance of $11,000.00 Pesos per month. Upon my return to the United States in May of 2003, my salary remained the same at twelve thousand and no/100 dollars ($12,000.00) per month. with my per-diem being $75.00 USD per day, housing allowance of $2,250.00 USD per month, and car allowance of $500.00 per week at the time of my termination




EXHIBIT
A

4.  Upon being hired by SOUTHERN INTERNATIONAL, INC. in May of 2000 as Project Manager, I traveled to Tuxpan, Mexico, and immediately began work on the Rig ENERGY ZAPOTECA.

5.  The Rig ENERGY ZAPOTECA is a Friede & Goldman L-780 Independent Leg Jack-up Barge/Rig.

6.  In May of 2000, the Panamanian provisional (navigation) certificate was issued to ZAPOTECA ENERGY, INC. for the Rig ENERGY ZAPOTECA.

7.  In the Summer of 2000, the Rig ENERGY ZAPOTECA, although damaged by a "blow-out", was fully capable of being towed or moved.

8.  In May of 2000, I was employed by SOUTHERN INTERNATIONAL, INC. to perform work on the Rig ENERGY ZAPOTECA for its use in the marine industry as a jack-up barge/rig.

9.  During my employment with SOUTHERN INTERNATIONAL, INC. and ZAPOTECA ENERGY, INC., I physically worked on the Rig ENERGY ZAPOTECA in order to prepare the Rig ENERGY ZAPOTECA for moving and use in the marine industry as a jack-up barge/rig.

10. During my employment with ZAPOTECA ENERGY, INC , and as a direct result of my employment with ZAPOTECA ENERGY, INC., I was charged with a crime in the Country of Mexico and forced to leave Mexico in May of 2003. I must remain outside of the Country of Mexico for a period of not less than three (3) years in order to avoid prosecution for a crime directly resulting from ZAPOTECA ENERGY, INC.'S actions.



11. During my employment with ZAPOTECA ENERGY, INC , I was involved in a labor case in Mexico whereby a writ of attachment was issued against the Rig ENERGY ZAPOTECA in favor of me and my superintendent, for failing to pay us past due and owing wages  The amount of the writ of attachment against the Rig ENERGY ZAPOTECA is $1,115,568.00 USD, of which approximately $500,000.00 USD is directly attributable to wages owed by the Rig ENERGY ZAPOTECA to me.

12. On or about March 10, 2004, I was terminated by ZAPOTECA ENERGY, INC. for failing to perform an illegal act under the laws of the Country of Mexico and move the Rig ENERGY ZAPOTECA from its moored location in the Port of Tuxpan, Mexico, to another location while the Rig ENERGY ZAPOTECA was subject to attachment by the Mexican Labor Court.

13.  Upon my termination, I was owed, and remain owed, by ZAPOTECA ENERGY, INC. approximately $20,000.00 in back wages for my services as Master, Owners' Representative and Legal Representative of the Rig ENERGY ZAPOTECA, in addition to $165,000.00 in the form of an agreed severance/bonus payment for the work I performed for ZAPOTECA ENERGY, INC. on the Rig ENERGY ZAPOTECA.

14   The afore described due and owing wages directly result from my services as Master, Owners' Representative and Legal Representative of the Rig ENERGY ZAPOTECA.

15.  After my termination, I was named as a defendant in a Mexican Labor Case directly resulting from my role as Master, Owners' Representative and Legal Representative of the Rig ENERGY ZAPOTECA.  The costs associated with the defense of this action is in excess of $220,000.00 USD.

16.  After my termination, ZAPOTECA ENERGY, INC. maintains no office, agent, officer, shareholder, representative, or property within the United States, other than the Rig ENERGY ZAPOTECA.

17.  ZAPOTECA ENERGY, INC. is a foreign corporation incorporated under the laws of Liberia, with its principal place of business and registered agent located at 80 Broad Street, City of Monrovia, County of Montserrado, Republic of Liberia.

18.  ZAPOTECA ENERGY, INC.'s only asset is the Rig ENERGY ZAPOTECA

19   In April of 2004, the Rig ENERGY ZAPOTECA was moved from Tuxpan, Mexico to Sabine Pass, Texas, and as of the making of this affidavit, it remains in Sabine Pass, Texas.



20   In April/May 2003, the Rig ENERGY ZAPOTECA was equipped with two (2) living quarters, portable navigation lights, pumps, tugger, generator, safety equipment, and towing gear.

21   I have seen the Rig ENERGY ZAPOTECA since its arrival in Sabine Pass, Texas and it remains fully capable of being moved or towed to any port of ZAPOTECA ENERGY, INC.'S choosing.

22.  I have read the foregoing pleading to which this affidavit is attached, and the contents contained therein are true and correct.

FURTHER AFFIANT SAYETH NOT

CHARLES DOUGLAS PHILLIPS

THE STATE OF TEXAS        §
                          §
COUNTY OF HARRIS          §

SWORN TO AND SUBSCRIBED TO BEFORE ME by the said CHARLES DOUGLAS PHILLIPS to certify which witness my hand and seal of office on this _17ᵀᴴ_ day of _May_____, 2004.

> SUNNY ROBINSON
> MY COMMISSION EXPIRES
> September 17, 2006

Notary Public, State of Texas

My Commission Expires:

L:\F2\920\866\Affidavit of Charles Douglas Phillips wpd                                    Page 4 of 4


**YAHOO! Mail**

Print - Close Window

**From:** "Edwin Nelson" <seaproctor@hotmail.com>
**To:** energyzapoteca@yahoo.com
**CC:** seaproctor@hotmail.com
**Subject:** Re:
**Date:** Tue, 10 Feb 2004 10:17:07 -0600

Charles,

1. Please read later correspondence to owners advising of the same, which
has been passed onto Per Johansen.

2. No written reports have been filed. All communication was by phone.
Christian and I called you daily with reports of what was done and what was
discussed with owners.

3. As you are well aware and as reported to you, Arturo did not attend this
meeting. The lady judge said there were no lawsuits other than the landlord
matter and the International Paint matter.

Your and Arturo's advise has been that certified apostilled copies of
McDrermott's Houston lawsuit will cause the same lawsuit in Mexico to be
dismissed.

Per Arturo,the certified apostilled copies of McDrermott's Houston lawsuit
are not outdated.

4. Charles, things take time. Arturo and I have done everything poissible
given the time we have had. Neither Arturo nor I can denounce. This is being
set up to be done when someone appropriate returns to Mexico.

5. Please provide your recommendations on what needs to be done to stop
Monroy and McDermott from bothering the crew, given the situation as it
exists. I am at a loss here.

6. Noted regarding Rosario.

7. Jonathan and I have both advised you that you are a seaman and your wage
claim will follow the Rig. I would assume that you have also confirmed this
with your own attorney.

Edwin K. Nelson, IV

>From: Chris Phillips <energyzapoteca@yahoo.com>
>To: Edwin Nelson <seaproctor@hotmail.com>


EXHIBIT
B

>Subject: Re:
>Date: Tue, 10 Feb 2004 06:49:56 -0800 (PST)
>
>
>
>Edwin Nelson <seeproctor@hotmail.com> wrote:
>Charles,
>
>Not a problem.
>
>If you remember, I have instructed owners that no deal should be reached
>with ASAC unless the same includes the dismissal of all claims and causes
>of
>action against all, including you. This includes any and all criminal
>charges. I will further instruct Owners on this immediately.
>
>HERE WE GO AGAIN. NOBODY HAS A MEMORY!!!!! PROTEXA/CELASA FORGAVE ME. WHAT
>HAPPENED????
>
>WHAT THE OWNERS WILL DO IS WHAT I SAID- ASAC WILL GO BEFORE A NOTARY AND
>SWEAR THAT NO CHARGES OF ANY KIND HAVE BEEN FILED OR WILL BE FILED AGAINST
>CHARLES PHILLIPS.. PERIOD!!!!
>
>FOR THE RECORD: NOTHING LESS WILL BE ACCEPTED. I WANT THAT IN WRITING
>TODAY... NOT TOMORROW OR ANY BULL-SHIT.. DISMISSAL MY ASS!!!!'
>
>ED THIS IS NOT THE USA...
>
>
>Let's keep watching the Labor Court. In this regard, please instruct Arturo
>to attend the Labor Court this Thursday as this is the day the labor Court
>will advise whether or not the bond is acceptable. Please copy me on the
>instruction.
>
>
>WHY NOT COPY ME ON YOUR REPORTS TO THE OWNERS ON THE VISIT TO
>TUXPAN!!!!!!!!!!!!!!
>
>
>As to the Meritus attorney, we will share our intelligence with him. I
>suspect Owners are having to pay for this attorney also. I do not believe
>it
>necessary for Meritus' attorney to attend Court this Thursday. I believe
>Arturo will handle the matter appropriately.
>
>If and when Bill's civil case surfaces, provided the same relates to any
>breach of contract by owners regarding the sale proceeds of the Rig, we are
>properly equipped to handle the matter. Your and Arturo's guidance is

that
>the Civil Court will immediately dismiss such a claim once we produce the
>certified and apostilled copies of Bill's claim in Houston. I trust your
>guidance on this.
>
>LETS CLEAR THIS UP NOW!! YOU HAD THE MEETING WITH THE JUDGE, NOT ME. DID
>ARTURO MEET WITH THE JUDGE REGARDING THIS
>MATTER?????????????????????????????????????????????????????
>
>THE APOSTILLE ARE OUT DATED. I SUGGESTED THAT THEY BE UPDATED. NO RESPONSE.
>
>What are your thoughts regarding Rosario? I suggest Arturo handle all
>claims
>given the behavior of Rosario.
>
>DO WE WANT TO PISS HIM OFF NOW???????? HOW DO I KNOW.....
>
>LETS PISS HIM OFF AFTER THE RIG LEAVES...
>
>As stated before, I do not believe you have any worries regarding your
>agreement with owners. I believe Owners will live by their agreement.
>Furthermore, if something happens, you have been advised by others with
>knowledge of maritime law that your are fully protected as a seaman under
>U.S law, sale or no sale. I concur with this advise.
>
>
>WHAT OTHERS ARE YOU REFERRING TO???? I AM AN EXILED CAPTAIN. SURELY THERE
>IS A LAW THAT SOME HOW WILL SCREW ME.. I AM NOT GOING THAT ROUTE.. I WANT
>SOME GUARANTEES NOW!!!!!!' WHY SHOULD I HAVE TO FIGHT FOR WHAT HAS BEEN
>AGREED UPON??? WHY WOULD THE OWNERS PUT ME IN THIS SITUATION???
>
>BELIEVING AND FACT ARE TWO TOTALLY MATTERS......
>
>We will need to keep the crew in order, what ever it takes. You have done a
>great job so far. Keep up the good work.
>
>WHAT ARE YOU TALKING ABOUT. I DO NOT SEE ANYONE DOING SHIT TO BILL AND
>RAFAEL TO STOP THEM FROM HARASSING THEM....
>
>QUIT PUMPING ME UP///
>
>On this note, I let it be known among the crew that we are declaring war on
>anyone who gets in our way, that Owners have the financial ability to carry
>out the war and that anyone we declare war on will be squashed like a
>grape.
>I believe the crew fully understands Owners' and my will and ability to so act.

Yahoo! Mail - energyzapoteca@yahoo.com                    Page 4 of 6

Case 1:04-cv-00048    Document 23    Filed in TXSD on 05/18/2004    Page 26 of 31

>act.
>
>ARE YOU FUCKING JOKING!!!!!!!!!!!!!!!!!!
>
>POSTING A 3 MIL/PESO BOND IS NOT DECLARING WAR!!!!! EXACTLY WHAT ELSE HAVE
>YOU DONE EXCEPT TO TELL THE PEOPLE THAT YOU HAVE DECLARED WAR!!!!!! I DO
>NOT SEE ANY PLAN TO DENOUNCE ANYONE.. THAT IS ERIK'S PLAN!!!!
>
>I would not let Monroy's e-mail stress you too much on this as the same is
>only an attempt to upset you.
>
>ED, YOU DON'T KNOW ME!!!!!!!!!!!!!!!!!!!!!!!!!!
>
>I know nothing regarding the export document. This is in Owners' hands.
>
>NO, THIS IS IN PINEDO AND PROTEXA/CELASA HANDS
>
>Have a good dinner. Keep me posted.
>
>
>HAD A GREAT DINNER WITH JONATHAN. HOWEVER, HE TORE A BIG HOLE IN HIS PANTS
>GETTING UP FROM THE CHAIR...
>
>
>Ed                                      CHARLES
>
>
>
>
>
>
> >From: Chris Phillips
> >To: Edwin Nelson
> >Subject: Re: Date: Mon, 9 Feb 2004 16:55:23 -0800 (PST)
> >
> >Ed,
> >
> >Sorry for the delay.
> >
> >I was meeting with Jonathan this morning and we are going out for
> >dinner tonight.
> >
> >From what I have been told, the group were at the labor court most of the
> >day.
> >For sure, they are trying something..Our people was watching the labor
> >court..
> >
> >Is the Meritus attorney in Tuxpan?? If so, he should have been there..
> >I do not know how to contact him..
> >
> >You saw the hate mail from Rafael and my reply..
> >

Yahoo! Mail - energyzapoteca@yahoo.com
Page 5 of 6
Case 1:04-cv-00048    Document 23    Filed in TXSD on 05/18/2004    Page 27 of 31

> >Arturo called me today after receiving an e-mail from Rafael.. They are
> >working overtime on the crew. However, I have said this many times
>without
> >any response from the owners.. Time will tell.
> >
> >I have not seen the export document!!! I cannot say today that the bond
> >will be
> >approved by the labor court..
> >
> >For sure, Bill's civil case will come to life very soon...
> >
> >I spoke with Sammy Downs this morning.. He still says that an agreement
>is
> >in
> >place for the Energy Zapoteca.
> >
> >I have been waiting for some type of guarantee from the owners regarding
>my
> >money
> >and what about the problems in Mexico. Did ASAC file charges on me???
> >Nobody wants to discuss this subject!!! No one wants to make sure that
>ASAC
> >will sign a statement in front of a notary swearing that no charges have
> >been filed nor will any charges be filed against Charles Phillips....
> >
> >
> >
> >
> >
> >Edwin Nelson wrote:
> >
> >Charles,
> >
> >Please respond to my questions of yesterday and please update me on what
>we
> >determined regarding MVM movements today.
> >
> >Thank you.
> >
> >Ed
> >
> >_____
> >Optimize your Internet experience to the max with the new MSN Premium
> >Internet Software.
>http://click.atdmt.com/AVE/go/onm00200359ave/direct/01/
> >
> >
> >
> >Charles Phillips
> >Master

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC., | § | |
|     Plaintiff/Counter-Defendant, | § | |
| | § | CASE NO. B-04-048 |
| v. | § | |
| | § | Admiralty Rule 9(h) |
| CHARLES DOUGLAS PHILLIPS, | § | |
|     Defendant/Counter-Plaintiff. | § | |

## **CHARLES DOUGLAS PHILLIPS' CALCULATION OF DAMAGES**

1.    Wages, Severance & Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $185,000.00

Mr. Phillips' claim for wages, severance & expenses is based on Zapoteca Energy, Inc.'s termination of his contract prior to its expiration. This includes normal wages Mr. Phillips would have received, plus his promised severance or bonus in the amount of $165,000.00 and expenses associated with Mr. Phillips repatriation.

2.    Wrongful Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $324,000.00

Mr. Phillips' claim for wrongful termination is based on his termination by Zapoteca Energy, Inc. for failing to perform an illegal act. *See Hauck v. Sabine Pilots, Inc.*, 672 S.W.2d 322 (Tex.App.-Beaumont 1984). The calculation of damages is based on two (2) years salary, including Christmas bonuses and payment for vacation time provided to Mr. Phillips under his employment arrangement. This amount does not included allowances provided to Mr. Phillips for housing, car, and per diem.

3.    Criminal Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $486,000.00

As a direct result of Mr. Phillips' employment with Zapoteca Energy, Inc., criminal charges were brought against Mr. Phillips in Mexico. These charges were to be dismissed with the assistance of Zapoteca Energy, Inc., but Zapoteca Energy, Inc. has failed to do anything to alleviate the situation. As a result, Mr. Phillips is unable to return to Mexico and seek employment for a period of three (3) years. Accordingly, this calculation of damages amounts to three (3) years of lost income.



4.    1st Mexican Labor Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $500,000.00

Mr. Phillips is seeking damages resulting from an award in a labor case in Mexico against Zapoteca Energy, Inc. in which the Rig ENERGY ZAPOTECA was attached for failing to pay wages to the crew members and Mr. Phillips. The amount of the judgment and attachment in the Mexican labor case is $1,115,568.00 USD, with the above amount attributable to Mr. Phillips.

5.    Defense of 2nd Mexican Labor Case . . . . . . . . . . . . . . . . . . . . . . . . . . . $220,000.00

While not only being a plaintiff in a Mexican Labor Case, Mr. Phillips was also named a defendant in a separate labor case resulting from his employment with Zapoteca Energy, Inc. The cost of defense of the labor case, judgment and attachment obtained against Mr. Phillips totals $220,000.00 USD.

**TOTAL AMOUNT OF DAMAGES SOUGHT: . . . . . . . . . . . .    $1,715,000.00**

# JOHN LEBOURHIS & ASSOCIATES, INC.

1505 HIGHWAY 6 SOUTH, SUITE 120
HOUSTON, TEXAS 77077

PHONE: 281-589-1999
TELEFAX: 281-589-8115
INTERNET: JLAserv@aol.com

November 17, 2000

**COPY**

Bureau Veritas
Calle 31 No. 46, 1 piso
Zona Centro, C. P. 24170
Cd. del Carmen, Camp.
Mexico

Attention: Ing. Carlos Rico Morales

Project No. 2030

Subject:    Mobile Offshore Drilling Unit **"ENERGY ZAPOTECA"**
             Friede & Goldman L-780 Basic Independent leg Jackup Rig
             Stability calculation for a single voyage (towage) from Tuxpan, Veracruz to
             Galveston, Texas.

Gentlemen;

We have been retained by Energy Zapoteca, Inc. to prepare the necessary documentation to be submitted to Bureau Veritas for review and approval of the above referenced project.

The jack-up "ENERGY ZAPOTECA", recently purchased by our client, was severely damaged by fire during a well blowout while engaged in drilling operations in the Gulf of Campeche. Subsequently, the rig was stacked in Tuxpan for several years.

At the present time the unit is jacked-up in the Pantepec River and repairs have started with the objective to make the unit seaworthy and fit for a single towage to Galveston, Texas where it will be brought back to condition for offshore drilling operations.

Outlined on the following page are the procedures we would like to submit for a single voyage approval by Bureau Veritas as it is the intention of the owners to re-classify the unit under Bureau Veritas Rules.





**EXHIBIT**

**D**

Project No. 2030 Jackup "ENERGY ZAPOTECA"                          Page 2 of 2

1)    Allowable KG Curve.

For this voyage we propose to use the existing "Allowable KG curve" developed by
the American Bureau of Shipping Rules for Building and Classing Offshore Mobile
Drilling Units.   This will be a conservative assumption since, in the present
configuration, the total windage area and the resulting heeling arms are significantly
reduced.  This reduction is due to the removal of the quarters, helideck, cranes and
drill floor, that is all structures above the main deck with exception of the legs, crane
pedestals and jackhouses have been removed.

2)    Deadweight Survey.

In the near future, the unit will be lowered into the water to the afloat condition and a
standard deadweight survey will be conducted.  The results of the deadweight survey
will be used to establish the displacement of the unit at the given stage of repairs. The
detailed deadweight survey procedures will be provided for your approval, if required.

3)    Lightship Data estimate.

The lightship data will be calculated on the basis of the following information:

-    results of the previous inclining experiment
-    weights and location of the removed items (drill floor, P tanks, cranes etc.)
-    weights and location of the temporary equipment that will be required for
     the towage (engines, fuel tank, portable crane on deck, etc.)
-    assumed KG of the removed structure.

All assumptions and estimates will be conservative to achieve a calculated KG higher
than the actual one.

4)    Departure Condition.

Prior departure, we will issue for your review and approval a Stability Sheet
reflecting the condition at departure.


Very truly yours


Henry Sliwinski P.E.

cc. Mr. Charles Phillips/Project Manager




JOHN LEBOURHIS & ASSOCIATES, INC.