United States District Court
Southern District of Texas
FILED

MAY 2 8 2004

Michael N. Milby
Clerk of Court

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC., | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | Civil Number B-04-048 |
| | § | |
| CHARLES DOUGLAS PHILLIPS, | § | |
|     Defendant | § | |

### SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION FOR ARREST AND SEIZURE OF VESSEL

TO THE HONORABLE JUDGES OF SAID COURT:

COMES NOW Plaintiff, Zapoteca Energy Inc (hereinafter "Zapoteca") and files this its Supplemental Response to Defendant's (Charles Douglas Phillips) Motion for Arrest and Seizure of Vessel, and respectfully shows unto this honorable Court as follows:

**I.      INCORPORATION OF PRIOR RESPONSE TO DEFENDANT'S MOTION FOR ARREST AND SEIZURE OF VESSEL**

Zapoteca hereby incorporates as if fully set forth herein its Response to Defendant's Motion for Arrest and Seizure of Vessel.

**II.      INTRODUCTION**

The primary issue before this Court is one of jurisdiction; i.e.: whether Defendant's causes of action are in admiralty. A resolution of this issue determines whether Defendant is entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty & Maritime Claims. Defendant's causes of action are not in admiralty and Defendant is not entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA pursuant to Rules B and C.

A jurisdictional sub issue[1] before the Court is whether Zapoteca has minimum contacts with the Southern District of Texas and thus "can be found within the district" for purposes of Rule B of the Supplemental Rules for Certain Admiralty & Maritime Claims. A resolution of this issue determines whether Defendant is entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA pursuant to Rule B. If Zapoteca "can be found within the district," Defendant is not entitled to arrest or seizure of the Rig ENERGY ZAPOTECA pursuant to Rule B. Zapoteca has established minimum contacts with this district and thus "can be found within this district" for jurisdictional purposes. Accordingly, Defendant is not entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA pursuant to Rule B.

Another jurisdictional sub issue[2] before this Court is whether Defendant is entitled to a maritime lien for has wages claim. A resolution of this issue determines whether Defendant is entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty & Maritime Claims. Defendant must be a "seaman" before Defendant is entitled to a maritime lien for his wages claim. Before Defendant can be a "seaman," there must be a "vessel in navigation." The Rig ENERGY ZAPOTECA was not a "vessel in navigation" and thus Defendant was not a "seaman." Accordingly, Defendant is not entitled to a maritime lien for his wages claim and is not entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA pursuant to Rules B or C.

---

[1] If it is determined this cause of action is not one in admiralty, there is no need for a determination of this sub issue.
[2] If it is determined this cause of action is not one in admiralty, there is no need for a determination of this sub issue.

Another jurisdictional sub issue[3] before this Court is whether Defendant is entitled to a maritime lien for has wages claim as Master of the Rig ENERGY ZAPOTECA. A resolution of this issue determines whether Defendant is entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty & Maritime Claims. A true master of a vessel is not entitled to a lien for wages. Accordingly, Defendant is not entitled to a maritime lien for his wages claim as Master of the Rig ENERGY ZAPOTECA and is not entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA pursuant to Rules B or C.

A secondary issue before this Court is whether Defendant is entitled to invoke remedies provided by state law for attachment and garnishment or similar seizure of Zapoteca's property for purposes of service of process. Rule 4(e) of the Federal Rules of Civil Procedure sets forth the procedures for service of process in federal courts and permits the use of state law remedies to effect service of process. Defendant has effected service of process on Zapoteca and Zapoteca has answered Defendant's First Amended Counterclaim. Defendant is not now entitled to invoke state law remedies to effect a second service of process. Accordingly, Defendant is not entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA pursuant to Rule 4 (e).

**III.    SUMMARY OF ZAPOTECA'S ARGUMENT**

**A.    DEFENDANT'S CLAIMS ARE NOT GOVERNED BY ADMIRALTY LAW AND DEFENDANT IS NOT ENTITLED TO ARREST OR ATTACHMENT OF THE RIG ENERGY ZAPOTECA UNDER RULES B OR C**

As to the central jurisdictional issue before this Court, Defendant's claim is not one in admiralty. The Rig ENERGY ZAPOTECA had been severely damaged by fire and

---

[3] If it is determined this cause of action is not one in admiralty, there is no need for a determination of this

had been indefinitely withdrawn from navigation and commerce for many years prior and at all times material hereto. As such, the Rig ENERGY ZAPOTECA was a "dead ship." A contract to repair a "dead ship" is not governed by admiralty law. Accordingly, this Court does not have admiralty jurisdiction of Defendant's claims and thus Defendant is not entitled to arrest and attachment of the Rig ENERGY ZAPOTECA under Rule B or Rule C of the Supplemental Rules for Certain Admiralty & Maritime Claims.

### B.    ZAPOTECA HAS MINIMUM CONTACTS WITH THIS DISTRICT AND DEFENDANT IS NOT ENTITLED TO ARREST OR ATTACHMENT OF THE RIG ENERGY ZAPOTECA UNDER RULE B

Rule B requires Zapoteca "not be found within this district." Zapoteca purposefully directed its activities at the Southern District of Texas and the litigation results from alleged injuries that arise out of or relate to those activities. Accordingly, Zapoteca meets the minimum contacts standard to be subject to the specific jurisdiction of this Court. Furthermore, Zapoteca has continuously and systematically engaged in business in the Southern District of Texas. Accordingly, Zapoteca meets the minimum contacts standard to be subject to the general jurisdiction of this Court. Zapoteca "can be found within this district" for jurisdictional purposes and Defendant is not entitled to arrest and attachment of the Rig ENERGY ZAPOTECA under Rule B of the Supplemental Rules for Certain Admiralty & Maritime Claims.

### C.    DEFENDANT IS NOT A SEAMAN AND DEFENDANT IS NOT ENTITLED TO ARREST OR ATTACHMENT OF THE RIG ENERGY ZAPOTECA UNDER RULES B OR C

Defendant is not a seaman and is not entitled to a maritime lien for his wages claim. Defendant must be a "seaman" before Defendant is entitled to a maritime lien for

---

sub issue.

4

his wages claim. Before Defendant can be a "seaman" there must be a "vessel in navigation" At all times material hereto, the Rig ENERGY ZAPOTECA was not a "vessel in navigation" and thus Defendant was not a "seaman." Accordingly, Defendant is not entitled to a maritime lien for his wages claim and is not entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA under Rules B or C of the Supplemental Rules for Certain Admiralty & Maritime Claims.

> **D.    A TRUE MASTER OF A VESSEL IS NOT ENTITLED TO A MARITIME LIEN FOR WAGES AND DEFENDANT IS NOT ENTITLED TO ARREST OR ATTACHMENT OF THE RIG ENERGY ZAPOTECA UNDER RULES B OR C**

Defendant seeks a maritime lien for wages as the Master of the Rig ENERGY ZAPOTECA. A true master of a vessel is not entitled to a lien for wages. Accordingly, Defendant is not entitled to a maritime lien for his wages claim as Master and is not entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA pursuant to Rules B or C.

> **E.    DEFENDANT HAS EFFECTED SERVICE OF PROCESS ON ZAPOTECA AND DEFENDANT IS NOT ENTITLED TO INVOKE STATE LAW REMEDIES FOR ATTACHMENT AND GARNISHMENT OF THE RIG ENERGY ZAPOTECA**

Defendant seeks to invoke Texas Civil Practice & Remedies Code Chapter 61 through the application of Rule 4(e) of the Federal Rules of Civil Procedure. Rule 4(e) sets forth the procedures for service of process and permits the use of state law remedies to effect service of process. Service of process already has been effected on Zapoteca and Zapoteca has answered Defendant's First Amended Counterclaim. Accordingly, the provisions of Rule 4(e), and hence Chapter 61 of the Civil Practice & Remedies Code are

not applicable and Defendant is not entitled to an arrest or attachment of the Rig

ENERGY ZAPOTECA pursuant to state law remedies.

## IV.    ZAPOTECA'S ARGUMENT

### A.    ADMIRALTY LAW DOES NOT GOVERN DEFENDANT'S CLAIMS AND DEFENDANT IS NOT ENTITLED TO ARREST OR ATTACHMENT OF THE RIG ENERGY ZAPOTECA UNDER RULES B OR C

#### 1.    The Law of Admiralty Regarding "Dead Ships"

"A contract is within admiralty jurisdiction if the subject matter of the contract is

maritime." *Royal Insurance Co. of America v. Pier 39 Ltd. Partnership*, 738 F.2d 1035,

1036 (9th Cir. 1984), see also *Goodman v. 1973 26 Foot Trojan Vessel*, 859 F.2d 71, 72

(8th Cir. 1998). "Contracts for services to a vessel laid up and withdrawn from navigation,

i.e. a 'dead ship', are...not governed by admiralty law." (Emphasis added) *Robert E.*

*Blake Inc. v. Excel Environmental*, 104 F.3d 1158, 1160 (9th Cir. 1996); *see also*

*Goodman*, 859 F.2d at 72 (8th Cir. 1998); *Keene Corp. v. United States*, 700 F.2d 836,

844 (2nd Cir. 1988); *Murray v. Schwartz*, 175 F. 2d 72, 72-73 (2nd Cir. 1949); *Frank B.*

*Hall & Co. v. S.S. Seafreeze Atlantic*, 423 F. Supp. 1205, 1208 (S.D.N.Y. 1976); *Dean v.*

*United States*, 418 F.2d 1236, 1237 (9th Cir. 1969); G. Gilmore and C. Black, *The Law of*

*Admiralty* 26 (2nd ed. 1975). Furthermore, it is the health of the ship at the time the

contract is formed that is determinative. *Goodman*, 859 F.2d at 79.[4]

In assessing whether a ship has been withdrawn from navigation, the ship's

pattern of use is considered. *American Eastern Dev. Corp. v. Everglades Marina*, 608

F.2d 125, 125 (5th Cir. 1979). In order for a vessel to be "in navigation," it must be

"engaged as in instrument of commerce and transportation on navigable waters."

*McKinley v. All Alaskan Seafoods, Inc.*, 908 F.2d 567, 570 (9th Cir. 1992). Admiralty law does not apply to a ship indefinitely withdrawn from navigation. *S.S. Seafreeze Atlantic*, 423 F. Supp at 1206.

A ship that has been unused for several years and has been mothballed such that it needs to successfully complete sea trials and pass a Coast Guard inspection falls under the umbrella of the dead ship doctrine. *Robert E. Blake Inc.*, 104 F.3d at 1161. "As contracts for services to dead ships are not within admiralty jurisdiction, the mere decision to reactivate is insufficient to confer admiralty jurisdiction because the ship is still inoperable and thus still withdrawn from navigation." *Id.*; *see also Stark v. United States*, 413 F.2d 253, 253 (5th Cir. 1969); *Goodman*, 859 F.2d at 73; *Murray*, 175 F. 2d at 72-73.

The extensiveness of the work to be performed to reactivate a vessel is considered in determining whether a vessel is a dead ship. *West v. United States*, 318 U.S. 118, 122, 80 S.Ct. 1989, 4 L.Ed.2d 161 (1959); *see also Wixom v. Boland Marine & Mfg., Inc.*, 614 F.2d 956, 957 (5th Cir. 1980); *Hodges v. S.S Tillie Lykes*, 512 F. 2d 1279,1280 (5th Cir. 1975). The magnitude of work, in cost, is also considered in determining whether a vessel is a dead ship. *Dean*, 418 F.2d at 1236.

A ship undergoing major reconstruction is not in navigation and thus a dead ship. *West*, 318 U.S. at 122. Major renovations can take a ship out of navigation, even thought its use before and after will be the same. *Id.*; *see also McKinley v. All Alaskan Seafoods, Inc.*, 908 F.2d at 570.

---

[4] Defendant asserts Zapoteca hired him in December of 2000, hence it is the status of the Rig ENERGY ZAPOTECA in December of 2000 that is determinative.

The fact that a vessel may be manned with crew who are housed, fed and performing maintenance normally performed by seamen does not place a dead ship in navigation. *West*, 318 U.S. at 122. The fact that a vessel may be in a condition allowing her to be towed, or that a dead ship has been towed, does not place a dead ship in navigation. *Id.*; *see also Latus v. United States*, 277 F.2d at 266. The fact that a vessel has U.S Coast Guard and classification society certificates does not place a dead ship in navigation. *McKinley v. All Alaskan Seafoods, Inc.*, 908 F.2d at 570. The fact that a vessel may have temporary safety certificates does not place a dead ship in navigation. *Latus*, 277 F.2d at 266.

Where the facts indicate that a vessel has been indefinitely withdrawn from navigation, she is also withdrawn from admiralty jurisdiction, and services rendered to her in that state do not give rise to maritime liens. *S.S. Seafreeze Atlantic*, 423 F. Supp at 1206. If a structure is a dead ship, there is no admiralty jurisdiction and for that reason there can be no maritime lien. *Hercules Co. v. Brigadier General Absolom Baird*, 214 F, 66, 69 (3rd Cir. 1954).

### 2. The Rig ENERGY ZAPOTECA was and is a Dead Ship and Admiralty Jurisdiction does not Attach to Defendant's Claim

As set forth in the Declarations of Penalty of Perjury of Erik Ostbye, John LebBourhis, Terrence Michael Smith and Clifford Arkley regarding the status of the Rig ENERGY ZAPOTECA there can be but one conclusion: the Rig ENERGY ZAPOTECA was and is at all times material hereto a "dead ship." (See Exhibits "A," "B," "C," and "D" attached hereto). (See also Exhibit "E," various photographs of the Rig ENERGY ZAPOTECA, attached hereto). Nothing more need be stated other than, if there ever was a "dead ship," the Rig ENERGY ZAPOTECA was.

### 3.   Defendant's Arguments that the Rig ENERGY ZAPOTECA was not a Dead Ship do not Float

Defendant argues the Rig ENERGY ZAPOTECA was not a dead ship because:

1.   She had not lost her navigation function;
2.   She was still capable of being moved or towed;
3.   was being prepared for voyage to Galveston, Texas;
4.   has been certified for navigation; and
5.   was flagged a Panamanian vessel.

Clearly the Rig ENERGY ZAPOTECA had lost her navigation function; she was declared a total loss in October 1987. In October 1987 the Rig ENERGY ZAPOTECA was indefinitely removed from navigation and commerce. To date, the Rig ENERGY ZAPOTECA has not been placed back into navigation and commerce.

While it is disputed she could be moved or towed before 5 April 2004, such ability does not place the Rig back into navigation. Preparations for a voyage do not place a vessel withdrawn from navigation back into navigation and commerce. Certification and flagging do not place a vessel withdrawn from navigation back into navigation and commerce.

Contrary to any assertion by Defendant, the Rig ENERGY ZAPOTECA is not engaged in the business of serving as a jack-up drilling rig. In fact, at all times material hereto, the Rig ENERGY ZAPOTECA has not been, and is not, engaged as an instrument of commerce and transportation on navigable waters.

### B.   ZAPOTECA HAS MINIMUM CONTACTS WITH THIS DISTRICT AND DEFENDANT IS NOT ENTITLED TO ARREST OR ATTACHMENT OF THE RIG ENERGY ZAPOTECA UNDER RULE B

#### 1.   The Law Regarding Minimum Contacts

Under the Federal Rules of Civil Procedure, a federal court may exercise jurisdiction over a nonresident corporate defendant only if permitted by state law. *Alpine View Company Limited v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *see also* Fed.R.Civ.P. 4(e)(1), 4(h)(1) and 4(k)(1). The Texas long-arm statute has been determined to have the same scope as the United States Constitution. *Id.*; *see also Wilson v. Berlin*, 20 F.3d 644, 647 (5th Cir. 1994). Accordingly, Zapoteca's jurisdictional analysis focuses on the United States Constitution.

"The Due Process Clause of the United States Constitution permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Alpine*, 205 F.3d at 214-215, quoting *Mink v. AAA Dev., LLC*, 190 F.3d 333, 335 (5th Cir. 1999), quoting *Latsaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999), in turn quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "'Minimum contacts'" can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Alpine*, 205 F.3d at 215, *see also Wilson*, 20 F.3d at 647.

**Specific Jurisdiction:** "Specific jurisdiction over a nonresident corporation is appropriate when that corporation has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that 'arise out of or relate to'" those activities." *Alpine*, 205 F.3d at 215 quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), in turn quoting *Helicopteros*

*Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 85 L.Ed. 2d 404 (1984). "'[T]he constitutional touchstone' for asserting personal jurisdiction over a nonresident defendant is 'whether the defendant purposefully established 'minimum contacts'' in the forum State.'" *Alpine* at 215, citing *Burger King*, 471 U.S. at 474.

There is a foreseeability requirement in establishing minimum contacts. The "'foreseeability that is critical to the due process... analysis is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled to court there.'" *Alpine*, 205 F.3d at 215, quoting *Worldwide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

**General jurisdiction:** When the cause of action does not arise from or relate to the foreign corporation's purposeful conduct within the forum state, jurisdiction may exist under general jurisdiction. "General jurisdiction...will attach where the nonresident defendant's contacts with the forum state...are 'continuous and systematic.'" *Alpine*, 205 F.3d at 215, quoting *Helicopteros*, 466 U.S. at 415-16. To establish general jurisdiction, there must be contacts unrelated to the litigation that are sufficient to satisfy due process requirements. *Alpine*, 205 F.3d at 217. "Those unrelated contacts must be substantial...continuous and systematic." *Id.*

### 2.    Zapoteca has Minimum Contacts with this District

As set forth in the Declaration of Penalty of Perjury of Erik Ostbye, it is clear that Zapoteca has purposefully directed its activities at this District and this litigation results from alleged injuries that arise out of or relate to those activities. It is equally clear that

Zapoteca has had substantial, continuous and systematic contacts with this district unrelated to this litigation that are sufficient to satisfy due process requirements.

As pertains to Rule B, in order for Zapoteca to be found within the district, a Zapoteca must satisfy the following two-prong test:

1.  Zapoteca must have engaged in sufficient activity to satisfy the minimum contacts requirement for due process; and
2.  Zapoteca must be amenable to service of process within the district.

*Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F. 2d 580, 1964 AMC 617 (2nd Cir. 1963). If Zapoteca meets this two-prong test, Zapoteca "can be found within this district" and Rule B is inapplicable.

Clearly Zapoteca meets the minimum contacts requirements for due process. (See Declaration of Erik Ostbye attached hereto as Exhibit "A"). Zapoteca satisfies the first prong of the above noted test both in terms of specific and general jurisdiction. Defendant has admitted the second prong of the above noted test. Accordingly, Defendant is not entitled to arrest or attachment of the Rig ENERGY ZAPOTECA pursuant to Rule B of the Supplemental Rules for Certain Admiralty & Maritime Claims.

## C.  DEFENDANT IS NOT A SEAMAN AND DEFENDANT IS NOT ENTITLED TO ARREST OR ATTACHMENT OF THE RIG ENERGY ZAPOTECA UNDER RULES B OR C

### 1.  The Law of Admiralty Regarding Seamen

Zapoteca incorporates as if fully set forth herein the discussion of the Law of Admiralty regarding "Dead Ships" stated above.

Seamen have a maritime lien against a vessel to secure their wages, which is enforceable by an action *in rem. Governor and Company of Scotland v. Sabay*, 211 F.3d 261, 268 (5th Cir. 2000). This lien is created as soon as the claim comes into being. *Id.*

It is fundamental that to recover under the general maritime law, a plaintiff must be a "seaman." *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1993). The well-established three-part test for a determination of "seaman" status is:

1. the vessel on which the claimant is employed must be in navigation;
2. the claimant must have a more or less permanent connection with the vessel; and
3. the claimant must be aboard primarily to aid in navigation.

*Wixom v. Boland Marine & Mfg., Inc.*, 614 F.2d 956, 957 (5th Cir. 1980); *see also Williams v. Avondale Shipyards, Inc.*, 452 F.2d 955 (5th Cir. 1971). [5]

To qualify as a seaman, the maritime employee's duties must contribute to the function of the vessel or to the accomplishment of its mission, and he must have a connection to a vessel in navigation[6] that is substantial in both its duration and time. *Chambris v. Latsis*, 515 U.S. 347, 132 L.Ed.2d 314, 339 (1995). To distinguish land-based from sea-based employees, the inquiry into the requirement of the worker's "substantial connection" to the vessel "must concentrate on whether the employee's duties take him to sea." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. ___, 137 L.Ed.2d 800, 117 S.Ct. 1535 (1997).

Initially, a court must determine whether the vessel was "in navigation." *Wixom*, 614 F.2d at 957. In so doing, the Courts have used the law regarding dead ships set forth above. In this regard, "The term 'in navigation' means 'engaged as an instrument of commerce on navigable waters.'" *Williams v. Avondale Shipyards, Inc.*, 452 F.2d 955 (5th Cir. 1971). The result of a structure not being a vessel or instrument in navigation or commerce engaged in any maritime venture is that a maritime lien does not attach for the

---

[5] We see no justification for any attempt to distinguish a lien for wages from a lien for wharfage, repairs, etc. if the vessel has been withdrawn from navigation.

compensation for services rendered by a seaman." *Evansville & Bowling Green Packet Co. v. Chero Cola, etc., Co.*, 271 U.S. 19, 46 S. Ct. 371, 70 L. Ed. 805 (1929).

### 2.    Defendant was not a Seaman

As noted above, The Rig ENERGY ZAPOTECA was indefinitely removed from navigation. To date, and at all times material hereto, the Rig has not been engaged as an instrument of commerce on navigable waters. To date, and at all times material hereto, the Rig was not an instrument in navigation or commerce engaged in any maritime venture. Defendant's duties did not take him to sea. Defendant is not a "seaman." Accordingly, a maritime lien does not attach for the compensation for services rendered by Defendant and Defendants is not entitled to arrest or attachment of The Rig ENERGY ZAPOTECA pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty & Maritime Claims.

### D.    A TRUE MASTER OF A VESSEL IS NOT ENTITLED TO A MARITIME LIEN FOR WAGES AND DEFENDANT IS NOT ENTITLED TO ARREST OR ATTACHMENT OF THE RIG ENERGY ZAPOTECA UNDER RULES B OR C

### 1.    The Law of Admiralty Regarding Liens for Wages

"A true master has in the United States no lien for wages..." *Barker v. M/V BLUE CAT*, 372 F.2d 626, 628 (5th Cir. 1967), citing *Swift v. Knowles*, 100 F.2d 977, 978 (5th Cir. 1939); *See also Kennerson v. Jane R., Inc.*, 274 F. Supp. 28, 30 (S.D. Tex. 1967). The rational for this is found in the following:

> Maritime law by inveterate tradition has made the ordinary seaman a member of a favored class. He is a 'ward of the admiralty,' often ignorant and helpless, and so in need of protection against himself as well as others. The master, on the other hand, is able to in most instances to drive a bargain for himself, and then when the bargain is made, to stand upon his

---

[6] As clearly shown above, the Rig ENERGY ZAPOTECA has not been a vessel in navigation at any time material hereto.

rights. *Warner v. Goltra*, 293 U.S. 155, 162, 55 S.Ct. 46, 79 L.Ed. 254 (1934).

This difference in treatment has been continued in the federal maritime wage statute in the long-standing separate statutory definitions provided for the terms "master" and "seaman." *See* 48 U.S.C. § 10101 (1) & (3).

**2.    Defendant was the Master of the Rig ENERGY ZAPOTECA**

Defendant alleges he was the "master" of the Rig ENERGY ZAPOTECA.[7] Accordingly, Defendant has no lien on the Rig ENERGY ZAPOTECA for his wages claim and Defendant is not entitled to arrest or attachment of The Rig ENERGY ZAPOTECA under Rules B and C Rules B or C of the Supplemental Rules for Certain Admiralty & Maritime Claims.

**E.    DEFENDANT HAS EFFECTED SERVICE OF PROCESS ON ZAPOTECA AND DEFENDANT IS NOT ENTITLED TO INVOKE STATE LAW REMEDIES FOR ATTACHMENT AND GARNISHMENT OF THE RIG ENERGY ZAPOTECA**

Rule 4(e) of the Federal Rules of Civil Procedure, Service Upon Individuals Within a Judicial District of the United States, states in pertinent part:

> Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:
> (1)    pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the state... (Emphasis added) (Rule 4(e) Fed.R.Civ.P.

Defendant seeks to again effect service upon Zapoteca through these rules using the provisions of Texas Civil Practice & Remedies Code Chapter 61, specifically § 61.002.

---

[7] Defendant makes no allegations he was an ordinary seaman or performed the work of an ordinary seaman.

Defendant has already effected service of process upon Zapoteca. Zapoteca has answered Defendant's First Amended Counterclaim. Defendant cannot now seeks a second service of process.

Defendant improperly attempts to invoke remedies provided for by state law for service of process by attachment and garnishment or similar seizure of Zapoteca's property. Accordingly, the provisions of Rule 4(e), and hence Chapter 61 of the Civil Practice & Remedies Code, are not applicable. Defendant is not entitled to attachment or garnishment of the Rig ENERGY ZAPOTECA pursuant to Rule E (4) of the Federal Rules of Civil Procedure.

## IV.    SUPPLEMENTAL NOTES

On page 5 paragraph one of Defendant's Brief, it is argued Zapoteca "recognizes the relationship of the parties sounds in admiralty in that they brought their claims pursuant to Admiralty Rule 9(h) and it would be contradictory for ZAPOTECA to now assert PHILLIPS' claims are not sounded in admiralty." Defendant's argument is disingenuous, as Defendant has argued this matter is not one in admiralty.

On page 6, paragraph one of Defendants' Brief, Defendant argues Zapoteca "admits that PHILLIPS is a seaman and his wage claim is protected under admiralty law." Subject matter jurisdiction cannot be admitted.

On page 7 paragraph one of Defendant's brief, Defendant argues "ZAPOTECA'S filing of its Original Complaint for Temporary Restraining Order and Preliminary Injunction was merely a mechanism in which it could evade and hide from attachment of its sole asset. As this Court is well aware, such argument is wholly without merit.

## V.   CONCLUSION

Defendant's causes of action are not in admiralty. Defendant is not entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty & Maritime Claims.

Zapoteca Energy Inc has minimum contacts with the Southern District of Texas and can be found within the District. Defendant is not entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA pursuant to Rule B of the Supplemental Rules for Certain Admiralty & Maritime Claims.

Defendant is not a seaman. Defendant is not entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty & Maritime Claims.

A master of a vessel is not entitled to a maritime lien for wages. Defendant is not entitled to an arrest or seizure of the Rig ENERGY ZAPOTECA for his wages claim as Master of the Rig ENERGY ZAPOTECA pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty & Maritime Claims.

Defendant has effected service of process on Zapoteca. Zapoteca has answered Defendants First Amended Counterclaim. Defendant is not entitled to state law remedies to effect service of process through attachment or garnishment of the Rig ENERGY ZAPOTECA pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Zapoteca Energy Inc respectfully prays this honorable Court deny Charles Douglas Phillips' Motion for Arrest and Seizure of Vessel, and, in the Alternative, Temporary Restraining Order and Preliminary

Injunction, and for such other and further relief to which Zapoteca Energy Inc is justly entitled.

Respectfully submitted.

Edwin K. Nelson, IV

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing document was forwarded to the following counsel of record in accordance with the Federal Rules of Civil Procedure on the 27th day of May 2004:

Edwin K. Nelson, IV

cc:    C. Frank Wood
       Dennis Sanchez
       Sanchez, Whittington, Janis & Zabarte, L.L.P.
       100 North Expressway 83
       Brownsville, Texas 78521

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY INC, | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | Civil Number B-04-048 |
| | § | |
| CHARLES DOUGLAS PHILLIPS, | § | |
|     Defendant | § | |

## DECLARATION UNDER PENALTY OF PERJURY OF ERIK OSTBYE

1.    My name is Erik Ostbye. I am over eighteen years of age and have never been convicted of a felony. I am of sound mind and otherwise capable of making this Declaration. I have personal knowledge of the facts stated herein as I am a representative of Zapoteca Energy Inc and to the best of my knowledge these facts are true and correct.

## The Rig ENERGY ZAPOTECA

2.    The Rig ENERGY ZAPOTECA was built in 1981 for Protexa. The Rig was a Friede & Goldman L-780 Independent Jackup Drilling Rig. (See photograph No. 1 attached hereto).

3.    In October 1987 the Rig ENERGY ZAPOTECA was drilling the YUM-2 well for Pemex in the Bay of Campeche when the well blew out and caught fire. The fire raged for more than one month, caused extensive damage to the Rig ENERGY ZAPOTECA, including damage to the rig package and substructure, crews quarters, control room, helideck, which was cut off and dropped to the Gulf floor and later retrieved, pedestal crane, the jacking motors and controls, and the Rig's hull and legs. (See photograph No. 2 attached hereto).

4.    The Rig ENERGY ZAPOTECA's jacking motors and controls were replaced and repaired as necessary and the Rig was moved away from the drill site and left the Rig in the Gulf of Campeche until 1989.

5.    The Rig ENERGY ZAPOTECA was declared a total loss.

6.    After this fire, The Rig ENERGY ZAPOTECA was incapable of being utilized for her intended use.

7.    Protexa completely removed the Rig ENERGY ZAPOTECA from navigation and commerce. To date the Rig has not been reintroduced into navigation and commerce.

8.    In 1989, because the Rig ENERGY ZAPOTECA was a hazard to navigation, Protexa moved the Rig to its yard in Tuxpan, Mexico, where the Rig remained, continually and indefinitely removed from navigation and commerce.

9.    In May 2000, Zapoteca Energy Inc purchased the Rig ENERGY ZAPOTECA with the intent to strip the Rig of all structures above the main deck, repair the jacking system, hull and legs, and convert the Rig to a bare deck jack up barge so that the Rig could be sold.

10.   Zapoteca Energy Inc never intended to reintroduce the Rig back into navigation and commerce.

11.   The purchase price Zapoteca Energy Inc paid for the Rig was $1,437,500.00.

12.   At the time Zapoteca Energy Inc purchased the Rig ENERGY ZAPOTECA, the Rig had been continually withdrawn from navigation and commerce, was in total disrepair, was considered a derelict, and was in need of a very substantial amount of rebuilding, repair and refurbishment before she could be brought back into service as a drilling rig. (See photographs No. 3 attached hereto).

13.   Zapoteca Energy Inc has removed all structures above the main deck from the Rig ENERGY ZAPOTECA. Energy Zapoteca Inc has repaired the damage to the hull and legs, and the jacking motors and controls of the Rig ENERGY ZAPOTECA. In her present state, the Rig ENERGY ZAPOTECA is merely a hull with three jacking legs.

14.   To date, Zapoteca Energy Inc has invested an additional $10,500,000.00 to bring the Rig to her present status. It is estimated that it will cost another $40,000,000.00 to $60,000,000.00 to reconstruct the Rig back to the status of a drilling rig.

15.   Due to many legal problems in Mexico created by Charles Douglas Phillips, Zapoteca Energy Inc determined it best to move Rig ENERGY ZAPOTECA to Texas. On or about 5 April 2004, the Rig ENERGY ZAPOTECA was towed to Sabine Pass, Texas where she remains today.

16.   Zapoteca Energy Inc is in the process of reevaluating its intent regarding the Rig. No decisions have been made as to what Zapoteca Energy Inc will do with the Rig ENERGY ZAPOTECA.

17.   To date, and at all times material hereto, the Rig ENERGY ZAPOTECA has been and remains completely withdrawn from service, navigation and commerce and

Zapoteca Energy Inc lacks any prospects of returning the Rig back into service, navigation and commerce.

18.     To date, and at all times material hereto, the Rig ENERGY ZAPOTECA has been and remains without certification from her Classification Society, Load Line Certificate, Minimum/Safe Manning Certificate and Radio Certificate, and is considered a "project" by her Classification Society, a term applied to ships and vessels in their construction stage.

19.     In December 2000, the date Charles Douglas Phillips asserts he was hired as Master of the Rig ENERGY ZAPOTECA by Zapoteca Energy Inc, the Rig had been completely removed from navigation and commerce for approximately 13 years; there were no prospects of returning the Rig back into service, navigation and commerce as a drilling rig. (See Declaration of Terrence Michael Smith). The Rig was in total disrepair, was considered a derelict, and was in need of a very substantial amount of rebuilding, repair and refurbishment before she could be brought back into service as a drilling rig.

20.     The Rig ENERGY ZAPOTECA was not in condition to be towed from Tuxpan, Mexico to Sabine Pass, Texas, until 5 April 2004. (See Declaration of Clifford Arkley).

### Zapoteca Energy Inc's Contacts with the Southern District of Texas

21.     From 3 through 8 May 2000, in the Southern District of Texas, Zapoteca Energy Inc representative(s) met with Bill McDermott, Charles Douglas Phillips and Southern International regarding the purchase and refurbishment of the Rig ENERGY ZAPOTECA.

22.     From 25 through 26 October 2003, in the Southern District of Texas, Zapoteca Energy Inc representative(s) met with David Kent and Davie Shipyard regarding a partial sale of interest in the Rig ENERGY ZAPOTECA; and met with Terje Reierson of Polaris Offshore Houston regarding a project for Mobile Production for the Rig ENERGY ZAPOTECA.

23.     In the Spring of 2003, in the Southern District of Texas, Zapoteca Energy Inc representative(s) entered into lengthy negotiations with Nabors Drilling International Limited, a company authorized to conduct business in the State of Texas, regarding the sale of the Rig ENERGY ZAPOTECA.

24.     Zapoteca Energy Inc entered into an agreement to sell the Rig ENERGY ZAPOTECA to Nabors Drilling International Limited. The sale of the Rig to Nabors Drilling International Limited was not consummated.

25.   From 3 through 4 July 2003, in the Southern District of Texas, Zapoteca Energy Inc representative(s) met with Siggi Meissner of Nabors Drilling International Limited and Ketil Strangeland of Normarine Houston regarding a rider crew dispute with Nabors Drilling International Limited.

26.   On 3 July 2003, in the Southern District of Texas, Zapoteca Energy Inc representative(s) met with Charles Douglas Phillips regarding a rider crew dispute with Nabors Drilling International Limited.

27.   From 30 July through 3 August 2003, in the Southern District of Texas, Zapoteca Energy Inc representative(s) met with Ketil Strangeland of Normarine, Charles Douglas Phillips, and Siggi Meissner of Nabors Drilling International Limited regarding a rider crew dispute.

28.   From 30 October through 5 November 2003, in the Southern District of Texas, Zapoteca Energy Inc representative(s) met with Edwin K. Nelson and Charles Douglas Phillips regarding settlement of dispute with Nabors Drilling International Limited and Protexa; met with Workships and Wintershall regarding inspection of the Rig ENERGY ZAPOTECA, and a project for the Rig as an accommodation, crane and support rig; and met with Charles Douglas Phillips, Workships and Jaap regarding the Rig.

29.   From 12 through 21 January 2004, in the Southern District of Texas, Zapoteca Energy Inc representative(s) met with Charles Douglas Phillips, Edwin K. Nelson, and Clifford Arkley regarding preparations to move the Rig ENERGY ZAPOTECA to Texas, and regarding settlements of disputes with ASAC and crew.

30.   In February 2004 in the Southern District of Texas, Zapoteca Energy Inc representative(s) met via telephone with Charles Douglas Phillips and Edwin K. Nelson regarding preparations to move the Rig ENERGY ZAPOTECA to Texas, and regarding settlements of disputes with ASAC and crew. (Charles Douglas Phillips refused to meet in Houston, Texas demanding Zapoteca Energy Inc's representatives come to Port Isabelle, Texas, "the place of Zapoteca Energy Inc operations.")

31.   From 3 through 12 March 2004, in the Southern District of Texas, Zapoteca Energy Inc representative(s) met with Charles Douglas Phillips regarding the Rig ENERGY ZAPOTECA.

32.   In approximately June 2003, Charles Douglas Phillips moved from Tuxpan, Mexico to Port Isabelle, Texas. Charles Douglas Phillips remained in Port Isabelle, Texas until at least March 2004. During this period of time, Charles Douglas Phillips performed substantially all work related to the Rig ENERGY ZAPOTECA that he performed in Tuxpan, Mexico, including, but not limited to the following:

a.  Directing Zapoteca Energy Inc employees, agents, attorneys, service and material providers;

b.  Hiring and firing Zapoteca Energy Inc employees and agents;

c.  Meeting Zapoteca Energy Inc shareholders, employees, agents, attorneys and surveyors;

d.  Paying for the services of Zapoteca Energy Inc employees, agents and attorneys;

e.  Reporting to Zapoteca Energy Inc shareholders, employees, agents, attorneys and surveyors;

f.  Negotiating with Zapoteca Energy Inc service and material providers;

g.  Requesting funding from Zapoteca Energy Inc; and

h.  Directing disbursement of Zapoteca Energy Inc funds incurred in the process of repairing and refurbishing the Rig ENERGY ZAPOTECA.

In short, Charles Douglas Phillips maintained an office for Zapoteca Energy Inc from which Charles Douglas Phillips conducted substantially all of Zapoteca Energy Inc's business.

33.  From the fall of 2003 until April 2004, Zapoteca Energy Inc retained and paid DIX Shipping in Brownsville, Texas to act as agents for the Rig ENERGY ZAPOTECA.

34.  At all times material hereto, Zapoteca Energy Inc conducted countless telephone calls and drafted countless correspondence to the Southern District of Texas regarding the Rig ENERGY ZAPOTECA.

35.  All Zapoteca Energy Inc contacts with the Southern District of Texas was purposeful and with the understanding that Zapoteca Energy Inc could become involved in litigation arising out of the business conducted in the Southern District of Texas.

PURSUANT TO 28 U.S.C. § 1746, I DECLARE (OR CERTIFY, VERIFY, OR STATE), UNDER PENALTY OF PURGERY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON 27 FEBRUARY 2004.

Erik Ostbye

5

# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC., | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | Civil Number B-04-048 |
| | § | |
| CHARLES DOUGLAS PHILLIPS, | § | |
| Defendant | § | |

## DECLARATION UNDER PENALTY OF PERJURY OF JOHN LEBOURHIS

My name is John Lebourhis. I am over eighteen years of age and have never been convicted of a felony. I am of sound mind and otherwise capable of making this Declaration. I have personal knowledge of the facts stated herein.

I President of John LeBourhis & Associates, Inc. John LeBourhis & Associates, Inc. are marine surveyors specializing in jack up offshore oil rigs.

In approximately the year 1987, the Rig ENERGY ZAPOTECA was working in the Gulf of Campeche when the well suffered a blow out, resulting in a large fire causing extensive damage to the Rig. After this blow out and fire, the Rig ENERGY ZAPOTECA was unusable as a jack up drilling rig or for any other commercial or marine purpose.

In approximately May 2000, Zapoteca Energy Inc purchased the Rig ENERGY ZAPOTECA from Protexa. At the time of Zapoteca Energy Inc's purchase of the Rig ENERGY ZAPOTECA, the Rig had been removed continually from navigation and commerce for a period of approximately 13 years.

During the period of 8 November 2000 through 3 May 2001, John LeBourhis & Associates, Inc. performed three surveys of the Rig ENERGY ZAPOTECA for the purpose of checking the condition of the Rig for a one-trip towage to the United States Gulf, Galveston, Texas. Our surveys focused on the structural integrity of the Rig's legs.

During the time frame of these surveys, the Rig ENERGY ZAPOTECA was what I consider to be unseaworthy.

Our surveys found numerous deficiencies, excessive wastage and missing structural members, in the condition of the legs of the Rig ENERGY ZAPOTECA. These deficiencies needed to be temporarily repaired in order for the Rig to make the one trip voyage to Galveston, Texas. These defeciencies need to be permanently repaired before the Rig could be placed back into navigation and commerce.

1

At no time during our surveys was the Rig ENERGY ZAPOTECA placed into condition to make the one trip voyage to Galveston, Texas, let alone navigation and commerce.

Attached to my Declaration are true and correct copies of correspondence I received from Charles Douglas Phillips regarding the Rig ENERGY ZAPOTECA.

PURSUANT TO 28 U.S.C. § 1746, I DECLARE (OR CERTIFY, VERIFY, OR STATE), UNDER PENALTY OF PURGERY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON 27 MAY 2004.

Captain John LeBourhis

2

*faxed to*
*Henry*
*11-28-00*

ENERGY ZAPOTECA
TUXPAN, MEXICO

JOHN LeBOURHIS & ASSOCIATES
1505 Highway 6 South Suite 120
Houston, Texas 77077

ATTN: Captain John Lebourhis                    11/27/2000

Dear John,

Reference your fax ZAP00-1109

Please be advised that all ballast tanks will be operational for the lightship survey.

The spud cans will have to be inspected before we jack up at the 2nd location. The cans will be flooded and secured before we start the jacking up operation to repair the bow leg.

The project has been somewhat delayed as the engines will not meet the requirements for Bureau Veritas. Please inform Mr. Henry K. Slikinski of this short delay. We will require that Mr. Slikinski be onboard for the jacking up operations and the inspection of all legs.

Please continue with the stability study for the Energy Zapoteca. If you require any addition information please advise.

Best Regards

Charles Phillips
Project Manager
Energy Zapoteca

CC: Mr. Christina Koogsli

FROM : ZAPOTECA-P          ENERGY-BPoE     FAX NO. : 5278346793          11 Dec. 2000 03:24PM P1

ENERGY ZAPOTECA
TUXPAN, MEXICO

JOHN LEBOURHIS & ASSOCIATES, INC.
1505 Highway 6 South, Suite 120
Houston, Texas 77077

ATTN: Captain John LeBourhis                          12/11/2000

Dear John;

Reference our telephone conversation last week.

The plan is to jack down the Energy Zapoteca the first week in January using only one of the temporary generators. The rig will be jack down to an air gap of approximately 6 feet to do some repairs on the hull. During the repairs on the bottom of the hull, the divers will remove all trash from the top of the spud cans.

The rig will then be jacked down to perform the dead weight survey. After the dead weight survey has been completed, the rig will be moved out into the river and towed to one of two locations yet to be determined.

The rig will be moored along side the dock for the inspection of the spud cans by Bureau Veritas. The spud cans will be cleaned by the divers using a high pressure unit. The rig will remain moored at the dock for approximately 30 days

Please send me your recommendations for mooring the rig at either location 1 or 2.

I will send you a fax requesting the date that your surveyor should arrive in Tuxpan. Your surveyor will be present for the jacking down operation, removing trash from the spud cans, dead weight survey, moving the rig, and the mooring of the rig along side the dock.

Please be advise that your invoice has been forwarded to Mr. Kongsli for payment.

Thanking you in advance for your help in this matter.

Best Regards

Charles Phillips
Owners Representative
Energy Zapoteca

FROM : ZAPOTECA-P    ENERGY-BPoE   FAX NO. : 52783-46793   20 Feb. 2001 12:05PM P1

ENERGY ZAPOTECA
TUXPAN, MEXICO

JOHN LEBOURHIS AND ASSOCIATES, INC.
1505 Highway 6 South, Suite 120
Houston, Texas 77077

ZAP01- 0170

ATTN: Captain John LeBourhis

Dear John;

The cleaning of the inside of the bow and stbd spud cans have been completed.
We had many problems with the high levels of H2S gas in the spud cans and also
in the mud.

We have today started the sand blasting on the stbd leg cord connections to the spud
can. The NDT personnel are testing inside of the stbd spud can.

The inside of the stbd spud can looks new. For your information, there are 30 bolt on
anodes on the inside of the spud can. The anodes are 60/70% in good condition.
The Bureau Veritas surveyor recommends that we change out only 3 anodes.

All the vent valves, inductors valves, jetting rings, and swing valves on the stbd and bow
spud cans are being opened up for inspection, testing, and repaired as required. All reach
rods are being replaced.

The divers have reported that there is no evidence of any structural damage to the spud
cans. The Bureau Veritas surveyor inspected the inside of the stbd spud can and found
no problems.

The port leg remains in the stand-by position in case of an emergency.

The Owners have decided to repair the bow leg instead of just bracing it for a tow.
Please pass this information on to Sr. Henry. I will require Sr. Henry for the jacking up
operation and for the inspection of the port and stbd legs. I will be able to give you
a date after we start the inspection of the port spud can.

I will keep you advised.

Best Regards

Charles Phillips
Project Manager
Energy Zapoteca



*to inform HENRY*

**ENERGY ZAPOTECA**
**TUXPAN, MEXICO**

JOHN LEBOURHIS & ASSOCIATES, INC.
1505 HIGHWAY 6 SOUTH, SUITE 120
HOUSTON, TEXAS

ATTN: Captain John LeBourhis                    2/24/2001

Dear John;

Please schedule your surveyor to leave for Tuxpan, Mexico on March 29, 2001.

We will begin the jacking up operation on March 26, 2001.

The metallurgist company will do the inspection of the burned sections on the port and stbd legs.

Best Regards,

Charles Phillips
Project Manager
Energy Zapoteca

ZAPOTECA

ENERGY ZAPOTECA
TUXPAN, MEXICO

JOHN LEBOURHIS & ASSOCIATES, INC.
1505 HIGHWAY 6 SOUTH, SUITE 120
HOUSTON, TEXAS

ATTN: Captain John LeBourhis                    3/29/2001

Dear John;

Please reschedule Henry to arrive in Tuxpan on Monday, April 1, 2001.

I spoke with Henry late yesterday and advised him to change his ticket to depart tomorrow due to some problems with the jacking system

We now have found that the sand blasting personnel damaged some of the electrical cables in the wire ways on the stbd leg. We are now in the process of changing out these cables.

Sorry for any delays.

Best Regards

Charles Phillips
Project Manager
Energy Zapoteca

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ZAPOTECA ENERGY INC, §
    Plaintiff §
     §
VS. §     Civil Number B-04-048
     §
CHARLES DOUGLAS PHILLIPS, §
    Defendant §

## DECLARATION UNDER PENALTY OF PERJURY OF TERRENCE MICHAEL SMITH

1. My name is Terrence Michael Smith. I am over 18 years of age and have never been convicted of a felony. I am of sound mind and otherwise capable of making this Declaration. I am the president of RS Platou (USA) Inc., a company involved in the brokerage of offshore drilling rigs and provision of appraisals and consulting services to the offshore drilling industry. I have personal knowledge of the facts stated herein as I have been employed in the offshore drilling industry and in companies that offer support to that industry since 1978.

2. I have reviewed the Declaration Under Penalty of Perjury of Erik Ostbye dated 27 May 2004 and agree with the facts stated therein and am adding emphasis to those points with some further observations.

3. The Rig ENERGY ZAPOTECA had no realistic opportunity to be repaired and to re-enter service as a drilling unit after the casualty of October 1987. The owners at that time, Protexa, did budget estimates to perform the necessary repair work and concluded it was not economic. These estimates were performed multiple times during the years the unit was out of service and at no time could any sense be made to spend the required money. We understand from Protexa staff involved at that time that their estimates were in the range of $40 million.

4. RS Platou publish a monthly report in which we provide fair market value ranges and typical market day rates for various types of offshore drilling rigs. We have done so monthly since 1985.

5. Market conditions for jack-up drilling rigs like the Rig ENERGY ZAPOTECA (as a working drilling rig) in the years following the 1997 accident were very poor. In 1998 through 1991 daily rates recorded for such rigs working in the Gulf of Mexico were generally less than $10,000 per day above the direct cash operating cost.

6. Owners of jack-up offshore drilling rigs believed at this time they should receive approximately $700 per day above operating costs per million dollars of capital invested to earn an acceptable return on the investment. This means that an investment of $40 million would require a day rate $28,000 above the operating costs. As noted above, market rates provided less than half of this amount for years after the accident. In fact, there have only been a few short periods of time in the Gulf of Mexico drilling market between 1987 and 2004 that rate levels reached this point.

# EXHIBIT "D"