IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 1 9 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC. | § | |
| | § | |
| VS. | § | CIVIL NO. B-04-048 |
| | § | In Admiralty/Rule 9(h) |
| CHARLES DOUGLAS PHILLIPS | § | |

### DEFENDANT'S PRELIMINARY ANSWER AND REQUEST FOR JOINDER AND MOTION TO STRIKE

TO THE HONORABLE JUDGES OF SAID COURT:

COMES NOW Charles D. Phillips, Defendant herein, and files this his Preliminary Answer, Request for Joinder and Motion to Strike, respectfully submitting the following:

I.

PRELIMINARY RESPONSE

Defendant reserves the right to supplement and amend this Answer liberally (including, but not limited to mandatory and permissive counterclaims), especially since Defendant is compelled to file its Answer before being able to conduct a thorough investigation of Plaintiff's claims. Defendant would show that on July 16, 2004, its counsel requested a ten-day extension from Plaintiff's counsel to file its Answer, but such request was denied. Therefore, this Answer is filed as a preliminary matter and Plaintiff asserts the right to supplement and amend liberally hereafter, as further evidence and information become available.

II.

## REQUEST FOR JOINDER

Defendant requests joinder of necessary parties under FED. RULE CIV. P. 19(a). Specifically, Defendant asked the Court to direct joinder of the Rigs' managers, P.D. Gram & Co., A.S (hereinafter "Gram") and its designated representative, Mr. Christian Konglsi, who signed and submitted the attachment, Exhibit "1" to Plaintiff's initial pleading, its Application for Temporary Restraining Order and Preliminary Injunction. In that declaration, Mr. Konglsi states in the second paragraph, that the Rig is "managed by P.D. Gram & Co. A.S." However, what it does not disclose is that he also was engaged to act as a representative of Gram as manager of the Rig. Konglsi was Captain Phillips' immediate supervisor and the person to whom Captain Phillips normally reported, from whom he received authority and instructions, etc. Konglsi provided those instructions to Defendant as the manager's supervising representative of the Rig, (i.e., on behalf of Gram). Moreover, Captain Phillips was an employee of Gram, issued his invoices to Gram, was paid his paycheck and other expenses by Gram, received instructions from Gram, etc. Therefore, to the extent that Plaintiff's allegations contained within its Complaint have any merit whatsoever and survive an immediate request for dismissal and strike, whatever Captain Phillips did which Plaintiff contends was improper would have been done as an employee of and under the supervision of the Rig's managers, Gram. Gram therefore is an indispensable party, as is its designated representative, Konglsi, who already has appeared in this Court by virtue of signing the Affidavit (See Exhibit "1" to Plaintiff's initial pleading, filed on or about March 12, 2004).

Moreover, on information and belief, Zapoteca itself has no direct employees; while it is the title owner of the Rig, everything having to do with operations of the Rig is done through the vessel's manger, Gram. As Plaintiff's Complaint asserts various allegations of mismanagement against Captain Phillips, his liability for and exposure to such claims arise not by virtue as of status as vessel master, but on his alleged breach of duty as manager of the Rig, which he owes (if not all) not to Zapoteca, the owner of the Rig, but which <u>his employer</u>, Gram, owes to Zapoteca as the Rig's manager. Consequently, Gram is an indispensable party under FED. RULE CIV. P. 19 and must be joined herein.

Third, Captain Phillips has claims for defense, indemnity and rights to be held harmless by his employer, Gram, for the claims made against him in Plaintiff's Complaint. Plaintiff alleges that Captain Phillips was the Rig's manager, but the parties know that the true and proper manager is Gram, who was Phillips' employer. As all of Plaintiff's claims arise from alleged mismanagement and as to Phillips are asserted by virtue of his status as an employee of the real manager, Gram, Phillips must have Gram in the case as a indispensable party in order for him to demand and recover defense, indemnity and hold harmless benefits in his favor by virtue of his employment status with Gram. Phillips is also entitled to reimbursement of his attorneys' fees and costs associated with his investigation and defense of the claims asserted against him by Plaintiff, which are the proper responsibility of his employer and the vessel's manager, Gram.

Accordingly, Captain Phillips asks that the Court determine that his employer, P.D. Gram & Co. A.S., and his immediate supervisor and the authorized representative acting on behalf of the manager, Mr. Christian Kongsli, be determined to be necessary parties under Rule 19 and the Court join Gram and Kongsli into this action.

The Court will recall that Mr. Kongsli personally signed the Affidavit on March 11, 2004, and that he spent the entire time period, March 3-11, 2004, with Captain Phillips in or around Port Isabelle, Texas, discussing with him various vessel management issues, conducting meetings with the vessel's crew, etc. Those activities suffice to constitute both Gram's and Kongsli's doing sufficient business in Texas and within this District to make them amenable to suit and process here. Moreover, until he was fired, Captain Phillips lived and worked within this District and conducted his business as an agent of Gram and under the supervision of Kongsli, which makes them amenable to suit within this District.

In addition, or in the alternative, Captain Phillips asks for permissive joinder under FED. RULE CIV. P.20, since this is an admiralty matter and all parties may be joined into one action as Defendants, since Captain Phillips is claiming a right to relief against Gram and Kongsli which arises out of the same transaction, occurrence, series of transactions or occurrences, and because one or more questions of law or fact common to all Defendants will arise in the action.

### III.

### PRELIMINARY DEFENSES

Plaintiff's Complaint fails to state a claim upon which relief can be granted under FED. RULE CIV. P. 12 (b)(6), fails to join one or more necessary parties under FED. RULE CIV. P. 12 (b)(7) and FED. RULE CIV. P. 19, and the Court lacks jurisdiction over the subject matter asserted in the Complaint, under FED. RULE CIV. P. 12(b)(1).

IV.

RESPONSE TO SPECIFIC ALLEGATIONS

Should further answer be necessary, Defendant responds to specific allegations contained in the Complaint as follows:

a.  To the best of Defendant's knowledge and belief at present, and as he understands the specific allegations in Plaintiff's Complaint, the following paragraphs are admitted as framed: 1, 2, 3, 5, 6, 15, 16, 18, 19, 20, 40, 41, 42, 43, 65, 70, 71, 77, 78, 86, 90, 91, 92, 128, 177, and 198.

b.  To the best of Defendant's knowledge and belief at present, and as he understands the specific allegations in Plaintiff's Complaint, the following paragraphs are denied as framed: 8, 9, 13, 17, 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, 34, 35, 37, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 56, 57, 59, 60, 68, 72, 73, 75, 79, 80, 81, 83, 87, 88, 89, 97, 98, 99, 103, 108, 109, 110, 112, 114, 115, 116, 117, 118, 122, 124, 125, 126, 129, 130, 131, 133, 134, 135, 137, 138, 139, 140, 141, 142, 143, 144, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 158, 159, 160, 161, 163, 164, 165, 166, 168, 169, 170, 171, 173, 174, 175, 178, 182, 185, 186, 191, 193, 195, 196, 197, 199, 200 (both generally and specifically denied), 202, 203, 204, 205, 206, 207, 208, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, and 222.

c.  Defendant does not have sufficient knowledge or information to admit or deny the accuracy of the allegations in certain of the paragraphs in Plaintiff's Complaint, such that same are denied as stated, in the following paragraphs: 7, 11, 12, 14, 21, 61, 62, 74, 105, 106, 111, 119, 120, 121, 123, 127, 179, 180, 192, and 194.

     d.    As Defendant understands the specific allegations of Plaintiff's Complaint, the following paragraphs require no response: 69, 76, 94, 95, 187, 201, and 209.

     e.    In further answer to specific allegations in specific paragraphs of the Complaint, Defendant answers as follows:

     1.    In paragraph 4, Defendant admits the jurisdiction of the Court, but reminds the Court that Plaintiff earlier asserted its case within the Court's Admiralty and Maritime jurisdiction, particularly inasmuch as the case was filed under Rule 9(h). In addition, Plaintiff's counsel stated in open Court that the cause of action properly rests in Admiralty and is before the court because Captain Phillips is a master of a vessel; otherwise, denied;

     2.    Regarding paragraph 10, Defendant admits that the Rig was damaged from a blowout and fire and immediately thereafter was not able to be used for immediate use as an offshore drilling Rig; otherwise, denied;

     3.    Regarding paragraph 14, Defendant understands that the Rig was moved to a dock area in Tuxpan, Mexico, but specifically denies that Plaintiff's allegation that she was removed from navigation and commerce and specifically denies that she remained that way thereafter; otherwise, the allegations contained within that paragraph are not known to this Defendant and are deemed denied;

     4.    Regarding paragraph 27, Defendant admits that he had various limited and specific project management responsibilities (under Subsection from his supervisors at P.D. Gram & Company, S.A., the vessel's managers) having to do with the Rig (which were primarily engineering-related duties), but that he did not have overall or discretionary authority and that he could not do certain things, such as

direct or handle all legal disputes, without specific instructions or authority from the attorneys engaged by Zapoteca or as he was directed by his supervisors, the Rig's managers; otherwise, denied;

5. Regarding paragraph 33 Meritus on occasion paid some expenses, and also paid certain funds, under instructions from Gram, to the Energy Zapoteca the remainder; otherwise, denied;

6. Regarding paragraph 36, Meritus paid some project expenses and Defendant was authorized to pay certain others; otherwise, denied;

7. Regarding paragraph 38, in approximately January or February of 2003, Nabors began negotiating to purchase the Rig in her then-current condition, as a vessel; otherwise, denied;

8. Regarding paragraph 39, Defendant admits that in March of 2003, Zapoteca and Nabors entered into an buy-sell agreement for the Rig by which Nabors would purchase the Rig as a Vessel; otherwise, denied;

9. Regarding paragraph 47, Defendant and other crew members constituted the "rider crew" which had been hired by Nabors and approved by Gram and Zapoteca, but which had not been paid their wages as riding crew. As a consequence, the riding crew filed a lawsuit in the appropriate labor court in Mexico against Nabors for it's failing to pay them their riding crew wages. Such claim also constituted a claim against the Rig *in rem* under Mexican law; otherwise, denied;

10. Regarding paragraph 54, while Zapoteca was preparing to deliver the rig to Nabors, Potexa presented a bill for various questionable and unrecoverable

items, including alleged "dockage" and "services provided," which Defendant believed unmerited; otherwise, denied;

11.  Regarding paragraph 55, Phillips told Zapoteca that he believed the claim asserted then by Protexa was without merit and that there was no valid obligation for Zapoteca to pay Protexa for its alleged-dockage claim; otherwise, denied;

12.  Regarding paragraph 58, Defendant did not provide false testimony. However, he did provide testimony as recommended to him by the Zapoteca attorney whom Zapoteca engaged and paid to provide him with legal counsel. While Defendant is confident the testimony he provided was not false, in the event the Court concludes that it was, then Defendant did do as instructed by Zapoteca's attorney and thus was acting under instructions from Zapoteca; otherwise, denied;

13.  Regarding paragraph 63, Defendant was advised that an essential term of Zapoteca's settlement of its dispute with Protexa required Protexa to completely drop and withdraw the criminal charges it had levied against Defendant and be sure that the local prosecutor, court and other governmental officials did so; otherwise, denied;

14.  Regarding paragraph 64, Defendant understands that Protexa did not honor the contractual obligation originally agreed with Zapoteca, which it had arranged to have the criminal charges it had lodged against Defendant were not dropped and withdrawn; otherwise, denied:

15.  Regarding paragraph 66, Captain and Mrs. Phillips were forced to leave Mexico on May 28, 2003, to avoid Captain Phillips' being arrested by virtue of

the still-pending criminal charges that Protexa had arranged to be levied against him. He moved initially to McAllen, Texas. While he remained an employee of Gram and the master of the Rig, he did not have the same daily supervision or management responsibilities, including but not limited to engineering and crew matters, since he was no longer located physically near the Rig); otherwise, denied;

16. Regarding paragraph 67, the allegation generally is covert, except additional expenses (including but not limited to telephone, etc.) also were to be paid to Defendant; otherwise, denied.

17. Regarding paragraph 82, in the summer or fall of 2003, Zapoteca determined it wanted to tow the Rig to Texas, in order to complete the sale to Nabors; otherwise, denied;

18. Regarding paragraph 84, in the summer or fall of 2003, Zapoteca began in earnest to move the Rig to Texas; otherwise, denied;

19. Regarding paragraph 85, under the direction of Zapoteca and Gram the Rig's managers, Defendant accelerated his efforts to move the Rig from Mexico to Texas; otherwise, denied;

20. Regarding paragraph 93, Zapoteca began to arrange a towing vessel to tow the Rig to Texas and to secure maritime-related insurance coverages to cover the vessel while in tow. The docking location identified was in Port Isabelle, Texas; otherwise, denied;

21. Regarding paragraph 96, Defendant was directed by Zapoteca and the Rig's managers to help ready the Rig to be towed to Texas and to assist the surveyors, who he understood were appointed by Zapoteca's insurance underwriters,

in anticipation of having the Rig meet the surveyor's recommendations; otherwise, denied;

22. Regarding paragraph 100, Zapoteca and the insurance underwriters' surveyors focused on readying the Rig for a manned tow from Mexico to Texas; otherwise, denied;

23. Regarding paragraph 101, Defendant, along with officers, directors and managers of Zapoteca and the Rig, discussed and concluded that it was better to use the Rig's own employees (its crew members) to man the tow of the Rig while she was towed from Mexico to Texas. As most of the crew members were Mexican citizens, it was necessary to obtain their visas so they could ride the Rig while she was being towed; otherwise, denied.

24. Regarding paragraph 102, Defendant assisted the efforts to obtain these visas, along with Zapoteca's attorneys (including Plaintiff's counsel, Ed Nelson) and its other agents; otherwise, denied;

25. Regarding paragraph 104, in the winter of 2003/2004, Zapoteca engaged Messrs. Johansen and Ostbye apparently to assist in moving the Rig from Mexico to Texas; otherwise, denied;

26. Regarding paragraph 107, Defendant attended meetings in Houston, Texas, on January 13 and 14, 2004, which were conducted by Christian Kongsli, Defendant's supervisor, an authorized representative of Gram; otherwise, denied;

27. Regarding paragraph 113, Defendant understands that Zapoteca eventually paid some judgment or settlement of the landlord lawsuit; otherwise, denied;

28. Regarding paragraph 136, Defendant began asking if the $165,000 bonus he was to receive, and which had been promised to him repeatedly by Zapoteca, be funded before the Rig left Mexico, as earlier discussed and agreed; otherwise, denied;

29. Regarding paragraph 145, Zapoteca's crew members were advised by Defendant (with his supervisor's approval) not to cooperate with the insurance underwriter's surveyor's efforts to board the Rig without approval of the port captain, since Defendant understood the crew were acting as court-approved custodians of the Vessel and boarding by crewmembers would be viewed as a violation of local orders and would subject the Rig to further legal claims by governmental authorities; otherwise, denied;

30. Regarding paragraph 157, Zapoteca instructed Phillips to move the Rig from its current location (Protexa/Celsa) to the APITUX dock, even though Zapoteca knew that the Rig could not be moved at that time; otherwise, denied;

31. Regarding paragraph 162, on March 10, 2004, Zapoteca, through its attorney, Ed Nelson, advised Defendant that he had been fired as master of the vessel and that all his powers of authorities had been revoked, thereby terminating his employment in all respects; otherwise, denied;

32. Regarding paragraph 167, in early March of 2004, Defendant arranged for meetings at the request of Christian Kongsli (Defendant's supervisor), which were attended by crew members of the Rig, with Christian Kongsli, in attendance; otherwise, denied;

33. Regarding paragraph 172, Defendant was told by his superior to terminate the other crew members. As a result, he and these crew members had labor claims under Mexican law, which following termination and inability by Gram and Zapoteca to settle were then filed in a labor court in Mexico. The workers' claims included wages, severance, vacation days and other benefits recoverable under Mexican law; otherwise, denied;

34. Regarding paragraph 176, there were 12 crew members who brought claims; 10 in one case and 2 in another; otherwise, denied;

35. Regarding paragraph 181, the employees were properly terminated under instructions given by Defendant by his superior, Mr. Kongsli, who was acting on behalf of Gram and Zapoteca; otherwise, Defendant does not have sufficient information to admit or deny the remainder of the allegations, so such are deemed denied;

36. Regarding paragraph 183, Zapoteca filed its premature and unsupported suit on March 12, 2004, despite the fact that Defendant's boss, Mr. Kongsli was with Defendant on South Padre Island during the period of March 3 - 11, 2004, (i.e., the day before suit was filed). Neither Mr. Kongsli nor any other officers, directors, representatives or agents of Gram or Zapoteca requested that Defendant provide any documents to them, nor did Defendant refuse to provide any documents to them; otherwise, denied;

37. Regarding paragraph 184, the Court preliminarily granted Zapoteca's requested relief and ordered Defendant to produce certain documents, under specific conditions, as is reflected in the Court's orders and hearings; otherwise, denied;

38. Regarding paragraph 188, subpart 1 is admitted as far as it goes and is to all such documents then-known by Defendant to be present; but it is incomplete. See generally the transcript of the hearings and the Court's Orders; otherwise, denied; and

39. Regarding paragraph 189, admitted in part and denied in part; see transcript of hearing and Court's Orders; otherwise, denied;

40. Regarding paragraph 190, to the best of Defendant's present recollection, all such documents in his possession and control in Texas had been turned over by his attorney to Dix; otherwise, unknown and therefore denied;

f. Other than is specifically addressed above, the allegations contained within the Complaint and asserted against Defendant are denied.

V.

MOTION TO STRIKE

(a) PLAINTIFF'S MALFEASANCE

Plaintiff has no basis for recovery and has unclean hands sufficient to preclude Plaintiff's claims against Defendant. Specifically, Defendant asserts that Plaintiff has taken Defendant's records and thereafter so destroyed, commingled, disturbed, altered, or withheld them that it now is impossible for Defendant to investigate or respond to Plaintiff's claims. (See, for example, paragraph 196 of Plaintiff's Complaint). Therefore, Plaintiff's claims must be denied and the Complaint should be stricken *ab initio*.

Second, Plaintiff's claims are vexatious, retaliatory, and harassing. Specifically, Defendant would show that Defendant does not have sufficient assets to pay Plaintiff's alleged claims, (even assuming *arguendo* any of them have merit and are acknowledged,

which are specifically and completely denied). Such facts were well known to and acknowledged by Plaintiff and its counsel well before Plaintiff filed its Complaint.

Therefore, Plaintiff's only apparent reason for asserting claims now is to be vexatious, retaliatory, and harassing and to deplete the already limited funds of Defendant. As best evidence of Plaintiff's true intent, see its request for "exemplary damages" under paragraphs 206-208 and 220-222 of the Complaint, which was filed at 9:01 a.m. on July 1, 2004, immediately before the Court-ordered mediation and over three months after Defendant's counter-claim was filed. Plaintiff's meritless and unreasonable claims against Defendant are an abuse of justice and should be sanctioned by the Court, included but not limited to dismissal of Plaintiff's Complaint *in toto*.

(b)   THE "ACCOUNTING" CLAIM:

In paragraphs 215 -222 of its Complaint, Plaintiff asserts Defendant "converted its personal property" (namely "funds") and that Defendant allegedly is liable for failure to provide a proper accounting to Plaintiff for the use of such funds. Those claims are not yet ripe. Plaintiff has requested no accounting from Gram (Defendant's employer) or from Defendant. Thus, there can be no duty to fail to provide an accounting when a proper request for an accounting is a pre-requisite and has not been given. Moreover, after such a proper request is made, there must be sufficient time for a response, following which there must be a determination that no proper response was provided; only then can a claim for conversion of funds arise. As these conditions have not occurred, Plaintiff's cause of action for conversion or an accounting must be stricken as unripe at this point.

Moreover, Plaintiff's claims should be stricken because Plaintiff, through the judicial process of temporary restraining orders and injunctions, has received exclusive control over

Defendant's papers, books, accounts and records, and since then has so destroyed, altered, rearranged and commingled those records that Defendant could not prepare an accounting of those records and demonstrate how funds were spent or allocated, even if he had been timely and properly asked to do so. As Plaintiff, through its own misdeeds and mishandling of Defendant's records, has made it impossible to conduct such an accounting, the conditions precedent to a claim for conversion cannot be met and thus the conversion and accounting claims (including paragraphs 215-220 of the Complaint) should be stricken at present.

(c)   SCANDALOUS ALLEGATIONS:

In various places in the Complaint, including specifically paragraphs 125, 126, 138, 165, 166 and 207, Plaintiff alleges that Defendant has some "personal animosity" toward the ship's crew; that Defendant was attempting to "extort payment" of his bonus; that he was "extorting money;" that his actions "were felonious;" and finally that he "committed theft." These allegations are wholly unsupported, presumptuous, inflammatory, immaterial, impertinent, and scandalous. (They also may be libelous.) Defendant asks that paragraphs 125, 126, 138, 165, 166 and 207 be stricken in their entirety under RULE CIV. P. 12 (f) as immaterial, impertinent, or scandalous matters.

(d)   IF NON-PARTY IS INDISPENSIBLE

As reflected above, there are indispensable parties, Gram and Kongsli, which are necessary for a just adjudication of the case and in particular to respond to Plaintiff's Complaint against Defendant, who was an employee of Gram and acting under the instructions and supervision on Kongsli. Captain Phillips has asked the Court to determine Gram and Kongsli to be necessary parties and to bring them into the action under FED. RULE CIV. P.19. However, if the Court determines that, even though such parties are

indispensable, they cannot be made parties to this action, then Phillips is entitled to dismissal of Plaintiff's Complaint against him, since the absent persons (Gram, Kongsli, or both) are indispensable as to his defense of the Complaint, See FED. RULE CIV. P. 19(b). Should Gram or Kongsli successfully assert that they cannot be made a party to this action, then Plaintiff's Complaint against Captain Phillips must be dismissed under FED. RULE CIV. P. 19(b).

VI.

PLAINTIFF'S "BUSINESS DECISIONS" ARE NOT DEFENDANT'S LIABILITY

Zapoteca and its Rig leave embroiled in suits and claims. Defendant knew of the alleged loss and served these claims, and on occasion recommended to Zapoteca that such claims be defended, since he viewed the underlying claims to have little or no merit. Despite those recommendations and the fact that Zapoteca's own attorneys and consultants investigated and defended those claims and confirmed that they had little merit (see, for example, paragraph 118 of the Complaint), Zapoteca, for its own "business reasons," determined that it made more sense in its mind to settle those disputes, rather than litigate or defend them. While that might be viewed as a "business reason," it does not create or trigger liability of Defendant. As a matter of law, Plaintiff's claims against Defendant would be dismissed.

VII.

CHOICE OF LAW

As the Court is aware, Defendant was hired and paid in Mexico for services rendered primarily in Mexico. Thus, Mexican law may control one or more of the causes of action in the case, and likely includes whatever claims might survive the above motions to strike.

Whatever additional defenses Defendant has under Mexican law (which are not presently known or discoverable, in such a short time period, by Defendant's counsel) are asserted and incorporated by Defendant herein and specifically not waived hereafter.

## VIII.

## LACHES AND LIMITATIONS

Plaintiff asserts various claims against Defendant, some of which are untimely under doctrine of laches and applicable statutes of limitations, which would include those arising under Mexican law, not presently known to Defendant's counsel, but incorporated herein and not waived hereafter.

## IX.

## PLAINTIFF'S CONFLICT OF INTEREST PRECLUDES PROSECUTION OF ITS CLAIMS AGAINST DEFENDANT

As noted in Defendant's Motion to Disqualify, filed July 1, 2004, Plaintiff's allegations against Defendant, including the vast majority of those reflected in Plaintiff's 220 paragraphs in its Complaint, intimately involve the actions of Plaintiff's attorney, Ed Nelson, who was acting as Zapoteca's counsel during investigation, defense and handling of many of the claims (including various lawsuits pending in Mexico) which are made the subject of Plaintiff's Complaint. While so involved, Plaintiff's attorney, Mr. Nelson, provided legal counsel and advice to Defendant concerning those lawsuits, as well as other claims and activities surrounding the Rig. These matters, and in particular the allegations that Mr. Nelson now makes against Defendant as reflected in Plaintiff's Complaint, will require his involvement as a fact witness and as legal counsel providing legal advice to Defendant, upon which Defendant relied. Moreover, as Zapoteca now criticizes Captain Phillips for following the very advice of its attorneys, that places Mr. Nelson in the middle of those disputes. There

is an unavoidable conflict of interest, of which Mr. Nelson has been aware at least since June 25, 2004 (and likely beforehand), yet he continues to assert claims against Defendant when he knows he is intimately involved as a fact witness and as prior counsel. (See by way of example, paragraphs 118, 153 and 200 (see, (d) & (e), all of which deal directly with Mr. Nelson's involvement as counsel.) As Plaintiff's counsel continues to do so, all the allegations contained in Plaintiff's Complaint which involve Mr. Nelson must be stricken immediately, failing which Mr. Nelson will have no choice but to be deposed on all those matters and to turn over all of his records and attorney-client communications regarding the matters on which he provided advice or counsel to Defendant.

## X.

## COUNTERCLAIM INCORPORATED

Captain Phillips' counterclaim against Plaintiff, as from time to time revised and supplemented hereafter, is incorporated herein for all purposes and in response to Plaintiff's Complaint.

## XI.

## SET-OFF

In the event that Plaintiff's claims against Defendant have any merit whatsoever (which is vigorously denied), Plaintiff at most is entitled to a minor set off as to those claims against the much greater damages Captain Phillips has against Zapoteca, as reflected in his counterclaim.

## XII.

## ADDITIONAL DEFENSES AND CLAIMS

Defendant/Counterclaimant Captain Phillips reserves the right to assert additional defenses against Zapoteca in its further response to its Complaint which arise by virtue of the General Maritime Law of the United States, applicable Mexican law, applicable Texas law, and the rules and procedures in practice in the Federal Courts which apply and may come to light in further defense and investigation of Plaintiff's allegations and in the prosecution and investigation of Defendant's counterclaim, all of which are not waived and are specifically reserved to be asserted on behalf of Captain Phillips.

WHEREFORE PREMISES CONSIDERED, Defendant asks that Plaintiff's Complaint be dismissed *in toto*, that all necessary parties be joined in this case, that its Motion to Strike be granted, and for further relief, in admiralty, at law and in equity, to which Captain Phillips is entitled.

> Respectfully submitted,
>
> **THE LANIER LAW FIRM, P.C.**
>
> BY: _/s/ Charles F. Herd w/ permission by C. Frank Wood_
> CHARLES F. HERD, JR.
> TSB# 09504480
> LARRY P. WILSON
> TSB # 21704100
> P. O. Box 691408
> Houston, TX  77269-1408
> (713) 659-5200
> Fax: (713) 659-2204
> ATTORNEYS FOR PLAINTIFFS

LOCAL COUNSEL:

Mr. C. Frank Wood
SANCHEZ, WHITTINGTON, JANIS
& ZABARTE, L.L.P.
100 North Expressway 83
Brownsville, Texas  78521-2284

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel in accordance with the Texas Rules of Civil Procedure on this the 19th day of July, 2004.

Mr. Edwin K. Nelson, IV
Attorney at Law
3814 Sun Valley Drive
Houston, Texas 77025
**ATTORNEYS FOR PLAINTIFF**
**ZAPOTECA ENERGY, INC.**

                                          FRANK WOOD