44

United States District Court
Southern District of Texas
FILED

JUL 2 1 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-04-048 |
| | § | |
| CHARLES DOUGLAS PHILLIPS, | § | |
| | § | |
| Defendant/Counter-Claimant. | § | |

**BENCH MEMORANDUM ON APPLICATION FOR WRIT OF ATTACHMENT**

Nabors Drilling International Limited ("Nabors") respectfully submits this bench memorandum on application for writ of attachment.

**WRIT OF ATTACHMENT**

1.    Attachment is a special remedy that allows a creditor to seize the debtor's property to secure payment of a probable judgment on an otherwise unsecured debt. *E.E. Maxwell Co. v. Arti Décor, Ltd.*, 638 F. Supp. 749, 753 (N.D. Tex. 1986). Attachment is ordinarily used against a debtor in two ways: (1) to prevent a debtor from alienating, destroying or removing property from the jurisdiction, which would frustrate recovery on the debt; or (2) to obtain jurisdiction over a nonresident debtor who has property located within the jurisdiction. *Id.* In this case, Nabors seeks a writ to prevent Zapoteca Energy, Inc. ("Zapoteca") from removing the jack up barge Energy Zapoteca from this Court's jurisdiction and frustrate Nabors' securing payment of a probable judgment.

2.    To obtain a writ of attachment, a plaintiff must file with the court an affidavit that specifies the general grounds for its issuance, the amount of the demand, and the specific

grounds for its issuance. TEX. CIV. PRAC. & REM. CODE § 61.022; *E.E. Maxwell Co.*, 638 F. Supp. at 752.

　　3.　　The general conditions are set forth in Texas Civil Practice & Remedies Code § 61.001, which provides that a writ is available to an applicant if:

　　　　(1) the defendant is justly indebted to the plaintiff;

　　　　(2) the attachment is not sought for the purpose of injuring or harassing the defendant; and

　　　　(3) the plaintiff will probably lose his debt unless the writ is issued.

TEX. CIV. PRAC. & REM. CODE § 61.001

　　4.　　In addition to the general requirements, an applicant must show at least one of the following nine specific grounds as set forth in Texas Civil Practice & Remedies Code § 61.002. The specific grounds for issuance of a writ of attachment are:

　　　　(1) the defendant is not a resident this state or is a foreign corporation or is acting as such;

　　　　(2) the defendant is about to move from this state permanently and has refused to pay or secure the debt due the plaintiff;

　　　　(3) the defendant is in hiding or is about to hide his property for the purpose of defrauding his creditors;

　　　　(4) the defendant has hidden or is about to hide his property for the purpose of defrauding his creditors;

　　　　(5) the defendant is about to remove his property from this state without leaving an amount sufficient to pay his debts;

　　　　(6) the defendant is about to remove all or part of his property from the county in which the suit is brought with the intent to defraud his creditors;

　　　　(7) the defendant has disposed of or is about to dispose of all or part of his property with the intent to defraud his creditors;

　　　　(8) the defendant is about to convert all or part of his property into money for the purpose of placing it beyond the reach of his creditors; or

(9) the defendant owes the plaintiff for property obtained by the defendant under false pretenses.

TEX. CIV. PRAC. & REM. CODE § 61.002.

5.      The validity of prejudgment attachment does not depend on the truthfulness of the allegations of the affidavit or the petition, but instead on compliance with the statute in making the affidavit. *21 Turtle Creek Sq. Ltd. v. New York State Teachers' Ret. Sys.* 425 F.2d 1366, 1369 (5th Cir. 1970); *E.E. Maxwell Co.*, 638 F. Supp. at 752. Thus, the court looks to the movant's application and affidavit to see if the required pleading has been made. Texas courts follow the scheme of "strict entitlement;" that is, if the proper allegations are made, the writ must issue. *E.E. Maxwell Co.*, 638 F. Supp. at 752.

6.      In the instant case, Nabors has compelled with the requirements in its complaint, application, and affidavit. It has set forth the three general grounds for issuance of the writ, as well as the specific ground that (1) Zapoteca is not a resident this state or is a foreign corporation or is acting as such; (2) Zapoteca is about to move from this state permanently and has refused to pay or secure the debt due the plaintiff; and (3) Zapoteca is about to remove his property from this state without leaving an amount sufficient to pay his debts. Nabors has also set forth its damages. Therefore, since Nabors has made the proper allegations, this Court must issue the writ of attachment.[1]

7.      Nabors asks the Court to issue the Writ of Attachment based on Nabors' complaint, application for writ, and affidavit. Federal Rule of Civil Procedure 43(e) contemplates that the district court may rule on an application for injunctive relief without seeing witnesses or hearing testimony and instead decide the matter on affidavits. *See Miller Brewing*

---

[1] Federal Rule of Civil Procedure 64 provides that when there is no applicable federal statute for seizure of person or property—as here—the law of the forum state is to be applied. FED. R. CIV. P. 64; *E.E. Maxwell Co.*, 638 F. Supp. at 751. This Court, therefore, has the authority pursuant to Federal Rule of Civil Procedure 64 to issues Nabors' state law writ of attachment.

*Co. v. Fort Worth Distributing Co., Inc.,* 781 F.2d 494, 496 (5th Cir. 1986); *E.E. Maxwell Co.,*

638 F. Supp. at 751-52. Should this Court decide that a hearing in necessary to decide Nabors'

Application for Writ of Attachment, Nabors requests an emergency oral hearing.

Dated: July 21, 2004

Respectfully submitted,

FULBRIGHT & JAWORSKI, L.L.P.

By: _____
    E. Lee Haag
    State Bar No.  08657700
    Federal I.D. No.  10857
    Attorney in Charge
    1301 McKinney, Suite 5100
    Houston, Texas  77010-3095
    Telephone:  (713) 651-5151
    Facsimile:  (713) 651-5246

OF COUNSEL:

RODRIGUEZ, COLVIN, CHANEY &
SAENZ, L.L.P.
Jaime Arturo Saenz
State Bar No. 17514859
Federal ID No. 7630
1201 East Van Buren
P.O. Box 2155
Brownsville, Texas 78522
Telephone:  (956) 542-7441
Facsimile:  (956) 541-2170

FULBRIGHT & JAWORSKI L.L.P.
Tonja De Sloover
State Bar No.  24036474
Federal I.D. No.  35239
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
(713) 651-5339 (Telephone)
(713) 651-5246 (Facsimile)

COUNSEL FOR INTERVENOR NABORS
DRILLING INTERNATIONAL LIMITED

## CERTIFICATE OF SERVICE

This Bench Memorandum on Writ of Attachment was served in compliance with Rule 5 of the Federal Rules of Civil Procedure by Certified Mail, Return Receipt Requested on July ___, 2004.

E. Lee Haag

638 F. Supp. 749; 1986 U.S. Dist. LEXIS 24239

The E. E. Maxwell Company, Inc., Plaintiff, v. Arti Decor, Ltd., Defendant

Civil Action No. CA3-86-1414-D

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

638 F. Supp. 749; 1986 U.S. Dist. LEXIS 24239

June 13, 1986, Decided
June 13, 1986, Filed

**JUDGES: [**1]**

Sidney A. Fitzwater, United States District Judge.

**OPINIONBY: FITZWATER**

**OPINION:** [*750]  MEMORANDUM OPINION AND ORDER

SIDNEY A. FITZWATER, UNITED STATES DISTRICT JUDGE

In this diversity action removed from state court, defendant, Arti Decor, Ltd. ("Decor"), has applied for a preliminary order to compel the return of certain bathroom hardware held by its former manufacturer's representative, The E. E. Maxwell Company, Inc. ("Maxwell"), plaintiff. Maxwell has applied for a prejudgment writ of attachment and for a temporary restraining order so that it may retain possession of the subject goods. For the reasons n1 set forth, the court grants in part Maxwell's application for a prejudgment writ of attachment, to the extent of $69,000, denies its application for temporary relief, and denies Decor's application for preliminary order. A bond, conditioned as required by Texas law, shall be posted by Maxwell in the amount of $69,000.

-------------- Footnotes ---------
------

n1 This memorandum opinion constitutes the court's findings of fact and conclusions of law. *See Fed. R. Civ. P. 52(a).*

------------ End Footnotes--------
------

[**2]

I.

A. Procedural History

Maxwell filed a sworn petition in Texas state court on April 23, 1986 alleging that Decor was liable for breaching various agreements entered into between

Maxwell and Decor and for tortious interference with business relations, fraud and misrepresentation, and deceptive trade practices. Maxwell pleaded for actual damages, multiple damages pursuant to the Texas Deceptive Trade Practices - Consumer Protection Act, *TEX. BUS. & COMM. CODE § 17.50 et seq.* (Vernon Supp. 1986) ("DTPA"), unspecified punitive damages, attorney's fees, interest, and costs. On May 27, 1986, Decor removed this case to this court. Thereafter, on June 2, 1986, Decor filed its answer and a counterclaim. In the counterclaim Decor contends Maxwell is liable for "inventory discrepancies and other breaches of contract" and that Decor is entitled to immediate relief from and damages for Maxwell's retention of its inventory of Decor's goods. In its "application for preliminary order," filed June 3, 1986, Decor seeks an order requiring Maxwell to deliver the bathroom fixtures to Decor.

On June 5, 1986, the court conducted a telephone conference with counsel for both parties. [**3] At that time, Maxwell indicated it would seek to keep possession of the fixtures by means of a prejudgment writ of attachment. The court decided to award limited preliminary relief to Decor in the form of a right to inspect the chattels until Maxwell could file its application and supporting affidavits and Decor could file its opposition and opposing affidavits. On June 9, 1986, Maxwell filed its sworn application for writ of attachment and injunctive relief and motion to deny defendant's requested injunctive relief, together with a supporting affidavit and exhibits. On June 10, 1986, Decor filed its reply in support of application for written order together with a sworn "verification."

B. Background Facts and Contentions

Decor is a distributor of bathroom fixtures such as brass faucet sets, brass accessories, towel bars, tissue holders, and vitreous china tub and shower sets and sink basins. In 1985, Decor and Maxwell entered into two written contracts: a manufacturer's representative agreement and a warehousing and sales agreement. In terms, the representative agreement provided that

638 F. Supp. 749; 1986 U.S. Dist. LEXIS 24239

Maxwell was to represent Decor in the states of Texas (except El Paso), Oklahoma, Arkansas, [**4] and Louisiana. Maxwell was to sell Decor's products in exchange for a sales commission. n2 The warehouse agreement provided that Maxwell receive a fee in exchange for warehousing and distributing Decor merchandise on a consignment basis. In January 1986, the [*751] parties entered into a supplemental written memorandum whereby Maxwell was to receive a monthly fee for its invoicing and quality control costs.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 This agreement differed from the typical Decor agreement in which the distributor purchased goods from Decor for resale.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

Beginning in February 1986, the parties' relationship began to deteriorate. According to Maxwell, Decor represented that a shipment of fixtures would be delivered to Maxwell for Maxwell's use in filling existing backlog orders from its customers, for increasing Maxwell's distribution capacity to potential customers, and for satisfying an unfilled demand in Maxwell's territory for such fixtures. Maxwell alleges that Decor diverted the goods elsewhere. Maxwell also contends that Decor [**5] has failed to pay the monthly fee for invoicing and quality control services. Maxwell further complains that Decor has failed to supply the promised volume of merchandise to fully service and expand Maxwell's territory, has failed to fully and timely account for commissions due on prior sales, has prevented Maxwell from fulfilling its contracts with its customers and with Decor, and has refused to pay the monthly invoicing and quality control fee. Maxwell also alleges that Decor misrepresented and defrauded it regarding the expectations and relationships between them and that Maxwell undertook certain actions in reliance on the misrepresentations. Maxwell contends Decor's actions have tortiously interfered with Maxwell's relations with its customers and with prospective customers of both Maxwell's product and the Maxwell business entity itself. Maxwell also contends it was to be the exclusive Decor representative in the four-state area and the exclusive warehouseman and that, contrary to Decor's representations, it has not been.

Decor admits that some commission payments that Maxwell is entitled to receive were unavoidably late and that some funds have been held due to inventory [**6] discrepancies in Maxwell's warehouse. Decor denies, however, the material elements of Maxwell's allegations. By way of counterclaim, Decor alleges the agreements with Maxwell were properly terminated pursuant to 30-day written notice and that such agreements were terminated, at the latest, on June 1, 1986. Decor contends that the bathroom fixtures now held on consignment by Maxwell in its warehouse are the property of Decor to be returned to Decor or shipped to customers. Decor alleges that it will suffer damages in an unspecified amount for lost profits, injury to present and future customer relationships, harm to its reputation, and loss of business good will if the warehoused fixtures are not released by Maxwell.

## II.

The present dispute centers upon who is entitled to possession of the bathroom fixtures now warehoused by Maxwell. It is undisputed that the goods are owned by Decor. Maxwell alleges no basis for claiming it presently owns the fixtures, in whole or in part, and as Decor aptly notes in its reply and supplemental brief, "Even the Application for Writ of Attachment must by its nature admit that the goods belong to [Decor]. Otherwise, why seek an attachment?" [**7] (Decor Reply at 8). This being so, if Maxwell cannot demonstrate a right to the fixtures by way of writ of attachment or temporary restraining order, Decor is entitled to take possession of its goods. For this reason, the court determined on June 5 to consider Maxwell's application for relief simultaneously with Decor's application, pursuant to the affidavit procedure authorized by *Fed. R. Civ. P. 43(e)*. n3

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Maxwell requests that the court conduct a hearing concerning the parties' requests for injunctive relief in order that the court may make a proper determination of the parties' rights. *Fed. R. Civ. P. 43(e)*, of course, contemplates that the district court may rule on an application for injunctive relief without seeing witnesses or hearing testimony and instead decide the matter on affidavits. *See Miller Brewing Co. v. Fort Worth Distributing Co., Inc., 781 F.2d 494, 496 (5th Cir. 1986).*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

### A. Prejudgment Attachment

Texas law governs the question whether Maxwell is entitled to the writ. Pursuant [**8] to *Fed. R. Civ. P. 64*, the law of the forum [*752] state is to be applied where, as here, there is no applicable federal statute.

638 F. Supp. 749; 1986 U.S. Dist. LEXIS 24239

To obtain such a writ, a plaintiff must file with the court an affidavit which specifies the general grounds for its issuance, the amount of the demand and the specific grounds for its issuance. *TEX. CIV. PRAC. & REM. CODE ANN. § 61.022* (Vernon 1986). The general grounds for issuance of a writ of attachment are set forth in *TEX. CIV. PRAC. & REM. CODE ANN. § 61.001* (Vernon 1986), which provides that a writ is available to a plaintiff if: (1) the defendant is justly indebted to the plaintiff; (2) the attachment is not sought for the purpose of injuring or harassing the defendant; (3) the plaintiff will probably lose his debt unless the writ is issued; and (4) one or more of the specific grounds listed in § 61.002 exist. The grounds for issuance set forth in § 61.002 are:(1) the defendant is not a resident of this state or is a foreign corporation or is acting as such;

(2) the defendant is about to move from this state permanently and has refused to pay or secure the debt due the plaintiff;

(3) the defendant is in hiding so that [**9] ordinary process of law cannot be served on him;

(4) the defendant has hidden or is about to hide his property for the purpose of defrauding his creditors;

(5) the defendant is about to remove his property from this state without leaving an amount sufficient to pay his debts;

(6) the defendant is about to remove all or part of his property from the county in which the suit is brought with the intent to defraud his creditors;

(7) the defendant has disposed of or is about to dispose of all or part of his property with the intent to defraud his creditors;

(8) the defendant is about to convert all or part of his property into money for the purpose of placing it beyond the reach of his creditors; or

(9) the defendant owes the plaintiff for property obtained by the defendant under false pretenses.*TEX. CIV. PRAC. & REM. CODE ANN. § 61.002* (Vernon 1986).

Prejudgment attachment is a statutory remedy whose validity does not depend on the truthfulness of the allegations of the affidavit or the petition but on compliance with the statute in making the affidavit. *21 Turtle Creek Sq. Ltd. v. New York State Teachers' Ret. Sys., 425 F.2d 1366, 1369 (5th [**10] Cir. 1970).* Thus, the court looks to Maxwell's application and

affidavit to see if the required pleading has been made. The Texas scheme appears to be one of "strict entitlement;" that is, if the proper allegations are made, the writ shall issue.

In his affidavit in support of the application, E. E. Maxwell, Maxwell's president, states that Decor "is justly indebted" to Maxwell, that Maxwell does not seek the writ of attachment "for purpose of injuring or harrasing [sic]" Decor and that Decor "will probably lose its debt" unless the writ is issued. Maxwell also asserts that:I have it on information and belief that the Defendant is insolvent or imminently insolvent and will be unable to pay any judgment rendered against it in favor of the Plaintiff. Further, the Defendant is not a resident of this state and is a foreign corporation or is acting as such, being a California corporation. I have it on information and belief that the Defendant is about to remove its property from this state without leaving an amount sufficient to pay its debts and the Defendant is about to convert all or part of its property into money for the purpose of placing it beyond the reach of its creditors [**11] such as the Plaintiff.(Affidavit of Maxwell at II). Although the affidavit does not specify the amount of the demand, it does state that all allegations made in Maxwell's original petition, its application for writ of attachment, and its brief in support are reasserted in the affidavit. In the application Maxwell does make a demand for damages, including liquidated [*753] damages. *See by analogy Morrow v. Johnson, 15 Tex. 568 (1885)* (affidavit may refer to the petition for the amount of the indebtedness). The court concludes that Maxwell's application satisfies the statutory requirements.

Decor challenges Maxwell's application for the writ on the ground that Maxwell's claim against Decor is, in large part, unliquidated. Maxwell responds that *TEX. CIV. PRAC. & REM. CODE § 61.005* (Vernon 1986) permits the granting of a writ in the case of an unliquidated claim such as the present one. Section 61.005 states:Nothing in this chapter prevents issuance of a writ of attachment in a suit founded in tort or on an unliquidated demand against an individual, partnership, association, or corporation on whom personal service cannot be obtained in this state.

The [**12] writ of attachment in Texas is purely of statutory origin, having had no existence as a common-law remedy. *Gulf Oil Co. v. First National Bank of Hereford, 503 S.W.2d 300, 304* (Tex.Civ.App. -- Amarillo 1973, no writ). The purpose of attachment is to enable a plaintiff to secure his *debt* by a seizure of the defendant's property before judgment, *id.,* thus, the requirement of § 61.001 that the defendant be "justly indebted" to plaintiff. The term "debt" has been defined as an obligation to pay a liquidated sum on an

638 F. Supp. 749; 1986 U.S. Dist. LEXIS 24239

express or implied contract. *El Paso Nat'l Bank v. Fuchs, 89 Tex. 197, 34 S.W. 206, 207 (1896).* When the damages are unliquidated, however, and the cause of action is such that there is no definite means of their ascertainment, the general rule is that an attachment may not lawfully issue. *Hochstadter v. Sam, 73 Tex. 315, 11 S.W. 408 (1889).* Thus, the Fifth Circuit has recognized that the long-standing rule in Texas is that a writ of attachment will not issue in a suit for unliquidated damages. *21 Turtle Creek Square, Ltd., 425 F.2d at 1368.*

The Texas legislature created a statutory exception to the general rule when it enacted Articles 247a and 281, [**13] the precursors of § 61.005. The predecessors of § 61.005 were enacted prior to the enactment of the Texas long-arm statute apparently as a means of obtaining *in rem* jurisdiction over a non-resident's assets located in Texas if *in personam* jurisdiction was unavailable. *See* 17 Tex. Jur. 3d Creditors' Rights and Remedies § 123 (1982). Still today, as authorized by § 61.005, when personal service cannot be obtained on the defendant in the state, the demand need not be liquidated.

Section 61.005, however, is of no assistance to Maxwell in the instant case. By Maxwell's own admission, personal service could have been obtained upon Decor in this state. In its state court petition, Maxwell alleged two bases for obtaining personal service pursuant to *TEX. CIV. PRAC. & REM. CODE § 17.043* (Vernon 1986): first, upon its alleged agent, McEwen and Bennett, Inc., a person alleged to be in charge of some of Decor's business in this state; and second, upon Maxwell itself, as a person in charge of some of Decor's business in Texas. *See* Original Petition at 3, paras. I(5)(b) and (c) and I(6)(b) and (c). (*Cf.* § 17.044 which, unlike § 17.043, is characterized as *substituted* [**14] service on the secretary of state.)

Having determined that the writ is available only for the liquidated portion of Maxwell's claim, the court assays the demand to determine the portion to which attachment is applicable. Maxwell claims in its application that at least $69,000 is liquidated. The court is to take this allegation as true. *See 21 Turtle Creek Square, Ltd., 425 F.2d at 1369.* Accordingly, the writ of attachment shall issue for that amount upon the posting of a bond in the amount specified at section IV, *infra*, conditioned as required by § 61.023(a)(4).

B. Temporary Restraining Order

The court construes Maxwell's application for "temporary injunction" as an application for temporary restraining order and denies the application. One of the elements for obtaining a preliminary injunction

and, in turn, a temporary restraining order, is that plaintiff has a substantial [*754] likelihood of success on the merits of its claim. *See Mississippi Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir. 1985).* The claims presented here are hotly disputed and are not such that the court can say plaintiff has a substantial likelihood of success. [**15] Moreover, Maxwell's affidavit statement, on information and belief only, that Decor cannot respond in damages, while statutorily satisfactory for attachment purposes, will not support issuance of a temporary restraining order because it is insufficient to demonstrate that Maxwell has an inadequate remedy at law. *See Dreyer v. Jalet, 349 F. Supp. 452, 467 (S.D.Tex. 1972), aff'd, 479 F.2d 1044 (5th Cir. 1973)* (no injunctive relief where recovery of damages is adequate remedy), and *Marshall Durbin Farms, Inc. v. National Farmers Org. Inc., 446 F.2d 353, 357 (5th Cir. 1971)* (courts reluctant to issue injunction where moving party substantiates allegations on information and belief).

III.

Having concluded that the bathroom fixtures in question are owned by Decor, and having determined that Maxwell has shown itself entitled to a prejudgment writ of attachment in the amount of $69,000, but not a temporary restraining order, the court holds that Maxwell may no longer retain possession of any of the fixtures that exceed $69,000 in retail value. The court need not, however, issue a "preliminary order" in favor of Decor, mandatory in terms, requiring Maxwell to turn over the [**16] balance of the fixtures. The court assumes that Maxwell will voluntarily release those fixtures that exceed the fixtures to which the writ of attachment applies in light of the court's decision declaring its withholding of the excess fixtures to be without legal basis. Preliminary relief, prohibitory in nature, will issue only if Maxwell interferes with Decor's efforts to remove the excess fixtures from the warehouse. Such efforts may begin during normal working hours on or after June 17, 1986 at 9:00 a.m.

IV.

The court sets the prejudgment attachment bond at $69,000. The standard for determining the amount of the bond is that which will pay all damages and costs adjudged against Maxwell for wrongful attachment. Here, Decor is to be deprived of $69,000 of its property. To fill customer orders it will have to obtain substitute goods in that amount. Although the court recognizes that Decor can presumably obtain these goods at a lesser wholesale price, any difference in the higher bond will serve to secure other possible losses to Decor such as lost business and lost customer good

638 F. Supp. 749; 1986 U.S. Dist. LEXIS 24239

will in delaying service to Decor's customers while an alternate supply is obtained.

The application [**17] for prejudgment writ of attachment is granted in part and denied in part. The applications for temporary restraining order and preliminary order are denied. Decor's right of inspection is extended to June 17, 1986 at 9:00 a.m. The attachment bond shall be posted by that time.

SO ORDERED.

June 13, 1986.

**SHEPARD'S(R) Signal: Citation Information Available**

*Shepard's* request: 638 f supp 749
Format: KWIC
Results restricted to the following editorial treatments: UNRESTRICTED

**CITATION AS APPEARS IN *Shepard's*:**

E.E. Maxwell Co. v. Arti Decor, Ltd., 638 F. Supp. 749, 1986 U.S. Dist. LEXIS 24239 (N.D. Tex. 1986) *(0 citing references)*

425 F.2d 1366; 1970 U.S. App. LEXIS 9315

21 TURTLE CREEK SQUARE, LTD., Plaintiff-Appellant, v. NEW YORK STATE TEACHERS' RETIREMENT SYSTEM, Defendant-Appellee

No. 27640

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

425 F.2d 1366; 1970 U.S. App. LEXIS 9315

May 11, 1970

**DISPOSITION:** [**1]

 The judgment of the district court is affirmed.

**JUDGES:** Rives, Gewin and Ingraham, Circuit Judges.

**OPINIONBY:** INGRAHAM

**OPINION:** [*1367] INGRAHAM, Circuit Judge:

21 Turtle Creek Square, Ltd., (21), plaintiff below and appellant herein, is a Texas limited partnership. This entity was formed for the purpose of owning, developing and operating a high rise apartment complex in Dallas, Texas. Appellee, New York State Teachers' Retirement System (Teachers), is a body corporate organized and existing under the Education Laws of New York.

In order to finance construction, 21 obtained a loan from Teachers in 1962 in the amount of $9,910,900.00, said loan being insured by the Federal Housing Administration under the National Housing Act and secured by two deeds of trust and real estate mortgages covering the property. The interim construction loan disburser (Disburser) was the National Commercial Bank and Trust Company of Albany, N.Y. Disburser owned 10% of the construction loan and Teachers owned 90%, pursuant to a participation agreement. Various complications delayed the final closing of the loan, which was finally culminated in November of 1964.

The cause of action asserted by [**2] the plaintiff-appellant in this case arises from conversations which 21 contends occurred shortly before the final closing of the loan. It is alleged that the FHA was concerned that if they permitted 21 to close the loan, 21 might immediately thereafter walk away from the project without any liability for payment of the note and mortgage. The Director of Rental Housing for the FHA informed Thornton, the attorney representing 21, that there was a regulation which permitted the mortgagor to obtain an increase in mortgage amount for operating losses which it might incur during the first two years of operation. 21 claims that in order to induce it to remain in operation of the project, an oral promise was made by the attorneys representing the Disburser and Teachers, upon which 21 had a right to rely and did rely and which Teachers is estopped to deny, that Teachers would increase the amount of the loan secured by the mortgage so that 21 would be repaid all operating losses incurred by it for the two-year period.

In March of 1967, Teachers refused to close the increased loan allegedly because [*1368] of certain title defects. In July of 1967, Teachers instituted foreclosure proceedings [**3] where it made the highest bids, thus resulting in the sale of the property to Teachers.

21 commenced this action in the state District Court of Dallas County on August 1, 1967, obtaining jurisdiction over Teachers by a writ of attachment of the real property of the apartment project. Teachers filed a petition for removal to the Federal District Court and attacked the writ of attachment. The District Court sustained the motion to quash the writ. Thereafter, 21 procured service upon Teachers through service upon the Texas Secretary of State under the longarm statute. The District Court overruled Teachers' motion to dismiss for lack of jurisdiction, but granted its motion for summary judgment. It was ordered that 21's complaint be dismissed, that plaintiff take nothing against defendant and that a partial summary judgment be granted defendant on its counterclaim.

The issues presented on appeal are: (1) Did the trial court err in refusing to dismiss this action for lack of jurisdiction; (2) Did the trial court properly quash the writ of attachment issued by the state District Court; and (3) Did the trial court err in granting summary judgment in favor of defendant-appellee.

I [**4]

JURISDICTION

After the district court quashed the writ of attachment, 21 was permitted to, and did, procure service upon Teachers as related above. We hold that the district court had in personam jurisdiction over the defendant-

425 F.2d 1366; 1970 U.S. App. LEXIS 9315

appellee, Teachers, under the provisions of Art. 2031b, Revised Civil Statutes of Texas (longarm statute). Although the contract was executed in New York, Teachers' performance by advancing money for the development of specific property in Texas, looking to its operations for payment, followed by foreclosure, was "doing of business" under the holding in *Lone Star Motor Import, Inc. v. Citroen Cars Corp., 288 F.2d 69 (5th Cir. 1961).*

## II

## WRIT OF ATTACHMENT

Plaintiff in its original petition alleged that it had a legally enforceable contract with defendant, which the defendant had refused to perform, and that it suffered damages in the amount of $3,000,123 because the defendant "does now wilfully, wrongfully and fraudulently continue to refuse to perform its obligations under said contract and make the said additional loan of $1,525,800.00." It prayed for exemplary damages in the additional amount of $3,000,000, and for attorney's fees, [**5] without alleging any amount.

In its affidavit for the writ of attachment, the plaintiff stated that the defendant was justly indebted to it in the amount of $6,000,123 (the total of the actual and exemplary damages, without reference to its suit for attorney's fees), and that the defendant was a foreign corporation.

Plaintiff's suit is one for damages, exemplary damages and attorney's fees, based upon alleged breach of contract and willful, wrongful, wanton and fraudulent actions. Although a sum certain is sued for as alleged damages, a sum certain is not sued for as attorney's fees. The damages claimed are not liquidated damages, but damages which must be submitted to a jury, or a court within its fact-finding powers, for ascertainment.

The longstanding rule in Texas has been that the writ of attachment will not issue in a suit for unliquidated damages. It is the established rule in Texas that while attachments may be maintained in many cases for damages growing out of a breach of contract, even though they are unliquidated, such attachments cannot be allowed in all such suits for damages. The Texas courts hold that, where unliquidated damages are demanded, the contract alleged [**6] as the cause of action must afford a rule for ascertaining the damages, so that the [*1369] amount with propriety can be averred in the affidavit. If the amount of unliquidated damages claimed are so uncertain that the amount cannot be determined until a jury shall have ascertained it, then attachment will not lie. This rule has been uniformly followed in Texas and has never

been questioned. *Hochstadter v. Sam, 73 Tex. 315, 11 S.W. 408 (1889);* accord, *Kildare Lumber Co. v. Atlanta Bank, 91 Tex. 95, 41 S.W. 64 (1897); El Paso National Bank v. Fuchs, 89 Tex. 197, 34 S.W. 206 (1896);* see also *Gimbel v. Gomprecht, 89 Tex. 497, 35 S.W. 470 (1896); Avery v. Zander, 77 Tex. 207, 13 S.W. 971 (1890).*

This rule is still liable, as exemplified by more recent cases in which the rule has been held to be applicable to cases in garnishment. *Cleveland v. San Antonio Building & Loan Ass'n, 148 Tex. 211, 223 S.W.2d 226 (1949);* see also *Butler, Rinehart & Morrison v. McDaniel, 288 S.W.2d 188* (Tex.Civ.App. -- Dallas 1956, error ref'd n.r.e.); *Thomas v. Buehler, 254 S.W.2d 223* (Tex. [**7] Civ.App. -- Austin 1953).

Art. 281, Vernon's Annotated Texas Civil Statutes (1913), provides:"Nothing in this title (Title 13) shall prevent the issuance of attachments in suits founded in tort or upon unliquidated demands against persons, co-partnerships, associations or corporations upon whom personal service cannot be obtained within this State."

Attachment is a statutory remedy and its validity does not depend upon the truthfulness of the allegations of the affidavit or petition, but upon the compliance with the statute in making the affidavit. *Gimbel v. Gomprecht, supra.* The affidavit in the instant case alleges that defendant is a foreign corporation but does not allege that personal service cannot be obtained within the state. Plaintiff must state truly whether its debt is due in whole or in part, and if due in part only, it must state what part is due and what part is not due. *Avery v. Zander, supra.* The affidavit does not satisfy the requirements of the statute.

It should be noted that no cases were cited by appellant on this issue.

We hold that the district court properly quashed the writ of attachment, but [**8] it becomes immaterial, considering the disposition of the case by summary judgment, hereinafter.

## III

## SUMMARY JUDGMENT

The district court granted summary judgment for defendant, upon its motion. It is provided by *Rule 56, F.R.Civ.P.* that either party may move for summary judgment if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Plaintiff's complaint alleges that the agreement for additional financing was based upon an oral agreement with plaintiff that in consideration of plaintiff's closing the permanent financing and continuing to operate the

property, the defendant would make the loan increase to plaintiff to cover plaintiff's operating losses for the first two years of operation of the apartment project beginning August 1, 1964, as contemplated by the Federal Housing Administration regulations and in an amount which would be approved by the F.H.A.

It is undisputed from the pleadings, the depositions on file and the supporting affidavits that (1) F.H.A. did not approve an additional loan in any amount, and (2) Teachers' agreement to make the additional loan was an oral agreement, [**9] not supported by any writing, formal or informal.

Mr. David M. Thornton, attorney for 21, testified by deposition to conversations with Mr. Cunningham, representing the F.H.A., and with Messrs. Furlong and Trombly, representing Teachers, as follows:"Q Did you ask Mr. Cunningham for a confirmation in writing of the FHA's agreement?

"A Sure did.
 [*1370] "Q Did you get it?
"A No.
"Q Why did he tell you he wasn't going to give it to you?
"A Just the same reason Dee didn't want my letter.
"Q What did Mr. Cunningham say to you?
"A Mr. Cunningham said, 'I couldn't give you that agreement under these circumstances with all the trouble this project has had and have us committed to pick up your losses for you staying in there in writing.'
"Q All right.   Mr. Thornton, after you had this discussion with Furlong and Trombly and they had made this promise, did you ask them to confirm it in writing?
"A Yes, I did.
"Q And what did they say?
"A The same reason Cunningham gave.
"Q What, specifically? State the reason.
"A Well, at that time, you recall, and subsequent to that time there were all kinds of publicity about Gevinson and there was quite a bit of [**10] complaints to the Teachers and to the bank about this loan, and this kind of a deal is -- would not look very good.
"Q So they refused to put it in writing?
"A That's right.
"Q In other words, you asked for it in writing and they refused to put it in writing?"
(Depo. of David M. Thornton, p. 51, line 10, to p. 52, line 12)

The witness also testified in the deposition that no one heard the agreement made with Cunningham or the conversation between him and Furlong and Trombly. (pp. 52-53) The following statement made by the witness is also significant:"A I don't like the word

'agreement' you keep on using, so I might as well get the record straight on that.  I don't think it was an agreement.   It was a promise on their part, both of them, to do certain things if we stayed in there and operated and managed the property * * *."

(Depo. of David M. Thornton, p. 54, line 15-19) Thornton also testified:
"Q Then without going through your other pleadings, the basis of your present lawsuit is those two statements, one made by Cunningham to you and the other made by Furlong and Trombly, is that right?
"A Promises made, plus the fact of our staying in their [**11] and doing that.
"Q I understand.  But the point about it is that these conversations, one with Cunningham sometime before November 24 --
"A. Yes.
"Q.   -- and the conversations with Trombly and Furlong on November 24, are the basis of your lawsuit?
"A. Yes, sir.
(Depo. of David M. Thornton, p. 59, lines 12-23)

Plaintiff's cause of action, according to its pleadings and the undisputed facts, is barred by the Statute of Frauds, codified into the laws of Texas, Art. 3995, Vernon's Annotated Texas Civil Statutes, as follows:

Article 3995. [3965] [2543] [2464] Writing required

No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized:

1.  To charge any executor or administrator upon any promise to answer [*1371] any debt or damage due from his testator or intestate, out of his own estate; or,

2.  To charge any person upon a promise to answer for the debt, default or miscarriage of another; or,

3.  To charge any [**12] person upon any agreement made upon consideration of marriage; or,

4.  Upon any contract for the sale of real estate or the lease thereof for a longer term than one year; or,

5.  Upon any agreement which is not to be performed within the space of one year from the making thereof. Acts 1840, p. 28; P.D. 3875; G.L. vol. 2, p. 202.

The oral promise asserted by Thornton's testimony is clearly within the statute.  Not only is the agreement not in writing but, according to Thornton's testimony, defendant refused to put it in writing, and plaintiff was on notice of it from such time.  According to the testimony, the oral promise was made on November

425 F.2d 1366; 1970 U.S. App. LEXIS 9315

24, 1964. And Thornton further testified, at page 44 of his deposition:Then Cunningham had told you in Washington -- did Cunningham agree on behalf of FHA at that time that they would do it?

A. Yes, he did. He said, "If you will stay in there and operate this project and keep it going, subject to everything else being all right at the end of two years, we will give you a mortgage increase."

Q. Did you understand that that was a firm agreement between you and Cunningham at that time?

A. I certainly did, subject [**13] to us being in there and operating the place.

Q. And no other conditions?

A. No.

Q. All you had to do was operate for two years, and you thought that was an agreement for an automatic mortgage increase; is that right?

A. That's right.

Q. And then you went down and told Mr. Bullen and Mr. Fortenberry that you had a firm agreement with FHA that at the end of two years they were going to give you a mortgage increase to pick up the amount of your operating losses, if you had any; is that right?

A. I had a firm promise, as far as I am concerned, from Mr. Cunningham, that the FHA would approve this if we did [45] these things.

The Statute of Frauds bars plaintiff's claim based upon the oral agreement. It involves a mortgage of real estate. A mortgage or other lien upon real estate cannot be given by parol. *West v. First Baptist Church of Taft, 123 Tex. 388, 71 S.W.2d 1090 (1934); Allen v. Allen, 101 Tex. 362, 107 S.W. 528 (1908); Home Investment Co. v. Fidelity Petroleum Co., 249 S.W. 1109* (Tex.Civ.App., Dallas 1923, err. ref.); *Aaron Frank Clothing Co. v. Deegan, 204 S.W. 471* (Tex.Civ.App., San Antonio [**14] 1918, err. ref.). The Statute of Frauds further bars the claim based upon the oral agreement as an agreement not to be performed within the space of one year from the making thereof. *Paschall v. Anderson, 127 Tex. 251, 91 S.W.2d 1050 (1936);* Accord, *Chevalier v. Lane's, Inc., 147 Tex. 106, 213 S.W.2d 530 (1948).*

The oral and unenforceable promises of Teachers' representatives, Furlong and Trombly, do not raise an estoppel against Teachers to assert the Statute of Frauds, Sec. 90, Restatement of Contracts, recognized by Texas and other jurisdictions as a statement of the doctrine of promissory estoppel, reads as follows:

"A promise which the promisor should reasonably except to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

From Thornton's testimony, most favorable to 21, we must look to what Mr. [*1372] Cunningham, representing FHA told him, that he could not give an agreement under the circumstances, "with all the trouble this project has had and have us committed [**15] to pick up your losses for you staying in there, in writing." FHA did not approve an additional loan in any amount. By the undisputed evidence, the failure was in the performance of 21. Promissory estoppel is simply not in the case.

The judgment of the district court is affirmed.

**SHEPARD'S(R) Signal: Caution: Possible negative treatment**

*Shepard's* request: 425 f2d 1366
Format: KWIC
Results restricted to the following editorial treatments: UNRESTRICTED

**CITATION AS APPEARS IN** *Shepard's*:

21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System, 425 F.2d 1366, 1970 U.S. App.
LEXIS 9315 (5th Cir. Tex. 1970) *(3 citing references)*

**SUBSEQUENT APPELLATE HISTORY** *( 2 citing references )*

1.      *Modified by*:
        21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System, 432 F.2d 64, 1970 U.S.
        App. LEXIS 7249 (5th Cir. Tex. 1970)

2.      *Writ of certiorari denied*:
        21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System, 401 U.S. 955, 28
        L. Ed. 2d 239, 91 S. Ct. 975, 1971 U.S. LEXIS 2823 (1971)

**CITING DECISIONS** *( 1 citing decision )*

**4TH CIRCUIT - U.S. DISTRICT COURTS**

3.      *Distinguished by*:
        Piracci v. New York City Employees' Retirement System, 321 F. Supp. 1067, 1971 U.S. Dist. LEXIS
        14845 (D. Md. 1971)
            321 F. Supp. 1067, 1071

781 F.2d 494; 1986 U.S. App. LEXIS 21258

MILLER BREWING COMPANY, Plaintiff-Appellant, v. FORT WORTH DISTRIBUTING CO., INC., Defendant-Appellee

No. 85-1156

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

781 F.2d 494; 1986 U.S. App. LEXIS 21258

January 30, 1986

**PRIOR HISTORY:** [**1]

Appeal from the United States District Court for the District of Northern Texas, A. Joe Fish, District Judge, Presiding.

**DISPOSITION:** REVERSED.

**COUNSEL:** John T. Helm, Texas, Cecil W. Casterline Texas; Mark M. Petzinger Texas; Drew R. Heard Texas, for Appellant.

Goins, Underkofler, Crawford, Dallas, Texas, Durwood D. Crawford Texas, for Appellee.

**JUDGES:** Irving L. Goldberg, Thomas M. Reavley and Will Garwood, Circuit Judges.

**OPINIONBY:** GOLDBERG

**OPINION:** [*495] IRVING L. GOLDBERG, Circuit Judge:

This case has been brewing far too long. Things came to a head when plaintiff-appellee Fort Worth Distributing Company went into state court in 1980 to prevent Miller Brewing Company from terminating a distributorship agreement between the two companies. After having its state court suit dismissed with prejudice for want of prosecution, however, Fort Worth Distributing now invokes an arbitration clause in order to pursue essentially the same claim. We find Fort Worth Distributing's case flat and stale at this juncture, and direct the district court to grant Miller Brewing's application for a stay of arbitration.

I.    FACTUAL    AND    PROCEDURAL BACKGROUND

On October 28, 1978, Miller Brewing [**2] Company ("Miller") and Fort Worth Distributing Company, Inc. ("FWDC") entered into a Distributorship Agreement. 2 Record on Appeal ("Rec."), Exhibit A, at 10. This Agreement granted FWDC the right to distribute Miller beer products in Tarrant County, Texas, for five years, but provided that Miller could terminate the Agreement at any time on ten days' notice. Id. at 1-2. The Agreement further provided that, in the event of

early termination, FWDC could demand that an arbitration panel be formed to hear "any claim by Distributor arising out of, relating to, or resulting from the termination of this Agreement by Miller. . . ." Id. at 2, 9. If an arbitration panel found that Miller had terminated FWDC without "cause," as defined by an accompanying Addendum on Arbitration, the panel could order Miller to pay compensatory monetary damages to FWDC. Id. at 9-13.

On the same day that they signed the Distributorship Agreement Miller and FWDC also entered into a supplemental Memorandum Agreement. This Memorandum Agreement addressed certain events and activities that had taken place during the term of FWDC's previous Distributorship Agreement with Miller. Apparently, FWDC employees [**3] or officers had been making payments and giving gifts to Miller's [*496] regional managers. n1 The Memorandum Agreement provided that FWDC would furnish to Miller all evidence, documents, and records relating to payments made to Miller employees; in return, Miller agreed that "no information obtained pursuant to this Agreement will be used to terminate, cancel or refuse to renew the . . . Distributorship Agreement. . . ." Memorandum Agreement (2 Rec., Exhibit E) at 1.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 FWDC notes in its brief that the gifts, as befits Texas-style bribery, consisted of rifles, hats, and boots. Appellee's Brief at 4.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In a letter dated April 7, 1980, however, Miller notified FWDC that the Distributorship Agreement was being terminated as of July 10, 1980. In response, FWDC brought a lawsuit in Texas state court on April 29, 1980, complaining that Miller's action would result in damages in excess of five million dollars; FWDC

sought to enjoin Miller from terminating the Distributorship Agreement and also demanded attorney's [**4] fees and "such other and further relief to which it may show itself justly entitled." *Fort Worth Distributing Co., Inc. v. Miller Brewing Company, et al.*, No. 141-60627-80, Plaintiff's Original Petition (2 Rec., Exhibit E), at 10. Miller had the state court action removed to the United States District Court for the Northern District of Texas. The removal decision came before this court on appeal, and the case was remanded to the state district court. *B., Inc. v. Miller Brewing Co., 663 F.2d 545 (5th Cir. 1981)* (companion case).

Meanwhile, FWDC had notified Miller in a letter of January 2, 1981, that it was demanding arbitration pursuant to the Distributorship Agreement and the supplemental Memorandum Agreement. As FWDC acknowledges in its brief, however, "Neither Miller nor FWDC took steps to cause the American Arbitration Association to schedule a hearing until FWDC did so on September 22, 1984." Appellee's Brief at 2. FWDC probably chose that occasion to set arbitration in motion because its state court suit had just been dismissed with prejudice for want of prosecution the day before. Miller sought a stay of arbitration proceedings in the United States District [**5] Court, Fish, J., and now appeals the dismissal by that court of its application for injunctive relief.

## II. STANDARD OF REVIEW

As it comes before this court, this case presents few, if any, important factual disputes. Jurisdiction is proper under *28 U.S.C. §§ 1332* (diversity of citizenship (Texas and Wisconsin)) and 1291 (final decisions). Both parties have stipulated to the essentials of the factual and procedural history outlined above. Stipulation and Agreement, 1 Rec., at 2. The only question before this court is whether the district court properly dismissed Miller's application for a stay of arbitration proceedings.

In ruling on Miller's application for injunctive relief the district court below saw no witnesses and heard no testimony. As contemplated by *Fed. R. Civ. P. 43(e)*, the matter was determined on affidavits. Of course, the parties are in disagreement as to the legal implications that should be drawn from the facts. But in these circumstances an appellate tribunal has broad authority *to substitute its own conclusions of law for those of the trial court. Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984)* [**6] (the clearly-erroneous standard "does not inhibit an appellate court's power to correct errors of law").

## III. WAIVER OF ARBITRATION

We first consider whether FWDC has waived its right to arbitration by invoking the judicial process and forcing Miller to expend substantial amounts of time and money defending itself in that forum. Waiver of arbitration is not a favored thing, and there is a presumption against it. As the Supreme Court stated in *Moses H. Cone Memorial Hospital v. Mercury Construction Company, 460 U.S. 1, 24, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983)*, "questions [*497] of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *See 9 U.S.C. § 2.* Nevertheless, under appropriate circumstances a waiver of arbitration may be found. Even in stressing the policy favoring arbitrability the *Moses Cone* Court noted that "Congress' clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *460 U.S. at 22.* n2 Here, of course, FWDC's first step was to move the parties [**7] *into* court; its belated attempt to arbitrate 3 1/2 years later, after losing in court, can hardly be seen as moving the parties into arbitration "as quickly and easily as possible." n3

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n2 *Cf. Radiator Specialty Co. v. Cannon Mills, 97 F.2d 318, 319 (4th Cir. 1938)* ("It is clearly the intention of Congress to provide that the party seeking to enforce arbitration can do so only when not guilty of dilatoriness or delay."); *Prima Paint Corp. v. Flood & Conklin, 388 U.S. 395, 404, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967)* (honoring "clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts").

n3 We are mindful of the admonitions of the Chief Justice and others that arbitration is ordinarily preferable to litigation, but to allow arbitration on top of the protracted litigation in this case would be to add insult to injury. The doctrine of res judicata, *see* section IV *infra*, and its cousin collateral estoppel have probably done more to prevent useless and wasteful litigation than arbitration ever could.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

[**8]

781 F.2d 494; 1986 U.S. App. LEXIS 21258

Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party. n4 "The right to arbitration, like any other contract right, can be waived. A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." *Cornell & Co. v. Barber & Ross Co., 123 U.S. App. D.C. 378, 360 F.2d 512, 513 (D.C. Cir. 1966)* (footnotes omitted); *accord Burton-Dixie Corp. v. Timothy McCarthy Const. Co., 436 F.2d 405, 407-08 (5th Cir. 1971).* As this court noted in *E.C. Ernst, Inc. v. Manhattan Const. Co., 559 F.2d 268, 269 (5th Cir. 1977),* "When one party reveals a disinclination to resort to arbitration on any phase of suit involving all parties, those parties are prejudiced by being forced to bear the expenses of a trial. . . . Substantially invoking the litigation machinery qualifies as the kind of prejudice . . . that is the essence of waiver." n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 The issue of arbitrability under the United States Arbitration Act is a matter of federal substantive law. *Prima Paint, 388 U.S. at 402-08; In re Mercury Const. Corp., 656 F.2d 933, 938-41 (4th Cir. 1981), aff'd, Moses Cone, 460 U.S. at 23-26; E.C. Ernst, Inc. v. Manhattan Const. Co. of Texas, 551 F.2d 1026, 1040 (5th Cir. 1977).* We thus dismiss out of hand FWDC's citation of 60 Tex. Jur. 2d 199 for the propositions that "waiver is a question of fact based largely on intent. It is defined as 'an intentional release, relinquishment, or surrender of a right that is at the time known to the party making it.'"

[**9]

n5 *See also Midwest Window Systems v. Amcor Industries, 630 F.2d 535 (7th Cir. 1980)* (right to arbitration waived even where issue submitted to court was non-arbitrable).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

FWDC has demonstrated a clear and unmistakable "disinclination" to arbitrate, and has done so to the substantial detriment and prejudice of Miller. FWDC's Original Petition in the Texas court suit against miller did not rely on or even mention the arbitration clause. Only in January, 1981 -- nearly eight months after bringing its state court suit -- did FWDC announce its intention to arbitrate. Thereafter, however, "Neither Miller nor FWDC took steps to cause the American Arbitration Association to schedule a hearing until FWDC did so on September 22, 1984." Appellee's Brief at 2.

While its demand for arbitration lay dormant for 3 1/2 years, FWDC was busily pursuing its legal remedies. Lawsuits were filed, at one time or another, in state trial court, the state court of appeals, federal district court, and this court. Of course, Miller had to participate and defend its interests in all these actions. The [**10] record reveals that numerous depositions were taken, and that Miller paid over $85,000 in legal fees and expended more than 300 hours of its own employees' time defending [*498] the FWDC claims. Affidavit of Warren H. Dunn, 3 Rec., Exhibit G; Affidavit of John T. Helm, 3 Rec. at 39. *Cf. Brown-McKee, Inc. v. Fiatallis, 587 F. Supp. 38, 40 (N.D. Tex. 1984)* (finding waiver of arbitration where defendant in earlier suit expended 100 man-hours and $1,400 in attorney's fees).

Even more significant, perhaps, is the prejudice to Miller's legal position that resulted from FWDC's actions. A party to arbitration does not have a right to the pre-trial discovery procedures that are used in a case at law. A party "may not invoke arbitration and yet seek pre-trial discovery going to the merits. . . . Any attempt to go to the merits and to retain still the right to arbitration is clearly impermissible." *Graig Shipping Co. v. Midland Overseas Shipping Corp., 259 F. Supp. 929, 931 (S.D.N.Y. 1966).* n6 There is every indication that Miller's position would be prejudiced and compromised in arbitration by FWDC's use of pre-trial discovery going to the merits. In [**11] its Brief in Support of Remand filed in Federal District Court, for example, FWDC notes thatIn the four depositions already taken by Plaintiff of Hall, White, Andrews, and Warren Dunn, General Counsel of Miller Brewing Company, several important and undisputed facts have emerged, already proving many of the elements of the alleged conspiracy.

Brief in Support of Plaintiff's Motion for Remand (3 Rec., Exhibit I), at 4. Later in the same brief FWDC concludes as follows:

Plaintiff expects to prove considerably more through its own witnesses at time of trial, but it believes and alleges that the above undisputed facts taken from the testimony or documentary evidence produced by Defendants themselves already establish the major elements of a case against Defendants White, Andrews and Hall, and establish their complicity in the scheme for Miller Brewing Company to terminate Fort Worth Distributing Company in violation of agreements.

Page 3

781 F.2d 494; 1986 U.S. App. LEXIS 21258

*Id.* at 6. Clearly, the discovery taken by FWDC in its legal proceedings goes to the merits of the claim it now seeks to arbitrate, namely the issue of wrongful termination. We have no difficulty concluding from these facts [**12] alone that FWDC thus waived its right to arbitration.

-------------- Footnotes ---------

------

n6 *Cf. Penn Tanker Co. of Delaware v. C.H.Z. Rolimpex, Warszawa, 199 F. Supp. 716, 718 (S.D.N.Y. 1961); Commercial Solvents Corp. v. Louisiana Fertilizer Co., Inc., 20 F.R.D. 359, 361 (S.D.N.Y. 1957)* ("By voluntarily becoming a party to a contract in which arbitration was the agreed mode for settling disputes thereunder respondent chose to avail itself of procedures peculiar to the arbitral process rather than those used in judicial determination."); Note, *Developments in Law -- Discovery*, 74 Harv. L. Rev. 940, 943 (1961) (expense of discovery as inconsistent with desire to arbitrate).

------------ End Footnotes- ------- ------

## IV. RES JUDICATA

Even if the waiver considerations outlined above did not apply, we would still have good grounds for enjoining arbitration proceedings in this case. The doctrine of res judicata, as developed by Texas courts, ensures that when a court of competent jurisdiction has entered a final judgment on the merits [**13] of a case, the parties are bound as to all claims that were raised or that *could* have been raised. n7 The Texas Supreme Court has declared that the rule of res judicata in Texas bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former action as well as those which were actually tried. . . . Stated differently, a party cannot relitigate matters which he might have interposed, but failed to do so, in an action between the same parties or their privies in reference to the same subject matter.

[*499] *Abbott Laboratories v. Gravis, 470 S.W.2d 639, 642 (Tex. 1971); see also Segrest v. Segrest, 649 S.W.2d 610, 612 (Tex. 1983); State v. Sunray DX Oil Co., 503 S.W.2d 822, 827-28 (Tex. Civ. App. -- Corpus Christi 1973).* The Arbitration Act contemplates that awards made pursuant to arbitration will be confirmed in the federal courts. *9 U.S.C. § 9.* Since an arbitration award involves the entry of judgment by a court, parties should be barred from seeking relief from arbitration panels when, under the doctrine [**14] of res judicata, they would be barred from seeking relief in the courts. *See Ank Shipping Co. v. Seychelles National Commodity Co., 596 F. Supp. 1455, 1458-59 (S.D.N.Y. 1984); N.Y.S. Association for Retarded Children v. Carey, 456 F. Supp. 85, 96 (E.D.N.Y. 1978).*

-------------- Footnotes ----- ---- ------

n7 In applying the doctrine of res judicata we look to the effect that a Texas state court would give to a prior Texas state court judgment. *Flores v. Edinburg School District, 741 F.2d 773 (5th Cir. 1984); Southern Jam, Inc. v. Robinson, 675 F.2d 94, 97-98 (5th Cir. 1982); Allen v. McCurry, 449 U.S. 90, 95-96, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980)* (interpreting 28 U.S.C. § 1738); Restatement (Second) of Judgments § 134 (Tent. Draft No. 7, 1980).

------------ End Footnotes- ------- ------

Counsel for appellee and the district court below emphasized repeatedly that FWDC's state court suit involved non-arbitrable matters. This claim is true but irrelevant. As Miller correctly [**15] and succinctly notes in its brief, it is irrelevant that FWDC did not have a right to arbitrate its claim for injunctive relief. FWDC had the right to seek damages for wrongful termination in the court action against Miller in addition to its seeking injunctive relief. Simply put, when FWDC elected to file its lawsuit, it elected its forum for relief and was required to raise all issues and theories of recovery in that proceeding.

Appellant's Brief at 11. Once FWDC elected state court as its forum for relief, the relevant question is whether the damages provided for in the arbitration clause could have been sought in court, not whether the injunctive relief sought in court could have been granted in arbitration. FWDC's claim is logically of the same form as the claim: "Not all mammals are rabbits." This claim is doubtless true, but who (other than a lawyer) would bother to assert it? The relevant claim would be: "Not all rabbits are mammals." In other words, FWDC should argue that the more inclusive category of claims that can be adjudicated in state court (the "mammals") does not include all its arbitrable claims (the "rabbits"). This claim, if true, would explain [**16] and justify FWDC's attempt to "reserve" its arbitrable claims for later and separate determination, after its lawsuit had been concluded. But FWDC does not, and by all indications cannot, make this claim; instead, it appears that FWDC could

781 F.2d 494; 1986 U.S. App. LEXIS 21258

have amended its state court pleadings at virtually any point in this protracted litigation to include a claim for the damages (for wrongful breach of the Distributorship Agreement) it now seeks to arbitrate. *See* Texas Rules of Civil Procedure 63 (Amendments), 66 (Trial Amendment), 67 (Amendments to Conform to Issues Tried Without Objection).

Thus, even if we assume that FWDC's state court suit did not include a claim for damages of the sort covered by the arbitration clause, FWDC is nonetheless barred from arbitrating that claim now because such a claim *could* have been included in the state court suit. On closer examination, moreover, it appears that FWDC *did* implicitly make the same claim for damages in state court that it now seeks to arbitrate.

We turn first to FWDC's state court pleadings. Essentially, they allege causes of action for breach of contract, tortious interference with existing and prospective contractual relations, [**17] and conspiracy; they estimate that FWDC's damages are in excess of five million dollars and demand injunctive relief, attorney's fees, and "such other and further relief to which [FWDC] may show itself justly entitled." FWDC maintains that these pleadings "*never sought to recover against Miller because of Miller's termination without cause, i.e., for breach of the Distributorship Agreement,*" and characterized the Memorandum and Distributorship Agreements as "totally separate" contracts giving rise to completely different causes of action. Appellee's Brief at 18, 4. To hear FWDC tell it, the state court suit was simply an action for injunctive relief, based solely on the Memorandum Agreement, while the arbitration would be for damages under the Distributorship Agreement.

[*500]  We cannot help but note, however, that the one-page Memorandum Agreement refers by its terms to the Distributorship Agreement no less than four times and concludes as follows: "Miller agrees that no information obtained pursuant to this [Memorandum] Agreement will be used to terminate, cancel or refuse to renew the above described Distributorship Agreements. . . ." As for the pleadings in paragraph [**18] I FWDC cites the Distributorship Agreement and compliance therewith as the basis for its claims, making no mention of the Memorandum Agreement. Plaintiff's Original Petition (3 Rec., Exhibit E), at 1. In paragraph V Miller alleges that Miller's planned cancellation of the "Distributorship Agreement . . . is in violation and breach of the Memorandum Agreement. . . ." *Id.* at 3. Paragraph VII alleges a "conspiracy . . . to intentionally cause great and irreparable damage to Fort Worth Distributing by preventing the renewal of the Distributorship Agreement and thus preventing compliance by Miller

with the Memorandum Agreement," and paragraph VIII restates this as a "conspiracy to violate the Memorandum Agreement and to cancel Fort Worth Distributing's Distributorship Agreement." *Id.* at 4. In light of these pleadings, we are unable to view FWDC's state court action as simply an application for injunctive relief premised solely on the Memorandum Agreement. The two agreements are inextricably intertwined, and the Distributorship Agreement is the *sine qua non* of FWDC's state court action.

Further clarification of FWDC's state court claims is provided by other briefs and papers [**19] filed in court. In its Brief in Support of Plaintiff's Motion for Leave to File First Amended Complaint, filed in Federal District Court on June 11, 1980, FWDC stated that "There has been no change to the substance of the liability theory or *damages* theories asserted by Plaintiff." 1 Rec. at 66 (emphasis added). In its letter of January 2, 1981, putting Miller on notice that it was demanding arbitration, FWDC asserted:

This demand for arbitration is made without waiving our claim for *damages* arising out of the matters alleged in Civil Action No. CA 4-80-138-E in the United States District Court for the Northern District of Texas Fort Worth Division, styled *Fort Worth Distributing Company, Inc. v. Miller Brewing Company, et al*, and we continue to insist upon our right to recover in that suit *full damages*. . . .

*Id.* at 65 (emphasis added). We take FWDC literally at its own word, then in determining that its state court suit could have included, and in fact did include, a claim for damages.

In arguing that its state court suit and its demand for arbitration are based on different causes of action, and that the latter is thus not barred by the doctrine [**20] of res judicata, FWDC faces a difficult hurdle. As this court observed recently in *Flores v. Edinburg Consolidated Independent School District*, 741 F.2d 773, 779 (5th Cir. 1984), under Texas law "A different cause of action is not merely a different theory of recovery; it should differ in 'the theories of recovery, *the operative facts*, and the measure of recovery,' *Dobbs v. Navarro*, 506 S.W.2d 671, 673 (Tex. Civ. App. 1974) (emphasis added)." As detailed above, the "operative fact" underlying both FWDC's state court suit and its demand for arbitration is the early termination of its Distributorship Agreement with Miller. Without that bedrock fact, neither claim would have any basis. n8 Moreover, it is not altogether clear that the two actions even differ in their theories of recovery or their measures of recovery. As noted amply above, FWDC managed to assess its monetary damages in its Original Petition filed [*501] in state court, and in briefs and other official documents it

Page 5

781 F.2d 494; 1986 U.S. App. LEXIS 21258

consistently styled its state court suit an action for damages. We thus conclude that FWDC is barred under the doctrine of res judicata from pursuing essentially the [**21] same claim now in arbitration.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n8 *See Flores, 741 F.2d at 777* ("'[A] different cause of action' is one that proceeds not only on a sufficiently different legal theory but also on a different factual footing as not to require the trial of facts material to the former suit; that is, an action that can be maintained even if all the disputed factual issues raised in the plaintiff's original complaint are conceded in the defendant's favor.")

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

## V. CONCLUSION

This case has consumed more than its share of judicial resources. We acknowledge that the doctrines of waiver and res judicata are stern ones, and that with more foresight or prescience FWDC might have avoided their harsh consequences. As this case comes before us, however, the equities weigh so strongly in Miller's favor that even a draught from the fabled Pierian Springs would probably not lend FWDC sufficient inspiration to prevail.

We conclude that FWDC has waived its right to arbitration by substantially invoking the judicial process [**22] to the considerable inconvenience, detriment, and prejudice of Miller. We conclude further that, even if waiver considerations did not apply, FWDC is barred from arbitration under the doctrine of res judicata because it could have included, and implicitly did include, in its state court proceedings a claim for the damages it now seeks to arbitrate.

Accordingly, we REVERSE and direct the district court to grant Miller Brewing Company's application for a stay of arbitration.

REVERSED.

## SHEPARD'S(R) Signal: Caution: Possible negative treatment

*Shepard's* request: 781 f2d 494
Format: KWIC
Results restricted to the following editorial treatments: UNRESTRICTED

## CITATION AS APPEARS IN *Shepard's*:

Miller Brewing Co. v. Ft. Worth Distributing Co., 781 F.2d 494, 1986 U.S. App. LEXIS 21258 (5th Cir. Tex. 1986)
*(20 citing references)*

## CASE HISTORY *( 1 citing reference )*

1.     ***Same case at***:
       B., Inc. v. Miller Brewing Co., 663 F.2d 545, 1981 U.S. App. LEXIS 15337 (5th Cir. Tex. 1981)

## CITING DECISIONS *( 19 citing decisions )*

## 2ND CIRCUIT - U.S. DISTRICT COURTS

2.     ***Distinguished by***:
       North River Ins. Co. v. Allstate Ins. Co., 866 F. Supp. 123, 1994 U.S. Dist. LEXIS 14622 (S.D.N.Y. 1994)
            866 F. Supp. 123, 131

## 3RD CIRCUIT - COURT OF APPEALS

3.     ***Followed by***:
       John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 1998 U.S. App. LEXIS 18357 (3d Cir. Pa. 1998)
            151 F.3d 132, 137

## 5TH CIRCUIT - COURT OF APPEALS

4.     ***Distinguished by***:
       Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am., 97 Fed. Appx. 462, 2004 U.S. App. LEXIS 7639 (2004)
            ***Distinguished by:***
            97 Fed. Appx. 462, 466

5.     ***Followed by***:
       Steel Warehouse Co. v. Abalone Shipping, 141 F.3d 234, 1998 U.S. App. LEXIS 10397, 1998 A.M.C. 2054 (5th Cir. La. 1998)
            141 F.3d 234, 238

6.     ***Criticized by***:
       Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1986 U.S. App. LEXIS 26017, Fed. Sec. L. Rep. (CCH) P92790 (5th Cir. Tex. 1986)

## 5TH CIRCUIT - U.S. DISTRICT COURTS

7.     ***Followed by***:
       Bank One, La., N.A. v. Cameron, 2001 U.S. Dist. LEXIS 18079 (E.D. La. Oct. 22, 2001)
            2001 U.S. Dist. LEXIS 18079

8.     ***Distinguished by***:
       Broadscape.com, Inc. v. KDS USA, Inc., 2001 U.S. Dist. LEXIS 14609, 12 Am. Disabilities Cas. (BNA) 597 (E.D. La. Sept. 11, 2001)
            2001 U.S. Dist. LEXIS 14609

9.    *Followed by*:
       Consorcio Rive, S.A. de C.V. v. Briggs of Cancun, Inc., 134 F. Supp. 2d 789, 2001 U.S. Dist. LEXIS
       2939 (E.D. La. 2001)
            134 F. Supp. 2d 789, 795

10.   *Followed by*:
       McAuslin v. Grinnell Corp., 2001 U.S. Dist. LEXIS 128 (E.D. La. Jan. 3, 2001)
            2001 U.S. Dist. LEXIS 128

## 6TH CIRCUIT - COURT OF APPEALS

11.   *Followed by*:
       Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, 97 F.3d 155, 1996 U.S. App. LEXIS 25978, 1996
       FED App. 321P (6th Cir.), 1996 FED App. 0321P (6th Cir.), 153 L.R.R.M. (BNA) 2402, 132 Lab. Cas.
       (CCH) P11689 (6th Cir. Ohio 1996)
            97 F.3d 155, 159

## 6TH CIRCUIT - U.S. DISTRICT COURTS

12.   *Criticized by*:
       Southern Sys. v. Torrid Oven, Ltd., 105 F. Supp. 2d 848, 2000 U.S. Dist. LEXIS 10683 (W.D. Tenn.
       2000)
            *Criticized by:*
            105 F. Supp. 2d 848, 852

## 7TH CIRCUIT - U.S. DISTRICT COURTS

13.   *Distinguished by*:
       Stulberg v. Intermedics Orthopedics, 997 F. Supp. 1060, 1998 U.S. Dist. LEXIS 3617 (N.D. Ill. 1998)
            997 F. Supp. 1060, 1068

## 8TH CIRCUIT - COURT OF APPEALS

14.   *Followed by*:
       Ewart v. Y & A Group (In re Y & A Group Sec. Litig.), 38 F.3d 380, 1994 U.S. App. LEXIS 29266, Fed.
       Sec. L. Rep. (CCH) P98429 (8th Cir. Mo. 1994)
            38 F.3d 380, 382

## 11TH CIRCUIT - U.S. DISTRICT COURTS

15.   *Criticized by*:
       Nicor Int'l Corp. v. El Paso Corp., 292 F. Supp. 2d 1357, 2003 U.S. Dist. LEXIS 21306, 17 Fla. L.
       Weekly Fed. D 78 (S.D. Fla. 2003)
            292 F. Supp. 2d 1357, 1369

16.   *Followed by*:
       Spurlock v. Life Ins. Co., 2000 U.S. Dist. LEXIS 20738 (M.D. Ala. Oct. 31, 2000)
            2000 U.S. Dist. LEXIS 20738

17.   *Distinguished by*:
       Drexel Burnham Lambert, Inc. v. Warner, 665 F. Supp. 1549, 1987 U.S. Dist. LEXIS 6935 (S.D. Fla.
       1987)
            665 F. Supp. 1549, 1553
            665 F. Supp. 1549, 1554

## KENTUCKY COURT OF APPEALS

18.   *Among conflicting authorities noted in*:
       Conseco Fin. Servicing Corp. v. Wilder, 47 S.W.3d 335, 2001 Ky. App. LEXIS 60 (Ky. Ct. App. 2001)
            47 S.W.3d 335, 345

**MISSISSIPPI SUPREME COURT**

19.    ***Cited in Dissenting Opinion at:***
       Sanderson Farms, Inc. v. Gatlin, 848 So. 2d 828, 2003 Miss. LEXIS 309 (Miss. 2003)
              848 So. 2d 828, 863

**TEXAS COURT OF APPEALS**

20.    ***Distinguished by:***
       In re Williams, 2003 Tex. App. LEXIS 10843 (Tex. App. Amarillo Dec. 30, 2003)
              2003 Tex. App. LEXIS 10843

Page 3