# NABORS DRILLING INTERNATIONAL

the Investor Persp

| Home | Overview | Rigs | HSE & Quality | Career Opportunities | Office Information |

## OFFICE INFORMATION

**US OFFICE:**
**NABORS INTERNATIONAL INC.**
515 W. Greens Rd. Suite 900
Houston, Texas 77067
TEL: (281) 874-0035
FAX: (281) 775-8144

**INTERNATIONAL OPERATIONS:**

**CORPORATE HEADQUARTERS:**
Canon's Court
22 Victoria Street
Hamilton HM12
Bermuda



**ALGERIA:**
Route Base 24 Fevrier
PO Box 400
Hassi Messaoud, Algeria
TEL: 213-29-73-4967, or
213-29-735-042, or
213-29-738-411
FAX: 213-29-73-8987

**ARGENTINA:**
Rodriguez Pena 680
Luzuriaga/Maipu 5513
Mendoza, Argentina
TEL: 54-261-4051118
FAX: 54-261-4051120

**AUSTRALIA:**
332 Raglan St
Sale, Victoria 3850
Australia
Mailing:
PO Box 161
Sale, Victoria 3850
Australia
TEL: 61-3-51-43-2011
FAX: 61-3-51-44-2417

**BOLIVIA:**
KM 6½ Carretera Antigua a
Cochabamba
Casilla 2821
Santa Cruz, Bolivia
TEL: 591-3-3541153
FAX: 591-3-3554800

**BRAZIL:**

**MEXICO:**
(note: this is the main office in Mexico)
AV.DE Las Palmas No. 820-DESPACHO 604
COL. Lomas DE Chapultepec
Delegacion Miguel Hidalgo
Mexico City, D.F., 11000
TEL: 52-55-5201-7210
FAX: 52-55-5202-2006

**MEXICO:**
Av. 2 Oriente Manzana G-Lote 1
Puerto Industrial Pesquero
Laguna Azul
Ciudad Del Carmen
Campeche, Mexico 11240
TEL: 52-938-381-0500
FAX: 52-938-28-60236

**MEXICO:**
BLVD. Lopez Mateos 312
Col. Neuvo Aeropuerto
Tampico, Tamaulipas, 89337
TEL: 52-833-224-7906
FAX: 52-833-224-7905

**MEXICO:**
Fraccionamiento Framboyanes calle ceiba 535
c.p. 86020
Villahermosa
Tabasco, Mexico
TEL: 52-993-314-9975
FAX: 52-993-314-9977

**MEXICO:**
Cd. Industrial Bruno Pagliai
Calle Abeduels

**EXHIBIT "A"**

10/25/2004

Queiroz Galvao, Perfuracoes S.A.
AV. Luciano Carneiro
1350 Fortaleza, Cerara, Brazil
CEP 60410-690
TEL: 55-71-341-3309
FAX: 55-85-256-6604

**COLOMBIA:**
Carrera 9 No. 74-08, Oficina 1202
SantaFeDe Bogota, D.C.
Colombia
TEL: 57-1-212-4600
FAX: 57-1-249-1396

**CONGO:**
Nabors Offshore Americas
S.A.R.L.
Avenue de Bordeaux
Enseinte du Port de Pointe Noire
B.P. 663
Pointe Noire
Republic of Congo
TEL: 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
FAX: 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

**ECUADOR:**
Avenida Portugal E10-47 Av. 6 de
Diciembre
Quito, Ecuador
TEL: 593-2-2446-335
FAX: 593-2-2446-341

**INDIA:**
332, Ambaji Sadan
Nanda Patkar Road
Vile Parle (East)
Mumbai, 400 057
India
TEL: 91-22-26137050
FAX: 91-22-26137051

**INDONESIA:**
Wisma GKB1 - Suite 1604
JL. Jend. Surdiman No.28
Jakarta 10210
Indonesia
TEL: 62-21-573-4116
FAX: 62-21-573-4127

**ITALY:**
Via Kennedy 32
San Donato Milanese, Italy 20097
TEL: 39-2557-00539
FAX: 39-2557-00355

**KAZAKHSTAN:**
537 Seyfullin Avenue
Almaty, 480012
Republic of Kazakhstan
TEL: 7-3272-504-705

Maz. 14, Lote 2 Bodega 2
Veracruz, Ver.
Mexico
TEL: 52-229-920-8891
FAX: 52-229-920-8906

**OMAN:**
Muscat Branch
Zubair-Furniture Compound
Sultanate of Oman
Azaiba, Oman
TEL: 968-592323
FAX: 968-591607

**QATAR:**
c/o Q.T.T.C.
P.O. Box 4455
Doha, Qatar
TEL: 974-4670861
FAX: 974-4674397

**RUSSIA:**
Office 1302
Mezhdunarodnaya 2,
Moscow World Trade Center,
12 Krasnopresnenskaya na.,
Moscow
Russia
Zip Code: 123610
TEL: 7-095-258-2086
FAX: 7-095-258-2087

**SAUDI ARABIA:**
Pool Arabia
P.O. Box 617
Dhahran Airport 31932
Dhahran, Saudi Arabia
TEL: 966-3-891-4982
FAX: 966-3-891-4642

**TRINIDAD:**
1st Avenue South
Western Main Road
Chaguaramas, POS
Trinidad and Tobago -TT W. Indies
TEL: 868-634-1801
FAX: 868-634-1332

**UAE:**
White Crown Bldg., Suite 402
Sheikh Zayed Road
P.O. Box 50563
Dubai, United Arab Emirates
TEL: 971-4-3314350
FAX: 971-4-3314360

**VENEZUELA:**
Avenue Jose Antonio Anzoategui
Anaco 6003
Edo. Anzoategui, Venezuela

FAX: 7-3272-504-703

**KAZAKHSTAN:**
House #6, Section VG
12th Microdistrict
Aktobe City
Republic of Kazakhstan
TEL: 7-3132-95-7918
FAX: 7-3132-56-7696

**MALAYSIA:**
Suite 34-1, Level 34, Menara UOA
II
19 Jalan Pinang
Kuala Lumpur, 50450
Malaysia
TEL: 60 (3) 2380-0108
FAX: 60 (3) 2380-0106

TEL: 58-261-731-7566
FAX: 58-261-731-8222

**MARACAIBO:**
Loffland Brothers De Venezuela, C.A.
KM-9 Carretera Via Perija
Maracaibo, Edo. Zulia, Venezuela
TEL: 58-261-731-8357
FAX: 58-261-731-8222

**YEMEN:**
P. O. Box 19878
Sana'a, Yemen
Republic of Yemen
TEL: 967-1-440-412
FAX: 967-1-440-411

**Nabors | About Nabors | Investor Information | Business Units | Career Opportunities | Contact I**

Copyright © 2003 Nabors Corporate Services



WINDOW ON STATE GOVERNMENT                    CAROLE KEETON STRAYHORN    Texas Comptroller of Public Accounts

Corporation Search Results

# Franchise Tax Certification of Account Status

## This Certification Not Sufficient for Filings with Secretary of State

Do **not** include a certification from this Web site as part of a filing with the Secretary of State for dissolution, merger, withdrawal, or conversion. The Secretary of State will reject a filing that uses the certification from this site.

To obtain a certificate that is sufficient for dissolution, merger, withdrawal, or conversion, see Publication 98-336, Requirements to Change Corporate Status.

| Certification of Account Status | Officers And Directors Information |
|---|---|
| Company Information: | **NABORS DRILLING INTERNATIONAL INC**<br>515 W GREENS RD STE 1200<br>HOUSTON, TX 77067-4599 |
| Status: | **NO STANDING DESIGNATED** |
| Registered Agent: | MICHAEL W DUNDY<br>515 W. GREENS RD STE 1200<br>HOUSTON, TX 77067 |
| Registered Agent Resignation Date: | |
| State of Incorporation: | CO |
| File Number: | 0008822106 |
| Charter/COA Date: | July 22, 1991 |
| Charter/COA Type: | COA |
| Taxpayer Number: | 30114768523 |

---

Carole Keeton Strayhorn
Texas Comptroller of Public Accounts

Window on State Government
Contact Us
Privacy and Security Policy

## EXHIBIT "B"

41

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 2 1 2004

Michael N. Milby
Clerk of Court

ZAPOTECA ENERGY, INC.,

§
§

Plaintiff/Counter-Defendant,

§
§

v.

§
§

§

CIVIL ACTION NO. B-04-048

CHARLES DOUGLAS PHILLIPS,

§
§
§

Defendant/Counter-Claimant.

§
§
§

### NABORS DRILLING INTERNATIONAL LIMITED'S MOTION TO INTERVENE AND, IF NECESSARY, REQUEST FOR EMERGENCY ORAL HEARING

Intervenor, Nabors Drilling International Limited ("Nabors"), files this Motion to Intervene and If Necessary, Request for Emergency Oral Hearing as a party-plaintiff, as authorized by Federal Rule of Civil Procedure 24, and would show the Court as follows:

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1.     On March 12, 2004, Zapoteca Energy, Inc. ("Zapoteca") sought a temporary restraining order and preliminary injunction against Charles Douglas Phillips ("Phillips"), former Master of the jackup barge Energy Zapoteca (the "Vessel"), seeking, among other things, that Phillips turn over records related to the business of Zapoteca that Phillips was allegedly refusing to produce to Zapoteca after his employment ended.   That same day, this Court granted Zapoteca's application for temporary retraining order.   On March 19, 2004, after a hearing on Zapoteca's application for temporary injunction, this Court entered an Agreed Order ordering, among other things, that Phillips transfer business records to be held by a third party, giving Phillips and Zapoteca access to the documents.

EXHIBIT "C"

2.     On April 20, 2004, Phillips filed an original counterclaim against Zapoteca, *in personam*, and the Vessel, *in rem*, seeking damages for back due and owing wages, breach of contract, wrongful termination, and quantum meruit.   Phillips alleged he was wrongfully terminated because he "faile[d] to perform [the] illegal act . . . . of mov[ing] the Rig Energy Zapoteca from where it was moored . . . . to another location" without the Port Master granting approval.  Phillips also sought arrest of the Vessel pursuant to Admiralty Supplemental Rule B because no property other than the Vessel could be found within Texas to secure any funds that Zapoteca may be obligated to pay Phillips for his claims.  Phillips also sought a maritime lien for wages and arrest of the Vessel.  Phillips filed a first amended counterclaim on April 26, 2004, dropping only his claim for maritime lien.

3.     On the same day Phillips filed his first amended counterclaim, he also filed a separate Motion for Arrest and Seizure of Vessel and Appointment of Substitute Custodian, asking that the Vessel be seized by the United States Marshall and released into the care and custody of a third party to maintain during the pendancy of the lawsuit.  The Court ordered on April 28, 2004, that Zapoteca respond to Phillips' Motion for Arrest and Seizure by a certain date.

4.     On April 30, 2004, Phillips filed a Motion for Clarification or, in the alternative, Application for Emergency Hearing on Temporary Restraining Order and Preliminary Injunction, seeking clarification of the Court's April 28, 2004 Order because it did not address movement or sale of the Vessel prior to the Court's ruling on Phillips' motion for arrest.

5.     On May 7, 2004, this Court ordered the Zapoteca not dispose of the Vessel for 45 days.

6.     On July 6, 2004 Zapoteca filed an Original Complaint against Phillips, asserting claims for breach of fiduciary duty, breach of contract, and conversion. Zapoteca alleges, in sum, that Phillips' conduct, during and after being employed by Zapoteca, caused Zapoteca approximately $1,160,500 in economic damages.

7.     Included in Zapoteca's Original Complaint against Phillips are details of Zapoteca's agreement with Nabors for its purchase of the Vessel from Zapoteca (the "Vessel Contract"). *See* Exh. A, attached to Nabors' Original Complaint in Intervention. Zapoteca alleges in its Complaint that Phillips, as Zapoteca's agent, engaged in conduct without the knowledge or consent of Zapoteca in facilitating the sale of the Vessel to Nabors. Zapoteca further alleges that Phillips conducted himself in "direct contravention to Zapoteca's instructions" regarding the transfer of the Vessel from Zapoteca to Nabors, likely causing delay that resulted in Zapoteca's failure to validly transfer the Vessel on time. Phillips unauthorized conduct as Zapoteca's agent also caused a dispute between Phillips and Nabors that resulted in Phillips filing suit against Nabors in Tuxpan, Mexico.

8.     In its July 8, 2004 Order, this Court ordered that its May 7, 2004 Order, that Zapoteca not move or sell the Vessel, remain in effect through mediation or until further order of the Court.

9.     Phillips' Motion for Arrest and Seizure of Vessel and Appointment of Substitute Custodian and Phillips' Motion for Clarification or, In The Alternative, Application for Emergency Hearing on Temporary Restraining Order and Preliminary Injunction are still pending. *See* Rule 26 Case Management Plan.

10.     Under Federal Rule of Civil Procedure 24, Nabors has the right to intervene in this suit because it has a substantial economic interest in the Vessel, which is the subject of

Phillips' Motion to Arrest and Seizure of Vessel and Appointment of Substitute Custodian and Zapoteca's Original Complaint. There is a substantial risk that the disposition of Phillips' Motion or this Court's vacating its July 8, 2004 Order requiring Zapoteca to not move or sell the Vessel, as a practical matter, may impair Nabors' ability to protect its interest in the Vessel without intervention.

11.     Nabors claims an interest in the Vessel as the only asset of Zapoteca that can be found in Texas and therefore, seeks to secure the Vessel to pay Nabors' claims against Zapoteca for breach of the Vessel Contract and an equipment lease agreement (the "Equipment Lease Agreement") in the event Zapoteca fails to pay the liquidated claim of Nabors. *See* Exh. C, attached to Nabors' Original Complaint in Intervention. Nabors' request to attach the Vessel and collect on the damages it has suffered shares common issues of fact with the underlying claim because Phillips' currently pending Motion for Arrest and Seizure of Vessel and motion for injunctive relief seeks to secure the same Vessel. The Vessel in which Nabors and Phillips both seek security is Zapoteca's only asset in the State of Texas.

12.     Further, intervention is also proper because Zapoteca alleges that Phillips, as an agent of Zapoteca, acted in direct contravention to Zapoteca's instructions regarding Zapoteca's obligations under the Vessel Contract. There are fact issues in both cases as to whether Zapoteca breached its obligations to Nabors under the Vessel Contract because of Phillips' conduct while acting as Zapoteca's agent.

13.     Nabors' interest will not be adequately represented by the existing parties. Zapoteca owns the Vessel Nabors seeks to attach for damages it suffered because of Zapoteca's failure to fulfill its contracts. Phillips seeks arrest and seizure of the same Vessel for the same

reasons as Nabors: to secure payment for potential liability. Nabors cannot rely on Zapoteca or Phillips to protect its interests in this lawsuit.

14.     This Court has jurisdiction independent of the underlying suit to grant intervention as Nabors and Zapoteca are foreign corporations, thus, diversity exists, and the amount in controversy is in excess of $75,000.

15.     Allowing Nabors to intervene in the underlying action furthers judicial economy by avoiding multiple lawsuits and lien claims involving the same Vessel. Nabors' motion is timely, will not result in delay, and will not prejudice the existing parties. The present suit was filed on March 12, 2004, and little discovery has been conducted.   Moreover, Zapoteca's Original Complaint was just filed on July 6, 2004. This suit is not set for trial. Nabors learned about this suit in early May and has taken prompt steps to protect its interest through intervention.

## REQUEST FOR EMERGENCY ORAL HEARING

16.     Pursuant to Local Rules 7.5 and 7.8, should this Court decide that a hearing is necessary to decide Nabors' Motion to Intervene, Nabors asks that this Court grant it an emergency oral hearing on its Motion to Intervene. Nabors seeks to intervene in this suit and file its Original Complaint In Intervention and Application for Writ of Attachment with, If Necessary, Request for Emergency Oral Hearing and Request for Injunctive Relief with, If Necessary, Request for Emergency Oral Hearing. Should this Court vacate its July 8, 2004 Order, Zapoteca may move the Vessel from this Court's jurisdiction. Further, there is a threat that Zapoteca may further encumber the Vessel. Nabors would then be unable to attach any Zapoteca asset to secure Zapoteca's indebtedness to Nabors and lose its ability to collect on its claim.

## CONCLUSION

17.    Nabors has the right to intervene because it has a substantial economic interest in the subject matter of the lawsuit, there is a substantial risk that its ability to protect that interest may be impaired without intervention, and the present parties do not adequately represent its interest. For these reasons, Nabors respectfully requests that this Court grant Nabors' Motion to Intervene as a party-plaintiff, and direct the court clerk to file the attached Original Complaint In Intervention and Application for Writ of Attachment with, If Necessary, Request for Emergency Oral Hearing and Request for Injunctive Relief with, If Necessary, Request for Emergency Oral Hearing, or grant Nabors' Request for Emergency Oral Hearing on its Motion to Intervene.

Dated: July 21, 2004

Respectfully submitted,

FULBRIGHT & JAWORSKI, L.L.P.

By: _____
E. Lee Haag
State Bar No. 08657700
Federal I.D. No. 10857
Attorney in Charge
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

OF COUNSEL:

RODRIGUEZ, COLVIN, CHANEY &
SAENZ, L.L.P.
Jaime Arturo Saenz
State Bar No. 17514859
Federal ID No. 7630
1201 East Van Buren
P.O. Box 2155
Brownsville, Texas 78522
Telephone: (956) 542-7441
Facsimile: (956) 541-2170

FULBRIGHT & JAWORSKI L.L.P.
Tonja De Sloover
State Bar No. 24036474
Federal I.D. No. 35239
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
(713) 651-5339 (Telephone)
(713) 651-5246 (Facsimile)

COUNSEL FOR INTERVENOR NABORS
DRILLING INTERNATIONAL LIMITED

30740594.1                                    - 7 -

## CERTIFICATE OF SERVICE

This pleading, Nabors Drilling International Limited's Motion to Intervene and, If Necessary, Request for Emergency Oral Hearing, was served in compliance with Rule 5 of the Federal Rules of Civil Procedure by Certified Mail, Return Receipt Requested on July 21, 2004.

E. Lee Haag

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7, I conferred with opposing counsel regarding the relief requested in this Motion and they have indicated that they are opposed.

E. Lee Haag

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ZAPOTECA ENERGY, INC.,          §
    Plaintiff                          §
                                       §
VS.                                §          Civil Number B-04-048
                                       §
CHARLES DOUGLAS PHILLIPS,          §
    Defendant                          §

## DECLARATION UNDER PENALTY OF PERJURY OF JOHN LEBOURHIS

My name is John Lebourhis. I am over eighteen years of age and have never been convicted of a felony. I am of sound mind and otherwise capable of making this Declaration. I have personal knowledge of the facts stated herein.

I President of John LeBourhis & Associates, Inc. John LeBourhis & Associates, Inc. are marine surveyors specializing in jack up offshore oil rigs.

In approximately the year 1987, the Rig ENERGY ZAPOTECA was working in the Gulf of Campeche when the well suffered a blow out, resulting in a large fire causing extensive damage to the Rig. After this blow out and fire, the Rig ENERGY ZAPOTECA was unusable as a jack up drilling rig or for any other commercial or marine purpose.

In approximately May 2000, Zapoteca Energy Inc purchased the Rig ENERGY ZAPOTECA from Protexa. At the time of Zapoteca Energy Inc's purchase of the Rig ENERGY ZAPOTECA, the Rig had been removed continually from navigation and commerce for a period of approximately 13 years.

During the period of 8 November 2000 through 3 May 2001, John LeBourhis & Associates, Inc. performed three surveys of the Rig ENERGY ZAPOTECA for the purpose of checking the condition of the Rig for a one-trip towage to the United States Gulf, Galveston, Texas. Our surveys focused on the structural integrity of the Rig's legs.

During the time frame of these surveys, the Rig ENERGY ZAPOTECA was what I consider to be unseaworthy.

Our surveys found numerous deficiencies, excessive wastage and missing structural members, in the condition of the legs of the Rig ENERGY ZAPOTECA. These deficiencies needed to be temporarily repaired in order for the Rig to make the one trip voyage to Galveston, Texas. These defeciencies need to be permanently repaired before the Rig could be placed back into navigation and commerce.

1

EXHIBIT "D"

At no time during our surveys was the Rig ENERGY ZAPOTECA placed into condition to make the one trip voyage to Galveston, Texas, let alone navigation and commerce.

Attached to my Declaration are true and correct copies of correspondence I received from Charles Douglas Phillips regarding the Rig ENERGY ZAPOTECA.

PURSUANT TO 28 U.S.C. § 1746, I DECLARE (OR CERTIFY, VERIFY, OR STATE), UNDER PENALTY OF PURGERY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON 27 MAY 2004.

_____
Captain John LeBourhis

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ZAPOTECA ENERGY INC,  §
    Plaintiff  §
      §
VS.  §  Civil Number B-04-048
      §
      §
CHARLES DOUGLAS PHILLIPS,  §
    Defendant  §

## DECLARATION UNDER PENALTY OF PERJURY OF CLIFFORD ARKLEY

1. My name is Clifford Arkley. I am over eighteen years of age and have never been convicted of a felony. I am of sound mind and otherwise capable of making this Declaration. I have personal knowledge of the facts stated herein as I was a contractor to PD Gram & Co. AS, Technical Managers of the rig ENERGY ZAPOTECA .

### The Rig ENERGY ZAPOTECA

2. During October 2003, my company, London Offshore Consultants ("LOC"), was requested by PD Gram & Co. AS (as owners Technical Management for the Rig ENERGY ZAPOTECA) to carry out an inspection of the rig. The inspection and subsequent recommendations were with a view to the issuance of a Certificate of Approval for the movement of the unit from Tuxpan, Mexico to Port Isabel, South Texas. I was allocated as Marine Warranty Surveyor to this project.

3. On 19 October 2003, a dialogue was commenced with Mr. Charles Philips and plans made to visit him at his office in South Padre Island, then to travel on to Tuxpan via Renosa and Poza Rica for rig inspection.

4. On 16 October 2003, I proceeded to South Padre Island for discussions with Charles Philips and during the following week traveled on to Tuxpan where on Tuesday, Wednesday and Thursday I attended and inspected the rig.

5. I traveled back to Houston on Friday 31 October 2003 and issued a preliminary list of recommendations (some 41 items) written with the owner's request in mind that the unit was to be manned during the tow. The LOC stand was that an unmanned dead tow was the preferred option.

6. Essentially the rig was bereft of any SOLAS equipment. Certification was non-existent and all (including essential) machinery had been removed. There were

1

EXHIBIT "E"

numerous holes and openings compromising the watertight integrity. Unknown and untraceable pipe work had been removed and in places cropped. Some areas of deck had wasted through and there was direct access to the tank spaces below. Some tank access covers were missing and in some locations temporary tank access spaces had been cut into the deck. These did not have approved covers or fitments. There was only temporary crew accommodation on deck and no suitable sanitary facilities, waste disposal or sewage holding tanks. There was no suitable cooking or food storage equipment. Temporary power supply was from a road transportable generator that was not suitable for sea service and had no back up. There was no communications equipment other than one VHF that had limited operation. A major concern was also the Rig's stability. Having been completely altered by the removal of a large amount of machinery and topside structure the accelerations on the legs and their ability to withstand these was in doubt and unproven at this time. The rig was in fact unfit for habitation, uncertificated and unseaworthy. Consequently it was not in condition to navigate or operate as a commercial unit.

7.   During the ensuing month of November it became clear that the requirements for a manned tow were not going to be met. The problems of lack of fundamental equipment and certification would be prohibitively expensive and time consuming to overcome. It was recommended again by LOC that an unmanned dead tow be re-considered. A dry tow was also another consideration. It was made clear a Certificate of Approval to move the unit would not be issued for a manned tow.

8.   During December 2003 attention and communication was afforded to the stacking site requirements in Port Isabel and on the outstanding requirements for an unmanned tow.

9.   During January 2004 I attended a meeting with owners representatives with view to resolving all outstanding requirements for an unmanned, dead, wet tow. Items attended to were stability, jacking equipment, tow assembly, watertight integrity, stacking site and tow vessels.

10.  Discussions, reviews and planning took place regularly during February 2004 between myself rig owners and the project manager (Charles Philips)

11.  On owners instructions I traveled to Tuxpan on 7 March 2004 to re-inspect the rig and report back on readiness and progress. On Monday 6 March during a discussion with Charles Philips, I was informed that I was not allowed on the rig. On Tuesday 9 March I proceeded to the Rig but was refused access to it by a gangway security person. I discussed the situation with Charles Philips who implied that it would be risky for me to attempt to gain access to the rig as the security guards had instructions not to allow unauthorized persons onboard. Charles Phillips said I was not authorized and my personal safety could not be guaranteed.

2

12.   On Wednesday the 10 March, I accompanied various ENERGY ZAPOTECA owners representatives to the temporary company office in Tuxpan. None of the party was allowed access to the 'office'. I then proceeded to the rig with a police escort and what I understood to be a bailiff acting for ENERGY ZAPOTECA owners. None of our party was allowed onboard.

13.   On Thursday 11 March, I was requested to stay onsite until access to the rig was gained. This was expected in the next 24 hrs.

14.   On Friday 12 March access to the rig was gained and I carried out my inspection. There was some progress from my previous visit although there was still numerous items outstanding to make the vessel ready for sea. I re-wrote my list of recommendations on the basis the rig would be wet towed, dead and unmanned to the stacking site now going to be Sabine, South Texas.

15.   On Saturday 13 March I met with the newly appointed Towmaster/Bargemaster Mr. Austin (Rusty) Alexander. We toured the rig and he took over as owners representative on site. An action plan was prepared for further technical inspection (jacking gear, ballast tanks and rig structure) prior to the jacking down, flotation and tow of the rig to Sabine. Outstanding items already documented were to be dealt with. I departed for Houston the following day.

16.   I attended the rig again from 18 to 24 March 2004, being instructed to return to Houston as delays were expected due to legal problems. During this period Austin Alexander tested jacking equipment and controls. He also inspected all other rig equipment from a technical and operational standpoint, Communicating with myself on several occasions on his findings and progress readying the rig. The towing vessel 'Martha Eugenia' was also inspected and approved for the towing operation during this time.

17.   I returned to Tuxpan on Sunday 4 April. After inspecting the Rig in the company of Austin Alexander it was decided the close out of required items was nearing completion and the tow vessel was ordered for next day.

18.   I completed a final "walk through" at 1330 hrs the same day and a CoA was issued at 1400 hrs. This approved a single voyage under tow as a dead unmanned unit from Tuxpan to Sabine with no deviations. At 1430 the main tugboat was connected and the rig became afloat and underway at approximately 1500 hrs. At 1700 all leg chocks were in place. A final check was carried out and all personnel departed the rig at 1745 hrs.

19.   The rig arrived at Sabine pilots stations during Sunday 11 April 2004 and berthed on 12 April. It is currently stacked at the arrival location.

3

PURSUANT TO 28 U.S.C. § 1746, I DECLARE (OR CERTIFY, VERIFY, OR STATE), UNDER PENALTY OF PURGERY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON 27 May 2004.

Cliff Arkley

4

```
 1                    IN THE UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF TEXAS
 2                         BROWNSVILLE DIVISION

 3     _____
                                     )
       ZAPOTECA ENERGY, INC.         )
 4                                   )
                                     )  CIVIL ACTION NO.
 5     VS.                           )  B-04-048
                                     )
 6     CHARLES DOUGLAS PHILLIPS      )
                                     )
 7     _____)

 8

                                     HEARING ON TRO
 9              BEFORE THE HONORABLE ANDREW S. HANEN
                            MARCH 18, 2004
10

       APPEARANCES:
11

       For the Plaintiff:          Edwin K. Nelson, IV
12                                 James E. Ross & Associates
                                   3814 Sun Valley Drive
13                                 Houston, Texas  77025

14     For the Defendant:          Mr. Keith N. Uhles
                                   Royston, Rayzor, Vickery & Williams
15                                 P.O. Box 3509
                                   Brownsville, Texas  78523-3509
16

17     Transcribed by:            BARBARA BARNARD
                                   Official Court Reporter
18                                 600 E. Harrison, Box 301
                                   Brownsville, Texas  78520
19                                 (956)548-2591

20

21

22

23

24

25
```

**EXHIBIT "F"**

1    there anything else we need to take care of?

2         MR. NELSON:  I think we've pretty much covered

3    everything.

4         THE COURT:  Mr. Phillips, what about from your side,

5    Mr. Uhles?

6         MR. PHILLIPS:  Your Honor, I have amounts of money that

7    is owed me from Energy Zapoteca that they're holding.  Port

8    Isabel is not my home.  My home is Houston, Texas.  And, in

9    other words, if I'm going to have to stay here, then I feel that

10   they should pay those expenses.

11        THE COURT:  I'm not following that.

12        MR. PHILLIPS:  Okay.  I have salary that they have not

13   paid.

14        THE COURT:  Okay.  That may be a matter of dispute.

15   They're going to dispute whether they owe it or whatever.

16        MR. PHILLIPS:  I have expenses they have not paid.

17        THE COURT:  Okay.  But, I mean, as far as you staying

18   here --

19        MR. NELSON:  That's a decision for him to make.

20        THE COURT:  Yeah.  I mean, you don't have to stay here,

21   unless I'm missing the point of what you're saying.

22        MR. PHILLIPS:  No.  If I don't have to stay here, in

23   other words, we're going to be moving home.  And --

24        THE COURT:  And, quite frankly, if this situation

25   doesn't resolve itself and both sides agree, I mean, you might

1  get an agreement to move this whole thing to Houston, if that's

2  your home.

3          MR. NELSON:  Well, there's an issue in that that, I

4  guess, I can address to the court now.  I know the Royston firm,

5  and I respect it.  I'm hesitant to raise this issue, but we're

6  defending a lawsuit by William McDermott against Zapoteca Energy

7  up in Houston.  It is -- the attorney is a Michael Cowen here.

8  Is that correct, do you know?

9          MR. UHLES:  That is correct.

10         MR. NELSON:  That is correct.  Michael Cowen is using

11  Royston's office as, in essence, a Houston based office to run

12  this lawsuit.  All of these -- all of the facts and

13  circumstances related to that lawsuit occurred at a time when

14  Charles Phillips was fully working for Energy Zapoteca,

15  regardless of what the status may be today, and I believe that

16  there is a serious conflict of interest in Royston absolutely

17  representing Mr. Phillips.

18         THE COURT:  I'm not seeing the conflict.

19         MR. NELSON:  Well --

20         THE COURT:  Royston is not representing Zapoteca.

21         MR. NELSON:  No.  They represent Bill McDermott, okay?

22  Now they're representing Zapoteca, in essence, or

23  quasi-representing Zapoteca because of the fact Phillips was

24  employed by Zapoteca for so long, and all the facts and

25  circumstances related to this Houston case are something that

1   I mean, I could have signed a TRO that would have lasted much

2   longer than the way I did it that lasted four days or five days,

3   but I figured let's get everybody in here and let's talk about

4   it, try to resolve it.

5       All right.  Anything else we can do today?

6       MR. NELSON:  I don't think so, Your Honor.  Thank you

7   very much for your time.

8       THE COURT:  All right.  We stand adjourned.

9       MR. UHLES:  Thank you.

10                      *  *  *

11      (End of requested transcript)

12                      -oOo-

13      I certify that the foregoing is a correct transcript from

14  the record of proceedings in the above matter.

15

16  Date:  March 26, 2004

17

18                          _Barbara Barnard_

19                          Signature of Court Reporter
                            Barbara Barnard

20

21

22

23

24

25