United States District Court
Southern District of Texas
FILED

NOV 17 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC. | § | |
| | § | |
| VS. | § | CIVIL NO. B-04-048 |
| | § | In Admiralty; Rule 9(h) |
| CHARLES DOUGLAS PHILLIPS, et al. | § | |

### CAPTAIN PHILLIPS' RESPONSE TO ZAPOTECA'S MOTION TO TRANSFER VENUE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Captain Charles D. Phillips, previously the captain of the Rig ENERGY ZAPOTECA[1] and Defendant and Counter-Claimant herein, and files this his response to the Motion to Transfer Venue, filed by Zapoteca Energy, Inc. (hereinafter "Zapoteca"), which is Plaintiff and Movant herein, respectfully submitting as follows:

I.    OVERVIEW

This Court will recall that this suit began by Zapoteca's filing of its Application for Temporary Restraining Order (similar to an original Complaint), "in Admiralty," under F.R.C.P. 9(h), in this Court. In doing so, Zapoteca selected this forum as the appropriate Court for this case to be filed and to go forward. In its Application Complaint and its representations to the parties and the Court, Zapoteca also contended that the Rig was to be moved from Mexico to Brownsville, which was another basis for the Court's *in rem* and Admiralty jurisdiction here. Had it wanted to do so, Zapoteca originally could have filed suit in the Houston Division of the Southern District of Texas and likewise gained jurisdiction over Captain Phillips, rather than filing in Brownsville.

---

[1] Zapoteca now calls the Rig the "D/V ENERGY ZAPOTECA." Such is a correct definition; "D/B" is an abbreviation for "Drilling Vessel." That designation, by Zapoteca, is important on the issue of the Rig's status as a "vessel," which is relevant to Zapoteca's motion for reconsideration, also recently filed.

Zapoteca should not now be heard now to request, after intentionally selecting Brownsville as the appropriate forum for the case, to have the case transferred now to another court. Such is particularly inappropriate and judicially inefficient after this Court already has invested several hours of the Court's time in considering the matter, conducting hearings, issuing orders, etc. Also, as Zapoteca knows, the Mexican crewmembers, who are expected to intervene in the case shortly, can travel to Brownsville, but not Houston, so any transfer effectively keeps them from being able to prosecute their wage claims. To order the case transferred out of this Court at this point also wastes the benefits of the Court's efforts in handling this case already and will require another court to review the extensive pleadings and invest further court resources in researching and becoming familiar with the issues pending in the case. Finally, Nabors, the current intervenor in the case, joins in with Phillips' opposition to Zapoteca's request.

II. INDEPENDENT FACT WITNESSES AND CREW MEMBERS ARE AVAILABLE ONLY IN BROWNSVILLE

Zapoteca's Motion ignores the fact that evidence to be gathered from numerous witnesses located in the Brownsville area or in Mexico will be required, either via deposition or at the trial of the case. As several of those witnesses are independent, their attendance at deposition or trial cannot be compelled if the case is pending in Houston, but can be compelled as long as the case continues to be pending in Brownsville. Those witnesses include two employees from Dix Shipping in Brownsville, and the interpreter, Mr. David Garcia, who lives and works on South Padre Island, Texas.

In addition, the Mexican crewmembers of the D/V ENERGY ZAPOTECA, are Mexican citizens and have limited visas, which allow them to travel only to Brownsville

and not as far inland as Houston, Texas. These crewmembers include the following Mexican citizens: Jose Munoz Lopez; Ciro Elorza Martinez; Marco Antonio Lizamo Rodrigues; Fernando Trejo Mar; Jaime A. Castellanos; and Candido Maldonado Yanez. Captain Phillips has been advised that most if not all of those Mexican crewmembers wish to intervene in this case, in order to seek payment of wages due but not paid to them by Zapoteca. If this Court were to transfer this case to Houston, those crewmembers would not be able to pursue their claims, since they may not be able to travel to Houston for deposition, mediation or trial.

It is not in the interests of justice for this case to be transferred to a venue where independent witnesses cannot be compelled to appear for deposition or trial and anticipated intervening parties may not attend hearings, depositions or trial.

III. THE COST OF NECESSARY WITNESSES' ATTENDANCE AND OTHER TRIAL EXPENSES ARE LESS IN BROWNSVILLE

As indicated above, the necessary third-party witnesses (with the possible exception of Messrs. LeBourghis and Arkley, who are marine surveyor/consultants hired by Zapoteca and who surely will appear and testify for Zapoteca wherever and whenever Zapoteca hires and instructs them to do so) are located in the Brownsville area or are Mexican citizens who will be able to travel into Texas only as far as Brownsville. As to all the Mexican witnesses, it is cheaper for all parties for those witnesses to travel to Brownsville than for counsel and representatives for each of the various parties to travel to Tuxpan, Mexico. Moreover, since Captain Phillips cannot safely return to Mexico at this point because of Zapoteca's failure to have the criminal claims against him withdrawn, even if we could secure testimony of the crewmembers in Mexico, Captain Phillips would not be able to attend any proceedings there. Likewise, the cost of

attendance of those witnesses at trial in Brownsville is much less than it would be the case in Houston, even assuming they could receive visas sufficient to allow them to travel to Houston.

### IV. THE WRONGS UPON WHICH THE CLAIMS ARE BASED OCCURRED IN BROWNSVILLE OR TUXPAN, MEXICO.

The wrongs and alleged wrongs which form the basis of Zapoteca's Original Complaint and Captain Phillips' counterclaim arose either in Tuxpan, Mexico, where the vessel was located at the time, or in Brownsville, Texas, where Captain Phillips was temporarily working; where various meetings between Captain Phillips and his supervisors at Zapoteca occurred; where various records were generated and stored; and where he was fired by Zapoteca's former counsel, Mr. Nelson. As Zapoteca has elected not to pursue its claims against Captain Phillips in Mexico and Captain Phillips' claims pending in Mexico were rendered moot when Zapoteca removed the Rig from the Mexican court's jurisdiction, the only remaining place where the wrongs and alleged wrongs occurred are in Brownsville, Texas. Thus, under any *lex loci delecti* or similar analysis, Brownsville is the only appropriate forum for the case to proceed.

### V. LOCATION OF BOOKS AND RECORDS HAS BEEN AND CAN BE CHANGED.

As the Court will recall, the pertinent books and records which were discussed at the first hearing of this case were those created and maintained by Captain Phillips and his wife, which at the time Zapoteca's complaint was filed were located in his home office on South Padre Island, Texas. Shortly thereafter, these records were turned over to Captain Phillips' Brownsville counsel, who then, under this Court's order and agreement between the parties, provided them Dix Shipping's offices in Brownsville, Texas; who

4

acted briefly as a custodian of those records. During this time other records were still located in Mexico, which were to be shipped to Dix Shipping in Brownsville under this Court's order of March 18, 2004. However, Zapoteca never shipped these documents to Dix Shipping in Brownsville; instead, Zapoteca shipped these documents to the newly-rented office of Zapoteca's counsel, Mr. Nelson, in Houston, on April 27, 2004, which appears to be in violation of the Court's order of March 18, 2004.[2] Nevertheless, on May 7, 2004, Mr. Nelson told the Court that these documents were still in Mexico. Following further discussion and agreement between the parties, Zapoteca asked the Court to permit those collected records to be shipped to the temporary offices of Zapoteca's counsel in Houston, to which we agreed (and regrettably now, since those records, binders and notebooks have been disassembled, disorganized, destroyed, commingled or otherwise not maintained in the regular course of business, such that it is difficult if not impossible now for Captain Phillips to review those records and determine what is still there and what has been destroyed or altered).

However, the location of those records at this point is quite arbitrary, since they originally were in Brownsville or Mexico, but on agreement were sent to Zapoteca's counsel's office in Houston. They can just as easily be sent back to Brownsville. Of greater concern, however, is the actual usefulness of those documents regardless of their location, since they have been altered so extensively that it will be difficult if not impossible to determine what those records consist of and where various documents

---

[2] It was not until July 2004 that Captain Phillips discovered that the records Zapoteca had sent from Mexico were sent on April 27 and arrived on April 28, 2004. (See attached Federal Express receipts, Exhibit "1.")

actually are located.[3]  As it was Zapoteca who requested that the documents be sent to its offices in Houston, and the recent possession and altering of those records were done exclusively by Zapoteca, it certainly should not prevail on the argument of where those documents presently are located.[4]

### VI.　DELAY OR PREJUDICE IS UNAVOIDABLE IF TRANSFER OCCURS.

As this Court is well aware, extensive hearings and exhaustive briefing already has occurred in this case, primarily addressing the jurisdiction and vessel status issues, which apparently are determinative of the case from Zapoteca's standpoint and which it seeks to have ruled on before meaningful settlement discussion can occur.  This Court, and only this Court, is fully familiar with those issues, having conducted hearings, received and reviewed numerous briefs, and issued prior orders regarding them.  Given that, it is not in the interests of judicial economy for this Court to have wasted its efforts on those issues by transferring this case to Houston, nor is it in the interest of judicial economy for a sister court in Houston to have to spend the many hours necessary to get up to speed on these issues.  It is inevitable that a substantial delay, at least as to these important issues, will arise if this case is transferred to Houston, since inevitably the new court and staff will need to spend some time becoming familiar with the issues and facts involved here.

---

[3]　Curiously, Zapoteca in its brief does not indicate exactly where those records are located today. Zapoteca's prior counsel, Mr. Nelson, apparently rented space at the office of a corporate affiliate of Zapoteca, reportedly to store those boxes.  With Mr. Nelson no longer representing Zapoteca, those records presumeably are no longer in his possession or control.  Zapoteca's brief indicates simply that those records "are currently located in an office in Houston."  If all these records did not immediately come under the possession and custody of Zapoteca's current counsel, then the integrity and trustworthiness of those documents, not to mention their location, are even more dubious.

[4]　Zapoteca's brief also indicates that "approximately 14 boxes and 3-ring binders" were shipped from Dix Shipping in Brownsville to Zapoteca's lawyers' temporary office in Houston.  According to Federal Express shipping records, only 14 boxes, which included all 3-ring binders, were sent. (See Fed Ex Tracking Receipts, copy attached as Exhibit No. 1).  Zapoteca has yet to explain what happened to the remaining 6 boxes of documents.

Zapoteca next asserts that no prejudice will occur if the case is transferred, but such statement is not correct. The Court will recall that it issued a "status quo" order in July, 2004, by which Zapoteca would not move, damage, sell, encumber or otherwise alter or reduce reduce the value of the vessel, such that Captain Phillips' claims and security would not be lessened, but that Zapoteca, in the event it found a purchaser for the Rig, could petition the Court to modify its orders and then allow the Rig to be moved, sold, etc.[5] That status quo order has worked quite well, but any other order that might be issued by another court would upset the delicate status quo and could severely prejudice the interests of all parties.

Zapoteca next contends that, because no Rule 16 conference has occurred and no docket control order has been issued, no delay of the prosecution of the case will occur. That argument is misleading, since the reason no Rule 16 conference has occurred and no docket control order has been issued is because Zapoteca's counsel still has not issued the status report which the Court ordered to be completed, as reflected in its Order of July 8, 2004 (See copy of Order, undersigned counsel's letter of July 27, 2004, to Mr. Nelson regarding same, and Mr. Nelson's response, Exhibits 2 and 3 hereto, to which Mr. Nelson responded that he would prepare the status report.) Zapoteca's new counsel also has been advised that Mr. Nelson insisting on drafting the status report, but did not do so, and that to date Zapoteca still has not circulated that status report. Given that delay, which is of Zapoteca's own making, it is disingenuous to argue that the Court is responsible for not

---

[5] It is noteworthy that Zapoteca, after arguing strenuously at a hearing that it was about to sell the Rig, has not come forward to suggest that it had negotiated a sale of the vessel and therefore needed to have the status quo order revised. Moreover, if the Rig has the $60 million plus value that Zapoteca suggests, then it should have any number of prospective purchasers and would have no hesitation posting the security bond Captain Phillips has requested to protect his claims. The fact that Zapoteca has not done so since July, suggests either that there are no buyers interested in the Rig or that it is not financially secure enough to arrange adequate substitute security, which makes it all the more vital that Captain Phillips be able to assert his *in rem* claims against the vessel, since Zapoteca has no other known assets in the United States.

scheduling the Rule 16 conference or docket control deadlines or that no delay has or will occur.

### VII. ZAPOTECA AS PLAINTIFF HAS CHOSEN THIS FORUM

In filing its initial Complaint, Zapoteca has chosen this forum. It should not now be heard to complain that that forum is incorrect or that it is more convenient for Zapoteca to transfer a case it filed to another jurisdiction. *See Hernandez v. City of El Monte*, 138 F. 3d 393 (9th Cir. 1998) (holding that the plaintiffs' subsequent filing in state court, after having filed originally in federal court, is impermissible judge-shopping). Thus, the Federal Court retained control over the case. That same policy is supported by the Texas State courts and Texas legislative and public policy; see for example, *Athison, T. & S.F. Ry. Co. v. Stevens*, 109 Tex. 262, 269; 206 S.W. 921, Tex. S. Ct. 1918), wherein the Texas Supreme Court held that a plaintiff who voluntarily filed his claims in the initial jurisdiction waived his rights to assert, later, that another forum was preferred.

In addition, the Court will recall that Zapoteca, in its Application for Temporary Restraining Order and Preliminary Injunction (which in this case serves as its Original Complaint), stated on page 2, paragraph 5, as follows: "Zapoteca is presently engaged [in] its daily business and in operations for the sailing of the Rig ENERGY ZAPOTECA from Tuxpan, Mexico, to Port Isabelle, Texas." (See page 2 of the Application/Complaint, copy attached as Exhibit 4). That allegation is supported by paragraph 2 of the Declaration Upon Penalty of Perjury of Christian Kongsli (who was Captain Phillips' supervisor and also an employee or representative of P.D. Gramm, the vessel's managers), which states in pertinent part as follows: "Zapoteca is presently engaged in daily business and in operations for the sailing of the Rig ENERGY

ZAPOTECA from Tuxpan, Mexico to Port Isabelle, Texas." (See Kongsli's Affidavit of March 11, 2004, a copy of which is attached as Exhibit 5, and which was signed in Houston the day after he had spent several days with Captain Phillips in Port Isabelle, Texas, all without complaint.) Those allegations and statements establish that, for purposes of the Court's Admiralty jurisdiction and for venue, these claims presently are before the Court, in part because the vessel made the subject of the case was en route to Port Isabelle, which is well within the Brownsville Division of the Southern Division of Texas.

Further, the fact that the above allegations are untrue, and at the time they were made were known to be untrue, should not benefit Zapoteca. With the filing of Nabors' intervening complaint, it provided various contracts, which make clear that the vessel was <u>not</u> bound for Port Isabelle or Brownsville, but instead was bound for Corpus Christi or Freeport, Texas.[6] However, Zapoteca's misrepresentations to the Court about the true destination of the Rig after she left Mexican waters should not be rewarded by this Court, and for at least the present purposes of jurisdiction and venue, this Court should determine that the Rig was in fact delivered or destined to be delivered in the Port Isabelle/Brownsville area.

---

[6] On page 3 of the Memorandum of Agreement between Zapoteca and Nabors, signed March 18, 2003, the parties agreed as follows: "The Vessel shall be delivered and taken over safely afloat as soon as practical after the Vessel has left Tuxpan, Mexico, under wet tow and moved into international waters northbound for Corpus Christi, USA." That contractual provision makes clear that the Vessel was to sail directly to Corpus Christi, Texas, from Tuxpan, Mexico. (See copy of Agreement, attached as Exhibit 6, particularly Section 5(d), on page 3.) On September 3, 2003, the parties agreed to amend the actual delivery location, and agreed to designate Freeport, Texas, as the first port of call after the Vessel left Mexico. In that supplemental agreement, Zapoteca was to mobilize the Rig into international waters before the sale and purchase of the Rig could be completed, and then act as Nabors' agent: "in delivering the Rig to Nabors' facility at Freeport, Texas, USA," (See letter agreement of September 3, 2003, copy attached as Exhibit 8. )

9

Whatever costs or savings Zapoteca or others parties could assert in transferring the case from Brownsville to Houston are slight, and vastly outweighed by the factors described above, which prejudice Captain Phillips, the Mexican crewmembers, and Nabors, if the case were to be transferred.

## VIII.   JOINDER BY NABORS

Nabors Drilling International Limited (hereinafter "Nabors") wishes to join in to Captain Phillips' response and express its opposition to Zapoteca's request to have this case transferred to Houston, for the same reasons described above. Nabors filed its intervening complaint on July 21, 2004, but to the best of the parties' knowledge that intervention has not been formally approved by the Court. Therefore, to the extent Nabors is properly a party to the case at present and the Court will receive its comments and position concerning Zapoteca's motion, Nabors joins herein and expresses its opposition to Zapoteca's request for transfer.

## IX.   CONCLUSION

For the reasons discussed above, it is not in the interest of judicial economy, nor of justice, nor of the interests of Captain Phillips, the anticipated intervening crewmembers, or Nabors, for this case to be transferred to Houston, Texas. In addition, given the unclean hands and delay of Zapoteca, it is not in the interests of equity for this case to be transferred. Rather, Zapoteca's request for transfer should be denied and the case should remain on the docket of this Court, which already is very familiar with the facts and issues presented here.

WHEREFORE, premises considered, Captain Phillips and Nabors ask that Zapoteca's Motion to Transfer Venue be denied and that the case remain pending before this Court in Brownsville, Texas.

>Respectfully submitted,
>
>**THE LANIER LAW FIRM, P.C.**
>
>BY: _/s/ C. F. Herd Jr._
>CHARLES F. HERD, JR. w/ permission
>TSB# 09504480       BY: C. 7e L
>ATTORNEY IN CHARGE
>LAWRENCE P. WILSON
>TSB # 21704100
>KEVIN P. PARKER
>SBN #15494020
>P. O. Box 691408
>Houston, TX 77269-1408
>(713) 659-5200
>Fax: (713) 659-2204
>
>**ATTORNEYS FOR DEFENDANT/COUNTER CLAIMANT,
>CHARLES D. PHILLIPS**

**LOCAL COUNSEL:**

Mr. C. Frank Wood
SANCHEZ, WHITTINGTON, JANIS
& ZABARTE, L.L.P.
100 North Expressway 83
Brownsville, Texas 78521-2284

11

THIS PLEADING IS JOINED IN BY:

FULLBRIGHT & JAWORSKI, LLP

By /s/ E. Lee Haag
E. Lee Haag (signed by permission)
State Bar No. 08658770
Federal I.D. 10857
Attorney in Charge
Tonja De Sloover
State Bar No. 24036474
Federal I.D. 35239
1301 McKinney, Suite 510
Houston, Texas 77010-3095
Telephone: 713-651-5151
Fax: 713-651-5246

**COUNSEL FOR INTERVENOR
NABORS DRILLING
INTERNATIONAL LIMITED**

OF COUNSEL:

RODRIGUEZ, COLVIN, CHANEY &
SAENZ, LLP
Jaime Arturo Saenz
State Bar No. 17514859
Federal I.D. 7630
1201 East Van Buren
P. O. Box 2155
Brownsville, Texas 78522
Telephone: 956-542-7441
Fax: 956-541-2170

12

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel in accordance with the Federal Rules of Civil Procedure on this the 17th day of November, 2004.


Mr. Robert W. Klawetter
EASTHAM, WATSON, DALE & FORNEY, L.L.P.
808 Travis, 20th Floor
Houston, Texas 77002
**ATTORNEYS FOR PLAINTIFF
ZAPOTECA ENERGY, INC.**

Mr. Lee Haag
Ms. Tonja De Sloover
FULBRIGHT & JAWORSKI, L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095

Jaime Arturo Saenz (**formal Response only; documents sent to Mr. Haag only**)
RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.
1201 East Van Buren
P. O. Box 2155
Brownsville, Texas 78522
**ATTORNEYS FOR INTERVENOR
NABORS DRILLING INTERNATIONAL**

_____
C. Frank Wood