**MALONEY, MARTIN, & MITCHELL, L.L.P.**
The Clocktower Building
3401 Allen Parkway, Suite 100
Houston, Texas 77019
(713) 759-1600
(713) 759-6930 FAX

# EXHIBIT "3"

## EQUIPMENT LEASE AGREEMENT

THIS EQUIPMENT LEASE AGREEMENT ("Agreement"), made and entered into this 19th day of December, 2003, is by and between Nabors Drilling International Limited, a Bermuda exempted company ("NDIL") and Zapoteca Energy, Inc., a Liberian corporation ("Zapoteca").

WHEREAS, the parties entered into a Memorandum of Agreement dated March 18, 2003 (as subsequently amended, the "MOA") for the purchase of the jackup drilling rig "Energy Zapoteca"; and

WHEREAS, NDIL gave notice of termination of the MOA on September 3, 2003; and

WHEREAS, without constituting an admission by Zapoteca that such termination was rightful or by NDIL that such termination was wrongful, the parties desire to come to an accommodation regarding certain equipment belonging to or provided by NDIL which is installed aboard the "Energy Zapoteca," (the "Rig") more specifically set forth in Exhibit A to this Agreement (the "Equipment"); and

WHEREAS, Zapoteca desires to lease the Equipment from NDIL, and NDIL is willing to lease the Equipment to Zapoteca on the terms and conditions herein; and

WHEREAS, except as specifically agreed herein, each party reserves the right to pursue any claims it may have arising in connection with the MOA;

NOW THEREFORE, for good and valuable consideration, the parties agree as follows:

1.   Preliminary Provisions.

   (a)   Upon execution of this Agreement, Zapoteca shall promptly deliver consent to Nordea Bank ASA (the "Bank") for release to NDIL of the funds deposited in the Bank by NDIL pursuant to the MOA, and any interest accrued thereon, in such form as shall be required by the Bank, with copy to NDIL.

   (b)   Upon receipt of all funds from the Bank, NDIL shall promptly provide, or cause to be provided, all documentation necessary for the export of the Equipment from Mexico and import into the United States.

   (c)   The parties agree to meet in Houston, Texas at a mutually agreed date after arrival of the Rig in international waters for nonbinding discussions regarding NDIL's possible purchase of the Rig.

   (d)   The parties each reserve all rights to pursue any claims arising under the MOA, but both parties will forbear from taking any legal or other action relating to such claims before the earlier of (i) March 1, 2004 or (ii) termination of this Agreement pursuant to Section 9 hereof. Notwithstanding the foregoing, the parties may file any pleadings or motions they deem necessary in the Texas state court civil lawsuit Cause No. 2003-41351A, McDermott v. Zapoteca Energy and Nabors Drilling International Limited to preserve their rights.

2.   Lease Provisions.

   (a)   Subject to the terms of this Agreement, NDIL hereby agrees to lease to Zapoteca, and Zapoteca agrees to lease from NDIL, the Equipment.

   (b)   Zapoteca shall pay to NDIL a rental fee as set forth below commencing on January 1, 2004, and continuing until termination of this Agreement in accordance with Section 9 hereof.

      (i)   From January 1, 2004 through February 28, 2004 the lease rate shall be USD 1,278 per day or portion thereof.

      (ii)   From and after March 1, 2004 the lease rate shall be USD 1,470 per day or portion thereof.

   (c)   Payment shall be made by wire transfer net of bank fees (except fees charged by NDIL's bank) to:

1

| | |
|---|---|
| Bank Name: | Bank One, N.A. |
| Bank Address: | 910 Travis St. |
| | Houston, TX 77002 |
| ABA Routing No.: | 111000614 |
| Swift Code: | BONEUS44 |
| Account No.: | 1824135808 |
| Account Name: | Nabors Drilling Int'l Ltd. |

3.  **Title**. At all times during the term of this Lease, NDIL shall retain title to the Equipment and all rights incidental thereto provided by law.

4.  **Purchase Option**. At any time from and after February 1, 2004, Zapoteca shall have the option to purchase the Equipment from NDIL (the "Purchase Option") for USD 368,756 (the "Purchase Price"). Zapoteca may exercise this option by delivering advance written notice to NDIL and making payment of the Purchase Price and all accrued but unpaid lease payments. No credit for prior lease payments shall be deducted from the Purchase Price.

5.  **No Warranty**. The Equipment is leased to Zapoteca on an "as-is, where-is" basis. NDIL MAKES NO WARRANTY WHATSOEVER WITH RESPECT TO THE EQUIPMENT. WARRANTIES OF MERCHANTABILITY, SUITABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE EXPRESSLY DISCLAIMED.

6.  **Return of Equipment**. If the Purchase Option is not exercised, the Equipment will be delivered to NDIL at Port Freeport, Texas, USA. Zapoteca will notify NDIL upon the Rig's departure from Tuxpan and give at least three days' notice prior to arrival in Freeport.

7.  **Insurance and Indemnity**.

    (a)   Zapoteca shall, throughout the term of this Agreement, maintain All Risk Property Insurance in the amount of USD 368,756 (such amount deemed to be the "Full Declared Value" of the Equipment) covering loss of or damage to the Equipment, in which NDIL is named as co-insured. Such insurance policy shall provide that such insurance may not be canceled or otherwise modified without 30 days' prior written notice to NDIL. Any deductible under such All Risk Property Insurance shall be for Zapoteca's account. Certificates evidencing such coverage shall be provided to NDIL promptly upon execution of this Agreement.

    (b)   ZAPOTECA WILL DEFEND AND HOLD HARMLESS NDIL, NDIL'S AFFILIATED COMPANIES, AND THEIR RESPECTIVE SHAREHOLDERS, EMPLOYEES, OFFICERS, DIRECTORS, AGENTS AND SERVANTS AGAINST ANY CLAIMS OF ANY SORT RELATED TO, OR DAMAGE TO, THE NDIL EQUIPMENT ARISING DURING ZAPOTECA'S CUSTODY, REGARDLESS OF CAUSE, INCLUDING THE SOLE OR CONCURRENT NEGLIGENCE OF NDIL, PRE-EXISTING CONDITIONS, OR ANY THEORY OF STRICT OR PRODUCTS LIABILITY WHICH MAY BE APPLICABLE.

    (c)   If the Equipment should be lost, destroyed or damaged beyond repair for any reason, Zapoteca shall, no later than ten days after the date of such loss, pay NDIL the Full Declared Value of the Equipment, plus any amounts due as lease payments up to and including the date of such loss, of the Full Declared Value of the Equipment to NDIL as provided above. For the purposes of this clause, loss of the Equipment shall include loss due to expropriation, confiscation or nationalization by any governmental authority.

8.  **Limitation of Liability**. NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR INDIRECT OR CONSEQUENTIAL DAMAGES RESULTING FROM OR ARISING OUT OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, LOSS OF PROFIT, LOSS OF PROPERTY OR MINERAL RIGHTS, OR BUSINESS INTERRUPTION, HOWEVER SAME MAY BE CAUSED.

9.  **Termination**. This Agreement shall terminate upon payment of all accrued but unpaid lease payments and the earliest of (a) Delivery of the Equipment to NDIL as provided in Section 6, (b) payment of the Purchase Price pursuant to exercise of the Purchase Option, and (c) payment by Zapoteca of the Full Declared Value of the Equipment pursuant to Section 7(c).

2

10.   **General Provisions.**

(a)   This Agreement shall be governed by English law.

(b)   All notices relating to this Agreement may be delivered in person to an official of the addressee or by telex, telegram, facsimile or registered mail and shall be effective when received by the addressee. The addresses of the parties hereto for the purposes hereof are:

Zapoteca:

> Zapoteca Energy, Inc.
> c/o P.D. Gram & Co. AS
> P.O. Box 1383 Vika
> 0114 Oslo, Norway
> Facsimile: +47 (22) 01-74-55

> With copy to:

> _____
> _____
> _____
> Facsimile: _____

NDIL:

> Nabors Drilling International
> Attn: President
> c/o Nabors International, Inc.
> 515 West Greens Road, Suite 900
> Houston, Texas 77067 United States
> Facsimile: (281) 775-8011

With copy to:

> Nabors Corporate Services, Inc.
> Law Department
> Attn: James Lank, Associate Counsel
> 515 West Greens Road, Suite 1200
> Houston, TX 77095 United States
> Facsimile: (281) 775-4326

Either party hereto may change its address by notifying the other party in writing of such change.

(c)   Neither party shall assign this Agreement. Zapoteca shall not sublet the Equipment or any part thereof.

(d)   This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof and supersedes all previous agreements and understandings, oral and written. This Agreement may only be amended in a written instrument properly executed by duly authorized representatives of the respective parties.

(e)   This Agreement shall be binding upon the parties hereto and shall inure to the benefit of their respective successors.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the day and year first above written.

NABORS DRILLING INTERNATIONAL LIMITED
By: _____
Name: _____
Title: _____

ENERGY ZAPOTEGA, INC.
By: _____
Name: _____
Title: _____

4

**APPENDIX A**
**List of Equipment**

| Item no. | Description | Qty |
|---|---|---|
| 1 | VHF RADIO'S -STD. MARINE | 2 |
| 2 | DIAMOND DAY SHAPE SIGNAL | 2 |
| 3 | 12 MAN LIFT RAFT | 1 |
| 4 | 21" ORANGE BUOY | 1 |
| 5 | 3" X 20' STUD LINK CHAIN | 2 |
| 6 | # 2 TOWING PLATE | 1 |
| 7 | 2" X 60' -6X36 -TOW BRIDLE | 3 |
| 8 | 3" KENTER CONN. LINK | 2 |
| 9 | 2-1/2" TOWING SHACKLES | 8 |
| 10 | 2" X 90' EMERGENCY TOW WIRE | 1 |
| 11 | NAV-AID LIGHT SYSTEMS | 3 |
| 12 | LIGHT STANDS | 4 |
| 13 | AIR TUGGER W/CABLE & MOUNTING CAGE MODEL K6U | 1 |
| 14 | 2" SELF-PRIMING GAS POWERED PUMPS | 2 |
| 15 | 2" X 20' SUCTION HOSES | 2 |
| 16 | 2" X 50' DISCHARGE HOSES | 2 |
| 17 | 5-GALLON EMPTY GAS CANS | 6 |
| 18 | 5-TON CHAIN FALL HOISTS | 2 |
| 19 | 1/2" X 20'  SPEC 8 CHAIN | 1 |
| 20 | 5/16" CHAIN CONNECTORS | 4 |
| 21 | 1" CROW FOOT COUPLERS | 6 |
| 22 | 1" HOSE CLAMPS | 6 |
| 23 | STRAINER 2" STANDARD THD | 2 |
| 22 | 2" X 300' 3 STR ELLOW POLY ROPE | 1 |
| 23 | 2" GALVANIZED SAFETY ANCHOR SHACKLE | 1 |
| 24 | FOUR MAN SLEEPER UNIT, INCLUDING 2 BUNK BEDS AND 4 LOCKERS (INSTALLED),  (PACKED ONE AIR CONDITION UNIT , MAYTAG 12,000 BTU) | 1 |
| 25 | FOUR MAN SLEEPER/KITCHEN UNIT INCLUDING 2 BUNK BEDS, 4 LOCKERS, ONE SHOWER, BUILT IN MICROWAVE, A/C UNIT, ROOF MOUNTED 110 V. INSTALLED.  PACKED SEPARATE 1 TABLE, 4 CHAIRS CABLE) | 1 |
| 26 | CAMP RESTING SUPPORTS | 5 |
| 27 | STAIRS | 2 |
| 28 | OXYGEN 9.5M3 INDUSTRIAL | 1 |
| 29 | 4.0 KG  ACET. INDUSTRIAL | 1 |
| 30 | COMPLETE WELDER CUTTING EQUIPMENT | 1 |
| 31 | AIR COMPRESSOR ( 100HP) 325 CFM | 1 |
| 32 | 150 KW GENERATOR | 1 |
| 33 | WEDGE  F/ JACKING LEGS ( 12 ) | 1 |
| 34 | COMPRESSOR 200HP-825 CFM | 1 |
| 35 | 20KG DRY CHEMICAL FIRE EXTINGUISHER (2 EA) | 1 |



**MALONEY, MARTIN, & MITCHELL, L.L.P.**
The Clocktower Building
3401Allen Parkway, Suite 100
Houston, Texas 77019
(713) 759-1600
(713) 759-6930 FAX

# EXHIBIT "4"

1    STATE OF TEXAS

2    COUNTY OF HARRIS

3

4                    **REPORTER'S CERTIFICATE**

5    **ORAL VIDEOTAPED DEPOSITION OF STEVEN ROYCE GRAY**

6                        **OCTOBER 13, 2004**

7

8        I, the undersigned Certified Shorthand Reporter

9    in and for the State of Texas, certify that the facts

10   stated in the foregoing pages are true and correct.

11       I further certify that I am neither attorney or

12   counsel for, related to, nor employed by any parties

13   to the action in which this testimony is taken and,

14   further, that I am not a relative or employee of any

15   counsel employed by the parties hereto or financially

16   interested in the action.

17       SUBSCRIBED AND SWORN TO under my hand and seal

18   of office on this the _27th_ day of _October_,

19   _2004_.

20

21

22   Linda S. Partida, CSR, RPR
     Texas CSR 2413
23   Expiration:  12/31/05
     Nell McCallum & Associates, Inc.
24   5300 Memorial Dr., Suite 600
     Houston, Texas 77007
25   713-861-0665

Page 48

1    Q.    All right.  Not the kind of kitchen that

2  you could use to provide food for a drill crew?

3    A.    Uh -- no.

4    Q.    Okay.  The rig didn't have a propulsion

5  system?

6    A.    I've never seen a jack-up that did.

7    Q.    Okay.  And were you getting shore power?

8    A.    No.

9    Q.    Were there temporary generators on board?

10    A.    I wouldn't call them temporary.  There

11  were, you know, Detroit diesel in them, a large

12  generator system there.

13    Q.    Okay.  So, it had -- how many generators

14  did it have?

15    A.    It had one large generator and then an

16  emergency generator.

17    Q.    All right.  And is it your testimony that

18  those were not temporary generators, that they were

19  actually part of the rig equipment?

20    A.    To my knowledge, they were part of the rig

21  equipment.

22    Q.    Okay.  Do you know if the -- was the rig

23  receiving water from shore?

24    A.    No.

25    Q.    Okay.  It had its own water system, had

eb323619-d0b4-43e9-9adc-b80ece0beb30

**MALONEY, MARTIN, & MITCHELL, L.L.P.**
The Clocktower Building
3401 Allen Parkway, Suite 100
Houston, Texas 77019
(713) 759-1600
(713) 759-6930 FAX

# EXHIBIT "5"

1    STATE OF TEXAS

2    COUNTY OF HARRIS

3

4              **REPORTER'S CERTIFICATE**

5    **ORAL VIDEOTAPED DEPOSITION OF STEVEN ROYCE GRAY**

6                 **OCTOBER 13, 2004**

7

8         I, the undersigned Certified Shorthand Reporter

9    in and for the State of Texas, certify that the facts

10   stated in the foregoing pages are true and correct.

11        I further certify that I am neither attorney or

12   counsel for, related to, nor employed by any parties

13   to the action in which this testimony is taken and,

14   further, that I am not a relative or employee of any

15   counsel employed by the parties hereto or financially

16   interested in the action.

17        SUBSCRIBED AND SWORN TO under my hand and seal

18   of office on this the _27th_ day of _October_,

19   _2004_.

20

21

22        Linda S. Partida, CSR, RPR
         Texas CSR 2413
23       Expiration:  12/31/05
         Nell McCallum & Associates, Inc.
24       5300 Memorial Dr., Suite 600
         Houston, Texas 77007
25       713-861-0665

1  learn of the prospect of employment in Mexico on the
2  ENERGY ZAPOTECA project?
3      A.    Charlie called me.
4      Q.    All right.  And do you remember
5  approximately when that was?
6      A.    I remember exactly when it was.
7      Q.    Okay.  When was it?
8      A.    It was September the 28th, 2003.
9      Q.    He called you at your home?
10     A.    Right.
11     Q.    And you were living at the Bunker Hill
12 address at that time?
13     A.    Correct.
14     Q.    All right.  When he calls you now, does he
15 call you on your cell phone?
16     A.    Yes.
17     Q.    Okay.  And what did Mr. Phillips say to you
18 about this prospect for employment on September the
19 28th, 2003?
20     A.    He asked me if I would be interested in
21 going to work in Mexico.
22     Q.    In what capacity?
23     A.    As a marine superintendent.
24     Q.    Okay.  And what details did he give you at
25 that point in time about the nature of the project

eb323619-d0b4-43e9-9adc-b80ece0beb30

1   and your duties?

2       A.    Basically, that the rig had -- was going to

3   be towed to Port Isabel, Texas, whereupon it would

4   probably be converted into a -- either a -- an

5   accommodation unit or a drilling unit.  They weren't

6   really quite sure exactly what they were going to do

7   with the rig as far as what type unit it was to

8   become.

9               My duties were to meet with the

10  insurance surveyor for London Offshore and make ready

11  the rig to sail for Port Isabel and to -- to make

12  sure that -- that -- that the -- the workmen did

13  their jobs to whatever recommendations London

14  Offshore made, that we had to -- to get those in

15  order.

16              And then I was also going to make the

17  tow from Tuxpan to Port Isabel, is -- when it was

18  approved.

19      Q.    Okay.  Now, the tow did not take place

20  until over two months after you had left Mexico.  You

21  know that?

22      A.    I understand that.

23      Q.    It took place on April the 5th, 2004.  Does

24  that sound --

25      A.    To my knowl -- I don't know that for sure.

eb323619-d0b4-43e9-9adc-b80ece0beb30

**MALONEY, MARTIN, & MITCHELL, L.L.P.**
The Clocktower Building
3401 Allen Parkway, Suite 100
Houston, Texas 77019
(713) 759-1600
(713) 759-6930 FAX

# EXHIBIT "6"



# ZAPOTECA ENERGY INC

ZEI 0042
GRAY

ZAPOTECA ENERGY INC.

# ACTIVITIES

## GENERAL DESCRIPTION

The Energy Zapoteca is a self-elevating jackup barge of Friede & Goldman L-780 basic design for operation in water depths of up to 250 feet.

The unit was built by GVA, Sweden and completed in late 1981.

The new owners bought the unit i May 2000 and have now refurbished and repaired the hull, jacking system, spudcans and legs with Bureau Veritas. The work has also been done within ABS parameters.

The class status is as a Baredeck jackup barge. In it's present mode the unit can be further modified into:

- Drilling unit
- Accomodation
- Production
- Maintenance Support



It is feasible to upgrade the waterdepth capability to 300 feet by extending the legs — two of the sister units are presently undergoing such extension.

The self elevating barge consists of a triangular form hull. The barge is supportes by three triangular trusswork legs which are elevated and lowered by means of an opposed pinion rack and pinion jacking system.

For easy access from the deck to lower holds the unit is fitted with two elevator hatches.

The rig can also be suitable for year around operation in Southern North-Sea area.

## PARTICULARS

| | |
|---|---|
| Breadth overall: | 175' - 0" |
| Length of Legs: (excluding spud cans) | 337' - 0" |
| Diameter of Spud Cans: | 39' - 10" |
| Max Draugth, Moulded: | 15' - 0" |

## ZAPOTECA ENERGY INC
## ACTIVITIES

### EQUIPMENT ONBOARD

1.      New jacking console
2.  (3)  Refurbished jacking motor control centers
3.  (36)  Jacking gear and pinion assemblies
4.  (36)  Reduction gears w/faulk couplings
5.  (36)  Westinghouse jacking motors without brakes
6.  (2)  400 amp welding machines
7.  (2)  Bilge and ballast pumps
8.  (2)  Life raft davits
9.  (1)  Air Receiver
10. (2)  CAT D 379 engines



ZEI 0044
GRAY

ZAPOTECA ENERGY INC.            **ACTIVITIES**

## EQUIPMENT ONBOARD – CONTINUED

12.   (2)   Deep well pumps and motors

14.   (1)   Diesel transfer pump and motor

16.         1 new General Electric 480 volt motor control center

18.         1 new General Electric 600/480 volt transformer





ZEI 0045
GRAY

ZAPOTECA ENERGY INC

# ACTIVITIES



ZEI 0046
GRAY



ZEI 0047
GRAY



ZEI 0048
GRAY

## ZAPOTECA ENERGY INC    ACTIVITIES

### DECK LOAD PLAN



| | | |
|---|---|---|
| Pipe rack | 540 | 2.64 |
| | | |
| Accomodations | 90 | 0.44 |
| | | |
| House decks | 90 | 0.44 |
| Sack stores | 500 | 2.44 |

### LIGHT SHIP

| | |
|---|---|
| Zapoteca (original design) | 11,915 kips |
| Variable load | 4,225 kips |
| Energy Zapoteca (present state) | 8,934 kips |

ZEI 0049
GRAY

## OWNER / MANAGER:

## P.D. GRAM & CO. AS

P.O.BOX 1383 VIKA
NO-0114 OSLO, NORWAY
STRANDEN 1 A, AKER BRYGGE
TEL 47 - 22 01 74 50
FAX 47 - 22 01 74 55



## ZAPOTECA ENERGY INC.

## MARKETING BY:.

CHRISTIAN KONGSLI
P.O.BOX 1720 VIKA
NO-0121 OSLO - NORWAY
TEL 47 - 22 83 00 17
FAX 47 - 22 83 25 25

ZEI 0050
GRAY

**MALONEY, MARTIN, & MITCHELL, L.L.P.**
The Clocktower Building
3401 Allen Parkway, Suite 100
Houston, Texas 77019
(713) 759-1600
(713) 759-6930 FAX

# EXHIBIT "7"

Case 1:04-cv-00014 Document 68-2 Filed 12/06/2006 Page 25 of 30

ORIGINAL

**REPUBLICA DE PANAMA**
REPUBLIC OF PANAMA
**AUTORIDAD MARITIMA DE PANAMA**
PANAMA MARITIME AUTHORITY
**DIRECCION GENERAL DE MARINA MERCANTE**
DIRECTORATE GENERAL OF MERCHANT MARINE

PRORROGA No. **165-03**
(EXTENSION No.)

**LA SUSCRITA, DIRECTORA GENERAL DE LA DIRECCION GENERAL DE MARINA MERCANTE**
The Undersigned

**CONSIDERANDO:**
CONSIDERING:

Que el señor **PATTON, MORENO & ASVAT** en su capacidad
That Mr. in the capacity

de **REPRESENTANTE LEGAL** ha solicitado se prorrogue la patente **PROVISIONAL**
of has applied for extension of the navigation

de Navegación No. **28909-PEXT-1** expedida el **9 DE MAYO DEL 2000**
for navigation No. issued on the

a la nave **ENERGY ZAPOTECA**
to the vessel

Que se ha comprobado que esta nave ha pagado impuesto y tasa única anual hasta el _____
That it has been assessed that the said vessel has consular and annual taxes until the

**31 DE DICIEMBRE DEL 2003**

Que la Dirección General de Marina Mercante ha concedido la prórroga de la patente arriba expresada.
That the Directorate General Of Merchant Marine has granted the extension of said certificate of registration.

**RESUELVE:**
RESOLVES:

Prorrógase por el término de **CUATRO (4) MESES** contados desde el **4 DE ABRIL DEL 2003**
To extend for a period of

hasta el **4 DE AGOSTO DEL 2003** la validez de
until the the validity of

la Patente **PROVISIONAL** de Navegación No. **28909-PEXT-1** expedida el
Certificate of Registration for Navigation No. issued on the

**9 DE MAYO DEL 2000** a favor de la nave **ENERGY ZAPOTECA**
for the vessel

del porte de **2,661.00** toneladas netas y
of net tons and

**3,675.00** toneladas brutas, de propiedad de **ZAPOTECA ENERGY INC.**
of gross tons, owned by

Expedida y firmada en **PANAMA** al (los) **VEINTICINCO (25)**
Issued and signed in on the Día (day)

**MARZO**                **2003**
Mes (month)            Año (year)

/mdac

NUMERAL A. C. 42        **200.00**
Derechos cobrados B/.
Fiscal rights US $

Comprobante No. y fecha **LIQ. 112276**
Receipt No. and date

**24-3-03**

(SELLO)
(SEAL)

**LICDA. MARITZENIA DE BARRIOS**
Nombre y firma del Funcionario
Name and signature of Officer

DISTRIBUCION: ORIGINAL Y DUPLICADO - INTERESADO
TRIPLICADO - DIRECCION GRAL. DE MARINA MERCANTE
CON EL INFORME MENSUAL.
CUADRUPLICADO-ARCHIVO, CONSULADO.

P-01- No. 5360

AMP-237

**MALONEY, MARTIN, & MITCHELL, L.L.P.**
The Clocktower Building
3401 Allen Parkway, Suite 100
Houston, Texas 77019
(713) 759-1600
(713) 759-6930 FAX

# EXHIBIT "8"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ZAPOTECA ENERGY, INC.,           §
    Plaintiff/Counter-defendant,     §
                                     §
v                                §          CASE NO. B-04-048
                                     §
CHARLES DOUGLAS PHILLIPS,        §
    Defendant/Counter-claimant.      §

## AFFIDAVIT OF CHARLES DOUGLAS PHILLIPS

THE STATE OF TEXAS       §
                         §
COUNTY OF HARRIS         §

BEFORE ME, the undersigned authority, on this day personally appeared CHARLES PHILLIPS, who being by me duly sworn on oath stated and said the following:

1.   My name is CHARLES DOUGLAS PHILLIPS, I am over eighteen, am competent to make this affidavit, and have personal knowledge of the facts herein stated.

2.   In May 2000, I was hired by SOUTHERN INTERNATIONAL., INC to act as Project Manager on the Rig ENERGY ZAPOTECA in Tuxpan, Mexico. In June of 2000, I was appointed Master of the Rig ENERGY ZAPOTECA by Christian Kongali, one of the shareholders (Owners) of ZAPOTECA ENERGY, INC. In December of 2000, I was hired by ZAPOTECA ENERGY, INC. to remain as Master on the Rig ENERGY ZAPOTECA and also serve as the Owners' Representative of the Rig ENERGY ZAPOTECA. In May of 2001, I was given a general Power of Attorney to handle all legal matters for ZAPOTECA ENERGY, INC. in Mexico.

3.   The terms of my employment with ZAPOTECA ENERGY, INC. were that I was to receive a salary of twelve thousand and no/100 dollars ($12,000.00) per month, plus a per-diem in Mexico in the amount of $2,000.00 Pesos per week, housing allowance of $15,000.00 Pesos per month, and car allowance of $11,000.00 Pesos per month. Upon my return to the United States in May of 2003, my salary remained the same at twelve thousand and no/100 dollars ($12,000.00) per month, with my per-diem being $75.00 USD per day, housing allowance of $2,250.00 USD per month, and car allowance of $500.00 per week at the time of my termination.




EXHIBIT
A



4.  Upon being hired by SOUTHERN INTERNATIONAL, INC. in May of 2000 as Project Manager, I traveled to Tuxpan, Mexico, and immediately began work on the Rig ENERGY ZAPOTECA.

5.  The Rig ENERGY ZAPOTECA is a Friede & Goldman L-780 Independent Leg Jack-up Barge/Rig.

6.  In May of 2000, the Panamanian provisional (navigation) certificate was issued to ZAPOTECA ENERGY, INC. for the Rig ENERGY ZAPOTECA.

7.  In the Summer of 2000, the Rig ENERGY ZAPOTECA, although damaged by a "blow-out", was fully capable of being towed or moved.

8.  In May of 2000, I was employed by SOUTHERN INTERNATIONAL, INC. to perform work on the Rig ENERGY ZAPOTECA for its use in the marine industry as a jack-up barge/rig.

9.  During my employment with SOUTHERN INTERNATIONAL, INC. and ZAPOTECA ENERGY, INC., I physically worked on the Rig ENERGY ZAPOTECA in order to prepare the Rig ENERGY ZAPOTECA for moving and use in the marine industry as a jack-up barge/rig.

10. During my employment with ZAPOTECA ENERGY, INC., and as a direct result of my employment with ZAPOTECA ENERGY, INC., I was charged with a crime in the Country of Mexico and forced to leave Mexico in May of 2003. I must remain outside of the Country of Mexico for a period of not less than three (3) years in order to avoid prosecution for a crime directly resulting from ZAPOTECA ENERGY, INC.'S actions.



11. During my employment with ZAPOTECA ENERGY, INC., I was involved in a labor case in Mexico whereby a writ of attachment was issued against the Rig ENERGY ZAPOTECA in favor of me and my superintendent, for failing to pay us past due and owing wages. The amount of the writ of attachment against the Rig ENERGY ZAPOTECA is $1,115,568.00 USD, of which approximately $500,000.00 USD is directly attributable to wages owed by the Rig ENERGY ZAPOTECA to me.

12. On or about March 10, 2004, I was terminated by ZAPOTECA ENERGY, INC. for failing to perform an illegal act under the laws of the Country of Mexico and move the Rig ENERGY ZAPOTECA from its moored location in the Port of Tuxpan, Mexico, to another location while the Rig ENERGY ZAPOTECA was subject to attachment by the Mexican Labor Court.



13. Upon my termination, I was owed, and remain owed, by ZAPOTECA ENERGY. INC. approximately $20,000.00 in back wages for my services as Master, Owners' Representative and Legal Representative of the Rig ENERGY ZAPOTECA, in addition to $165,000.00 in the form of an agreed severance/bonus payment for the work I performed for ZAPOTECA ENERGY, INC. on the Rig ENERGY ZAPOTECA.

14 The afore described due and owing wages directly result from my services as Master, Owners' Representative and Legal Representative of the Rig ENERGY ZAPOTECA.

15. After my termination, I was named as a defendant in a Mexican Labor Case directly resulting from my role as Master, Owners' Representative and Legal Representative of the Rig ENERGY ZAPOTECA. The costs associated with the defense of this action is in excess of $220,000.00 USD.

16. After my termination, ZAPOTECA ENERGY, INC. maintains no office, agent, officer, shareholder, representative, or property within the United States, other than the Rig ENERGY ZAPOTECA.

17. ZAPOTECA ENERGY, INC. is a foreign corporation incorporated under the laws of Liberia, with its principal place of business and registered agent located at 80 Broad Street, City of Monrovia, County of Montserrado, Republic of Liberia.

18. ZAPOTECA ENERGY, INC.'s only asset is the Rig ENERGY ZAPOTECA.

19. In April of 2004, the Rig ENERGY ZAPOTECA was moved from Tuxpan, Mexico to Sabine Pass, Texas, and as of the making of this affidavit, it remains in Sabine Pass, Texas.



20. In April/May 2003, the Rig ENERGY ZAPOTECA was equipped with two (2) living quarters, portable navigation lights, pumps, tugger, generator, safety equipment, and towing gear.

21. I have seen the Rig ENERGY ZAPOTECA since its arrival in Sabine Pass, Texas and it remains fully capable of being moved or towed to any port of ZAPOTECA ENERGY, INC.'S choosing.

22. I have read the foregoing pleading to which this affidavit is attached, and the contents contained therein are true and correct.

---

FURTHER AFFIANT SAYETH NOT

CHARLES DOUGLAS PHILLIPS

THE STATE OF TEXAS       §
                         §
COUNTY OF HARRIS         §

SWORN TO AND SUBSCRIBED TO BEFORE ME by the said CHARLES DOUGLAS PHILLIPS to certify which witness my hand and seal of office on this _17th_ day of _may_____, 2004.

SUNNY ROBINSON
MY COMMISSION EXPIRES
September 17, 2006

_____
Notary Public, State of Texas

My Commission Expires: