# EXHIBIT "A"

# MEMORANDUM OF AGREEMENT

Dated:          March 18, 2003

Zapoteca Energy, Inc., a Liberian corporation, or their nominee, hereinafter called the Sellers, have agreed to sell and to cause to be sold,

and

Nabors Drilling International Limited, a Bermuda company, or their nominee, hereinafter called the Buyers, have agreed to buy:

Name: ENERGY ZAPOTECA

Classification Society/Class: Bureau Veritas

| | |
|---|---|
| Built: 1981 | By: GVA, Sweden |
| Flag: Panama | Place of Registration: Panama |
| Call Sign: N/A | Grt/Nrt: 3,675 / 2,661 |

Register Number: 28909 PEXT-1

in its entirety, with everything belonging to it, whether on board, ashore or on order including all broached or unbroached provisions, inventory, stores, spare parts, spare equipment, rig site inventory, shore base spare parts, drawings and specifications, operating manuals, and all other documents pertaining to the ENERGY ZAPOTECA, including without limitation the equipment and inventory described on Exhibit 1 (collectively "the Vessel"), on the following terms and conditions:

## Definitions

"Banking days" are days on which banks are open both in the country of the currency stipulated for the Purchase Price in Clause 1 and in the place of closing stipulated in Clause 8.

"In writing" or "written" means a letter handed over from the Sellers to the Buyers or vice versa, a registered letter, telex, telefax or other modern form of written communication.

"Classification Society" or "Class" means the Society referred to above.

1.      Purchase Price

The purchase price for the Vessel shall be USD 8,750,000 (United States Dollars Eight Million Seven Hundred and Fifty Thousand). An amount equal to USD 100,000 shall be deducted from Sellers' proceeds for a commission payable to Normarine Offshore Consultants (USA), Inc. at the Closing, such commission being the obligation of the Sellers.

Purchase Price payable in accordance with Clauses 2 and 3.

2.  Deposit

As security for the correct fulfillment of this Agreement the Buyers shall pay a deposit of 10% (ten per cent) of the Purchase Price within three (3) banking days from the date of this Agreement. This deposit shall be placed with Nordea Bank ASA, London and held by them in a joint account for the Sellers and the Buyers, to be released in accordance with joint written instructions of the Sellers and the Buyers. Interest, if any, to be credited to the Buyers. Any fee charged for holding the said deposit shall be borne equally by the Sellers and the Buyers.

3.  Payment

The balance of the Purchase Price shall be paid in full free of bank charges to
Nordea Bank ASA
PO Box 166 – Sentrum
0107 Oslo
USD Acct.
IBAN Number NO 53
Account number 6009.04.42174
Swift code NDEANOKK

at the Closing but not later than three banking days after the Vessel is in every respect physically ready for delivery in accordance with the terms and conditions of this Agreement, the Notice of Readiness has been given in accordance with Clause 5, and the conditions to closing described in Clause 8 have been satisfied.

4.  Inspections

The Buyers have inspected and accepted the Vessel's classification records. The Buyers have also inspected the Vessel at its current location in Tuxpan, Mexico and have accepted the Vessel following this inspection and the sale is outright and definite, subject only to the terms and conditions of this Agreement.

5.  Notices, time and place of delivery

a)  Sellers shall have the responsibility to jack the Vessel down, safely afloat, ready for wet tow. Buyers shall provide Sellers with ten, five and one days' notice of when this is to be completed. Sellers will hand the Vessel over to Buyers at its current location, hereinafter called the Hand Over, and Buyers will act as Sellers agent until the Closing.

b)  Buyers to supply and install at their cost any additional equipment not included in the sale and required for the tow including towing arrangements, safety equipment, living quarters, etc. as well as pay and arrange for any riding crew during the wet tow from handover Tuxpan til delivery, if required. The Buyers shall be responsible for and cover all costs for tugs as required. The Buyers shall be responsible for and cover all costs for any inspection of, and repairs or modifications to, the legs of the Vessel or otherwise required in order to transport the same. The Vessel must be approved by a



qualified marine surveyor appointed by Sellers for the wet tow and the surveyor selected must be acceptable to the Sellers' and Buyers' insurance underwriters. Such acceptance will not be unreasonably withheld. If Sellers' insurance premiums should increase because of the change in the Vessels status from stacked to being mobilized, Buyers will pay the increased cost from Hand Over until the Closing.

c) The Buyers shall keep the Sellers well informed of the Vessel's itinerary after Hand Over. The Buyers shall provide the Sellers with five, three and one days' notice of the estimated time of arrival at the intended delivery point. When the Vessel is at the delivery point and in every respect physically ready for delivery in accordance with this Agreement, the Sellers shall give the Buyers a written Notice of Readiness for delivery.

d) The Vessel shall be delivered and taken over safely afloat as soon as practical after the Vessel has left Tuxpan, Mexico under wet tow and moved into international waters northbound for Corpus Christ, USA. The risk of damage to, or loss of, the Vessel shall remain with the Sellers until the Closing.

Expected time of delivery: Between 1 April 2003 and 15 April 2003.

Date of canceling (see Clauses 5 e) and 14): April 15.

e) If the Sellers anticipate that, notwithstanding the exercise of due diligence by them, the Vessel will not be ready for Hand Over by the canceling date they may notify the Buyers in writing stating the date when they anticipate that the Vessel will be ready for Hand Over and propose a new canceling date. Upon receipt of such notification the Buyers shall have the option of either canceling this Agreement in accordance with Clause 14 within 7 running days of receipt of the notice or of accepting the new date as the new canceling date. If the Buyers have not declared their option within 7 running days of receipt of the Sellers' notification or if the Buyers accept the new date, the date proposed in the Sellers' notification shall be deemed to be the new canceling date and shall be substituted for the canceling date stipulated in Clause 5 d).

If this Agreement is maintained with the new canceling date all other terms and conditions hereof including those contained in Clauses 5 a), 5 b), 5 c), and 5 e) shall remain unaltered and in full force and effect. Cancellation or failure to cancel shall be entirely without prejudice to any claim for damages the Buyers may have under Clause 14 for the Vessel not being ready by the original canceling date.

f) Should the Vessel become an actual, constructive or compromised total loss before delivery the deposit together with interest earned shall be released immediately to the Buyers whereafter this Agreement shall be null and void.

6.    **Drydocking/Divers Inspection**

Intentionally omitted.

7.    **Spares/bunkers, etc.**

The Sellers shall deliver the Vessel to the Buyers with everything belonging to her on board as provided in the equipment list and inventory attached to this Agreement as Exhibit 1. All spare parts and spare equipment including spare tail-end shaft(s) and/or spare propeller(s)/propeller blade(s), if any, belonging to the Vessel at the time of inspection used or unused, whether on board or not shall become the Buyers' property, but spares on order are to be excluded. Forwarding charges, if any,

C:\Documents and Settings\Timothy.Novak\My Documents\Final MOA Zapoteca 03.17.03 1.doc

shall be for the Sellers' account. The Sellers are not required to replace spare parts including spare tail-end shaft(s) and spare propeller(s)/propeller blade(s) which are taken out of spare and used as replacement prior to delivery, but the replaced items shall be the property of the Buyers. The radio installation and navigational equipment if any shall be included in the sale without extra payment if they are the property of the Sellers. Unused stores and provisions if any shall be included in the sale and be taken over by the Buyers without extra payment.

The Sellers have the right to take ashore crockery, plates, cutlery, linen and other articles bearing the Sellers' flag or name, provided they replace same with similar unmarked items. Library, forms, etc., exclusively for use in the Sellers' vessel(s), shall be excluded without compensation. Captain's, Officers' and Crew's personal belongings including the slop chest are to be excluded from the sale as well as the following additional items (including items on hire):

The Buyers shall take over the remaining bunkers and unused lubricating oils in storage tanks and sealed drums and pay the current net market price (excluding barging expenses) at the port and date of delivery of the Vessel.

Payment under this clause shall be made at the same time and place and in the same currency as the Purchase Price

## 8.   Closing

The place of closing:   Nordea Bank ASA offices, London.

In exchange for payment of the Purchase Price the Sellers shall furnish the Buyers with delivery documents, namely:

a) Legal Bill of Sale in a form recordable in Panama (the country in which the Buyers are to register the Vessel), warranting that the Vessel is free from all encumbrances, mortgages and maritime liens or any other debts or claims whatsoever, duly notarially attested and legalized by the consul of such country or other competent authority.

b) Current Certificate of Ownership issued by the competent authorities of the flag state of the Vessel and demonstrating that Sellers have good and marketable title to the Vessel.

c) Confirmation of Class issued as per BV Report of 1 March 2002 already handed over to Buyers.

d) Current Certificate issued by the competent authorities stating that the Vessel is free from registered encumbrances.

e) Certificate of Deletion of the Vessel from the Vessel's registry or other official evidence of deletion appropriate to the Vessel's registry at the time of delivery, or, in the event that the registry does not as a matter of practice issue such documentation immediately, a written undertaking by the Sellers to effect deletion from the Vessel's registry forthwith and furnish a Certificate or other official evidence of deletion to the Buyers promptly and latest within 4 (four) weeks after the Purchase Price has been paid and the Vessel has been delivered.

f) Any such additional documents as may reasonably be required by the competent authorities for the purpose of registering the Vessel, provided the Buyers notify the Sellers of any such documents as soon as possible after the date of this Agreement.

At the time of delivery the Buyers and Sellers shall sign and deliver to each other a Protocol of Delivery and Acceptance confirming the date and time of delivery of the Vessel from the Sellers to the Buyers.

At the time of delivery the Sellers shall hand to the Buyers the classification certificate(s) as well as all plans etc., which are on board the Vessel. Other certificates which are on board the Vessel shall also be handed over to the Buyers unless the Sellers are required to retain same, in which case the Buyers to have the right to take copies. Other technical documentation which may be in the Seller's possession shall be promptly forwarded to the Buyers at their expense, if they so request. The Sellers may keep the Vessel's log books but the Buyers to have the right to take copies of same.

### 9. Encumbrances

The Sellers warrant that the Vessel, at the time of delivery, is free from all charters, encumbrances, mortgages, and maritime liens or any other debts whatsoever. The Sellers hereby undertake to indemnify the Buyers against all consequences of claims made against the Vessel which have been incurred prior to the time of delivery.

### 10. Taxes, etc.

Any taxes, fees and expenses in connection with the purchase and registration under the Buyers' flag shall be for the Buyers' account. Any VAT, customs clearance and duties, taxes, notarial, consular or other charges/expenses connected with the sale of the Vessel and closing of the Sellers' register and any other taxes, fees and expenses customarily paid by the Sellers in transactions of this type shall be for the Sellers' account. The Sellers shall indemnify the Buyers against all such claims made against the Vessel.

The parties shall endeavor to minimize the tax consequences to the Buyers and the Sellers arising from this transaction, and each shall reasonable cooperate with the other to effect the most tax efficient transfer; provided, however, that neither the Buyers nor the Sellers shall be required to incur additional costs to minimize the tax consequences to the other party.

### 11. Condition on delivery

The Vessel with everything belonging to her shall be at the Sellers' risk and expense until the Closing, but subject to the terms and conditions of this Agreement she shall be delivered and taken over as she was at the time of inspection, fair wear and tear excepted and except for all modifications done by the Buyers in preparation for the tow by the Buyers.

The Vessel shall be delivered as is with her class and other certificates as per time of inspection.

### 12. Name/markings

Within 60 days following delivery the Buyers undertake to change the name of the Vessel and alter funnel markings.

13.   Buyers' default

Should the deposit not be paid in accordance with Clause 2, the Sellers have the right to cancel this Agreement, and they shall be entitled to claim compensation for their losses and for all expenses incurred together with interest.

Should the Purchase Price not be paid in accordance with this Agreement, the Sellers have the right to cancel the Agreement, in which case the deposit together with interest earned shall be released to the Sellers. If the deposit does not cover their loss, the Sellers shall be entitled to claim further compensation for their losses and for all expenses incurred together with interest.

Should the Buyers not have in place the tugs as approved by Sellers insurers and marine surveyor to wet tow the Vessel, or have not done the modifications, if any, to make the Vessel ready for the wet tow, by the Date of Canceling then the Sellers shall be entitled to additional purchase price in the amount of USD$8,000 per day pro rata until Buyers obligations under this paragraph have been satisfied, up to a maximum of 14 days. If Buyer has not satisfied its obligations under this paragraph within 14 days following the Date of Canceling, then Sellers shall have the right to cancel the Agreement, in which case the deposit together with interest earned shall be released to the Sellers. If the deposit does not cover their loss, the Sellers shall be entitled to claim further compensation for their losses and for all expenses incurred together with interest.


14.   Sellers' default

Should the Sellers fail to give Notice of Readiness in accordance with Clause 5 c) or fail to be ready to validly complete a legal transfer by the date stipulated in Clause 5 d) the Buyers shall have the option of canceling this Agreement provided always that the Seller shall be granted a maximum of 3 banking days after Notice of Readiness has been given to make arrangements for the documentation set out in Clause 8 or otherwise remedy the failure. If after Notice of Readiness has been given but before the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not made physically ready again in every respect by the date stipulated in Clause 5 d) and new Notice of Readiness given, the Buyers shall retain their option to cancel. In the event that the Buyers elect to cancel this Agreement the deposit together with interest earned shall be released to them immediately.

Should the Sellers fail to give Notice of Readiness by the date stipulated in Clause 5 d) or fail to be ready to validly complete a legal transfer as aforesaid they shall make due compensation to the Buyers for all of their expenses together with interest if their failure is caused by proven negligence and whether or not the Buyers cancel this Agreement.

Should the Buyers not have in place the tugs as approved by Sellers insurers and marine surveyor to wet tow the Vessel or have not done the modifications, if any, to make the Vessel ready for the wet tow, by the Date of Canceling then the Sellers shall not be in default for having failed to give Notice of Readiness.

## 15. Buyers' representatives

After this Agreement has been signed by both parties and the deposit has been lodged, the Buyers have the right to place two representatives on board the Vessel at their sole risk and expense after the Deposit has been lodged at their own cost, risk and liability.

These representatives are on board for the purpose of familiarisation and in the capacity of observers only, and they shall not interfere in any respect with the operation of the Vessel. The Buyers' representatives shall sign the Sellers' letter of indemnity prior to their embarkation.

## 16. Arbitration

This Agreement shall be governed by and construed in accordance with English law and any dispute arising out of this Agreement shall be referred to binding arbitration in London in accordance with the Arbitration Acts 1950 - 1979 or any statutory modification or re-enactment thereof for the time being in force, one arbitrator being appointed by each party. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall apply. If two arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final.

## 17. Confidentiality

This offer shall be treated in a confidential fashion by the parties. During the full course of these negotiations, both parties hereto shall undertake to maintain the identity of the Buyers and the Sellers, the Vessel involved and the purchase price in a confidential manner and shall not disclose same in the absence of the other parties express written consent except as may be necessary to comply with applicable governmental requirements or rules of any applicable stock exchange.

## 18. Miscellaneous

This agreement constitutes the entire agreement between the Sellers and Buyers and supercedes all prior agreements (whether written or oral, express or implied) that may have been made between the parties. Neither party may assign this Agreement without the written consent of the other party, which will not be withheld unreasonably.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first written above.

ZAPOTECA ENERGY, INC.

Name: P.D. GRAM
Title: DIRECTOR

NABORS DRILLING INTERNATIONAL LIMITED

Name: Siegfried Meissner
Title: President

# EXHIBIT "B"

# FIRST AMENDMENT
## to
## MEMORANDUM OF AGREEMENT

Dated:      May 9, 2003

Zapoteca Energy, Inc., a Liberian corporation, or their nominee, hereinafter called the Sellers,

and

Nabors Drilling International Limited, a Bermuda company, or their nominee, hereinafter called the Buyers, have agreed as follows:

1) Sellers and Buyers have been working together on best efforts basis to deliver the ENERGY ZAPOTECA according to that certain Memorandum of Agreement ("MoA") signed by both parties on March 18, 2003.

2) The MoA is hereby modified so that the Date of canceling is now May 31, 2003. Sellers to make best efforts to clear customs by May 15, 2003.

3) Sellers and Buyers have agreed to amend Clause 1 of MoA, so the new Purchase Price is USD 8,898,000.

4) Sellers will give notice to Buyers once the Vessel has cleared customs. Following this notice, Buyers will get 48 hours to arrange for an ocean going tug (the 48 hours to be extended in case of force majuer), after which Buyers will pay Sellers USD 4,000 per day until delivery of the Vessel in international waters as stated in MoA.

5) Sellers to provide Buyers as soon as practicable possible a commercial invoice at cost for remaining fuel and assistance by Sellers personnel. Buyers to pay for these at cost expenses.

6) Buyers have agreed to accept the USD 250,000 each claim as stipulated under the Gulf Insurance Company policy No. 034-37-86.

7) Should Buyers equipment installed onboard the Vessel break or fail to the extent that John Lebourhis & Associates or the local Port Authority refuses to let the Vessel leave for international waters, Buyers will cover Sellers at cost expenses and the canceling date will be extended accordingly.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first written above.

ZAPOTECA ENERGY, INC.

Name:
Title: K. STEINLEY

FOR AND BEHALF OF
P.P. GRUAL & CO
AS AGENT FOR
ZAPOTECA ENERGY INC

NABORS DRILLING INTERNATIONAL LIMITED

Name:
Title: S. MEISSNER

PRESIDENT

# EXHIBIT "C"

Case 1:04-cv-00048   Document 67-2   Filed in TXSD on 12/13/2004   Page 11 of 19

# EQUIPMENT LEASE AGREEMENT

THIS EQUIPMENT LEASE AGREEMENT ("Agreement"), made and entered into this 19th day of December, 2003, is by and between Nabors Drilling International Limited, a Bermuda exempted company ("NDIL") and Zapoteca Energy, Inc., a Liberian corporation ("Zapoteca").

WHEREAS, the parties entered into a Memorandum of Agreement dated March 18, 2003 (as subsequently amended, the "MOA") for the purchase of the jackup drilling rig "Energy Zapoteca"; and

WHEREAS, NDIL gave notice of termination of the MOA on September 3, 2003; and

WHEREAS, without constituting an admission by Zapoteca that such termination was rightful or by NDIL that such termination was wrongful, the parties desire to come to an accommodation regarding certain equipment belonging to or provided by NDIL which is installed aboard the "Energy Zapoteca," (the "Rig") more specifically set forth in Exhibit A to this Agreement (the "Equipment"); and

WHEREAS, Zapoteca desires to lease the Equipment from NDIL, and NDIL is willing to lease the Equipment to Zapoteca on the terms and conditions herein; and

WHEREAS, except as specifically agreed herein, each party reserves the right to pursue any claims it may have arising in connection with the MOA;

NOW THEREFORE, for good and valuable consideration, the parties agree as follows:

1. <u>Preliminary Provisions</u>.

    (a) Upon execution of this Agreement, Zapoteca shall promptly deliver consent to Nordea Bank ASA (the "Bank") for release to NDIL of the funds deposited in the Bank by NDIL pursuant to the MOA, and any interest accrued thereon, in such form as shall be required by the Bank, with copy to NDIL.

    (b) Upon receipt of all funds from the Bank, NDIL shall promptly provide, or cause to be provided, all documentation necessary for the export of the Equipment from Mexico and import into the United States.

    (c) The parties agree to meet in Houston, Texas at a mutually agreed date after arrival of the Rig in international waters for nonbinding discussions regarding NDIL's possible purchase of the Rig.

    (d) The parties each reserve all rights to pursue any claims arising under the MOA, but both parties will forbear from taking any legal or other action relating to such claims before the earlier of (i) March 1, 2004 or (ii) termination of this Agreement pursuant to <u>Section 9</u> hereof. Notwithstanding the foregoing, the parties may file any pleadings or motions they deem necessary in the Texas state court civil lawsuit Cause No. 2003-41351A, <u>McDermott v. Zapoteca Energy and Nabors Drilling International Limited</u> to preserve their rights.

2. <u>Lease Provisions</u>.

    (a) Subject to the terms of this Agreement, NDIL hereby agrees to lease to Zapoteca, and Zapoteca agrees to lease from NDIL, the Equipment.

    (b) Zapoteca shall pay to NDIL a rental fee as set forth below commencing on January 1, 2004, and continuing until termination of this Agreement in accordance with <u>Section 9</u> hereof.

    (i) From January 1, 2004 through February 28, 2004 the lease rate shall be USD 1,278 per day or portion thereof.

    (ii) From and after March 1, 2004 the lease rate shall be USD 1,470 per day or portion thereof.

    (c) Payment shall be made by wire transfer net of bank fees (except fees charged by NDIL's bank) to:

|  |  |
|---|---|
| Bank Name: | Bank One, N.A. |
| Bank Address: | 910 Travis St. |
|  | Houston, TX 77002 |
| ABA Routing No.: | 111000614 |
| Swift Code: | BONEUS44 |
| Account No.: | 1824135808 |
| Account Name: | Nabors Drilling Int'l Ltd. |

3. <u>Title</u>. At all times during the term of this Lease, NDIL shall retain title to the Equipment and all rights incidental thereto provided by law.

4. <u>Purchase Option</u>. At any time from and after February 1, 2004, Zapoteca shall have the option to purchase the Equipment from NDIL (the "Purchase Option") for USD 368,756 (the "Purchase Price"). Zapoteca may exercise this option by delivering advance written notice to NDIL and making payment of the Purchase Price and all accrued but unpaid lease payments. No credit for prior lease payments shall be deducted from the Purchase Price.

5. <u>No Warranty</u>. The Equipment is leased to Zapoteca on an "as-is, where-is" basis. NDIL MAKES NO WARRANTY WHATSOEVER WITH RESPECT TO THE EQUIPMENT. WARRANTIES OF MERCHANTABILITY, SUITABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE EXPRESSLY DISCLAIMED.

6. <u>Return of Equipment</u>. If the Purchase Option is not exercised, the Equipment will be delivered to NDIL at Port Freeport, Texas, USA. Zapoteca will notify NDIL upon the Rig's departure from Tuxpan and give at least three days' notice prior to arrival in Freeport.

7. <u>Insurance and Indemnity</u>.

    (a) Zapoteca shall, throughout the term of this Agreement, maintain All Risk Property Insurance in the amount of USD 368,756 (such amount deemed to be the "Full Declared Value" of the Equipment) covering loss of or damage to the Equipment, in which NDIL is named as co-insured. Such insurance policy shall provide that such insurance may not be canceled or otherwise modified without 30 days' prior written notice to NDIL. Any deductible under such All Risk Property Insurance shall be for Zapoteca's account. Certificates evidencing such coverage shall be provided to NDIL promptly upon execution of this Agreement.

    (b) ZAPOTECA WILL DEFEND AND HOLD HARMLESS NDIL, NDIL'S AFFILIATED COMPANIES, AND THEIR RESPECTIVE SHAREHOLDERS, EMPLOYEES, OFFICERS, DIRECTORS, AGENTS AND SERVANTS AGAINST ANY CLAIMS OF ANY SORT RELATED TO, OR DAMAGE TO, THE NDIL EQUIPMENT ARISING DURING ZAPOTECA'S CUSTODY, REGARDLESS OF CAUSE, INCLUDING THE SOLE OR CONCURRENT NEGLIGENCE OF NDIL, PRE-EXISTING CONDITIONS, OR ANY THEORY OF STRICT OR PRODUCTS LIABILITY WHICH MAY BE APPLICABLE.

    (c) If the Equipment should be lost, destroyed or damaged beyond repair for any reason, Zapoteca shall, no later than ten days after the date of such loss, pay NDIL the Full Declared Value of the Equipment, plus any amounts due as lease payments up to and including the date of such loss, of the Full Declared Value of the Equipment to NDIL as provided above. For the purposes of this clause, loss of the Equipment shall include loss due to expropriation, confiscation or nationalization by any governmental authority.

8. <u>Limitation of Liability</u>. NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR INDIRECT OR CONSEQUENTIAL DAMAGES RESULTING FROM OR ARISING OUT OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, LOSS OF PROFIT, LOSS OF PROPERTY OR MINERAL RIGHTS, OR BUSINESS INTERRUPTION, HOWEVER SAME MAY BE CAUSED.

9. <u>Termination</u>. This Agreement shall terminate upon payment of all accrued but unpaid lease payments and the earliest of (a) Delivery of the Equipment to NDIL as provided in <u>Section 6</u>, (b) payment of the Purchase Price pursuant to exercise of the Purchase Option, and (c) payment by Zapoteca of the Full Declared Value of the Equipment pursuant to <u>Section 7(c)</u>.

10. <u>General Provisions</u>.

(a) This Agreement shall be governed by English law.

(b) All notices relating to this Agreement may be delivered in person to an official of the addressee or by telex, telegram, facsimile or registered mail and shall be effective when received by the addressee. The addresses of the parties hereto for the purposes hereof are:

Zapoteca:

    Zapoteca Energy, Inc.
    c/o P.D. Gram & Co. AS
    P.O. Box 1383 Vika
    0114 Oslo, Norway
    Facsimile: +47 (22) 01-74-55

With copy to:

_____
_____
_____
Facsimile: _____

NDIL:

    Nabors Drilling International
    Attn: President
    c/o Nabors International, Inc.
    515 West Greens Road, Suite 900
    Houston, Texas 77067 United States
    Facsimile: (281) 775-8011

With copy to:

    Nabors Corporate Services, Inc.
    Law Department
    Attn: James Lank, Associate Counsel
    515 West Greens Road, Suite 1200
    Houston, TX 77095 United States
    Facsimile: (281) 775-4326

Either party hereto may change its address by notifying the other party in writing of such change.

(c) Neither party shall assign this Agreement. Zapoteca shall not sublet the Equipment or any part thereof.

(d) This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof and supersedes all previous agreements and understandings, oral and written. This Agreement may only be amended in a written instrument properly executed by duly authorized representatives of the respective parties.

(e) This Agreement shall be binding upon the parties hereto and shall inure to the benefit of their respective successors.



3

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the day and year first above written.

NABORS DRILLING INTERNATIONAL LIMITED
By: _____
Name: Daniel McLachlin
Title: Assistant Secretary

ENERGY ZAPOTECA, INC.
By: _____
Name: V. Steimlen
Title: Unixon Rep.

4

## APPENDIX A
### List of Equipment

| Item no. | Description | Qty |
|---|---|---|
| 1 | VHF RADIO'S -STD. MARINE | 2 |
| 2 | DIAMOND DAY SHAPE SIGNAL | 2 |
| 3 | 12 MAN LIFT RAFT | 1 |
| 4 | 21" ORANGE BUOY | 1 |
| 5 | 3" X 20' STUD LINK CHAIN | 2 |
| 6 | #2 TOWING PLATE | 1 |
| 7 | 2" X 60' -6X36 -TOW BRIDLE | 3 |
| 8 | 3" KENTER CONN. LINK | 2 |
| 9 | 2-1/2" TOWING SHACKLES | 8 |
| 10 | 2" X 90' EMERGENCY TOW WIRE | 1 |
| 11 | NAV-AID LIGHT SYSTEMS | 3 |
| 12 | LIGHT STANDS | 4 |
| 13 | AIR TUGGER W/CABLE & MOUNTING CAGE MODEL K6U | 1 |
| 14 | 2" SELF-PRIMING GAS POWERED PUMPS | 2 |
| 15 | 2" X 20' SUCTION HOSES | 2 |
| 16 | 2" X 50' DISCHARGE HOSES | 2 |
| 17 | 5-GALLON EMPTY GAS CANS | 6 |
| 18 | 5-TON CHAIN FALL HOISTS | 2 |
| 19 | 1/2" X 20' SPEC 8 CHAIN | 1 |
| 20 | 5/16" CHAIN CONNECTORS | 4 |
| 21 | 1" CROW FOOT COUPLERS | 6 |
| 22 | 1" HOSE CLAMPS | 6 |
| 23 | STRAINER 2" STANDARD THD | 2 |
| 22 | 2" X 300' 3 STR ELLOW POLY ROPE | 1 |
| 23 | 2" GALVANIZED SAFETY ANCHOR SHACKLE | 1 |
| 24 | FOUR MAN SLEEPER UNIT, INCLUDING 2 BUNK BEDS AND 4 LOCKERS (INSTALLED), (PACKED ONE AIR CONDITION UNIT, MAYTAG 12,000 BTU) | 1 |
| 25 | FOUR MAN SLEEPER/KITCHEN UNIT INCLUDING 2 BUNK BEDS, 4 LOCKERS, ONE SHOWER, BUILT IN MICROWAVE, A/C UNIT, ROOF MOUNTED 110 V. INSTALLED. PACKED SEPARATE 1 TABLE, 4 CHAIRS CABLE) | 1 |
| 26 | CAMP RESTING SUPPORTS | 5 |
| 27 | STAIRS | 2 |
| 28 | OXYGEN 9.5M3 INDUSTRIAL | 1 |
| 29 | 4.0 KG ACET. INDUSTRIAL | 1 |
| 30 | COMPLETE WELDER CUTTING EQUIPMENT | 1 |
| 31 | AIR COMPRESSOR (100HP) 325 CFM | 1 |
| 32 | 150 KW GENERATOR | 1 |
| 33 | WEDGE F/ JACKING LEGS (12) | 1 |
| 34 | COMPRESSOR 200HP-825 CFM | 1 |
| 35 | 20KG DRY CHEMICAL FIRE EXTINGUISHER (2 EA) | 1 |



# EXHIBIT "D"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC., | § § § | |
| Petitioner | § § | C.A. NO. 04-CV-48 |
| V. | § § | |
| CHARLES DOUGLAS PHILLIPS | § § | |
| Respondent | § | |

### AFFIDAVIT OF ERIK OSTBYE

| | | |
|---|---|---|
| STATE OF TEXAS | § § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF HARRIS | § | |

BEFORE ME, the undersigned authority, on this day did personally appear **Erik Ostbye**, known to me to be the person executing this affidavit, and upon being duly sworn upon his oath did depose and state as follows:

1. My name is Erik Ostbye. I am over 18 years of age, of sound mind and have never been convicted of a felony or crime involving moral turpitude. I am a representative of Zapoteca Energy, Inc., and I have personal knowledge of the facts set forth below.

2. The rig ENERGY ZAPOTECA is not being marketed under the name of ENERGY EUROPA or any other assumed name. The claims by Charles Phillips and Nabors Drilling International Limited that the rig ENERGY ZAPOTECA is being marketed under the name of ENERGY EUROPA are false.

3. Zapoteca Energy, Inc.'s first notice and/or information whatsoever concerning the ENERGY EUROPA was received on or about November 22, 2004, upon its receipt of Charles Phillips' Response to Zapoteca's Motion for Rehearing filed herein.

4. Zapoteca Energy, Inc. has never been contacted by, nor had discussions with, Intership Limited regarding marketing of the rig ENERGY ZAPOTECA under its actual name or an assumed name.

5. If the ENERGY EUROPA on the Intership Limited's website is indeed the ENERGY ZAPOTECA, such marketing of the rig constitutes unilateral conduct by Intership Limited acting on its own and such marketing by Intership Limited was not, and is not, authorized by Zapoteca Energy, Inc.

Further Affiant sayeth not.

By: _____
Erik Ostbye

GIVEN UNDER my hand and official seal of office this 13th day December, 2004.

[Notary Seal: JANET G. HERBERT, NOTARY PUBLIC, STATE OF TEXAS, MY COMMISSION EXPIRES DEC. 22, 2004]

_____
Notary Public in and for
The State of Texas

My Commission Expires: 12-22-04