IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC., | § | |
|     Plaintiff | § | |
| | § | C.A. NO. B-04-048 |
| V. | § | |
| | § | |
| CHARLES DOUGLAS PHILLIPS | § | |
|     Defendant | § | |

**ZAPOTECA ENERGY, INC.'S ANSWERS TO**
**COURT'S ORDER DATED JANUARY 10, 2005**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Petitioner, Zapoteca Energy, Inc. (hereinafter sometimes referred to as "Zapoteca"), and files this its Answers to the Court's Order Dated January 10, 2005, and would respectfully show the Court the following:

1.    On what date did the relationship between Zapoteca and Phillips begin?

**ANSWER:    Zapoteca's relationship with Charles Douglas Phillips (hereinafter sometimes referred to as "Phillips") began on or about May 2000.  At this time, Zapoteca had entered into a contract with Southern International for the refurbishment and/or repair of the ENERGY ZAPOTECA, and Phillips was hired by Southern International.  On or about December 2000, after the termination of the contract between Zapoteca and Southern International, Phillips was hired directly by Zapoteca to oversee the continuation and/or completion of the refurbishment/repair project initiated by Southern International.**

2.    Is there a contract between Zapoteca and Phillips?

**ANSWER:    No.**

3.    If a contract exists, is it a written contract?

**ANSWER:    Not applicable.  There is no contract.**

4. What date did the contract arise?

**ANSWER: Not applicable. There is no contract.**

5. Was the contract related to the maritime employment of Phillips?

**ANSWER: Not applicable. There is no contract. However, Phillips' employment was not maritime employment.**

6. If the contract was related to maritime employment, is it necessary for a "vessel" to be involved in same?

**ANSWER: Not applicable. There is no contract. However, yes, it is necessary for a "vessel" to be involved in a contract related to maritime employment.**

7. If the contract was related to maritime employment and if the Rig is deemed a "dead ship," is the contract outside the purview of the Court's admiralty jurisdiction?

**ANSWER: Not applicable. There is no contract. However, yes, because in the absence of a vessel, claims do not sound in admiralty or maritime law.**

8. Was there a contract between Zapoteca and Phillips to repair the Rig? Describe Phillips' role.

**ANSWER: No. Phillips was employed to oversee the refurbishment and repair of the ENERGY ZAPOTECA.**

9. Who was actually hired to refurbish the Rig? Who hired them?

**ANSWER: Local Mexican workers were hired and local Mexican subcontractors and/or vendors were engaged to carry out the refurbishment work on the ENERGY ZAPOTECA. Phillips hired the local Mexican workers and Phillips engaged the local subcontractors and/or vendors.**

10. What services did Zapoteca and Phillips determine that Phillips would provide in association with the Rig? In other words, what was Phillips hired to do?

**ANSWER: Zapoteca hired Phillips to oversee the refurbishment and repair of the ENERGY ZAPOTECA.**

11. Did Phillips physically perform repairs on the Rig?

**ANSWER: Phillips may have physically performed some repair work on the ENERGY ZAPOTECA. If Phillips did physically perform repair work on the rig, Zapoteca believes that any such repair work was minimal in nature and merely incidental to his principal responsibility of overseeing the refurbishment and repair of the ENERGY ZAPOTECA.**

12. What services did Phillips actually provide in association with the Rig?

**ANSWER: Phillips served as Zapoteca's representative charged with responsibility for overseeing the refurbishment and repair of the ENERGY ZAPOTECA, reporting to the owners of the ENERGY ZAPOTECA regarding the progress and status of the refurbishment and repair of the ENERGY ZAPOTECA, looking after and acting in the best interests of the owners of the ENERGY ZAPOTECA in connection with the refurbishment and repair of the ENERGY ZAPOTECA, ensuring that the refurbishment and repair project was performed within the budget agreed to by Zapoteca and Phillips, and ensuring that the refurbishment and repair project was completed within the timeframe agreed to by Zapoteca and Phillips.**

13. Where did Phillips perform said services? If not at the same location where the Rig was being repaired; where was the Rig located when repairs were being done?

**ANSWER: From on or about May 2000 until on or about June 2003, Phillips performed said services in Tuxpan, Mexico, and, at least in part aboard the ENERGY ZAPOTECA.**

**After on or about June of 2003, Phillips oversaw the refurbishment and repair of the ENERGY ZAPOTECA from Port Isabel, Texas. The ENERGY ZAPOTECA, at all relevant times from May 2000 to April 2004 was located in Tuxpan, Mexico.**

14. When did Phillips commence providing his services?

**ANSWER:    Phillips commenced providing his services on or about May 2000.**

15. Was Phillips hired to work aboard a vessel in navigable waters?

**ANSWER:    No.**

16. To what extent did the services provided by Phillips relate to the mission of the Rig?

**ANSWER:    The ENERGY ZAPOTECA had no mission as it was neither capable of functioning as an offshore drilling unit nor was it a vessel engaged in any form of commercial activity. The goal of Zapoteca was to refurbish and repair the ENERGY ZAPOTECA and, in this regard, Phillips was responsible for overseeing the refurbishment and repair project.**

17. Was the contract between Zapoteca and Phillips related to the Rig in its use as such?

**ANSWER:    There was no contract. Phillips' employment was not related to any concurrent use of the ENERGY ZAPOTECA as such, because it was neither capable of functioning as an offshore drilling unit nor was it a vessel engaged in any form of commercial activity.**

18. What company actually hired Phillips? What individual involved with that company did the hiring?

**ANSWER:    Zapoteca hired Phillips on or about December 2000. Phillips was hired by Christian Kongsli.**

19. For whom did Phillips actually work? Who paid Phillips?

**ANSWER:** Phillips worked for Zapoteca and was paid by Zapoteca.

20. What services was Phillips actually performing at the time his employment was terminated?

**ANSWER:** In March 2004, Phillips was responsible for controlling, coordinating and finalizing the move of the ENERGY ZAPOTECA from Tuxpan, Mexico to Texas. However, Zapoteca does not concede that Phillips was in fact carrying out this responsibility in a manner consistent with his fiduciary duty and obligation to protect and act in the best interests of Zapoteca.

21. What services was Phillips actually performing at the time his employment was terminated?

**ANSWER:** Same question and answer as number 21 above. In March 2004, Phillips was charged with responsibility for and coordinating the move of the ENERGY ZAPOTECA from Tuxpan, Mexico to Texas. However, Zapoteca does not concede that Phillips was in fact carrying this responsibility in a manner consistent with his obligation to protect and act in the best interests of Zapoteca.

22. When was Phillips fired?

**ANSWER:** On March 10, 2004, Zapoteca revoked Phillips' powers under a Power of Attorney dated April 17, 2002 and Power of Attorney Protocol No. 33/2001 due to Phillips' refusal to obey orders and/or follow instructions. (See letter from Edwin K. Nelson, IV, dated 10 March 2004, attached hereto as Exhibit "A" and Declaration Under Penalty of Perjury of Christian Kongsli, attached hereto as Exhibit "B.") Phillips responded to this on March 10, 2004, with a "termination" invoice. (See Invoice "2097-Termination" dated

March 10, 2004, attached hereto as Exhibit "C."). The parties' relationship effectively terminated on March 10, 2004.

23.     How far along was the refurbishment of the Rig at the time Phillips was fired?

**ANSWER:** Zapoteca denies that Phillips was fired. On March 10, 2004, the status of refurbishment of the ENERGY ZAPOTECA for commercial service was such that it would have taken an additional $40,000,000.00 to $60,000,000.00 to return the rig to its original purpose as an operable drilling rig. (See Declaration Under Penalty of Perjury of Erik Ostbye attached hereto as Exhibit "D.") Surveys of the ENERGY ZAPOTECA carried out in October of 2003 by Cliff Arkley of London Offshore Consultants identified 41 deficiencies requiring correction just in order for the rig to be suitable for a tow. (See Energy Zapoteca Recommendations and Notes Prior to Sail Away attached hereto as Exhibit "E.") Even as of March 10, 2004, the ENERGY ZAPOTECA remained unsuitable, unfit and unapproved for a one-way dead tow from Tuxpan, Mexico to Sabine Pass, Texas. The ENERGY ZAPOTECA was not ready or approved for the one-way dead tow from Mexico to Texas until April 4, 2004. (See Declaration Under Penalty of Perjury of Clifford Arkley, attached hereto as Exhibit "F.")

24.     Who fired Phillips?

**ANSWER:** Zapoteca denies that Phillips was fired. Phillips' powers were revoked by a March 10, 2004, letter from Edwin K. Nelson, IV.

25.     Was Phillips master of the Rig?

**ANSWER:** No, as a matter of law, because the rig was not a "vessel." This is the case, notwithstanding any such titles of Master or Captain used by or in connection with Phillips in relation to the ENERGY ZAPOTECA.

          Respectfully submitted,

          */s/ Robert L. Klawetter*
          Robert L. Klawetter
          Attorney-In-Charge
          State Bar No. 11554700
          S. Dist. Bar No. 2471
          Scott C. Hall
          State Bar No. 24041043
          S. Dist. Bar No. 37366
          The Niels Esperson Building
          808 Travis, 20th Floor
          Houston, Texas 77002
          (713) 225-0905 - Telephone
          (713) 225-2907 - Telefacsimile

          Counsel for **Zapoteca Energy, Inc.**

OF COUNSEL:

EASTHAM, WATSON, DALE & FORNEY, L.L.P.

## CERTIFICATE OF SERVICE

    I certify that I filed the foregoing pleading on **January 18, 2005**, electronically, and that a true and correct copy of the foregoing will be served on counsel of record via the Electronic Case Filing System of the United States District Court for the Southern District of Texas, Brownsville Division, and/or by certified mail, return receipt requested, as enumerated below.

          */s/ Robert L. Klawetter*
          Robert L. Klawetter

Tonja Dee De Sloover
**Via ECF system**

Charles F. Herd, Jr.
**Via ECF system**

Charles Frank Wood
**Via ECF system**

          Edmund Lee Haag, III
          Fulbright and Jaworski, L.L.P.
          1301 McKinney
          Houston, Texas 77010
          **CM/RRR #7002 3150 0005 7366 0382**