# EXHIBIT
# "A"

**Charles Herd**

**From:** Chris Phillips [energyzapoteca@yahoo.com]
**Sent:** Friday, March 28, 2003 3:33 PM
**To:**   kongsli@online.no

Dear Christian,

Reference our telephone conversation regarding the severance package for the crew and myself.

The following is fair and in line with the offshore industry.

a. The Crew members and security guards should receive their past (2) Christmas bonuses. Paid immediately.

b. The Crew members and security guards should receive a 3 month severance package. Paid 10 days before the rig leaves Tuxpan.

c. I should receive my $75,000.00 bonus. Paid 10 days before the rig leaves Tuxpan.

d. I should receive my vacation pay for the past (3) years. Paid immediately.

e. I should receive a 6 month severance package. Paid immediately.

f. I should receive my past (3) Christmas bonuses. Paid immediately.

Note: As discussed, I will close down the office after the rig departs Tuxpan. I would estimate that it will take 1 month.

In regards the the outstanding legal matters, I would suggest that we continue with the labor and criminal cases to resolution.. I will follow the cases from my home in Houston, Texas for 6 months without any sallary..

We should keep our agent Meritus De Mexico for 1 month or until the office is closed.

In regards to Protexa/Celasa, I do not know as of this date what they will do in regards to the rig leaving Mexico. They are well aware that we would fight back if they tried anything to delay the rig from departing Tuxpan..

Comments: As discussed, I want to inform the crew members that the Energy Zapoteca has been sold before Nabors arrives. I must be able to insure them that they will receive a severance package. This will go a long way with the Port Captain.

As discussed, Judy and I will be going on a well deserved vacation after the rig is delivered to Nabors. We will return to close down the office.

Best regards

Charles Phillips

Charles Phillips
Owners Representative
Energy Zapoteca
Tel- 52-783-83-49262

---

Do you Yahoo!?
Yahoo! Platinum - Watch CBS' NCAA March Madness, live on your desktop!

1/16/2005

# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC. | § | |
| | § | |
| VS. | § | CIVIL NO. B-04-048 |
| | § | In Admiralty/Rule 9(h) |
| CHARLES DOUGLAS PHILLIPS, et al. | § | |

## AFFIDAVIT OF CHARLES D. PHILLIPS

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

Before me, the undersigned officer, on this day personally appeared Charles D. Phillips who, after first being duly sworn, deposes and says on oath as follows:

My name is Charles D. Phillips. I am over the age of 21 years. I have never been convicted of a felony or a crime of moral turpitude, and I am not otherwise disqualified from making this affidavit. Except where otherwise stated, I have personal knowledge of every fact to which I testify in this affidavit, and every fact to which I testify in this affidavit, is true and correct to my personal knowledge.

1.    The items and documents Zapoteca sought, and received, as a result of Zapoteca's filing this case included various vessel-related documents, copies of which were in my possession in Port Isabelle, Texas, or were in the vessel records files maintained in Mexico. The items included equipment (including computer equipment), tools and supplies, the receipt of which Zapoteca contended in its pleadings to be "an absolute necessity and requirement for . . . the Rig ENERGY ZAPOTECA to continue to conduct daily business operations. . . and efforts to sail the Rig ENERGY ZAPOTECA

1

from Tuxpan, Mexico, to Port Isabelle, Texas." (See paragraph 7, 8 and 10 of Zapoteca's Application for Temporary Restraining Order).

Zapoteca, in its request for TRO and injunction, in its arguments during the hearings in this case on March 18, 2004, and otherwise, contended that these were critical records and documents, which it needed immediately in order to allow the vessel to sail from Mexico to Texas (and in fact to Brownsville, Texas). As a result of these representations, the Court ordered and I turned over these documents, records, etc. The vessel sailed to Texas a few weeks later.

My understanding is that the Court issued its orders compelling me to turn over those items pursuant to the Court's Admiralty Jurisdiction, and based on that allegation of jurisdiction by Zapoteca. While I question how "critical" my records and items were, I admit that they were documents, records and items related to the Rig, and I recognize that the Court's orders directing me to turn over those items were issued pursuant to the Court's Admiralty Jurisdiction, since Zapoteca asserted and I did not challenge that the Court had jurisdiction to issue the orders because the items sought by Zapoteca were related to and constituted "appurtenances" of the Rig ENERGY ZAPOTECA, a vessel in navigation and well within the Court's Admiralty Jurisdiction.

2. The language contained in the "turn over letter" of March 18, 2004 (see copy attached) was as required by Zapoteca's attorney, Ed Nelson, who insisted on the language contained in it. The letter was issued to the "Current and Former Crewmembers of the Rig ENERGY ZAPOTECA." Mr. Nelson also insisted that I affix the Rig's official stamp to my signature, since he thought the Rig's crew might not accept the letter without the ship's stamp (which they would have known I maintained) was affixed.

2

Throughout those and other discussions, and as required in the letter by Zapoteca's counsel, I was identified as the Rig's Master, and the crewmembers who performed work aboard the Rig were described as the Rig's "crew" or "crewmembers."

3.     As Master, I supervised the crew members of the Rig ENERGY ZAPOTECA (including her electricians, mechanics, deck hands, welders and crane operator), as well as third-party service personnel, all of whom worked aboard the Rig ENERGY ZAPOTECA. As Master, I supervised the installation of the towing bridle, the emergency towing gear, numerous navigation lights, two accommodation units (which were living quarters for the Rig's crew to live in during the tow to Freeport, Texas), winches, emergency pumps, life rafts, buoys, and all these items' associated equipment, all of which were supplied by Nabors Drilling Company in conjunction with the sailing of the Rig and the pending sales contract of the Rig by Zapoteca to Nabors. The Nabors equipment was installed onboard the Rig in the Spring and Summer of 2003.

As Master, I also determined the weight calculations for all materials and equipment loaded onto and discharged from the Rig. On several occasions, I "jacked-down" the Rig to her floating draft so that the dead-weight, stability and incline tests and surveys could be conducted. During those surveys, the Rig was free-floating in the Pantepec River in Tuxpan, Mexico, during the Spring of 2001.

As Master, I also performed hands-on work, including marine engineering, electrical engineering, mechanical engineering and structural installation and testing of numerous pieces of equipment and components on board the Rig. I also performed tests on the spud cans, jacking system, diesel engines, legs and other equipment aboard and made appurtenances to the Rig.

I also assigned and supervised deck watches for the 24-hour operations which occurred aboard the Rig 7-days a week.

I also implemented safety procedures for the Rig's crew members to follow and which would govern the conduct of all third-party workers while they were aboard the Rig.

4.     During the period March 3-11, 2004, Christian Kongsli, my one and only supervisor throughout the period of my employment for Zapoteca or Gram, was present with me daily and for several hours each day, in South Padre Island/Brownsville, Texas. We met and worked daily to get the Rig ready to be moved to Texas. I was told again during those meetings that the Rig's destination port was Port Isabelle, Texas. At no time during that 8 day period , March 3-11, 2004, did Mr. Kongsli, who knew well what we were dealing with every day, criticize, reprimand, discipline or otherwise say anything disfavorable to me about what I or we were doing regarding the Rig, nor did he request that I turn <u>any</u> documents or items over to him (or anyone else), nor did he indicate to me that he agreed with the nasty e-mails and faxes I was receiving from Kim Steimler or other representatives of Gram, all of whom except Kongsli himself were located in Norway at the time. On March 10, 2004, when I received the termination letter from Zapoteca's attorney, Ed Nelson, Mr. Kongsli, with whom I had been meeting each day that week, told me that he was not aware of this letter and asked me to bring a copy to him at his hotel in South Padre Island. The next morning (March 11) Mr. Kongsli took a taxi to Dix Shipping, the agent, and told him that Charles Phillips "had no more power." Then Mr. Kongsli continued to the airport in Brownsville, flew to Houston, and then and there signed his affidavit: "Declaration under Penalty of Perjury of Christian Kongsli"

(A copy of which was attached to Zapoteca's Application for Temporary Restraining Order, filed on March 12, 2004).

5.      I have sought a maritime attachment of the Rig ENERGY ZAPOTECA in the above-Court in order to provide security for my claims against Zapoteca Energy, Inc. and the Rig ENERGY ZAPOTECA herself. This attachment is not being sought for the purpose of injuring or harassing Zapoteca or the Rig. Rather, since Zapoteca has no property or presence in Texas, save and except the Rig ENERGY ZAPOTECA herself, I simply seek a means of arranging security for my claims. Absent that security, I fear that there will be no means to gain payment on any judgment against Zapoteca or the Rig that I will or may recover in this case.

6.      I disbursed funds from my own personal money to pay for expenditures for the Rig ENERGY ZAPOTECA and her crew. These expenditures included (but were not limited to) supplies for the Rig, wage payments to crew members, Rig repairs, transportation, and miscellaneous items. During the period from 2001 to 2002, the Rig's owners, Energy Zapoteca, Inc., and her managers, P.D. Gram & Co., were late making payments on numerous occasions. The amount of funds requested and approved by my supervisor, Mr. Christian Kongsli, were reduced without informing me. The total amount in out-of-pocket Rig-related expenses paid by me at that time was 256,187.51 pesos, which is equal to approximately $25,618.75 U.S. Dollars.

On various occasions Mr. Kongsli was aware that insufficient funds were being sent to the ship's agent, Meritus, in Tuxpan, Mexico. I sent the Rig's financial statements and list of expenditures several times to P.D. Gram & Co. and Christian Kongsli for payment, but some payments were not paid or reimbursed.

In addition, I had several discussions with Mr. Kongsli concerning additional money owed to me personally. This money included the above out-of-pocket expenses and the severance package/bonus, to which Mr. Kongsli had agreed, but had not paid. These conversations occurred most recently while Mr. Kongsli was in South Padre Island, Texas, from March 3 to 11, 2004. During that time Christian Kongsli assured me that I would receive these funds. Kongsli told me: "If the Owners do not pay you your bonus, then I will pay it myself." On Saturday, March 6, 2004, Mr. Kongsli told me that $90,000 U.S. as partial payment of my bonus was being sent to me via Dix Shipping in Brownsville, on the following Monday, to be paid that same day, and that P.D. Gram & Co. would fax me a copy of the bank transfer, confirming the wire transfer instructions, also on the same day. Neither the money, the wire transfer to Dix Shipping, the deposit, nor the bank transfer confirmation, were received. Despite Kongsli's assurances and representations to me, I instead received my termination letter on March 10, 2004.

FURTHER AFFIANT SAYETH NOT:

_____
Charles D. Phillips

SWORN TO AND SUBSCRIBED BEFORE ME on this 8th day of February, 2005.

_____
Notary Public in and for the State of Texas

Shari Carnahan
_____
Printed Name of Notary

SHARI L. CARNAHAN
NOTARY PUBLIC
State of Texas
Comm. Exp. 02-14-2005

My Commission Expires: 2-14-05

6

# EXHIBIT
# "C"

FROM : ZAPOTECA-P          ENERGY-BPoE          FAX NO. : 7835345513          07 Nov. 2003 21:19AM P2

DE : MERITUS TUXPAN                              NO. DE FAX : 7 8345732          06 NOV. 2003 12:12PM P1



# MERITUS DE MEXICO, S. A. DE C. V.

## AGENTES NAVIEROS, REPRESENTANTES Y BROKERS

TUXPAN, VER., 05 DE NOVIEMBRE, 2003

CAPT. CHARLIE PHLLIPS

POR MEDIO DEL PRESENTE INFORMO A UD. DE LOS ASUNTOS QUE LA
CAPITANIA DE PUERTO TIENE COMO RECIBIDOS A LA FECHA Y QUE SON
MOTIVO DE EMBARGO PRECAUTORIO DE LA PLATAFORMA "ENERGY
ZAPOTECA", MISMOS QUE EN TANTO NO SEAN RESUELTOS, ESA
AUTORIDAD    MARÍTIMA ESTA IMPOSIBILITADA    A OTORGAR EL
DESPACHO DE LA MISMA:

- JUICIO CIVIL EXP. NUM. 147/2003 DE SANTOS CASADOS DEL RIO .-
  RESCISION DE CONTRATO DE ARRENDAMIENTO.

- EXPEDIENTE LABORAL NUM. E P 9/VI/2003 DE LOS SEÑORES JOSE
  ENRIQUE CASTELLANOS GUZMÁN Y JESÚS FRANCO CACERES.

- EXPEDIENTE LABORAL NUM. 538/VI/2003 DE RAFAEL MONROY
  CASADOS, LUIS ANSELMO VEGA CALDERON Y WILLIAM J. MC.
  DERMOTT

ATENTAMENTE

MERITUS DE MÉXICO S A DE CV

*Ana Luisa N. De Gonzalo.*

ANA LUISA NÚÑEZ ALVAREZ
REPRESENTANTE LEGAL.

MERITUS DE MEXICO.
S. A. DE C. V.
Agente Naviero Consignatario
RFC - MME - 870101 ID
TUXPAN. VER.          TEL. 4-52-87

Heróica Veracruz No. 35
Centro
C.P. 92800 Tuxpan, Ver.

Tel. 01 (783) 8-34-59-47
FAX 01 (783) 8-34-57-92
email:meritux@prodigy.net.mx

FROM : ZAPOTECA-P      ENERGY-BPoE    FAX NO. : 7836345513        07 Nov. 2003 01:19AM P1

TUXPAN, VER NOVEMBER 6th, 2003.

**CAP. CHARLES PHILLIPS**

TROUGH THIS PRESENT LETTER, I INFORM TO YOU ABOUT THE MATTERS THAT THE PORT CAPTAIN HAS AS RECEIVED, TO THIS DATE, AND ARE THE MOTIVE OF THE PRECAUCIOUS ATTACHMENT OF THE "ENERGY ZAPOTECA" PLATFORM. THE SAME, AS LONG AS THEY ARE NOT RESOLVED, THAT MARITIME AUTHORITY IS UNABLE TO ISSUE THE DISPATCHING OF THE SAME.

- CIVIL TRIAL FILE NUMBER 147/2003 FROM SANTOS CASADOS DEL RÍO FOR ANNULMENT OF A RENT CONTRACT.

- LABOR FILE NUMBER E.P. 9/VI/2003 FILED BY JOSE ENRIQUE CASTELLANOS GUZMAN AND JESUS FRACO CACERES.

- LABOR FILE NUMBER 538/VI/2003, FILED BY RAFAEL MONROY CASADOS, LUIS ANSELMO VEGA CALDERON AND WILLIAM J. MC DERMOTT.

ATTENTIVELY

**MERITUS DE MEXICO S.A. DE C.V.**

ANA LUISA NÚÑEZ ALVAREZ
LEGAL REPRESENTATIVE