# DOCUMENT NO. 101

Case 1:04-cv-00048   Document 96-22   Filed in TXSD on 02/11/2005   Page 1 of 18

## DECLARACION

H. CORTE DE DISTRITO DE LOS ESTADOS UNIDOS.
DISTRITO DEL SUR DE TEXAS.
DIVISIÓN BROWNSVILLE.
ZAPOTECA ENERGY INC.
         VS
CHARLES DOUGLAS PHILLIPS
EXP. CIVIL NUMERO B-04-048

Mi nombre es ARTURO BAZALDUA GUARDIOLA, con domicilio en Calle Emilio Carranza No. 308 Pte. Planta Alta, de la Zona Centro de Tampico, Tamaulipas con Código postal 89000 en México. Soy Licenciado en Derecho con patente No. 1351385 extendida por la secretaria de Educación Pública de México para ejercer la practica de la profesión en todo el país. Haré la siguiente declaración conforme a mi personal conocimiento y a mi leal saber y entender en el entendido de que no he sido coaccionado para rendir la presente declaración.

Fui abogado defensor del Capitán Charles Douglas Phillips en la Averiguación Penal No. TUX2/201/2003-04 radicado en la Agencia Segunda Investigadora del Ministerio Público de Tuxpan Veracruz, México, que se dirigió en su contra por la probable comisión del delito de Falsedad ante la autoridad contemplado en el artículo 268 del Código Penal del Estado de Veracruz apareciendo como denunciante JAVIER GERARDO GONZALEZ PASTRANA por la empresa CONSTRUCCIONES Y EQUIPOS LATINOAMERICANOS S.A. DE C.V. ( CELASA).

Mi primera participación lo fue el 2 de Mayo de 2003.

Posteriormente, con fecha 6 de Mayo de 2003, se presento un escrito con alegatos defensivos a su favor ante tal autoridad.

Mas adelante , la averiguación fue consignada o transmitida al Juzgado Primero de Primera Instancia de Tuxpan Veracruz, México quien le asigno el No de expediente o causa penal 109/ 2003.

Posteriormente con fecha 30 de septiembre de 2003, el Juzgado de referencia pronuncio resolución negando la orden de aprehensión solicitada por el Ministerio Público.

Inconforme con tal resolución el Ministerio Público interpuso recurso de apelación contra el anterior fallo.

De esta manera, con fecha 24 de Octubre de 2003, la apelación de referencia fue radicada en la tercera sala del tribunal Superior de Justicia del Estado de Veracruz bajo el Número de expediente o Toca 3810/2003.

Al día de hoy ignoro y desconozco el resultado que haya tenido tal apelación, pues tal fallo debió haberse notificado en el domicilio convencional de Tuxpan Veracruz, México de donde no se me ha notificado absolutamente nada.

Cabe hacer mención que conforme al artículo 141 A del Código de Procedimientos Penales del Estado de Veracruz puede en su caso confirmar o revocar el fallo combatido. De ocurrir esto último el procedimiento seguiría su fase normal.

También es conveniente aclarar que conforme al artículo 92 del Código Penal de Veracruz el citado delito prescribe en un plazo de 3 años a partir de los casos previstos en el artículo 91 de la misma Ley.

Tomando en cuenta que se ignora el resultado de la resolución de la tercera sala del tribunal Superior de Justicia del Estado de Veracruz dentro del expediente 3810/2003, lo que implicaría tener conocimiento sobre la vigencia o prescripción de la conducta delictiva imputada, se ha considerado prudente que el Capitán Charles Douglas Phillips no se interne en Territorio Mexicano para evitar actos de molestia a su persona, como pudiera ser una probable detención e internación carcelaria.

ATENTAMENTE.

Tampico, Tamaulipas, México, 06 de Enero de 2005.

LIC. ARTURO BAZALDUA GUARDIOLA.

CERTIFICACION No. 3,382.

= = = EL SUSCRITO LICENCIADO RAYMUNDO VAZQUEZ PECINA NOTARIO PUBLICO ADSCRITO NUMERO DOS, POR LICENCIA CONCEDIDA A SU TITULAR LICENCIADA ELSA GUADALUPE VAZQUEZ BORREGO, EN EJERCICIO EN ESTA CIUDAD = = = = =
= = = = = = = = = = = = = C E R T I F I C A = = = = = = = = = = = = = = =
= = = QUE EN ESTA FECHA Y ANTE MI PRESENCIA COMPARECIO EL SEÑOR LICENCIADO ARTURO BAZALDUA GUARDIOLA QUIEN SE IDENTIFICO CON LA CREDENCIAL PARA VOTAR FOLIO NUMERO 0474688110 EXPEDIDA POR EL INSTITUTO FEDERAL ELECTORAL Y QUIEN ANTE MI PRESENCIA FIRMO Y RATIFICO EL CONTENIDO DEL PRESENTE DOCUMENTO, MANIFESTANDO QUE ASI ACOSTUMBRA HACERLO EN TODOS LOS ACTOS EN QUE INTERVIENE. = = = = = = = = = = = = = = = = = = = = = = = = = = =
= = = QUIEN ADEMÁS ANTE MI PRESENCIA FIRMO EL ACTA EN CUMPLIMIENTO A LO DISPUESTO POR EL ARTICULO 136 DE LA LEY DEL NOTARIADO PARA EL ESTADO DE TAMAULIPAS. = = = = =
= = = Y A PETICION DE PARTE INTERESADA HAGO LA PRESENTE CERTIFICACIÓN. = = = = = = = = = = = = = = = = = = = = = = = = =
= = = EN LA CIUDAD Y PUERTO DE TAMPICO, ESTADO DE TAMAULIPAS, ESTADOS UNIDOS MEXICANOS, SIENDO LAS DIEZ HORAS DEL DIA SEIS DE ENERO DEL AÑO DOS MIL CINCO. = DOY FE. = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

LIC. ARTURO BAZALDUA GUARDIOLA

LIC. RAYMUNDO VAZQUEZ PECINA.
NOTARIO PUBLICO ADSCRITO No. 2.



Elsa Gpe. Vázquez Borrego
Notario Público No. 2
Tampico, Tamps.

# AFFIDAVIT

My name is ARTURO BAZALDUE GUARDIOLA, with residence at Calle Emilio Carranza No. 308 Pte Planta Alta, of the Central Zone of Tampico, State of Tamaulipas with Postal code 89000 in Mexico. I am licensed in right with patente No. 1351385 given by the Secretary of Public Education of Mexico for exercising the practice of the profession of law in all of Mexico. The following declaration conforms to my personal knowledge and my faithful knowledge and understanding as an informed expert. I have not been coerced into rendering the declaration presented.

I was the lawyer in the defense of Captain Charles Douglas Phillips in the investigation Penal No. TUX2/201/2003-4 radicado in the second investigation agency of the prosecutor of Tuxpan, Veracruz, Mexico against the charge of the crime false testimony before authorities contemplated in Article 268 of the Penal Code of the State of Veracruz charges filed by JAVIER GERARDO GONZOLEZ PASTRANA for the company CONSTRUCCIONES Y EQUIPOS LATINO AMERICANOS S.A. DE C.V. (CELASA).

My first participation began May 2, 2003.

Later, on May 6, 2003, I presented a written defense of the allegations in Captain Phillips favor before the authorities.

Much later, the investigation was turned over to the 1st Judge of the First Instance of Tuxpan Veracruz, Mexico who assigned the No. of the Penal cause 109/2003.

September 30, 2003, the Judge in reference denied the order of arrest that had been solicited by the Prosecutor.

In conform with such resolution the Prosecutor exercised his recourse of appeal against the ruling.

In this manner, on October 24, 2003, the appeal in reference did situate the case in the third sala of the tribunal Superior Justice of the state of Veracruz given the case number 3810/2003.

To this day, I do not know the results of the have said appeal because notice is lacking notified in the conventional address of Tuxpan Veracruz, Mexico of where I have not received any absolutely no notification.

I would like to mention that this conforms to Article 141 of Code of Penal Procedures for the State of Veracruz can in his case confirm or revoke the argument void. This occurance is the ultimate procedure and must follow normal phase.

Also is convenient to clarify that this conforms to Article 92 of the Penal Code of Veracruz cites the crime charged will stay in the place for 3 years before it can be dismissed of the cases to see if the crime charged is pursued in the article 91 of the same law.

Taking into account that I do not know the results of the resolution of the third sala Of the tribunal Superior of Justice of the State of Veracruz expediente 3810/2003, and the Prosecutors refusal to dismiss the case, that implicates they have knowledge above force prescription of the attributed criminal behavior charged, I consider it prudent that Captain Charles Douglas Phillips not enter the Territory of Mexico because there could be attempts to moleste his person and could be probable detention and confined in prison.

Atentamente,

Tampico, Tamaulipas, Mexico, 31 December, 2004

Lic. Arturo Bazuldua Guardiola

# DOCUMENT NO. 102

# DECLARATION

My name is GILBERTO RODRIGUEZ MARTINEZ. I come and make this declaration here, based on my personal knowledge and legal opinion as a lawyer and with knowledge to truth of the statements made and the law described here. I give this declaration as a free act and voluntarily. I have not been coerced or paid for making this declaration.

1. The Platform Energy Zapoteca is considered a commercial or merchant Vessel within the jurisdictional and navigation laws of Mexico.

2. The workers who did the work on the Energy Zapoteca (Jaime Arturo Castellanos Diaz, Alejandro Diaz Cobos, Pedro Mejia Lima, Fernando Trejo Mar, Marco Antonio Lizama Rodriguez, Ciro Elorza Martinez, Jose Munoz Lopez and Candido Maldonado, are considered members of the crew of a commercial merchant vessel under the navigational, jurisdictional, labor and other laws related to Mexico.

3. The Captain Charles Phillips, as the expert (master) of the Energy Zapoteca is considered a member of the crew of the commercial merchant vessel under the laws of navigation, jurisdictional, labor and other laws related to Mexico.

4. The Platform Energy Zapoteca and her owners owe to the members of the crew and to the captain (master) of the platform when they were fired from their jobs.

5. The failure of the owners of the ship to satisfy the claims of the salaries of the members of the crew, gives place to an maritime embargo under the Mexican laws against the ship Energy Zapoteca.

6. The Mexican Labor Court has the authority for ordering an attachment In which has instructed the port captain to maintain the ship as seized and without power to leave until the claims have been resolved and the order of attachment freed by the labor court.

7. I am familiar with the laws in labor matters of Tuxpan and with the labor laws as an attorney.

I sign the presented declaration being 12:00 hours of the 13th day of January in the year 2005, in the city and port of Tuxpan de Rodriguez Cano, Veracruz, Mexico.

                Lic. Gilberto Rodriguez Martinez
                Attorney

FAX NO. : 7838348455          26 Jan. 2005 02:50AM P1

## DECLARACION POR ESCRITO Y BAJO PROTESTA

MI NOMBRE GILBERTO RODRÍGUEZ MARTINEZ, YO HAGO LAS DECLARACIONES AQUÍ, BASADAS EN MI CONOCIMIENTO PERSONAL Y OPINION LEGAL COMO ABOGADO, Y CON CONOCIMIENTO A CERCA DE LOS ASUNTOS DE HECHOS Y DE LA LEY DESCRITA AQUÍ YO HAGO ESTAS DECLARACIONES COMO UN ACTO LIBRE Y POR MI PROPIA VOLUNTAD; YO NO HE SIDO COACCIONADO, O PAGADO PARA HACER ESTAS DECLARACIONES.

1.- LA PLATAFORMA ENERGY ZAPOTECA ES CONSIDERADA UNA NAVE COMERCIAL O MERCANTE DENTRO DE LAS LEYES JURISDICCIONALES Y NAVEGACIÓN DE MÉXICO.

2.- LOS TRABAJADORES QUIENES REALIZARON SU TRABAJO EN LA ENERGY ZAPOTECA ( JAIME ARTURO CASTELLANOS DIAZ, ALEJANDRO DIAZ COBOS, PEDRO MEJIA LIMA, FERNANDO TREJO MAR, MARCO ANTONIO LIZAMA RODRÍGUEZ, CIRO ELORZA MARTINEZ, JOSE MUÑOS LOPEZ Y CANDIDO MALDONADO) SON CONSIDERADOS MIEMBROS DE LA TRIPULACIÓN DE UNA NAVE COMERCIAL BAJO LAS LEYES, NAVEGACIONAL, JURISDICCIONAL, LABORAL, Y OTRAS LEYES DE MÉXICO.

3.- EL CAPITAN CHARLES PHILLIPS, COMO EL EXPERTO (MASTER) DE LA ENERGY ZAPOTECA, ES CONSIDERADO UN MIEMBRO DE LA TRIPULACIÓN DE UNA NAVE COMERCIAL MERCANTE BAJO LAS LEYES DE NAVEGACIÓN, JURISDICCIONAL, LABORAL Y OTRAS LEYES RELACIONADAS DE MÉXICO.

4.- LA PLATAFORMA ENERGY ZAPOTECA Y SUS DUEÑOS LE DEBEN A LOS MIEMBROS DE LA TRIPULACIÓN Y AL CAPITAN (MASTER) DE LA PLATAFORMA AL SER DESPEDIDOS DE SU EMPLEO.

5.- LA FALTA DE LOS DUEÑOS DE LA BARCAZA EN SATISFACER EL RECLAMO DE LOS SUELDOS DE LOS MIEMBROS DE LA TRIPULACIÓN, DA LUGAR A UN EMBARGO MARÍTIMO BAJO LAS LEYES MEXICANAS EN CONTRA DE LA BARCAZA ENERGY ZAPOTECA.

6.- LA JUNTA LABORAL MEXICANA TIENE AUTORIDAD PARA OTORGAR UN EMBARGO, EN EL CUAL SE LE INSTRUYE AL CAPITAN DE PUERTO EN MANTENER LA BARCAZA INCAUTADA Y SIN PODER MARCHARSE HASTA LOS RECLAMOS HAYAN SIDO RESUELTOS Y LA ORDEN DE EMBARGO LIBERADA POR LA CORTE LABORAL.

7.- ESTOY FAMILIARIZADO CON LAS LEYES EN MATERIA LABORAL DE TUXPAN Y CON LAS LEYES LABORALES COMO ABOGADO.

FIRMO LA PRESENTE DECLARACIÓN SIENDO LAS 12:00 HORAS DEL DIA 13 DE ENERO DEL AÑO 2005, EN LA CIUDAD Y PUERTO DE TUXPAN DE RODRÍGUEZ CANO VERACRUZ, MEXICO.

ATENTAMENTE

LIC. GILBERTO RODRÍGUEZ MARTINEZ

LICENCIADO LUIS LOPEZ CASANOVA, Titular de la Notaría Pública Número Uno de la Sexta Demarcación Notarial, en ejercicio; --- CERTIFICO: Que ante mi presencia el señor GILBERTO RODRIGUEZ MARTINEZ, ratificó el contenido de este documento y firmó, - siendo conforme en todas y cada una de sus partes, manifestando que dichas firma es la misma que usa en todos sus asuhtos públicos y privados, identificándose con credencial para votar expedida en esta Ciudad por el Instituto Federal Electoral --- Folio 93996319, y por sus generales manifiesta que es mexicano por nacimiento, nació en esta Ciudad el once de octubre de milnovecientos setenta y seis, con domicilio en Calle Gutiérrez Zamora número veintiseis, Zona Centro de esta Ciudad de Tuxpan, Veracruz, casado, abogado.---Expido esta certificación en la Ciudad y Puerto de Tuxpan, Veracruz a los veinticinco - días del mes de enero del año dos mil cinco, correspondiente a la número 6,218 del Libro de Certificaciones, ratificando - con su firma el solicitante.------------------

DOY FE.--
EL NOTARIO PUBLICO NUMERO UNO.--
LIC. LUIS LOPEZ CASANOVA.--
LOCL-20-10-23-685.--

# DOCUMENT NO. 103

Case 1:04-cv-00048 Document 96-22 Filed in TXSD on 02/11/2005 Page 12 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC. | § | |
| | § | |
| VS. | § | CIVIL NO. B-04-048 |
| | § | In Admiralty/Rule 9(h) |
| CHARLES DOUGLAS PHILLIPS, et al. | § | |

### AFFIDAVIT OF CHARLES D. PHILLIPS

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

Before me, the undersigned officer, on this day personally appeared Charles D. Phillips who, after first being duly sworn, deposes and says on oath as follows:

My name is Charles D. Phillips. I am over the age of 21 years. I have never been convicted of a felony or a crime of moral turpitude, and I am not otherwise disqualified from making this affidavit. Except where otherwise stated, I have personal knowledge of every fact to which I testify in this affidavit, and every fact to which I testify in this affidavit, is true and correct to my personal knowledge.

1. The items and documents Zapoteca sought, and received, as a result of Zapoteca's filing this case included various vessel-related documents, copies of which were in my possession in Port Isabelle, Texas, or were in the vessel records files maintained in Mexico. The items included equipment (including computer equipment), tools and supplies, the receipt of which Zapoteca contended in its pleadings to be "an absolute necessity and requirement for . . . the Rig ENERGY ZAPOTECA to continue to conduct daily business operations. . . and efforts to sail the Rig ENERGY ZAPOTECA

1

from Tuxpan, Mexico, to Port Isabelle, Texas." (See paragraph 7, 8 and 10 of Zapoteca's Application for Temporary Restraining Order).

Zapoteca, in its request for TRO and injunction, in its arguments during the hearings in this case on March 18, 2004, and otherwise, contended that these were critical records and documents, which it needed immediately in order to allow the vessel to sail from Mexico to Texas (and in fact to Brownsville, Texas). As a result of these representations, the Court ordered and I turned over these documents, records, etc. The vessel sailed to Texas a few weeks later.

My understanding is that the Court issued its orders compelling me to turn over those items pursuant to the Court's Admiralty Jurisdiction, and based on that allegation of jurisdiction by Zapoteca. While I question how "critical" my records and items were, I admit that they were documents, records and items related to the Rig, and I recognize that the Court's orders directing me to turn over those items were issued pursuant to the Court's Admiralty Jurisdiction, since Zapoteca asserted and I did not challenge that the Court had jurisdiction to issue the orders because the items sought by Zapoteca were related to and constituted "appurtenances" of the Rig ENERGY ZAPOTECA, a vessel in navigation and well within the Court's Admiralty Jurisdiction.

2.   The language contained in the "turn over letter" of March 18, 2004 (see copy attached) was as required by Zapoteca's attorney, Ed Nelson, who insisted on the language contained in it. The letter was issued to the "Current and Former Crewmembers of the Rig ENERGY ZAPOTECA." Mr. Nelson also insisted that I affix the Rig's official stamp to my signature, since he thought the Rig's crew might not accept the letter without the ship's stamp (which they would have known I maintained) was affixed.

Throughout those and other discussions, and as required in the letter by Zapoteca's counsel, I was identified as the Rig's Master, and the crewmembers who performed work aboard the Rig were described as the Rig's "crew" or "crewmembers."

3. As Master, I supervised the crew members of the Rig ENERGY ZAPOTECA (including her electricians, mechanics, deck hands, welders and crane operator), as well as third-party service personnel, all of whom worked aboard the Rig ENERGY ZAPOTECA. As Master, I supervised the installation of the towing bridle, the emergency towing gear, numerous navigation lights, two accommodation units (which were living quarters for the Rig's crew to live in during the tow to Freeport, Texas), winches, emergency pumps, life rafts, buoys, and all these items' associated equipment, all of which were supplied by Nabors Drilling Company in conjunction with the sailing of the Rig and the pending sales contract of the Rig by Zapoteca to Nabors. The Nabors equipment was installed onboard the Rig in the Spring and Summer of 2003.

As Master, I also determined the weight calculations for all materials and equipment loaded onto and discharged from the Rig. On several occasions, I "jacked-down" the Rig to her floating draft so that the dead-weight, stability and incline tests and surveys could be conducted. During those surveys, the Rig was free-floating in the Pantepec River in Tuxpan, Mexico, during the Spring of 2001.

As Master, I also performed hands-on work, including marine engineering, electrical engineering, mechanical engineering and structural installation and testing of numerous pieces of equipment and components on board the Rig. I also performed tests on the spud cans, jacking system, diesel engines, legs and other equipment aboard and made appurtenances to the Rig.

I also assigned and supervised deck watches for the 24-hour operations which occurred aboard the Rig 7-days a week.

I also implemented safety procedures for the Rig's crew members to follow and which would govern the conduct of all third-party workers while they were aboard the Rig.

4.   During the period March 3-11, 2004, Christian Kongsli, my one and only supervisor throughout the period of my employment for Zapoteca or Gram, was present with me daily and for several hours each day, in South Padre Island/Brownsville, Texas. We met and worked daily to get the Rig ready to be moved to Texas. I was told again during those meetings that the Rig's destination port was Port Isabelle, Texas. At no time during that 8 day period , March 3-11, 2004, did Mr. Kongsli, who knew well what we were dealing with every day, criticize, reprimand, discipline or otherwise say anything disfavorable to me about what I or we were doing regarding the Rig, nor did he request that I turn <u>any</u> documents or items over to him (or anyone else), nor did he indicate to me that he agreed with the nasty e-mails and faxes I was receiving from Kim Steimler or other representatives of Gram, all of whom except Kongsli himself were located in Norway at the time. On March 10, 2004, when I received the termination letter from Zapoteca's attorney, Ed Nelson, Mr. Kongsli, with whom I had been meeting each day that week, told me that he was not aware of this letter and asked me to bring a copy to him at his hotel in South Padre Island. The next morning (March 11) Mr. Kongsli took a taxi to Dix Shipping, the agent, and told him that Charles Phillips "had no more power." Then Mr. Kongsli continued to the airport in Brownsville, flew to Houston, and then and there signed his affidavit: "Declaration under Penalty of Perjury of Christian Kongsli"

4

(A copy of which was attached to Zapoteca's Application for Temporary Restraining Order, filed on March 12, 2004).

5.   I have sought a maritime attachment of the Rig ENERGY ZAPOTECA in the above-Court in order to provide security for my claims against Zapoteca Energy, Inc. and the Rig ENERGY ZAPOTECA herself. This attachment is not being sought for the purpose of injuring or harassing Zapoteca or the Rig. Rather, since Zapoteca has no property or presence in Texas, save and except the Rig ENERGY ZAPOTECA herself, I simply seek a means of arranging security for my claims. Absent that security, I fear that there will be no means to gain payment on any judgment against Zapoteca or the Rig that I will or may recover in this case.

6.   I disbursed funds from my own personal money to pay for expenditures for the Rig ENERGY ZAPOTECA and her crew. These expenditures included (but were not limited to) supplies for the Rig, wage payments to crew members, Rig repairs, transportation, and miscellaneous items. During the period from 2001 to 2002, the Rig's owners, Energy Zapoteca, Inc., and her managers, P.D. Gram & Co., were late making payments on numerous occasions. The amount of funds requested and approved by my supervisor, Mr. Christian Kongsli, were reduced without informing me. The total amount in out-of-pocket Rig-related expenses paid by me at that time was 256,187.51 pesos, which is equal to approximately $25,618.75 U.S. Dollars.

On various occasions Mr. Kongsli was aware that insufficient funds were being sent to the ship's agent, Meritus, in Tuxpan, Mexico. I sent the Rig's financial statements and list of expenditures several times to P.D. Gram & Co. and Christian Kongsli for payment, but some payments were not paid or reimbursed.

In addition, I had several discussions with Mr. Kongsli concerning additional money owed to me personally. This money included the above out-of-pocket expenses and the severance package/bonus, to which Mr. Kongsli had agreed, but had not paid. These conversations occurred most recently while Mr. Kongsli was in South Padre Island, Texas, from March 3 to 11, 2004. During that time Christian Kongsli assured me that I would receive these funds. Kongsli told me: "If the Owners do not pay you your bonus, then I will pay it myself." On Saturday, March 6, 2004, Mr. Kongsli told me that $90,000 U.S. as partial payment of my bonus was being sent to me via Dix Shipping in Brownsville, on the following Monday, to be paid that same day, and that P.D. Gram & Co. would fax me a copy of the bank transfer, confirming the wire transfer instructions, also on the same day. Neither the money, the wire transfer to Dix Shipping, the deposit, nor the bank transfer confirmation, were received. Despite Kongsli's assurances and representations to me, I instead received my termination letter on March 10, 2004.

FURTHER AFFIANT SAYETH NOT:

_____
Charles D. Phillips

SWORN TO AND SUBSCRIBED BEFORE ME on this 8th day of February, 2005.



_____
Notary Public in and for the State of Texas

Shari Carnahan
Printed Name of Notary

My Commission Expires: 2-14-05