# DOCUMENT NO. 10

| | | |
|---|---|---|
| To | : | **Phoenix Offshore** |
| Fax no | : | 527 83 46793 |
| Attention | : | **Bill McDermott** |
| Copy | : | |
| Date | : | 29 September, 2000 |
| No. of pages (incl. this) | : | |

| | | |
|---|---|---|
| From | : | Jon Arne Nesgård |
| Fax no | : | +47 67 11 23 41 |
| Direct line | : | +47 67 11 23 28 |
| E-mail | : | janesgard@aon.no |
| Cell phone | : | |
| Department | : | Energy |

## Energy Zapoteca – Insurance

Upon request from Mr Christian Kongsli, we hereby attach an stamped copy of Energy Zapoteca's Insurance policy.

As respect your concern regarding P & I coverage, we can confirm that this is included as per clause 9, of the policy.

This fax and the enclosures have also been forwarded by DHL.

For avoidance of any doubt, the attached Policy document (Lloyds Policy) only shows security for 90%. The remaining 10% are written by company underwriters at identical terms.

Yours Sincerely,
*Aon Grieg AS*

Jon Arne Nesgård





# Lloyd's Policy



**We, Underwriting Members** of the Syndicates whose definitive numbers and proportions are shown in the Table attached hereto (hereinafter referred to as 'the Underwriters'), hereby agree, in consideration of the payment to Us by or on behalf of the Assured of the Premium specified in the Schedule, to insure against loss, including but not limited to associated expenses specified herein, if any, to the extent and in the manner provided in this Policy.

**The Underwriters** hereby bind themselves severally and not jointly, each for his own part and not one for another, and therefore each of the Underwriters (and his Executors and Administrators) shall be liable only for his own share of his Syndicate's proportion of any such Loss and of any such Expenses. The identity of each of the Underwriters and the amount of his share may be ascertained by the Assured or the Assured's representative on application to Lloyd's Policy Signing Office, quoting the Lloyd's Policy Signing Office number and date shown in the Table.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has signed this Policy on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE

*General Manager*

**J(A)** NMA 2421 (3/1/95) Form approved by Lloyd's Underwriters' Non-Marine Association Limited

LLOYD'S POLICY SIGNING OFFICE EMBOSSMENT APPEARS HERE ON ORIGINAL DOCUMENT

<u>ATTACHING TO AND FORMING PART OF POLICY NUMBER: 823/EE0000270</u>

ISSUED TO:              ENERGY DRILLING AS and/or Zapoteca Energy Inc.
                        and/or Affiliated and/or Subsidiary and/or any company
                        the Assured is instructed to insure.

ISSUED BY:              CERTAIN UNDERWRITERS AT LLOYD'S

<u>EFFECTIVE:</u>          1st May 2000

---

<u>ENDORSEMENT NUMBER:1</u>

It is hereby understood and agreed that:-

1.      London Salvage Association to approve Lay Up arrangements berthing,
        mooring, fire fighting facilities and to supervise all jacking up and jacking
        down operations at Assured's expense.

2.      This Policy excludes named windstorm.

3       Insurers are not liable for the first USD50,000 in respect of any one accident or
        occurrence.

4.      with effect from 4th May 2000 the rig was taken over from sellers PMM by
        Messrs Zapoteca Energy Inc, Monrovia, Liberia.

        New Name Energy Zapoteca.

        Registry Panama as before

        The values involved in respect of the jacking part equipment/control panel and
        installation have been slightly amended as follows:-

        **Southern Technology Services**

        Total Equipment        USD381,000

        **Southern International**

        Control Panel          USD126,000

### Southern International

Lump sum for installation, repairs USD493,000
cassing of hull and deck legs
and jacking system:

4.    This Policy is subject to the following:-

    1.    Institute Port Risk Clauses 20/7/87 with clauses 5, 7.4-7.4.5 and 9.3.10
       deleted as attached

    2.    War and Civil War Exclusion Clause NMA464 as attached

    3.    Special Cancellation Provisions (823/AON/00256 as attached



Wherever the words "Insurers" and "Insured" appears herein same shall be deemed to
read "Underwriters" and "Assured"

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS OF THIS POLICY
REMAIN UNCHANGED.



# Schedule

Policy or Certificate No. 823/EE0000270         Contract No. (if any)

The name and address of the Assured

> ENERGY DRILLING AS and/or Zapoteca Energy Inc. and/or Affiliated and/or Subsidiary and/or any company the Assured is instructed to insure

The risk, interest, location and sum(s) insured hereunder

| | |
|---|---|
| TYPE: | RIG LAY-UP/TRANSIT(S) |
| UNIT: | T.B.N. 82 Jack Up |
| INTEREST: | Physical Damage and all associate equipment including transits |
| SUM INSURED: | USD3,000,000 any one accident or occurrence |
| SITUATION | Gulf of Mexico - Tuxpan yard |

The Premium       USD21,600.00 Part of USD24,000.00 in Full for period payable within 45 days of inception. Full Annual Pemium if lost. Policy admitted Plus      USD1,000 for pollution coverage, within Sum Insured Limit

The period of Insurance from 1st May 2000 to 1st August 2000 both days at 12.01 a.m. Local Standard Time  and for such further period or periods as may be mutually agreed upon

Dated in LONDON 16th June 2000

J or J(A) (Schedule) NMA 2422 for attachment to NMA 2420, NMA 2421, NMA 2461 or NMA 2462

## INSTITUTE TIME CLAUSES HULLS
## PORT RISKS

#### This insurance is subject to English law and practice



### 1. NAVIGATION

The vessel has leave to proceed to and from any wet or dry docks harbours ways cradles and pontoons, within the limits specified in this insurance.

### 2. TERMINATION

**This Clause 2 shall prevail notwithstanding any provision whether written typed or printed in this insurance inconsistent therewith.**

Unless Underwriters agree to the contrary in writing, this insurance shall terminate automatically at the time of

2.1     change of the Classification Society of the vessel, or change, suspension, discontinuance, withdrawal or expiry of her Class therein. However where such change, suspension, discontinuance or withdrawal of her Class has resulted from loss or damage covered by Clause 4 of this insurance or which would be covered by an insurance of the vessel subject to current Institute War and Strikes Clauses Hulls-Time such automatic termination shall not operate.

2.2     any change, voluntary or otherwise, in the ownership or flag, transfer to new management, or charter on a bareboat basis, or requisition for title or use of the vessel. However, in the event of requisition for title or use without the prior execution of a written agreement by the Assured, such automatic termination shall occur fifteen days after such requisition whether the vessel is in port or at sea.

### 3. ASSIGNMENT

No assignment of or interest in this insurance or in any moneys which may be or become payable thereunder is to be binding on or recognised by the Underwriters unless a dated notice of such assignment or interest signed by the Assured, and by the assignor in the case of subsequent assignment, is endorsed on the policy and the policy with such endorsement is produced before payment of any claim or return of premium thereunder.

### 4. PERILS

4.1     This insurance covers loss of or damage to the subject-matter insured caused by

      4.1.1     perils of the seas rivers lakes or other navigable waters

      4.1.2     fire lightning explosion

      4.1.3     violent theft by persons from outside the vessel

      4.1.4     jettison

      4.1.5     piracy

      4.1.6     breakdown of or accident to nuclear installations or reactors



4.1.7   contact with aircraft or similar objects, or objects falling therefrom, land conveyance, dock or harbour equipment or installation.

4.2   This insurance covers loss of or damage to the subject-matter insured caused by

4.2.1   accidents in loading discharging or shifting cargo or fuel

4.2.2   bursting of boilers breakage of shafts or any latent defect in the machinery or hull

4.2.3   negligence of Master Officers Crew or Pilots

4.2.4   negligence of repairers or charterers provided such repairers or charterers are not an Assured hereunder

4.2.5   barratry of Master Officers or Crew,

provided such loss or damage has not resulted from want of due diligence by the Assured, Owners or Managers.



4.3   Master Officers Crew or Pilots not to be considered Owners within the meaning of this Clause 4 should they hold shares in the vessel.

## 5.   EARTHQUAKE AND VOLCANIC ERUPTION EXCLUSION

In no case shall this insurance cover loss damage liability or expense caused by earthquake or volcanic eruption. This exclusion applies to all claims including claims under Clauses 7, 9, 11 and 13.

## 6.   POLLUTION HAZARD

This insurance covers loss of or damage to the vessel caused by any governmental authority acting under the powers vested in it to prevent or mitigate a pollution hazard, or threat thereof, resulting directly from damage to the vessel for which the Underwriters are liable under this insurance, provided such act of governmental authority has not resulted from want of due diligence by the Assured, the Owners, or Managers of the vessel or any of them to prevent or mitigate such hazard or threat. Master, Officers, Crew or Pilots not to be considered Owners within the meaning of this Clause 6 should they hold shares in the vessel.

## 7.   COLLISION LIABILITY

7.1   The Underwriters agree to indemnify the Assured for any sum or sums paid by the Assured to any other person or persons by reason of the Assured becoming legally liable by way of damages for

7.1.1   loss of or damage to any other vessel or property on any other vessel

7.1.2   delay to or loss of use of any such other vessel or property thereon

7.1.3   general average of, salvage of, or salvage under contract of, any such other vessel or property thereon,

where such payment by the Assured is in consequence of the vessel hereby insured coming into collision with any other vessel.

7.2   The indemnity provided by this Clause 7 shall be in addition to the indemnity provided by the other terms and conditions of this insurance and shall be subject to the following provisions:

7.2.1   Where the insured vessel is in collision with another vessel and both vessels are to blame then, unless the liability of one or both vessels becomes limited by law, the indemnity under this Clause 7 shall be calculated on the principle of cross-liabilities as if the respective Owners had been compelled to pay to each other such proportion of each other's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of the collision.

7.2.2   In no case shall the Underwriters' total liability under Clauses 7.1 and 7.2 exceed their proportionate part of the insured value of the vessel hereby insured in respect of any one such collision.

7.3   The Underwriters will also pay the legal costs incurred by the Assured or which the Assured may be compelled to pay in contesting liability or taking proceedings to limit liability, with the prior written consent of the Underwriters.

EXCLUSIONS



7.4   Provided always that this Clause 7 shall in no case extend to any sum which the Assured shall pay for or in respect of

7.4.1   removal or disposal of obstructions, wrecks, cargoes or any other thing whatsoever

7.4.2   any real or personal property or thing whatsoever except other vessels or property on other vessels

7.4.3   the cargo or other property on, or the engagements of, the insured vessel

7.4.4   loss of life, personal injury or illness

7.4.5   pollution or contamination of any real or personal property or thing whatsoever (except other vessels with which the insured vessel is in collision or property on such other vessels).

8.   SISTERSHIP



Should the vessel hereby insured come into collision with or receive salvage services from another vessel belonging wholly or in part to the same Owners or under the same management, the Assured shall have the same rights under this insurance as they would have were the other vessel entirely the property of Owners not interested in the vessel hereby insured; but in such cases the liability for the collision or the amount payable for the services rendered shall be referred to a sole arbitrator to be agreed upon between the Underwriters and the Assured.

9.   PROTECTION AND INDEMNITY

9.1   The Underwriters agree to indemnify the Assured for any sum or sums paid by the Assured to any other person or persons by reason of the Assured becoming legally liable, as owner of the vessel, for any claim, demand, damages and/or expenses, where such liability is in consequence of any of the following matters or things and arises from an accident or occurrence during the period of this insurance:

9.1.1   loss of or damage to any fixed or movable object or property or other thing or interest whatsoever, other than the vessel, arising from any cause whatsoever in so far as such loss or damage is not covered by Clause 7

9.1.2   any attempted or actual raising, removal or destruction of any fixed or movable object or property or other thing, including the wreck of the vessel, or any neglect or failure to raise, remove, or destroy the same

9.1.3   liability assumed by the Assured under contracts of customary towage for the purpose of entering or leaving port or manoeuvring within the port during the ordinary course of trading

9.1.4   loss of life, personal injury, illness or payments made for life salvage

9.1.5   liability under Clause 1(a) of the current Lloyd's Standard Form of Salvage Agreement in respect of unsuccessful, partially successful, or uncompleted services if and to the extent that the salvor's expenses plus the increment exceed any amount otherwise recoverable under the Agreement.

9.2   The Underwriters agree to indemnify the Assured for any of the following arising from an accident or occurrence during the period of this insurance:

9.2.1   the additional cost of fuel, insurance, wages, stores, provisions and port charges reasonably incurred solely for the purpose of landing from the vessel sick or injured persons or stowaways, refugees, or persons saved at sea

9.2.2   additional expenses brought about by the outbreak of infectious disease on board the vessel or ashore



9.2.3   fines imposed on the vessel, on the Assured, or on any Master Officer crew member or agent of the vessel who is reimbursed by the Assured, for any act or neglect or breach of any statute or regulation relating to the operation of the vessel, provided that the Underwriters shall not be liable to indemnify the Assured for any fines which result from any act neglect failure or default of the Assured their agents or servants other than Master Officer or crew member

9.2.4   the expenses of the removal of the wreck of the vessel from any place owned, leased or occupied by the Assured

9.2.5   legal costs incurred by the Assured, or which the Assured may be compelled to pay, in avoiding, minimising or contesting liability with the prior written consent of the Underwriters.

EXCLUSIONS



9.3   Notwithstanding the provisions of Clauses 9.1 and 9.2 this Clause 9 does not cover any liability cost or expense arising in respect of:

9.3.1   any direct or indirect payment by the Assured under workmen's compensation or employers' liability acts and any other statutory or common law liability in respect of accidents to or illness of workmen or any other persons employed in any capacity whatsoever by the Assured or others in on or about or in connection with the vessel or her cargo, materials or repairs

9.3.2   liability assumed by the Assured under agreement expressed or implied in respect of death or illness of or injury to any person employed under a contract of service or apprenticeship by the other party to such agreement

9.3.3   punitive or exemplary damages, however described

9.3.4   cargo or other property carried, to be carried or which has been carried on board the vessel but this Clause 9.3.4 shall not exclude any claim in respect of the extra cost of removing cargo from the wreck of the vessel

9.3.5   property, owned by builders or repairers or for which they are responsible, which is on board the vessel

9.3.6   liability arising under a contract or indemnity in respect of containers, equipment, fuel or other property on board the vessel and which is owned or leased by the Assured

9.3.7   cash, negotiable instruments, precious metals or stones, valuables or objects of a rare or precious nature, belonging to persons on board the vessel, or non-essential personal effects of any Master, Officer or crew member

9.3.8   fuel, insurance, wages, stores, provisions and port charges arising from delay to the vessel while awaiting a substitute for any Master, Officer or crew member

9.3.9   fines or penalties arising from overloading or illegal fishing

9.3.10  pollution or contamination of any real or personal property or thing whatsoever (This Clause 9.3.10 shall not exclude any amount recoverable under Clause 9.1.5)

9.3.11  general average, sue and labour and salvage charges, salvage, and/or collision liability to any extent that they are not recoverable under Clauses 7, 11 and 13 by reason of the agreed value and/or the amount insured in respect of the vessel being inadequate.



9.4   The indemnity provided by this Clause 9 shall be in addition to the indemnity provided by the other terms and conditions of this insurance.

9.5   Where the Assured or the Underwriters may or could have limited their liability the indemnity under this Clause 9 in respect of such liability shall not exceed Underwriters' proportionate part of the amount of such limitation.

9.6   In no case shall the Underwriters' liability under this Clause 9 in respect of each separate accident or occurrence or series of accidents arising out of the same event, exceed their proportionate part of the insured value of the vessel.

9.7   PROVIDED ALWAYS THAT

9.7.1   prompt notice must be given to the Underwriters of every casualty event or claim upon the Assured which may give rise to a claim under this Clause 9 and of every event or matter which may cause the Assured to incur liability costs or expense for which he may be insured under this Clause 9.



9.7.2   the Assured shall not admit liability for or settle any claim for which he may be insured under this Clause 9 without the prior written consent of the Underwriters.

## 10. NOTICE OF CLAIM AND TENDERS

10.1   In the event of accident whereby loss or damage may result in a claim under this insurance, notice shall be given to the Underwriters prior to survey and also, if the vessel is abroad, to the nearest Lloyd's Agent so that a surveyor may be appointed to represent the Underwriters should they so desire.

10.2   The Underwriters shall be entitled to decide the port to which the vessel shall proceed for docking or repair (the actual additional expense of the voyage arising from compliance with the Underwriters' requirements being refunded to the Assured) and shall have a right of veto concerning a place of repair or a repairing firm.



10.3    The Underwriters may also take tenders or may require further tenders to be taken for the repair of the vessel. Where such a tender has been taken and a tender is accepted with the approval of the Underwriters, an allowance shall be made at the rate of 30% per annum on the insured value for time lost between the despatch of the invitations to tender required by Underwriters and the acceptance of a tender to the extent that such time is lost solely as the result of tenders having been taken and provided that the tender is accepted without delay after receipt of the Underwriters' approval.

Due credit shall be given against the allowance as above for any amounts recovered in respect of fuel and stores and wages and maintenance of the Master Officers and Crew or any member thereof, including amounts allowed in general average, and for any amounts recovered from third parties in respect of damages for detention and/or loss of profit and/or running expenses, for the period covered by the tender allowance or any part thereof.

Where a part of the cost of the repair of damage other than a fixed deductible is not recoverable from the Underwriters the allowance shall be reduced by a similar proportion.

10.4    In the event of failure to comply with the conditions of this Clause 10, a deduction of 15% shall be made from the amount of the ascertained claim.



## 11. GENERAL AVERAGE AND SALVAGE

11.1    This insurance covers the vessel's proportion of salvage, salvage charges and/or general average, reduced in respect of any under-insurance, but in case of general average sacrifice of the vessel the Assured may recover in respect of the whole loss without first enforcing their right of contribution from other parties.

11.2    Adjustment to be according to the law and practice obtaining at the place where the adventure ends, as if the contract of affreightment contained no special terms upon the subject; but where the contract of affreightment so provides the adjustment shall be according to the York-Antwerp Rules.

11.3    No claim under this Clause 11 shall in any case be allowed where the loss was not incurred to avoid or in connection with the avoidance of a peril insured against.

## 12. DEDUCTIBLE



12.1    No claim arising from a peril insured against shall be payable under this insurance unless the aggregate of all such claims arising out of each separate accident or occurrence (including claims under Clauses 7, 9, 11 and 13) exceeds {Response} in which case this sum shall be deducted. Nevertheless the expense of sighting the bottom after stranding, if reasonably incurred specially for that purpose, shall be paid even if no damage be found. This Clause 12.1 shall not apply to a claim for total or constructive total loss of the vessel or, in the event of such a claim, to any associated claim under Clause 13 arising from the same accident or occurrence.

12.2    Excluding any interest comprised therein, recoveries against any claim which is subject to the above deductible shall be credited to the Underwriters in full to the extent of the sum by which the aggregate of the claim unreduced by any recoveries exceeds the above deductible.

12.3    Interest comprised in recoveries shall be apportioned between the Assured and the Underwriters, taking into account the sums paid by the Underwriters and the dates when such payments were made, notwithstanding that by the addition of interest the Underwriters may receive a larger sum than they have paid.



**13. DUTY OF ASSURED (SUE AND LABOUR)**

13.1    In case of any loss or misfortune it is the duty of the Assured and their servants and agents to take such measures as may be reasonable for the purpose of averting or minimising a loss which would be recoverable under this insurance.

13.2    Subject to the provisions below and to Clause 12 the Underwriters will contribute to charges properly and reasonably incurred by the Assured their servants or agents for such measures. General average, salvage charges (except as provided for in Clause 13.5) collision defence or attack costs and costs incurred by the Assured in avoiding, minimising or contesting liability covered by Clause 9 are not recoverable under this Clause 13.

13.3    Measures taken by the Assured or the Underwriters with the object of saving, protecting or recovering the subject-matter insured shall not be considered as a waiver or acceptance of abandonment or otherwise prejudice the rights of either party.



13.4    When expenses are incurred pursuant to this Clause 13 the liability under this insurance shall not exceed the proportion of such expenses that the amount insured hereunder bears to the value of the vessel as stated herein, or to the sound value of the vessel at the time of the occurrence giving rise to the expenditure if the sound value exceeds that value.  Where the Underwriters have admitted a claim for total loss and property insured by this insurance is saved, the foregoing provisions shall not apply unless the expenses of suing and labouring exceed the value of such property saved and then shall apply only to the amount of the expenses which is in excess of such value.

13.5    When a claim for total loss of the vessel is admitted under this insurance and expenses have been reasonably incurred in saving or attempting to save the vessel and other property and there are no proceeds, or the expenses exceed the proceeds, then this insurance shall bear its pro rata share of such proportion of the expenses, or of the expenses in excess of the proceeds, as the case may be, as may reasonably be regarded as having been incurred in respect of the vessel; but if the vessel be insured for less than its sound value at the time of the occurrence giving rise to the expenditure, the amount recoverable under this clause shall be reduced in proportion to the under-insurance.

13.6    The sum recoverable under this Clause 13 shall be in addition to the loss otherwise recoverable under this insurance but shall in no circumstances exceed the amount insured under this insurance in respect of the vessel.

**14. NEW FOR OLD**

Claims payable without deduction new for old.

**15. BOTTOM TREATMENT**

In no case shall a claim be allowed in respect of scraping gritblasting and/or other surface preparation or painting of the vessel's bottom except that

15.1    gritblasting and/or other surface preparation of new bottom plates ashore and supplying and applying any "shop" primer thereto,

15.2    gritblasting and/or other surface preparation of:

the butts or area of plating immediately adjacent to any renewed or refitted plating damaged during the course of welding and/or repairs,

areas of plating damaged during the course of fairing, either in place or ashore,

15.3    supplying and applying the first coat of primer/anti-corrosive to those particular areas mentioned in 15.1 and 15.2 above,



shall be allowed as part of the reasonable cost of repairs in respect of bottom plating damaged by an insured peril.

## 16. WAGES AND MAINTENANCE

No claim shall be allowed, other than in general average, for wages and maintenance of the Master, Officers and Crew, or any member thereof, except when incurred solely for the necessary removal of the vessel, with the agreement of the Underwriters, from one port to another for the repair of damage covered by the Underwriters, or for trial trips for such repairs, and then only for such wages and maintenance as are incurred whilst the vessel is under way.

## 17. AGENCY COMMISSION

In no case shall any sum be allowed under this insurance either by way of remuneration of the Assured for time and trouble taken to obtain and supply information or documents or in respect of the commission or charges of any manager, agent, managing or agency company or the like, appointed by or on behalf of the Assured to perform such services.



## 18. UNREPAIRED DAMAGE

18.1    The measure of indemnity in respect of claims for unrepaired damage shall be the reasonable depreciation in the market value of the vessel at the time this insurance terminates arising from such unrepaired damage, but not exceeding the reasonable cost of repairs.

18.2    In no case shall the Underwriters be liable for unrepaired damage in the event of a subsequent total loss (whether or not covered under this insurance) sustained during the period covered by this insurance or any extension thereof.

18.3    The Underwriters shall not be liable in respect of unrepaired damage for more than the insured value at the time this insurance terminates.

## 19. CONSTRUCTIVE TOTAL LOSS

19.1    In ascertaining whether the vessel is a constructive total loss, the insured value shall be taken as the repaired value and nothing in respect of the damaged or break-up value of the vessel or wreck shall be taken into account.

19.2    No claim for constructive total loss based upon the cost of recovery and/or repair of the vessel shall be recoverable hereunder unless such cost would exceed the insured value. In making this determination only the cost relating to a single accident or sequence of damages arising from the same accident shall be taken into account.

## 20. DISBURSEMENTS WARRANTY

20.1    Additional insurances as follows are permitted:

20.1.1    *Disbursements, Managers' Commissions, Profits or Excess or Increased Value of Hull and Machinery.*  A sum not exceeding 25% of the value stated herein.

20.1.2    *Earnings or Anticipated Freight, insured for time.*  A sum not exceeding 25% of the value as stated herein less any sum insured, however described, under 20.1.1.

20.1.3    *Freight or Hire, under contracts for voyage.*  A sum not exceeding the gross freight or hire for the first passage and next succeeding cargo passage plus the charges of insurance. In the case of a voyage charter where payment is made on a time basis, the sum permitted for insurance shall be calculated on the estimated duration of the voyage, subject to the limitation of two cargo passages as laid down herein. Any sum insured under 20.1.2 to be taken into account and only the excess thereof may be insured.



20.1.4  *Time Charter Hire or Charter Hire for Series of Voyages.*  A sum not exceeding 50% of the gross hire which is to be earned under the charter in a period not exceeding 18 months.  Any sum insured under 20.1.2 to be taken into account and only the excess thereof may be insured.  An insurance under this Section may begin on the signing of the charter.

20.1.5  *Premiums.*  A sum not exceeding the actual premiums of all interests insured for a period not exceeding 12 months (excluding premiums insured under the foregoing sections but including, if required, the premium or estimated calls on any Club or War etc. Risk insurance) reducing pro rata monthly.

20.1.6  *Returns of Premium.*  A sum not exceeding the actual returns which are allowable under any insurance but which would not be recoverable thereunder in the event of a total loss of the vessel whether by insured perils or otherwise.

20.1.7  *Insurance irrespective of amount against:*

Any risks excluded by Clauses 5, 22, 23, 24 and 25.



20.2  Warranted that no insurance on any interests enumerated in the foregoing 20.1.1 to 20.1.6 in excess of amounts permitted therein and no other insurance which includes total loss of the vessel P.P.I., F.I.A., or subject to any other like term, is or shall be effected to operate during the currency of this insurance by or for account of the Assured, Owners, Managers or Mortgagees. Provided always that a breach of this warranty shall not afford the Underwriters any defence to a claim by a Mortgagee who has accepted this insurance without knowledge of such breach.

## 21. RETURNS FOR CANCELLATION

To return pro rata monthly net for each uncommenced month if this insurance be cancelled either by agreement or by the operation of Clause 2 provided that a total loss of the vessel, whether by insured perils or otherwise, has not occurred during the period of this insurance or any extension thereof.

**The following clauses shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

## 22. WAR EXCLUSION

In no case shall this insurance cover loss damage liability or expense caused by

22.1  war civil war revolution rebellion insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power

22.2  capture seizure arrest restraint or detainment (barratry and piracy excepted), and the consequences thereof or any attempt thereat

22.3  derelict mines torpedoes bombs or other derelict weapons of war.

## 23. STRIKES EXCLUSION

In no case shall this insurance cover loss damage liability or expense caused by

23.1  strikers, locked-out workmen, or persons taking part in labour disturbances, riots or civil commotions

23.2  any terrorist or any person acting from a political motive.

### 24. MALICIOUS ACTS EXCLUSION

In no case shall this insurance cover loss damage liability or expense arising from

24.1    the detonation of an explosive

24.2    any weapon of war

and caused by any person acting maliciously or from a political motive.

### 25. NUCLEAR EXCLUSION

In no case shall this insurance cover loss damage liability or expense arising from any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

20/7/87
CL311  © Copyright The Institute of London Underwriters





## WAR AND CIVIL WAR EXCLUSION CLAUSE

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

Notwithstanding anything to the contrary contained herein this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.



1/1/38
N.M.A. 464

## SPECIAL CANCELLATION PROVISIONS

1.  It is understood and agreed that if:-

    A.   any Insurer subscribing to this Insurance:

         i.    ceases underwriting or accepting new business, whether entirely or in any class of business which partially or totally includes the coverage under this Policy, or

         ii.   enters into a runoff arrangement, or

         iii.  is subject to a scheme of arrangement, or -

    B.   any action is taken in any jurisdiction for the suspension of payments by, or the dissolution, winding up, termination of existence, liquidation, insolvency administration or bankruptcy of any Insurer, or

    

    C.   a provisional liquidator, liquidator, trustee, administrator, receiver, administrative receiver or similar officer is appointed in respect of any Insurer or in respect of any part of its assets, or

    D.   any authorisation, approval or consent, licence, exemption, filing, registration or notarisation or other requirement necessary or desirable to enable any Insurer to carry on business is modified, revoked or withheld or does not remain or proves not to have been in full force and effect, or

    E.   it becomes unlawful for any Insurer to perform any of its obligations under the Policy or an intention is announced to take any of the actions stated in paragraphs A. to D. above, or

    F.   in the published opinion of the Insurer's auditor or a credit rating agency, the financial ability of an Insurer to pay claims is or may be impaired,

    

    then the Insured or the Insured's Broker (as agent of the Insured) is entitled at its option to cancel that Insurer's participation in this Policy at any time after the applicable act stated above.

    In that event, the premium due to such Insurer for this Insurance shall be the *pro rata* proportion of the premium allocated to the risks covered under the Policy which corresponds to the period for which the Insurer has been on risk, but after the deduction of that Insurer's proportion of outstanding claims under the Policy.

2.  Notwithstanding anything to the contrary contained in this Insurance or subsequently endorsed to it, it is understood and agreed between the Insurers and the Insured that if:

    A.   the Insured, or



2.    (continued)

B.    the agents of the Insured on whose instructions this Insurance may have been effected,

fails to pay the Aon Group Limited the premium or any instalment of the premium by the date it is due, this Policy may be cancelled immediately by the Aon Group Limited by giving notice in writing to the Insurers and, if applicable, the Insurers will as a consequence return to the Aon Group Limited *pro rata* premium calculated from the date of notice or from such later date as may be specified in the said notice.

The foregoing provisions are subject always to the terms and conditions of any letter of undertaking issued by the Aon Group Limited in favour of any assignee or mortgagee of this Policy.



Nothing contained in this Clause shall prejudice or affect any right which the Aon Group Limited may have in respect of any amount remaining due to them, whether in connection with this Policy or otherwise, or any other rights of the Aon Group Limited against the Insured or their agents.





## NMA LINES CLAUSE

This Insurance, being signed for 90.0000% of 100.0000% insures only that proportion of any loss, whether total or partial, including but not limited to that proportion of associated expenses, if any, to the extent and in the manner provided in this Insurance.

The percentages signed in the Table are percentages of 100.0000% of the amount(s) of Insurance stated herein.



**N.M.A. 2419**

## SEVERAL LIABILITY NOTICE



The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

LSW1001

The Table of Syndicates referred to on the face of this Policy follows:

| LPSO USE ONLY UXO1 2607 | BROKER 0823 | REFERENCES 51274 04\|07\|00 | |
|---|---|---|---|
| AMOUNT, PERCENTAGE OR PROPORTION | SYNDICATE | UNDERWRITER'S REFERENCE | PAGE 1 |
| PERCENT | | | |
| 50.00 | 535 | 253BG969C00 | |
| 10.00 | 2724 | NAMD90009Y61 | |
| 10.00 | 79 | OO4YO1E5658A | |
| 10.00 | 510 | R1152X00A08Y | |
| 5.00 | 457 | 415DO42461XX | |
| 5.00 | 2020 | D342719FOX | |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS IN RESPECT OF 2000
YEAR OF ACCOUNT

EFFECTIVE FROM: 01 05 2000

L.P.S.O.
M.Z.S.

| TOTAL LINE 90.00 | No. OF SYND. 6 | FOR LPSO USE ONLY NUA1   6325 |
|---|---|---|