# DOCUMENT
# NO. 26




# MEMORANDUM OF AGREEMENT

Dated:                    March 18, 2003

Zapoteca Energy, Inc., a Liberian corporation, or their nominee, hereinafter called the Sellers, have agreed to sell and to cause to be sold,

and

Nabors Drilling International Limited, a Bermuda company, or their nominee, hereinafter called the Buyers, have agreed to buy:

     Name:  ENERGY ZAPOTECA

     Classification Society/Class: Bureau Veritas

| | | |
|---|---|---|
| Built:  1981 | By:  GVA, Sweden | |
| Flag:  Panama | Place of Registration:  Panama | |
| Call Sign:  N/A | Grt/Nrt:  3,675 / 2,661 | |

     Register Number: 28909 PEXT-1

in its entirety, with everything belonging to it, whether on board, ashore or on order including all broached or unbroached provisions, inventory, stores, spare parts, spare equipment, rig site inventory, shore base spare parts, drawings and specifications, operating manuals, and all other documents pertaining to the ENERGY ZAPOTECA, including without limitation the equipment and inventory described on Exhibit 1 (collectively "the Vessel"), on the following terms and conditions:

### Definitions

"Banking days" are days on which banks are open both in the country of the currency stipulated for the Purchase Price in Clause 1 and in the place of closing stipulated in Clause 8.

"In writing" or "written" means a letter handed over from the Sellers to the Buyers or vice versa, a registered letter, telex, telefax or other modem form of written communication.

"Classification Society" or "Class" means the Society referred to above.

1.      Purchase Price

The purchase price for the Vessel shall be USD 8,750,000 (United States Dollars Eight Million Seven Hundred and Fifty Thousand). An amount equal to USD 100,000 shall be deducted from Sellers' proceeds for a commission payable to Normarine Offshore Consultants (USA), Inc. at the Closing, such commission being the obligation of the Sellers.

 

Purchase Price payable in accordance with Clauses 2 and 3.

**2.    Deposit**

As security for the correct fulfillment of this Agreement the Buyers shall pay a deposit of 10% (ten per cent) of the Purchase Price within three (3) banking days from the date of this Agreement. This deposit shall be placed with Nordea Bank ASA, London and held by them in a joint account for the Sellers and the Buyers, to be released in accordance with joint written instructions of the Sellers and the Buyers. Interest, if any, to be credited to the Buyers. Any fee charged for holding the said deposit shall be borne equally by the Sellers and the Buyers.

**3.    Payment**

The balance of the Purchase Price shall be paid in full free of bank charges to
Nordea Bank ASA
PO Box 166 – Sentrum
0107 Oslo
USD Acct.
IBAN Number NO 53
Account number 6009.04.42174
Swift code NDEANOKK

at the Closing but not later than three banking days after the Vessel is in every respect physically ready for delivery in accordance with the terms and conditions of this Agreement, the Notice of Readiness has been given in accordance with Clause 5, and the conditions to closing described in Clause 8 have been satisfied.

**4.    Inspections**

The Buyers have inspected and accepted the Vessel's classification records. The Buyers have also inspected the Vessel at its current location in Tuxpan, Mexico and have accepted the Vessel following this inspection and the sale is outright and definite, subject only to the terms and conditions of this Agreement.

**5.    Notices, time and place of delivery**

a)    Sellers shall have the responsibility to jack the Vessel down, safely afloat, ready for wet tow. Buyers shall provide Sellers with ten, five and one days' notice of when this is to be completed. Sellers will hand the Vessel over to Buyers at its current location, hereinafter called the Hand Over, and Buyers will act as Sellers agent until the Closing.

b)    Buyers to supply and install at their cost any additional equipment not included in the sale and required for the tow including towing arrangements, safety equipment, living quarters, etc. as well as pay and arrange for any riding crew during the wet tow from handover Tuxpan till delivery, if required. The Buyers shall be responsible for and cover all costs for tugs as required. The Buyers shall be responsible for and cover all costs for any inspection of, and repairs or modifications to, the legs of the Vessel or otherwise required in order to transport the same. The Vessel must be approved by a

 

qualified marine surveyor appointed by Sellers for the wet tow and the surveyor selected must be acceptable to the Sellers' and Buyers' insurance underwriters. Such acceptance will not be unreasonably withheld. If Sellers' insurance premiums should increase because of the change in the Vessels status from stacked to being mobilized , Buyers will pay the increased cost from Hand Over until the Closing.

c)    The Buyers shall keep the Sellers well informed of the Vessel's itinerary after Hand Over. The Buyers shall provide the Sellers with five, three and one days' notice of the estimated time of arrival at the intended delivery point. When the Vessel is at the delivery point and in every respect physically ready for delivery in accordance with this Agreement, the Sellers shall give the Buyers a written Notice of Readiness for delivery.

d)    The Vessel shall be delivered and taken over safely afloat as soon as practical after the Vessel has left Tuxpan, Mexico under wet tow and moved into International waters northbound for Corpus Christi, USA. The risk of damage to, or loss of, the Vessel shall remain with the Sellers until the Closing.

Expected time of delivery: Between 1 April 2003 and 15 April 2003.

Date of canceling (see Clauses 5 e) and 14): April 15.

e)    If the Sellers anticipate that, notwithstanding the exercise of due diligence by them, the Vessel will not be ready for Hand Over by the canceling date they may notify the Buyers in writing stating the date when they anticipate that the Vessel will be ready for Hand Over and propose a new canceling date. Upon receipt of such notification the Buyers shall have the option of either canceling this Agreement in accordance with Clause 14 within 7 running days of receipt of the notice or of accepting the new date as the new canceling date. If the Buyers have not declared their option within 7 running days of receipt of the Sellers' notification or if the Buyers accept the new date, the date proposed in the Sellers' notification shall be deemed to be the new canceling date and shall be substituted for the canceling date stipulated in Clause 5 d).

If this Agreement is maintained with the new canceling date all other terms and conditions hereof including those contained in Clauses 5 a), 5 b), 5 c), and 5 e) shall remain unaltered and in full force and effect. Cancellation or failure to cancel shall be entirely without prejudice to any claim for damages the Buyers may have under Clause 14 for the Vessel not being ready by the original canceling date.

f)    Should the Vessel become an actual, constructive or compromised total loss before delivery the deposit together with interest earned shall be released immediately to the Buyers whereafter this Agreement shall be null and void.

6.    Drydocking/Divers Inspection

Intentionally omitted.

7.    Spares/bunkers, etc.

The Sellers shall deliver the Vessel to the Buyers with everything belonging to her on board as provided in the equipment list and inventory attached to this Agreement as Exhibit 1. All spare parts and spare equipment including spare tail-end shaft(s) and/or spare propeller(s)/propeller blade(s), if, any, belonging to the Vessel at the time of inspection used or unused, whether on board or not shall become the Buyers' property, but spares on order are to be excluded. Forwarding charges, if any,

 

shall be for the Sellers' account. The Sellers are not required to replace spare parts including spare tail-end shaft(s) and spare propeller(s)/propeller blade(s) which are taken out of spare and used as replacement prior to delivery, but the replaced items shall be the property of the Buyers. The radio installation and navigational equipment if any shall be included in the sale without extra payment if they are the property of the Sellers. Unused stores and provisions if any shall be included in the sale and be taken over by the Buyers without extra payment.

The Sellers have the right to take ashore crockery, plates, cutlery, linen and other articles bearing the Sellers' flag or name, provided they replace same with similar unmarked items. Library, forms, etc., exclusively for use in the Sellers' vessel(s), shall be excluded without compensation. Captain's, Officers' and Crew's personal belongings including the slop chest are to be excluded from the sale as well as the following additional items (including items on hire):.

The Buyers shall take over the remaining bunkers and unused lubricating oils in storage tanks and sealed drums and pay the current net market price (excluding barging expenses) at the port and date of delivery of the Vessel.

Payment under this clause shall be made at the same time and place and in the same currency as the Purchase Price

**8.    Closing**

The place of closing:    Nordea Bank ASA offices , London.

In exchange for payment of the Purchase Price the Sellers shall furnish the Buyers with delivery documents, namely:

a)    Legal Bill of Sale in a form recordable in Panama (the country in which the Buyers are to register the Vessel), warranting that the Vessel is free from all encumbrances, mortgages and maritime liens or any other debts or claims whatsoever, duly notarially attested and legalized by the consul of such country or other competent authority.

b)    Current Certificate of Ownership issued by the competent authorities of the flag state of the Vessel and demonstrating that Sellers have good and marketable title to the Vessel.

c)    Confirmation of Class issued as per BV Report of 1 March 2002 already handed over to Buyers.

d)    Current Certificate issued by the competent authorities stating that the Vessel is free from registered encumbrances.

e)    Certificate of Deletion of the Vessel from the Vessel's registry or other official evidence of deletion appropriate to the Vessel's registry at the time of delivery, or, in the event that the registry does not as a matter of practice issue such documentation immediately, a written undertaking by the Sellers to effect deletion from the Vessel's registry forthwith and furnish a Certificate or other official evidence of deletion to the Buyers promptly and latest within 4 (four) weeks after the Purchase Price has been paid and the Vessel has been delivered.

f)    Any such additional documents as may reasonably be required by the competent authorities for the purpose of registering the Vessel, provided the Buyers notify the Sellers of any such documents as soon as possible after the date of this Agreement.




At the time of delivery the Buyers and Sellers shall sign and deliver to each other a Protocol of Delivery and Acceptance confirming the date and time of delivery of the Vessel from the Sellers to the Buyers.

At the time of delivery the Sellers shall hand to the Buyers the classification certificate(s) as well as all plans etc., which are on board the Vessel. Other certificates which are on board the Vessel shall also be handed over to the Buyers unless the Sellers are required to retain same, in which case the Buyers to have the right to take copies. Other technical documentation which may be in the Seller's possession shall be promptly forwarded to the Buyers at their expense, if they so request. The Sellers may keep the Vessel's log books but the Buyers to have the right to take copies of same.

9.    Encumbrances

The Sellers warrant that the Vessel, at the time of delivery, is free from all charters, encumbrances, mortgages, and maritime liens or any other debts whatsoever. The Sellers hereby undertake to indemnify the Buyers against all consequences of claims made against the Vessel which have been incurred prior to the time of delivery.

10.    Taxes, etc.

Any taxes, fees and expenses in connection with the purchase and registration under the Buyers' flag shall be for the Buyers' account. Any VAT, customs clearance and duties, taxes, notarial, consular or other charges/expenses connected with the sale of the Vessel and closing of the Sellers' register and any other taxes, fees and expenses customarily paid by the Sellers in transactions of this type shall be for the Sellers' account. The Sellers shall indemnify the Buyers against all such claims made against the Vessel.

The parties shall endeavor to minimize the tax consequences to the Buyers and the Sellers arising from this transaction, and each shall reasonable cooperate with the other to effect the most tax efficient transfer; provided, however, that neither the Buyers nor the Sellers shall be required to incur additional costs to minimize the tax consequences to the other party.

11.    Condition on delivery

The Vessel with everything belonging to her shall be at the Sellers' risk and expense until the Closing, but subject to the terms and conditions of this Agreement she shall be delivered and taken over as she was at the time of inspection, fair wear and tear excepted and except for all modifications done by the Buyers in preparation for the tow by the Buyers.

The Vessel shall be delivered as is with her class and other certificates as per time of inspection.

12.    Name/markings

Within 60 days following delivery the Buyers undertake to change the name of the Vessel and alter funnel markings.

 

**13.    Buyers' default**

Should the deposit not be paid in accordance with Clause 2, the Sellers have the right to cancel this Agreement, and they shall be entitled to claim compensation for their losses and for all expenses incurred together with interest.

Should the Purchase Price not be paid in accordance with this Agreement, the Sellers have the right to cancel the Agreement, in which case the deposit together with interest earned shall be released to the Sellers.  If the deposit does not cover their loss, the Sellers shall be entitled to claim further compensation for their losses and for all expenses incurred together with interest.

Should the Buyers not have in place the tugs as approved by Sellers insurers and marine surveyor to wet tow the Vessel, or have not done the modifications, if any, to make the Vessel ready for the wet tow, by the Date of Canceling then the Sellers shall be entitled to additional purchase price in the amount of USD$8,000 per day pro rata until Buyers obligations under this paragraph have been satisfied, up to a maximum of 14 days.  If Buyer has not satisfied its obligations under this paragraph within 14 days following the Date of Canceling, then Sellers shall have the right to cancel the Agreement, in which case the deposit together with interest earned shall be released to the Sellers. If the deposit does not cover their loss, the Sellers shall be entitled to claim further compensation for their losses and for all expenses incurred together with interest.

**14.    Sellers' default**

Should the Sellers fail to give Notice of Readiness in accordance with Clause 5 c) or fail to be ready to validly complete a legal transfer by the date stipulated in Clause 5 d) the Buyers shall have the option of canceling this Agreement provided always that the Seller shall be granted a maximum of 3 banking days after Notice of Readiness has been given to make arrangements for the documentation set out in Clause 8 or otherwise remedy the failure.  If after Notice of Readiness has been given but before the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not made physically ready again in every respect by the date stipulated in Clause 5 d) and new Notice of Readiness given, the Buyers shall retain their option to cancel.  In the event that the Buyers elect to cancel this Agreement the deposit together with interest earned shall be released to them immediately.

Should the Sellers fail to give Notice of Readiness by the date stipulated in Clause 5 d) or fail to be ready to validly complete a legal transfer as aforesaid they shall make due compensation to the Buyers for all of their expenses together with interest if their failure is caused by proven negligence and whether or not the Buyers cancel this Agreement.

Should the Buyers not have in place the tugs as approved by Sellers insurers and marine surveyor to wet tow the Vessel or have not done the modifications, if any, to make the Vessel ready for the wet tow, by the Date of Canceling then the Sellers shall not be in default for having failed to give Notice of Readiness.




**15.    Buyers' representatives**

After this Agreement has been signed by both parties and the deposit has been lodged, the Buyers have the right to place two representatives on board the Vessel at their sole risk and expense after the Deposit has been lodged at their own cost, risk and liability.

These representatives are on board for the purpose of familiarisation and in the capacity of observers only, and they shall not interfere in any respect with the operation of the Vessel. The
Buyers' representatives shall sign the Sellers' letter of indemnity prior to their embarkation.

**16.    Arbitration**

This Agreement shall be governed by and construed in accordance with English law and any dispute arising out of this Agreement shall be referred to binding arbitration in London in accordance with the Arbitration Acts 1950 - 1979 or any statutory modification or re-enactment thereof for the time being in force, one arbitrator being appointed by each party. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall apply. If two arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final.

**17. Confidentiality**

This offer shall be treated in a confidential fashion by the parties. During the full course of these negotiations, both parties hereto shall undertake to maintain the identity of the Buyers and the Sellers, the Vessel involved and the purchase price in a confidential manner and shall not disclose same in the absence of the other parties express written consent except as may be necessary to comply with applicable governmental requirements or rules of any applicable stock exchange.

**18.    Miscellaneous**

This agreement constitutes the entire agreement between the Sellers and Buyers and supercedes all prior agreements (whether written or oral, express or implied) that may have been made between the parties. Neither party may assign this Agreement without the written consent of the other party, which will not be withheld unreasonably.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first written above.

ZAPOTECA ENERGY, INC.                    NABORS DRILLING INTERNATIONAL LIMITED

Name:    P. O. GRAM                       Name: Siegfried Meissner
Title:    DIRECTOR                        Title:    President

# EXHIBIT "B"

 

# FIRST AMENDMENT
## to
## MEMORANDUM OF AGREEMENT

Dated:          May 9, 2003

Zapoteca Energy, Inc., a Liberian corporation, or their nominee, hereinafter called the Sellers,

and

Nabors Drilling International Limited, a Bermuda company, or their nominee, hereinafter called the Buyers, have agreed as follows:

1) Sellers and Buyers have been working together on best efforts basis to deliver the ENERGY ZAPOTECA according to that certain Memorandum of Agreement ("MoA") signed by both parties on March 18, 2003.

2) The MoA is hereby modified so that the Date of canceling is now May 31, 2003. Sellers to make best efforts to clear customs by May 15, 2003.

3) Sellers and Buyers have agreed to amend Clause 1 of MoA, so the new Purchase Price is USD 8,898,000.

4) Sellers will give notice to Buyers once the Vessel has cleared customs. Following this notice, Buyers will get 48 hours to arrange for an ocean going tug (the 48 hours to be extended in case of force majuer), after which Buyers will pay Sellers USD 4,000 per day until delivery of the Vessel in international waters as stated in MoA.

5) Sellers to provide Buyers as soon as practicable possible a commercial invoice at cost for remaining fuel and assistance by Sellers personnel. Buyers to pay for these at cost expenses.

6) Buyers have agreed to accept the USD 250,000 each claim as stipulated under the Gulf Insurance Company policy No. 034-37-96.

7) Should Buyers equipment installed onboard the Vessel break or fall to the extent that John Lebourgis & Associates or the local Port Authority refuses to let the Vessel leave for international waters, Buyers will cover Sellers at cost expenses and the canceling date will be extended accordingly.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first written above.

ZAPOTECA ENERGY, INC.                     NABORS DRILLING INTERNATIONAL LIMITED

Name:                                     Name:
Title:   K.STEINLEN                        Title:   S. MEISSNER
FOR AND BEHALF OF
P.P.GROUP &CO
AS AGENT FOR
ZAPOTECA ENERGY IVC                                 PRESIDENT

# EXHIBIT "C"

# DOCUMENT NO. 27



# YAHOO! MAIL

Print - Close Window

**Date:** Tue, 19 Mar 2002 15:07:15 -0800 (PST)

**From:** "Chris Phillips" <energyzapoteca@yahoo.com>

**Subject:** Fwd: RE: Energy Zapoteca inspection

**To:** "Christian Kongsli" <kongsli@online.no>

Note: forwarded message attached.

---

**Do You Yahoo!?**
Yahoo! Sports - live college hoops coverage

### Forwarded Message

**From:** "David W. Kent" <dwkent@rigzone.com>

**To:** "Groot de, Frank" <fgroot@unocal.com>

**CC:** "Saifon K." <saifonk@unocal.com>, "Bannaporn V." <bannapornv@unocal.com>, shipper@compuex.com

**Subject:** RE: Energy Zapoteca inspection

**Date:** Tue, 19 Mar 2002 15:27:44 -0600

### Plain Text Attachment

        Dear Mr. de Groot,

        If it is convenient with your other business plans I suggest we meet
at 09:30 am at my offices on March 26th.  We are located at 5870
Highway 6
North, Suite 107 on the west side of Houston.  Alternatively, I could
meet
with you and John at your hotel for coffee, whichever is more
convenient for
you.  I have advised the owners of your schedule and will revert
tomorrow
with Tuxpan hotel information and Charlie Phillips full contact
information.

        On a separate note, I would like to clarify a technical question you
raised earlier in our discussions.  You asked me if the Energy Zapoteca
and
Energy Europa were one in the same, and I confidently responded that
they
were not the same rig.  In fact, as it turns out, the Energy Europa
does not
exist at all; she is a design concept only, an independent leg
accommodation
jackup based on the Energy Zapoteca hull and marketed by Intership Ltd.
as
the Energy Europa.  To avoid any confusion, please note there is only
one
newly classed F&G L-780 jackup, the Energy Zapoteca.  The rig owner has
no
current commitment to any buyer or charterer, Intership is marketing
the

Energy Europa without owner authority and with respect to Unocal, Rigzone is
the exclusive sales broker. The owner asked me to clarify these points because Intership contacted them today advising that they have a customer
interested in inspecting the Energy Zapoteca on March 26th/27th.

     Please let me know if you have any questions or require any additional information.


     Regards,
     David W. Kent
     281 345 4040
     home 281 463 1375


> -----Original Message-----
> From:        Groot de, Frank [mailto:fgroot@unocal.com]
> Sent: Monday, March 18, 2002 10:11 PM
> To:     'David W. Kent'
> Cc:     shipper@compuex.com; Bannaporn V.; Saifon K.
> Subject:      RE: Energy Zapoteca inspection
>
>  dear Mr. Kent,
>
> we will be in Houston March 25/26 and would like to meet with you to
> discuss commercial issues in connection with the Energy Zapotica.
> We are proposing March 26, 9.30 hrs at a location at your convenience.We
> will be staying in a hotel(tba) close to the airport(Bush int.).
> Please make  arrangements for inspection of the rig on March 28 in
> Tuxpan.We are arriving by car on the evening of the 27 th coming from
> Tampico.Please advise the name of a hotel for us  and an address we can
> contact Charlie Philips.Hoping to meet him at dinner time on the 27 th.On
> behalf of Unocal we are represented by John Niezner and undersigned.
> Thanks,
> best regards
> Frank de Groot
>
>



**MAIL**

Print - Close Window

**Date:** Tue, 19 Mar 2002 15:23:02 -0800 (PST)

**From:** "Chris Phillips" <energyzapoteca@yahoo.com>

**To:** "Christian Kongsli" <kongsli@online.no>

Dear Christian,

I sent you a copy of a e-mail from David Kent.

This does not look good when a company is marketing a rig that they do not have.

Unocal is wondering what is going on.

Intership must remove the Energy Zapoteca from their web site.

We do not want to be connected to Inter ship at all. This is guilt by association.

Best Regards

Charles Phillips


**Do You Yahoo!?**
Yahoo! Sports - live college hoops coverage

 **MAIL**

Print - Close Window

| | |
|---|---|
| **Date:** | Tue, 19 Mar 2002 11:58:17 -0800 (PST) |
| **From:** | "Chris Phillips" <energyzapoteca@yahoo.com> |
| **Subject:** | Inter-Ship |
| **To:** | "Christian Kongsli" <kongsli@online.no> |

Dear Christian,

We must be careful with the InterShip group. We do not know today if Intership is speaking with Unical and/or Pemex.

You remember Intership from last time. They were bidding their barges to Pemex while talking with you on the Energy Zapoteca.

Intership is just like Protexa. We cannot trust them.

We should not discuss anything with them until they remove the rig from their web site.

I am trying to find out if they are talking with Pemex.

Best Regards

Charles Phillips


**Do You Yahoo!?**
Yahoo! Sports - live college hoops coverage

# DOCUMENT NO. 28

## PRELIMINARY RECOMMENDATIONS

## FOR

## TOWAGE PREPARATION OF THE JACKUP RIG

## "ENERGY ZAPOTECA"/"NABORS 660"

The following Preliminary Recommendations are issued for the Jackup Rig "ENERGY ZAPOTECA"/"NABORS 660" in view of its preparation for a wet towage from present location in Tuxpan Pantepec River, Veracruz, Mexico, to a standby location near Corpus Christi. Texas by a towing vessel to be determined later, with a departure around April 12, 2003. These recommendations are general and will be supplemented by our attending Warranty Surveyor if and when necessary during the preparation. The unit is to have a reduce manning during this towage and recommendations specific to the riding crew will be issued prior to departure

1.  As far as possible in its present configuration, "ENERGY ZAPOTECA"/"NABORS 660" should be prepared in compliance with the procedures for Field Transit as outlined in the Rig's Operating Manual plus the additional recommendations outlined in the following paragraphs. The unit should meet the latest Classification Society and flag requirements for such project.

2.  Results of stability calculations for the "as loaded" condition upon departure and throughout the duration of the tow should indicate a KG value within the allowable limits found in the Operating Manual.

3.  Energy Zapoteca management to provide results of the NDT leg inspections.

4.  All three legs of the unit should be secured with installation of the rack chocks and upper guide wedges as per designer's specifications for ocean transit (with a horizontal brace aligned with the upper guide).

5.  The rack chock system at each of the three legs should be tested to be fully operational as soon as possible.

JOHN LEBOURHIS & ASSOCIATES, INC.

NABORS/3P 00050

6.    The jacking system should be tested to be fully operational as soon as possible.

7.    All watertight doors (internal and leading to main deck) should be checked to have good, pliable gasket material, to be closing flush, and to have all dogs working properly. Internal watertight doors should be painted with a notice reading "Keep Closed and Dogged When Under Tow".

8.    All tanks should be empty or pressed full to limit free surface effects as much as possible throughout the transit.

9.    All preload tank dump valves should be closed and blanked off.

10.    All manhole covers should be provided with good gasket material for a tight fit and all bolts and nuts should be checked to be tight.

11.    Hatch covers or access below decks should be watertight with good gasket material, sitting flush on their respective coamings with all dogs secured.

12.    All loose equipment in accommodations or below main deck such as furniture, drums, tools, etc., should be secured against 15 deg/10 sec roll/pitch with ropes, wires, tack welded or should be stored in containers or boxes properly secured to the deck.

13.    Emergency repair material such as wooden wedges, plywood sheets, steel sheets, angles, rapid set cement bags, cutting torches and bottles, welding machines, etc., should be stored inside the hull and properly secured. Also, two portable self-priming pumps and corresponding suction/discharge hoses should be available onboard.

14.    Accommodations for the riding crew (one module) should be welded to an elevated platform above the rear part of the main deck. The platform should be at least 3 ft. above deck level and should withstand a 15 deg/10 sec motion

15.    Lifesaving equipment should comply with IMO MODU code regulations for the number of people riding the tow. This equipment should be checked to be complete and operational, and located in such a way that it is out of reach of the seas in extreme conditions while under tow.

16.    Towage lights (red/green side lights and white at stern) and day shape (black diamond) should be installed and a provision to power the lights throughout the towage should be made.

JOHN LEBOURHIS & ASSOCIATES, INC.

NABORS/3P 00051

"ENERGY ZAPOTECA"/"NABORS 660" PRELIMINARY RECOMMENDATIONS    PAGE 3 OF 3
TOWAGE FROM TUXPAN, MEXICO TO CORPUS CHRISTI, TEXAS (continued)

17.    The two (2) Smit type towing brackets located on the forward deck will be used to connect the bridle to which the tow wire of the towing vessel will be connected. The brackets, welds and internal structural reinforcement should be checked to be without damage and/or visible cracks. The rig's two towing chocks in line with the towing brackets should be of the closed type.

18.    "ENERGY ZAPOTECA"/"NABORS 660" should be equipped with an emergency towing assembly consisting of a pennant to be strapped alongside on the side of the rig's hull and a polypropylene messenger rope with trailing buoy to be deployed by the crew from the stern, following the instructions from the towing vessel. Such a system should enable the towing vessel to reconnect a parted tow wire (or a secondary tow wire) to the bridle's fish plate while at sea, considering that the rig does not have any winch or crane.

19.    Two steel ladders should be welded vertically to the hull at the most convenient locations to allow for the riding crew to embark/disembark from the accompanying vessel.

20.    Upon departure, the rig should have enough fuel onboard to run keep the generator sets running for at least 10 days.

21.    Prior to departure:
            –The three generator sets should be checked to be fully operational under load.
            –The ballast pumps should be checked to be fully operational.
            –Two self-priming vacuum pumps to be installed with suction/discharge hoses.

Detailed recommendations for the riding crew including communications and operational coordination with the Towing Vessel is issued separately. Additional recommendations from the Warranty Surveyor attending the preparation will be issued as needed.

Houston, March 28, 2003

Captain John LeBourhis
JOHN LEBOURHIS & ASSOCIATES, INC.
Warranty Surveyors

JOHN LEBOURHIS & ASSOCIATES, INC.

NABORS/3P 00052

**"ENERGY ZAPOTECA"/"NABORS 660" PRELIMINARY RECOMMENDATIONS     PAGE 4 OF 3**
**TOWAGE FROM TUXPAN, MEXICO TO CORPUS CHRISTI, TEXAS (continued)**

JOHN LEBOURHIS & ASSOCIATES, INC.

NABORS/3P 00053

# DOCUMENT NO. 29

**Charles Herd**

**From:** Chris Phillips [energyzapoteca@yahoo.com]
**Sent:** Friday, March 28, 2003 3:33 PM
**To:** kongsli@online.no

Dear Christian,

Reference our telephone conversation regarding the severance package for the crew and myself.

The following is fair and in line with the offshore industry.

. The Crew members and security guards should receive their past (2) Christmas bonuses. Paid immediately.

. The Crew members and security guards should receive a 3 month severance package. Paid 10 days before the rig leaves Tuxpan.

. I should receive my $75,000.00 bonus. Paid 10 days before the rig leaves Tuxpan.

. I should receive my vacation pay for the past (3) years. Paid immediately.

. I should receive a 6 month severance package. Paid immediately.

. I should receive my past (3) Christmas bonuses. Paid immediately.

Note: As discussed, I will close down the office after the rig departs Tuxpan. I would estimate that it will take 1 month.

n regards the the outstanding legal matters, I would suggest that we continue with the labor and criminal cases to resolution.. I will follow the cases from my home in Houston, Texas for 6 months without any sallary..

We should keep our agent Meritus De Mexico for 1 month or until the office is closed.

n regards to Protexa/Celasa, I do not know as of this date what they will do in regards to the rig leaving Mexico. They are well aware that we would fight back if they tried anything to delay the rig from departing Tuxpan..

Comments: As discussed, I want to inform the crew members that the Energy Zapoteca has been sold before Nabors arrives. I must be able to insure them that they will receive a severance package. This will go a long way with the Port Captain.

As discussed, Judy and I will be going on a well deserved vacation after the rig is delivered to Nabors. We will return to close down the office.

Best regards

Charles Phillips

1/16/2005

Charles Phillips
Owners Representative
Energy Zapoteca
Tel- 52-783-83-49262

---

Do you Yahoo!?
Yahoo! Platinum - Watch CBS' NCAA March Madness, <u>live on your desktop</u>!

# DOCUMENT
# NO. 30

Meritus de Mexico, S.A. de C.V.
Calle Veronica Veracruz No. 55
Colo centro C.P. 92300
Tuxpan, Veracruz

STRANDEN 1A, AKER BRYGGE
P.O. BOX 1383 VIKA, NO-0114 OSLO

TELEPHONE: +47 22 01 24 50
TELEFAX: +47 22 01 24 55
E-MAIL: GRAMCO@PDGRAM.COM
WEB SITE: WWW.PDGRAM.COM

ENTERPRISE NO. NO 935 50 242

Oslo, March 31ˢᵗ 2003

**Attention: Señora Ana Luisa Nuñez de Rosales**

Please be advised that the "Energy Zapoteca" will be departing Tuxpan.

The "Energy Zapoteca" ... Tuxpan will remain open while our Owners and its Representative, Captain Phillip ... outstanding matters.

Meritus de Mexico ... for Captain Charles Phillip ... "Energy Zapoteca" ...

Please coordinate all matters with ... Phillip ...

Best regards,

P. D. Gram & Co. As

Cc:    Meritus de Mexico
       Attention: Sr. Pedro Vargas

Cc:    Energy Zapoteca
       Attention: Captain Charles Phillips

# P.D. GRAM & CO. AS

Meritus de México, S.A. de C.V.
Calle Heroica Veracruz No.35
Col. Centro C.P. 92800
Tuxpan, Veracruz.

STRANDEN 1A    AKER BRYGGE
P.O. BOX 1383 VIKA, NO-0114 OSLO

TELEPHONE: (47) 22 01 74 50
TELEFAX:    (47) 22 01 74 55
E-MAIL: GRAMCO@PDGRAM.COM
WEB SITE: WWW.PDGRAM.COM

Oslo, March 31 st 2003.

Attn. Sra. Ana Luisa de Rosales.

Este enterada, por favor, que la Plataforma Energy Zapoteca; estará partiendo de Tuxpan.

La oficina de Energy Zapoteca permanecerá abierta mientras los representantes de los dueños; el Cap. Charles Phillips, resuelva todos los asuntos sobresalientes.

La empresa MERITUS continuará representando como Agente Naviero al Cap. Charles Phillips y a Energy Zapoteca Inc. durante este periodo.

Por favor; coordine todos los asuntos, con el Cap. Charles Douglas Phillips.

Saludos Cordiales

P.D. GRAM & CO. AS