# DOCUMENT NO. 2



SECRETARIA DE COMUNICACIONES
Y
TRANSPORTES

COORDINACION GENERAL DE PUERTOS Y
MARINA MERCANTE.
DIRECCION GENERAL DE CAPITANIAS.
CAPITANIA DE PUERTO.
DEPTO. DE NAVEGACION.
104-408-

FORMA



TUXPAN, VER., SEPTIEMBRE 15 DE 1999.

C. PEDRO LANDA ESQUIVEL.
GERENTE DE OPERACIONES
PERFORACIONES MARITIMAS MEXICANAS, S.A. DE C.V.
CARRETERA A COBOS.
CIUDAD.

Con referencia a su solicitud como gerente de operaciones de Perforaciones Marítimas Mexicanas, S.A. de C.V., y de acuerdo a suspensión de labores temporal de la plataforma nacional denominada "ZAPOTECA" esta Autoridad Marítima Portuaria conforme a los Artículos 76, 77 y 78 de la Ley de Navegación autoriza también se encuentre por el período comprendido del 26 de agosto de 1999 hasta el 01 de junio del 2000, deberá encontrarse en el lugar designado, por lo que deberá cumplir con todas las medidas de seguridad y vigilancia necesarias debiendo estar convenientemente señalizada con alumbrado eléctrico; y tener personal designado para resolver cualquier contingencia, deberá también usted informar de los avances que se hayan obtenido para restablecer las operaciones de su artefacto naval representado.

También se hace hincapié en que transcurrido el plazo de amarre temporal o se solicite alguna prórroga en su caso, de que el artefacto naval no esté puesto en servicio, si la misma constituye un peligro para la navegación o un estorbo a juicio de esta Capitanía de Puerto será removida por cuenta del armador.

ATENTAMENTE
SUFRAGIO EFECTIVO NO REELECCION
CAPITANIA DE PUERTO

CAP. ALT. GUILLERMO R. MACHUCA AMOR



S. C. T.
Coordinación Gral. de Puertos
y Marina Mercante
Dirección General de
Capitanías
CAPITANIA DE PUERTO
TUXPAN, VER.
"CORRESPONDENCIA"

C.c.p.- Lic.- Rodrigo J. Chávez Martínez.- Director General de Marina Mercante.- México, D.F.,

GRMA/ADMA/ioh

Tuxpan, Ver. September 15 of 1999

With reference to your request as Manager of Operations of Perforaciones Maritimas Mexicanas S. A. de C.V. and according to your petition for temporary mooring of ropes of the National platform called "Zapoteca", this maritime authority in accordance with the Articles 76, 77 and 78 of the Law of Navigation authorizes the temporary mooring of ropes from the time period 26 August of 1999 until 01 June of 2000. It will be setting at the place assigned. Therefore it should comply with all measures of safety watchfulness necessary, being able to have the convenient signals with electric lighting and to have the personnel assigned to solve any incident. You should also inform of the advances that have been obtained to re-establish the operations of you naval rig represented.

We also make emphasis that after the time period of temporary mooring has expired, or to request any extension in your case, that the naval rig would not be put back into service if the same represents a hazard for navigation or a hindrance in the opinion of this Port Authority, it will be removed at the cost of the assembler.

                    Captain of the Port
                Cap. Alt. Guillermo R. McBeath Amor

Stamp
SCT
Capitan of the Port
Tuxpan, Ver.

# DOCUMENT NO. 3

| IMO No. | |
|---|---|
| DISTINTIVO DE LLAMADA CALL LETTER | NUMERO OFICIAL REGISTRATION N° |
| S/R | D-1364-1789-PEXT |

**REPUBLICA DE PANAMA**
AUTORIDAD MARITIMA DE PANAMA
DIRECCION GENERAL DE MARINA MERCANTE

## SERVICIO INTERNACIONAL
## PATENTE PROVISIONAL DE NAVEGACION

De acuerdo al cumplimiento de los requisitos estipulados en la Ley 8a. de 12 de enero de 1925, aprobados por la Diligencia de Matrícula No. 1364-1789 de 2 de Marzo del año 2000, expedida por esta Oficina SE AUTORIZA Y CONCEDE a la nave cuyas características se detallan a continuación, la presente PATENTE PROVISIONAL DE NAVEGACION para todos los fines respectivos que otorga el Registro de la Marina Mercante de la República de Panamá.

In accordance with the requirements established by the Ordinance No. 8, dated the 12th of January 1925, the registration requested in Form No. 1364-1789, dated the 2nd of MARCH of 2000, has been approved by this office. Therefore, the Panama Merchant Marine Registry hereby GRANTS AND AUTHORIZES this Provisional Registration of Navigation Certificate to the vessel, whose particulars are inscribed below.

### DATOS DE IDENTIFICACION DE LA NAVE
### PARTICULARS OF THE VESSEL

| NOMBRE DE LA NAVE: NAME OF THE VESSEL: | PROPIETARIO: OWNER'S NAME: |
|---|---|
| ZAPOTECA | PERFORACIONES MARITIMAS MEXICANAS S.A. DE C.V |
| NOMBRE ANTERIOR: PREVIOUS NAME: | REPRESENTANTE LEGAL: NAME OF LEGAL REPRESENTATIVE: |
| ZAPOTECA | ARIAS, FABREGA & FABREGA |
| NACIONALIDAD QUE RENUNCIA: PREVIOUS NATIONALITY: | RESPONSABLE DE LAS CUENTAS DE RADIO: RADIO ACCOUNTING AUTHORITY: |
| PANAMEÑA | SIN RADIO |
| CONSTRUIDO EN: BUILT IN: | CONSTRUCTORES: BUILDERS: |
| SUECIA | GOTAVERKEN ARENDAL AB |

| AÑO DE CONSTRUCCION DATE OF CONSTRUCTION: | MATERIAL DEL CASCO: MATERIAL OF HULL: | DIMENSIONES PRINCIPALES NUMBER OF: | TONELAJE TONNAGE |
|---|---|---|---|
| 1981 | ACERO | ESLORA 54.85 MTS. LENGTH | BRUTO 3,675.32 GROSS |
| | | MANGA 53.34 MTS. BREADTH | NETO 2,661.00 NET |
| | | PUNTAL 7.62 MTS. DEPTH | |

### SERVICIO A QUE SE DEDICA LA NAVE
### KIND OF SERVICE THIS VESSEL PROVIDES

| CARGA SECA DRY CARGO | CARGA LIQUIDA LIQUID CARGO | DE SERVICIO DE TYPE OF SERVICE: PLATAFORMA PERFORADORA |
|---|---|---|
| --- | --- | |

### SISTEMA DE PROPULSION
### PROPULSION SYSTEM

CLASE Y NUMERO DE MAQUINAS O MOTORES:  SIN PROPULSION PROPIA
TYPE AND NUMBER OF ENGINES:
NUMERO DE CILINDROS:
NUMBER OF CYLINDERS:
MARCA O NOMBRE DE LOS FABRICANTES:
BRAND OR NAME OF MANUFACTURERS:
VELOCIDAD DE LA NAVE:                    CABALLOS DE FUERZA
SPEED OF THE VESSEL:                     HORSE POWER

La presente Patente Provisional debe ser cancelada y sustituida por otra en los casos que se describen al reverso de este documento.

The present Provisional Registration Certificate International Service should be cancelled and substituted by another one in cases that are described on the reverse of this document.

EXPEDIDA EL: DOS (2) DE MARZO DEL 2000.                    EN PANAMA
ISSUED:       DAY    MES   AÑO                              IN
              DAY    MONTH YEAR

FIRMADA Y SELLADA POR EL SUSCRITO  DIRECTOR GENERAL DE MARINA MERCANTE
SIGNED AND SEALED BY THE UNDERSIGNED              TITLE OF FUNCTIONARY

FECHA DE EXPIRACION: TREINTA Y UNO (31) DE MAYO DEL 2000
VALID UNTIL:         MAY 31st, 2000

## REPUBLIC OF PANAMA
MARITIME AUTHORITY OF PANAMA
DIRECTORATE GENERAL OF MERCHANT MARINE

# INTERNATIONAL SERVICE
# PROVISIONAL PATENTE OF NAVIGATION

In accordance with the regulations stipulated by the Ordinance No. dated the 12th of **January 1925** ___ registration requested in Form No. **1364-1789**, dated the 2nd of **March,** of **2000**, has been approved by this office. Therefore, the Panama Merchant Marine Registry hereby **GRANTS AND AUTHORIZES** this Provisional Registration of Navigation Certificate to the vessel, whose particulars are described below.

### PARTICULARS OF THE VESSEL

| | |
|---|---|
| NAME OF VESSEL | OWNERS NAME |
| ZAPOTECA | PERFORACIONES MARITIMAS MEXICANAS S.A. DE C. V. |
| | |
| PREVIOUS NAME | NAME OF LEGAL REPRESENTATIVE |
| ZAPOTECA | ARIAS, FABREGA & FABREGA |
| | |
| PREVIOUS NATIONALTY | RADIO ACCOUNTING AUTHORITY |
| PANAMANIAN | WITHOUT RADIO |
| | |
| BUILT IN | BUILDERS |
| SWEDEN | GOTAVERKEN ARENDAL AS |

| DATE OF CONSTRUCTION | MATERIAL OF HULL | DIMENSIONS | | TONNAGE |
|---|---|---|---|---|
| 1981 | STEEL | LENGTH | 54.85 MTS. | GROSS 3,675.32 |
| | | BREADTH | 53.34 MTS. | NET |
| 2,661.00 | | | | |
| | | DEPTH | 7.62 MTS. | |

|  | PROPULSION SYSTEM |
|---|---|
| TYPE AND NUMBER OF UNITS | NON-SELF PROPELLED |
| NUMBER OF CYLINDERS | ——— |
| BRAND NAME OF MANUFACTURER | ——— |
| SPEED OF VESSEL | ——— |

The present Provisional Navigation Certificate International Service should be cancelled and substituted by another one cases that are described on the reverse of this document.

ISSUED:  **TWO (2) OF MARCH OF 2000**          IN:  **PANAMA**
APPROVED AND GRANTED BY THE UNDERSIGNED: **DIRECTOR GENERAL OF MERCHANT MARINE**
DATE OF EXPIRATION:  **THIRTY ONE (31) OF MAY OF 2000**
VALID UNTIL:  **MAY 31, 2000**

# DOCUMENT NO. 4

Case 1:04-cv-00048 Document 98 Filed in TXSD on 02/11/2005 Page 8 of 20

# MEMORANDUM OF AGREEMENT

**DUPLICATE**

Dated: 7 ~~February~~ *March*, 2000

SALEFORM 1987
Revised 1966, 1983 and 1986

PERFORACIONES MARITIMAS MEXICANAS S.A. DE C.V., OR NOMINEE
hereinafter called the Sellers, have today sold, and                                    1

ENERGY DRILLING, INC. MONROVIA, LIBERIA, OR NOMINEE
hereinafter called the Buyers, have today bought                                        2

THE JACK UP RIG "ZAPOTECA"
Classification: N/A                                                                     3
Built: GOTHENBURG by: GOTAVERKEN ARENDAL AB                                             4
Flag: PANAMA                    Place of Registration: PANAMA, REP. OF PANAMA           5
Call sign: N/A                  Register tonnage:                                       6
Register number:                                                                        7
on the following conditions: AS INSPECTED BY BUYERS REPRESENTATIVE                      8
    DECEMBER 1999 AND PER CLAUSE 20

**1. Price**                                                                            9

   Price: USD 1,437,500    (ONE MILLION FOURHUNDRED THIRTYSEVEN                        10
                            THOUSAND FIVEHUNDRED)

**2. Deposit**    (SEE CLAUSE 16)                                                      11
~~As a security for the correct fulfillment of this contract, the Buyers shall pay a deposit of 10%~~   12
~~ten per cent — of the Purchase Money within~~           banking days from the date of this    13
~~agreement. This amount shall be deposited with~~                                      14

~~and held by them in a joint account for the Sellers and the Buyers. Interest, if any, to be credited the~~   15
~~Buyers. Any fee charged for holding said deposit shall be borne equally by the Sellers and the Buyers.~~    16

**3. Payment**   (SEE CLAUSE 16)                                                       17
~~The said Purchase Money shall be paid free of bank charges to~~                      18

~~on delivery of the vessel, but not later than three banking days after the vessel is ready for delivery~~   19
~~and written or telexed notice thereof has been given to the Buyers by the Sellers.~~  20

**4. Inspections**                                                                     21
~~The Buyers shall have the right to inspect the vessel's classification records and declare whether~~   22
same are accepted or not within                                                        23
   The Sellers shall provide for inspection of the vessel at/in                        24

   The Buyers shall undertake the inspection without undue delay to the vessel. Should the Buyers    25
cause such delay, they shall compensate the Sellers for the losses thereby incurred.   26
   The Buyers shall inspect the vessel afloat without opening up and without cost to the Sellers. Du-  27
ring the inspection, the vessel's log books for engine and deck shall be made available for the Buyers'  28
examination. If the vessel is accepted after such afloat inspection, the purchase shall become definite  29
— except for other possible subjects in this contract — provided the Sellers receive written or telexed  30
notice from the Buyers within 48 hours after completion of such afloat inspection. Should notice of  31
~~acceptance of the vessel's classification records and of the vessel not be received by the Sellers as~~  32

~~said, the deposit shall immediately be released, whereafter this contract shall be considered null~~ 33
~~and void.~~ 34

**DUPLICATE**

5. Place and time of delivery 35
   The vessel shall be delivered and taken over at/in 36
          FOB TUXPAN, MEXICO
   Expected time of delivery:   20 FEBRUARY - 20 MARCH 2000 37
                                7 MAY
   Date of cancelling (see clause 14):  ~~31 MARCH~~ 2000   *ch* 38

~~The Sellers shall keep the Buyers well posted about the vessel's itinerary and estimated time and~~ 39
~~place of drydocking.~~ 40

   Should the vessel become a total or constructive total loss before delivery the deposit shall immedi- 41
ately be released to the Buyers and the contract thereafter considered null and void. 42

6. Drydocking 43
   ~~In connection with the delivery the Sellers shall place the vessel in drydock at the port of delivery~~ 44
   for inspection by the Classification Society of the bottom and other underwater parts below the Sum- 45
   mer Load Line. If the rudder, propeller, bottom or other underwater parts below the Summer Load 46
   Line be found broken, damaged or defective, so as to affect the vessel's clean certificate of class, such 47
   defects shall be made good at the Sellers' expense to " 48

satisfaction without qualification on such underwater parts. " 49

   Whilst the vessel is in drydock, and if required by the Buyers or the representative of the Classifi- 50
cation Society, the Sellers shall arrange to have the tail-end shaft drawn. Should same be condemned 51
or found defective so as to affect the vessel's clean certificate of class, it shall be renewed or made 52
good at the Sellers' expense to the Classification Society's satisfaction without qualification. 53

   The expenses of drawing and replacing the tail-end shaft shall be borne by the Buyers unless the 54
Classification Society requires the tail-end shaft to be drawn (whether damaged or not), renewed or 55
made good in which event the Sellers shall pay these expenses. 56

   The expenses in connection with putting the vessel in and taking her out of drydock, including dry- 57
dock dues and the Classification Surveyor's fees shall be paid by the Sellers if the rudder, propeller, 58
bottom, other underwater parts below the Summer Load Line or the tail-end shaft be found broken, 59
damaged or defective as aforesaid or if the Classification Society requires the tail-end shaft to be 60
drawn (whether damaged or not). In all other cases the Buyers shall pay the aforesaid expenses, dues 61
and fees. 62

   During the above mentioned inspections by the Classification Society the Buyers' representative 63
shall have the right to be present in the drydock but without interfering with the Classification Surve- 64
yor's decisions. 65

   The Sellers shall bring the vessel to the drydock and from the drydock to the place of delivery at 66
~~their own expense.~~ 67

7. Spares/bunkers etc. 68
      The Sellers shall deliver the vessel to the Buyers with everything belonging to her on board and on 69
   shore. ~~All spare parts and spare equipment including spare tail-end shaft(s) and/or spare propeller(s)~~, 70
   if any, belonging to the vessel at the time of inspection, used or unused, whether on board or not shall 71
   become the Buyers' property, but spares on order to be excluded. Forwarding charges, if any, shall be 72
   for the Buyers' account. The Sellers are not required to replace spare parts including spare tail-end 73
   shaft(s) and spare propeller(s) which are taken out of spare and used as replacement prior to delivery, 74
   but the replaced items shall be the property of the Buyers. The radio installation and navigational 75

~~The Sellers have the right to take ashore crockery, plate, cutlery, linen and other articles bearing~~ 77
~~the Sellers' flag or name, provided they replace same with similar unmarked items. Library, forms,~~ 78
~~etc., exclusively for use in the Sellers' vessels, shall be excluded without compensation.~~ Captain's, 79
Officers' and Crew's personal belongings including slop chest to be excluded from the sale, as well as 80
the following additional items: 81

**DUPLICATE**

The Buyers shall take over remaining bunkers, unused lubricating oils and unused stores and pro- 82
visions and pay the current market price at the port and date of delivery of the vessel. 83
~~Payment under this clause shall be made at the same time and place and in the same currency as~~ 84
~~the Purchase Money.~~ 85

**8. Documentation** (SEE APPENDIX A) 86
~~In exchange for payment of the Purchase Money the Sellers shall furnish the Buyers with legal Bill~~ 87
of Sale of the said vessel free from all encumbrances and maritime liens or any other debts whatsoe- 88
ver, duly notarially attested and legalised by the                                consul toget- 89
her with a certificate stating that the vessel is free from registered encumbrances. On delivery of the 90
vessel the Sellers shall provide for the deletion of the vessel from the Registry of Vessels and deliver a 91
certificate of deletion to the Buyers. The deposit shall be placed at the disposal of the Sellers as well as 92
the balance of the Purchase Money, which shall be paid as agreed together with payment for items 93
mentioned in clause 7 above. 94
The Sellers shall, at the time of delivery, hand to the Buyers all classification certificates as well as 95
all plans etc. which are onboard the vessel. Other technical documentation which may be in the Sel- 96
lers' possession shall promptly upon the Buyers' instructions be forwarded to the Buyers. The 97
~~Sellers may keep the log books, but the Buyers to have the right to take copies of same.~~ 98

**9. Encumbrances** 99
The Sellers warrant that the vessel, at the time of delivery, is free from all encumbrances and ma- 100
ritime liens or any other debts whatsoever. Should any claims which have been incurred prior to the 101
time of delivery be made against the vessel, the Sellers hereby undertake to indemnify the Buyers 102
against all consequences of such claims. 103

**10. Taxes etc.** 104
Any taxes, fees and expenses connected with the purchase and registration under the Buyers' flag 105
shall be for the Buyers' account, whereas similar charges connected with the closing of the Sellers' re- 106
gister shall be for the Sellers' account. 107

**11. Condition on delivery** (SEE CLAUSE 17) 108
~~The vessel with everything belonging to her shall be at the Sellers' risk and expense until she is de-~~ 109
livered to the Buyers, but subject to the conditions of this contract, she shall be delivered and taken 110
over as she is at the time of inspection, fair wear and tear excepted. 111
However, the vessel shall be delivered with present class free of recommendations. The Sellers 112
shall notify the Classification Society of any matters coming to their knowledge prior to delivery 113
which upon being reported to the Classification Society would lead to the withdrawal of the vessel's 114
~~class or to the imposition of a recommendation relating to her class.~~ 115

**12. Name/markings** 116
Upon delivery the Buyers undertake to change the name of the vessel and alter funnel markings. 117

**13. Buyers' default** 118
Should the deposit not be paid as aforesaid, the Sellers have the right to cancel this contract, and 119

Should the Purchase Money not be paid as aforesaid, the Sellers have the right to cancel this contract, in which case the amount deposited together with interest earned, if any, shall be forfeited to the Sellers. If the deposit does not cover the Sellers' losses, they shall be entitled to claim further compensation for their losses and for all expenses together with interest at the rate of 12% per annum.

### 14. Sellers' default

If the Sellers fail to execute a legal transfer or to deliver the vessel with everything belonging to her in the manner and within the time specified in line 38, the Buyers shall have the right to cancel this contract in which case the deposit in full shall be returned to the Buyers together with interest at the rate of 12 % per annum. The Sellers shall make due compensation for the losses caused to the Buyers by failure to execute a legal transfer or to deliver the vessel in the manner and within the time specified in line 38, if such are due to the proven negligence of the Sellers.

### 15. Arbitration

If any dispute should arise in connection with the interpretation and fulfilment of this contract, same shall be decided by arbitration in the city of[3] DALLAS, TEXAS and shall be referred to a single Arbitrator to be appointed by the parties hereto. If the parties cannot agree upon the appointment of the single Arbitrator, the dispute shall be settled by three Arbitrators, each party appointing one Arbitrator, the third being appointed by[4]

If either of the appointed Arbitrators refuses or is incapable of acting, the party who appointed him, shall appoint a new Arbitrator in his place.

If one of the parties fails to appoint an Arbitrator — either originally or by way of substitution — for two weeks after the other party having appointed his Arbitrator has sent the party making default notice by mail, cable or telex to make the appointment, the party appointing the third Arbitrator shall, after application from the party having appointed his Arbitrator, also appoint an Arbitrator on behalf of the party making default.

The award rendered by the Arbitration Court shall be final and binding upon the parties and may if necessary be enforced by the Court or any other competent authority in the same manner as a judgement in the Court of Justice.

This contract shall be subject to the law of the country agreed as place of arbitration.


CLAUSES 16 THROUGH 25, ATTACHED, TO BW PART OF THIS
MEMORANDUM OF AGREEMENT

Copyright: Norwegian Shipbrokers' Association, Oslo.
Printed and sold by Halvorsen & Larsen A.s. Oslo.

1) The name of the Classification Society to be inserted.
2) Notes, if any, in the Surveyor's report which are accepted by the Classification Society without qualification are not to be taken into account.
3) The place of arbitration to be inserted. If this line is not filled in, it is understood that arbitration will take place in London in accordance with English law.
4) If this line is not filled in it is understood that the third Arbitrator shall be appointed by the London Maritime Arbitrators' Association in London.

ZAPOTECA

## RIDER TO MEMORNDUM OF AGREEMENT DATED __ FEBRUARY 2000

### 16. Payment

As security for the correct fulfillment of this Memorandum of Agreement, the Buyers shall pay a deposit of usd 125,000 (usd one hundred twenty five thousand), of the purchase money mentioned in clause number one within 5 (five) banking days of execution of this Memorandum of Agreement.

The remaining amount, usd 1,312,500 (usd one million three hundred twelve thousand five hundred) shall be paid by Buyer to Seller by wire transfer, as noted below, upon presentation of documents required in Appendix A hereto.

Payment is to be made to:

Chase Bank
New York, NY

ABA # 021 000 021

Account # 400 2 22809, beneficiary Serfin International Bank & Trust

Reference Perforaciones Maritimas Mexicanas, S.A. de C.V., contract 38866

### 17. Delivery

The vessel with everything belonging to her shall be at Sellers risk and expense until she is delivered to Buyers at the place and at the time stipulated in clause --, but subject to the conditions of this Agreement. The vessel will be taken over as is, in the same condition as at the time of signing this Agreement, except for work which may have been carried out by Buyers prior delivery.

~~It is understood that nothing contained in the paragraph above shall apply or be in effect~~ unless Buyers furnish Sellers, when this Agreement ~~is executed,~~ an insurance policy described in clause -- which shall remain in effect from the date of the execution of this ~~Agreement until the time of delivery to Buyers.~~

### 18. Insurance

BEFORE COMMENCEMENT OF ANY WORK
Buyers shall furnish Sellers, ~~at the time of execution of this Agreement,~~ an insurance policy which shall remain in full force and effect from the ~~time of execution of this~~ COMMENCEMENT OF BUYERS

WORK

~~Agreement~~ until delivery to Buyers as provided herein., at the sole cost and expense of the Buyers.

The insurance coverage shall include:

    a. Broad form Hull and Machinery insurance, including collision, in the case of total loss or total constructive loss of the vessel. Seller shall be nominated as loss payee for up to 100% of the purchase price of USD 1,437,500.

    b. Protection and Indemnity insurance including but not limited to Towers liability as applies to Sellers vessels or units involved in the mobilization of the vessel, as well as Buyers vessels or units, in the equivalent of form SP-23

    c. London Standard Drill Barge Insurance overage applicable to the Sellers vessels or units involved in the mobilization of the vessel.

    d. Any deductible or coinsurance penalties shall be the sole responsibility of Buyers.

## 19. Buyers Labor Relations

Buyers declare, as employers of personnel engaged in work on the vessel, that they are the sole sponsors of such work and responsible for the obligations arising therefrom regarding work rules and social security matters.

Buyers undertake to respond to all claims his workers may make against Buyers for any reason, and is liable for any amounts which must be spent in this connection.

It is clearly agreed that Sellers at no time shall be considered as mediators between Buyers and Buyers labor, nor shall they be considered as substitute supervisors on Buyers behalf of any workers carrying out work for Buyers. Sellers will have no obligations with respect to personnel contracts for Buyers work and are exempt from paying any labor benefits to Sellers technicians and/or workers engaged by Buyers. Sellers will not be involved in such claims and will be reimbursed by Buyers for any proven expenses which may arise in this connection.

## 20. Inspection

Sale is outright and not subject to inspection

## 21. Buyers Work

Buyers have right to carry out work on board the vessel at their risk and expense following execution of this Agreement and lodging of the deposit.



Buyers have right to retain vessel at its present location for up to (one hundred eighty) 180 days following delivery at their risk and expense.

## 22. Export

Sellers to arrange for export documentation; cost of some documentation for Buyers Account UP TO A MAXIMUM OF USD 15,000 (FIFTEEN THOUSAND) TO BE DOCUMENTED BY SELLERS

## 23. Taxes

Sellers shall be responsible for all taxes levied by Sellers government in connection with this sale.

## 24. Future Employment

Buyers undertake that following transfer of title, the vessel will not be employed in Mexican waters for drilling. Buyers retain the right to employ the rig in Mexican waters, however, as an accommodation, production, or maintenance unit.

## 25. Confidentiality

The terms and conditions of this Agreement to remain private and confidential

SELLERS

BUYERS

**PERFORACIONES MARITIMAS MEXICANAS S.A DE C.V.**

**ENERGY DRILLING, INC.**

By: GABRIEL DESCHAMPS /Attorney-in-Fact
Arturo Medellin /Attorney-in-Fact
Efrain Navarro /Attorney-in-Fact

By: _____ Attorney in Fact



# DOCUMENT NO. 5

V-1816

# ARTICLES OF INCORPORATION
# OF

**ZAPOTECA ENERGY INC**
*(A Non-Resident Domestic Corporation)*

REPUBLIC OF LIBERIA

## MINISTRY OF FOREIGN AFFAIRS

*DUPLICATE COPY*
The Original Copy of this Document was filed
in accordance with Section 1.4 of the Business
Corporation Act on

**April 17, 2000**
_____
Date



By Order of the Minister of Foreign Affairs

_____
Deputy Registrar of Corporations
Authorized Signature

# ARTICLES OF INCORPORATION

## OF

## ZAPOTECA ENERGY INC

### PURSUANT TO THE LIBERIAN BUSINESS CORPORATION ACT

# ARTICLES OF INCORPORATION
## PURSUANT TO THE LIBERIAN BUSINESS CORPORATION ACT

The undersigned, for the purpose of forming a corporation pursuant to the provisions of the Liberian Business Corporation Act, does hereby make, subscribe, acknowledge and file in the Office of the Minister of Foreign Affairs this instrument for that purpose, as follows:

A. The name of the Corporation shall be:

**ZAPOTECA ENERGY INC**

B. The purpose of the Corporation is to engage in any lawful act or activity for which corporations may now or hereafter be organized under the Liberian Business Corporation Act.

C. The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia. The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

D. The aggregate number of shares of stock that the Corporation is authorized to issue is One Thousand (1000) registered shares with par value of one US Dollar (US $1.00) per share.

E. The Corporation shall have every power which a corporation now or hereafter organized under the Liberian Business Corporation Act may have.

F. The name and mailing address of each incorporator and subscriber of these Articles of Incorporation and the number of shares of stock subscribed by each incorporator is:

| Name | Post Office Address | No. of Shares of Common Stock Subscribed |
|---|---|---|
| M. Collier | 80 Broad Street Monrovia, Liberia | One |

G. The number of directors constituting the initial board of directors is one (1).

H. The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the by-laws of the Corporation.

I.    Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

IN WITNESS WHEREOF, I have executed this instrument on **April 17, 2000.**

*M. Collier*
M. Collier

**$12.00 REVENUE STAMPS ON ORIGINAL**

On **April 17, 2000** before me personally came **M. Collier** to me known and known to me to be the individual described in and who executed the foregoing instrument and he duly acknowledged to me that the execution thereof was his act and deed.

