# DOCUMENT NO. 6

## PROTOCOL OF DELIVERY AND ACCEPTANCE

The undersigned, PERFORACIONES MARITIMAS MEXICANAS S.A. DE C.V. a Mexican Corporation (The "seller"), hereby delivers the vessel described below on the 4th of May, 2000 to ZAPOTECA ENERGY INC., a Liberian Corporation (the "buyer"), in accordance with the provisions of the Memorandum of Agreement dated as of March 7, 2000 between the Seller and the Buyer, as amended to the date hereof (the "Agreement").

### Description of Vessel

| | |
|---|---|
| Name: | ZAPOTECA |
| Country of registry: | PANAMA |
| Official Number: | D-1364-1789-PEXT |
| Type: | NON SELF PROPELLED SELF ELEVATING JACK UP PLATFORM |
| Built: | 1981, GOTAVERKEN ARENDAL AB; SWEDEN |
| Lenght: | 180 FT |
| Breadth: | 175 FT |
| Depth: | 25 FT. |

The buyer acknowledges and accepts delivery in actual location (Tuxpan, Ver; Mexico) of the above described vessel from the Seller and certifies that the same is delivered in accordance with the provision of the Agreement.

IN WITHNESS WHEREOF, the parties have caused this instrument to be duly executed this 4th of May, 2000 in Mexico City, at _____ o'clock _____  4 MAY __

PERFORACIONES MARITIMAS MEXICANAS S.A. DE C.V.

By:_____
Mr. Carlos Hutchinson Torres

By:_____
Mr. Jose D. Chin Ley

ZAPOTECA ENERGY INC.

By:_____
Name:_____

By:_____
Name:_____

# DOCUMENT
# NO. 7

504-580-3421

Draft 02.05.2000

# REPAIR AND CLASSIFICATION AGREEMENT

between

SOUTHERN INTERNATIONAL INCORPORATED

and

ZAPOTECA ENERGY INC.

related to

# "ENERGY ZAPOTECA"

WIKBORG, REIN & CO.
OSLO – BERGEN – LONDON - KOBE

ZEI 0525
PHILLIPS

This repair and classification agreement is made on __ May 2000 (the "Agreement) between:

(1)     SOUTHERN INTERNATIONAL INCORPORATED Kingwood, Texas USA ("SII"); and

(2)     ZAPOTECA ENERGY INC., Monrovia, Liberia (the "Owner").

**WHEREAS:**

(A)     the Owner has been nominated by Energy Drilling Inc. as buyer, and has purchased the jackup rig Zapoteca ("TBR Energy Zapoteca") (the "Unit") from Perforaciones Maritimas Mexicanas S.A. de C.V. (as "Seller") under a Memorandum of Agreement dated 7 March 2000 (the "MoA");

(B)     the Owner's purchase of the Unit under the MoA is made on the basis of an inspection of the Unit made by SII, and SII undertaking to repair and obtain classification of the Unit in order for the Unit to meet with requirements of the Specifications (as defined in Clause 1 (a) below) for the fixed amount of USD 493 000.00 (the "Contract Price"), and SII' undertaking to accept and assume all risks and obligations in order for the Unit to meet and satisfy the such requirements with no other payment or funding obligations of the Owner than the Contract Price; and

(C)     SII is an experienced and qualified specialist in repairs and classification of jacking systems, legs and hulls for jackups, and undertakes to do all works required in order for the Unit to meet the requirement of the Specifications.

**NOW, THEREFORE**, the parties have agreed as follows:

**1     SUBJECT MATTER OF THE CONTRACT**

**1.1     The Specifications**

(a)     SII shall, at the Units present location at Tuxpan, Mexico  carry out repair, replacement, testing, approval procedures related to Classification Society and Governing Bodies, which are required in order for the Unit on the date of delivery as provided for in Clause 6.1 to meet the technical specifications and requirements as set out in the specifications attached hereto as Schedule 1 and being an integrated part of this Agreement (all such required work being refereed to herein as the "**Work**", and the technical requirements of the Unit on the date of redelivery being referred to herein as the "**Specifications**").

(b)     SII has carried out a thorough inspection of the Unit at its present location, plans and other relevant material. SII is undertaking the full economic and financial risk in order for the Unit to meet with the Specifications on the redelivery date, including any latent defects, and the fixed Contract Price of  USD 493,000 shall under no circumstances be increased.

ZEI 0526
PHILLIPS

## 1.2    Classification, rules and regulations

(a)    The Unit shall be repaired in accordance with the rules and regulations of Bureau Veritas (the "Classification Society") in force at the date of this Agreement, and in compliance with all relevant rules and regulations of Panamanian authorities, as well as IMO- and SOLAS regulations] (the "Governing Bodies"), which have been adopted at the time of signing this Agreement and which apply to the Unit and the Work.

In case of discrepancy between this Agreement and the Specifications, this Agreement shall prevail.

(b)    The materials and workmanship employed by SII in carrying out all Work hereunder shall comply with the requirements of the Classification Society, as well as other relevant requirements of this Agreement.

## 2    RESPONSIBILITY FOR PLANNING

### 2.1    Drawings and Plans

(a)    SII shall send to the Owner copies of all plans, drawings, calculations and other technical documents in the possession of SII related to the Work to be carried out, as well as all plans, drawings, calculations and other technical documents prepared by SII when the scope of work is complete.

(b)    All drawings, plans, calculations other technical documentation obtained or produced by SII in connection with the Work shall be the property of the Owner.

## 3    SUB-CONTRACTORS

SII is allowed to purchase any materials from their usual sub-contractors and to sub-contract part of the work with first class US shipbuilders. The Owner must confirm in advance his agreement to any sub-contracting of a major part of the Work on the leg to be repaired..

All sub-contracted work shall be the responsibility of SII and the guaranty as specified in Clause 10 of this Agreement shall apply to all sub-contracted work.

## 4    SUPERVISION-INSPECTION

### 4.1    Free Access

The Owner's authorised representative, the appropriate Governing Bodies and the Classification Society shall at any time during working hours have free access to the Unit and all workshops where the Unit or parts thereof are under Work in order to examine the quality of materials used and the standard of workmanship carried out. SII shall assist Owner's representatives in making arrangements to conduct their work whenever reasonably possible.

ZEI 0527
*PHILLIPS*

**4.2    Faults**

Any material furnished by SII or workmanship reasonably found by the surveyors of the Classification Society to be unsuitable and promptly notified in writing to SII shall be made good by SII. This will be replaced by the most practical procurable substitute acceptable to the classing surveyor.

**4.3    Liability**

SII' liability for claims by Owner's supervisors or other representatives regarding bodily injury or other damage sustained in the course of their duties shall be confined to gross negligence and to the extent provided by the prevailing laws and to the extent covered by the liability insurance of SII.  The Owner is to be kept informed of the extent and terms of SII' liability insurance.

**4.4    Damage**

Should SII wrongfully cause damage to the Unit, SII shall promptly remedy, repair or replace such damage.  In the event SII wrongfully causes damage to the work or property of any Separate Contractor (as defined subsequently herein), SII shall promptly and forthwith settle with such other contractor by agreement or otherwise to resolve this dispute.

**5    OWNER'S WORKS**

**5.1    Separate Contractors**

The Owner shall at all times have the right to perform work on the Unit not being part of the Work being the responsibility of SII by engaging other outside contractors ("Separate Contractors). The Owner shall co-ordinate the work of its own forces and of each of its Separate Contractors with the work to SII, who shall fully co-operate with the Owner and such contractors as provided in this Agreement.

**5.2    Storage, access etc.**

SII shall afford Owner and its Separate Contractors reasonable opportunity for the introduction and storage of their materials and equipment and the execution of their work, and shall connect and co-ordinate SII Work with the Work of the Owner as and to the extent required by the Owner and the Contract Documents.

**5.3    No delay**

Owner and their Separate Contractor will under no circumstance interfere or delay or complicate SII' Work.

**ZEI 0528**
**PHILLIPS**

## 6    DELIVERY AND REDELIVERY

### 6.1    Redelivery

SII shall complete the Work and redeliver the Unit to the Owner approximately 30 June 2000, and shall give not less than 10 days approximate notice of such redelivery, and three days definite notice of redelivery.

### 6.2    Test and Surveys

SII will obtain from the surveyor for the Classification Society written confirmation that the technical specification and requirements as set out in the Specifications are met to the satisfaction of the attending surveyor . This shall include approval from the Classification Society as to the completeness of the scope of work for class as a bare deck jacking barge. This scope of work does not include the cost of purchasing and installing a helideck if this proves to be required for classing.

### 6.3    Protocol of Delivery and Acceptance

When the Works are completed in accordance with the requirements of this Agreement, the Owner shall take redelivery of the Unit and the parties shall sign a Protocol of Redelivery and Acceptance related thereto. Final Payment shall be completed at this time.

## 7    DELAY

### 7.1    Force Majeure

(a)    If the delivery as per Clause 7.1 should be delayed by acts of God or by other causes beyond the control of SII, such as war, riots, closing of the shipyard due to strikes or lockouts, impediments to the transport of materials or equipment, or damage to materials or equipment whilst in transport which renders such materials or equipment useless, and if any of the contingencies specified herein have resulted in delaying the delivery of the Unit, then the time for delivery of the Unit, under this Agreement shall be extended for a period of time equal to the time necessary to eliminate the contingency. Delay in delivery from sub-contractors of SII shall not be deemed to be beyond the control of SII unless such delay is caused by one of the reasons beyond the control of the relevant sub-contractor as set out above.

(b)    Sub-clause (a) above shall also apply to delays of sub-contractors commissioned by SII to manufacture essential parts of the Unit but limited to those delays as specified in sub-clause (a) hereof provided SII has used proper care when choosing its sub-contractors.

(c)    SII shall make every effort to reduce the delay resulting from causes as described above.

ZEI 0529
*PHILLIPS*

(d)  SII shall forthwith inform the Owner of estimated number of days delivery will be postponed as a result of occurred incidents.

(e)  Impediments to the scope of work by the owner, such as ,but not limited to, failure to furnish preliminary documents or payments in a timely manner, registration delays shall be treated by SII as force majeure and shall extend the anticipated delivery by that time loss this created.

**7.3    Cancellation**

(a)  If the total of all postponements of the delivery date for which SII is responsible as estimated by SII amounts to [   ] days or more at any stage of the conversion of the Unit, or if the total of all postponements of the delivery date except such as caused by the Owner shall at any stage of the Works on the Unit amount to [   ] days or more, the Owner shall have the right to remove the Unit together with all or any of the materials and to complete the Work on the Unit in some other yard.

If the Owner exercises its right to remove the Unit and the said materials, its liability to SII shall be limited to payment for Work already performed as per this Agreement, SII will advise the Owner promptly of the estimated amount to be paid by the Owner.

(b)  SII will co-operate with the Owner and use their best efforts to make available to said other yard any equipment, engineering data and materials on hand as far as requested which may expedite the completion of the conversion of the Unit.

**8    PRICE, PAYMENT**

**8.1    Contract Price**

(a)  The contract price is USD 493,000, which shall be paid as follows:

| | | | |
|---|---|---|---|
| (i) | 1st payment | | USD  30, 000 |
| | | May10 | |
| (ii) | 2nd payment | May 25 | USD 100,000 |
| (iii) | 3rd instalment | June 7 | USD 100,000 |
| (iv) | 4th instalment | June 20 | USD 163,000 |
| (v) | 5th and last instalment | on date of redelivery | USD 100, 000 |

All payments shall be made by the Owner on the dates on which the payments are due to SII' account with [                    ] account no. [            ].



(b)  The Contract Price is a fixed price which shall not be increased for any reason whatsoever, and SII has accepted the full technical and financial risk in order for the Unit to meet the Specification on the agreed redelivery date. The Contract Price shall cover all Work required to be made on the Unit in order for the Unit to meet the Specification and obtain the approval from the Classification Society and the

**ZEI 0530**
**PHILLIPS**

Governing Bodies as described therein, as well as all costs incurring in order to maintain the Unit at its present location in order to carry out the Work.

## 8.2   Default in payment

In the event that the Owner defaults in any of the above payments, the Owner shall pay interest thereon at the three-month London Interbank rate for USD plus two per cent (2%) on the first day of default for each day of such default.

## 9     INSURANCE AND LIABILITY

## 9.1   Insurance

The Unit is and will be kept insured by the Owner up to its full market value against the risk of physical loss or damage during the repair period, which insurance shall include the additional value of the Unit occasioned by the Work performed by SII.

SII shall be named as co-insured under the above-mentioned policy.

## 9.2   Total Loss

In the event of a total loss, the compensation shall be settled with SII in accordance with SII' right to receive compensation for the Work performed by it to the date of such total loss, as well as for other direct costs and expenses of SII incurred in connection with such total loss.

## 9.3   P & I

The Owner will maintain a P&I insurance for the Unit which shall include liability for wreck removal, oil pollution and third party liability.

## 9.4   Indemnity/Liability

The Owner will hold SII harmless for claims brought against SII (excepting claims for personal injury, accidents or worker's compensation brought or submitted by agents, servants or employees of SII or its sub-contractors) which are covered under the Owner's existing P&I insurance, provided such claim could have been brought against the Owner directly.  The Owner, however, retains the right to all defences and limitations to which it would have been entitled had the claim been brought against it in the first instance.

## 10    WARRANTY OF QUALITY

## 10.1  Guarantee

The Unit shall on redelivery comply with the Specifications to the satisfaction of the attending surveyor. For the period of twelve calendar months after acceptance of

ZEI 0531
PHILLIPS

aboard the Unit or in a safe and dry place ashore. All such items shall be returned and refitted to the Unit in the same good order and conditions as when removed. Removal and storage shall be organised by the Owner at its own cost and expense.

Costs of any repairs to items damaged by SII or its sub-contractors as a result of being removed or utilised shall be the responsibility of SII, including all costs of making good damage caused to machinery, fixtures and fittings disturbed or broken as a result of the said removal or utilisation.

SII shall be responsible for any promptly repair, replace and correct any damage caused by SII, its sub-contractors, or other third parties contracted by SII, resulting from the use of the Unit's machinery, equipment, of fittings, whether occurring with or without the prior agreement of the Owner's representative. SII, however, shall in all cases be required to first obtain the permission of the Owner's representative before use of any such machinery, equipment, or fittings.

## 17    NOTICES

(a)    All notices to be required to be given hereunder to SII shall be addressed to them at

SOUTHERN INTERNATIONAL INCORPORATED
Kingwood, Texas

USA

Tel.: +[                ]
Fax.: +[                ]

(b)    All notices to be required to be given hereunder to the Owner shall be addressed to it at

ZAPOTECA ENERGY INC.
[                ]
Monrovia
Liberia
Tel.: +[                ]
Fax.: +[                ]

(c)    For the purposes under this Agreement, «written» or in «writing» shall mean by first class air-mail, telegram, telex or telefax.

## 18    ASSIGNMENT

The Owner shall have the right at any time during or after the Works on the Unit to assign in whole or in part its interest in and the obligations under the Contract to any company, always provided that the Owner guarantees the fulfilment of all obligations of the assignee to SII.

ZEI 0532
*PHILLIPS*

vouchers of SII on a time and material basis. All information obtained from the records and books of account of SII shall be treated as confidential.

## 12.3 Taxes and charges

SII agrees that any and all local taxes or charges on items or equipment, etc., being supplied by SII are included in the Contract price, as is the cost for equipment and tools necessary for SII to properly carry out and complete the Work. Any import taxes on equipment required shall be for the account of owner.

## 12.4 Liens

This Agreement is granted on the express condition that no liens of any type shall attach on or against the Unit or its machinery, fittings, or equipment or against any Work done on or about the Unit under this Agreement, and SII shall indemnify and hold Owner harmless from and against any such lien as herein described arising as a result of Work performed by SII or any of its employees or sub-contractors and shall immediately proceed to discharge any such lien or to post security for same as long as payments are made in a timely manner.

## 13 PATENTS AND TRADEMARKS

SII will indemnify and hold harmless the Owner from and against all claims, lawsuits or legal proceedings asserted by any third party for infringement of any patent rights or patent license or for any payments that may occur in connection with any patents used for the construction or purchase of equipment and for the Unit.

If any arrest is levied in connection with such claims, SII shall, on demand, issue necessary security to have the Unit and Owner's assets released.

## 14 DEVIATION FROM SPECIFICATIONS

No deviation from plans and Specifications, once approved and agreed, is permitted without the Owner's prior written consent.

## 15 OWNER'S APPROVAL

Notwithstanding that elsewhere in this Agreement the Owner's approval is called for, such approval shall in no case diminish or limit the undertakings, obligations or responsibilities of SII as set forth herein or in the Specification.

## 16 REMOVED PARTS

In the event it is deemed necessary by SII to remove any materials, components, furnishing, equipment or fittings in order to carry out any of the Work or modifications and additions, such items are to be removed carefully, stored safely

ZEI 0533
PHILLIPS

redelivery by the Owner to the extent that in case any defectiveness in the materials furnished by SII or the workmanship is discovered and written notice thereof be given during such period of twelve calendar months, SII shall at its own cost and expense repair or, as its option supply and fit at its works new materials or new equipment (or parts thereof) to replace anything as may be proved to have been defective, and/or remedy such aforesaid defective workmanship, or in case the Unit cannot conveniently be brought to its yard shall pay to the Owner in USD such sum as it would have cost SII to have made good such defect at its own works on their premises.

All sub-contracted Work shall be guaranteed by SII under the same conditions as if carried out by SII with the exception of the repair to the legs.

All repair and maintenance works on parts of the existing Unit within the scope of work shall be guaranteed by SII under the same conditions as mentioned in this Clause 10.1.  The time of guarantee for these works and repairs is given for the period of six months.

## 10.2    Limitation

SII' liability under this clause (whether in respect of the original new material, new equipment or workmanship or in respect of any material, equipment or workmanship made good under this Clause) shall be limited to the above mentioned obligations and (in particular, but without prejudice to the generality of the foregoing) SII shall have no liability for any consequential loss or damages.

## 12    PROPERTY AND TITLE

### 12.1    Ownership

During repair time the title to and ownership of the Unit shall at all time remain with the Owner, and the Owner will mortgage the Unit to Christiania Bank and Kreditkasse as security for its financing of the Unit.

All materials and equipment purchased for the Work shall become the property of the Owner upon receipt of payment.

### 12.2    Books and records

SII shall keep adequate and correct records and books of account showing the cost of all items of labour, material, equipment, supplies, services and other expenditures in connection with the performance of this Agreement and records showing the hours of direct labour worked by employees of SII throughout the Work. Owner shall at all times have the right to inspect, examine, audit and copy any books, records and

ZEI 0534
PHILLIPS

All additional costs or loss of benefits whatsoever caused by such assignment to any other company shall be borne by the assigning party.

## 19    ARBITRATION



Any dispute, claim or controversy arising out of or in connection with this Agreement shall be finally settled by arbitration in Oslo, Norway, in accordance with Chapter 32 of the Norwegian Procedure Act of 1918. Each party will appoint one arbitrator and the arbitrators so appointed shall appoint a chairman who shall preside over the proceedings.  All proceedings shall be decided by a majority vote of the arbitrators.

The parties do hereby irrevocably agree that the award or decision of the arbitrators shall be final and binding on both parties and enforceable as a judgement in the courts of the United States of America, Norway or the Federal Republic of Germany.

## 21    GOVERNING LAW

This Agreement shall be governed by the laws of Norway.

For
**Zapoteca Energy Inc.**

[          ]

For
**Southern International Incorporated**

[          ]

ZEI 0535
*PHILLIPS*

# DOCUMENT
# NO. 8

DE : MAY PALACE                    NO. DE FAX : 8348881                    06 JUL. 2000 09:20AM P1

TO:     CANEGA SA DE C.V.
        JUNREZ NO. 33 D.205
        CP 92800
        TUXPAN, VER
        MEXICO

SUBJ: Energy Zapoteca Crew Members

ATT:  Mr. Victor Flores

Dear Mr. Flores;

Please be advised that the following personnel will be assigned to our
Jackup vessel the Energy Zapoteca.

1.  Mr. Charles D. Phillips      Captain
2.  Mr. Bill McDermott           Owners Representative

CANEGA as marine agents for our vessel will assist our marine personnel
while our vessel is in Tuxpan, Mexico.

Thanking you in advance for your help in this matter.

Best Regards

*(signature)*
xxxxxxxxxxxx
Owner

Zapoteca Energy Inc

# DOCUMENT
# NO. 9



Página 4

Este documento faculta a su titular a permanecer en el país, en calidad de No Inmigrante

por __180__ días, como NO INMIGRANTE, VISITANTE

ACTIV.LUCRATIVA., VENCE: 10 FEBRERO 2001.
III

de acuerdo al artículo 42, fracción _____, de la Ley General de Población en vigor,

según oficio de autorización de esta Secretaría Núm. __260/318__

de fecha __11 AGO. 2000.__

Derechos __318.00 Y $1362.00__

Recibo __S/N__            de fecha __16 AGO. 2000__
TUXPAN, VER. 16 AGO. 2000.
SUBDELEG.LOCAL DEL I.N.M.
Lugar y fecha de expedición

LIC. ORLANDO SAUCEDO HDEZ.
Firma del funcionario

Nº ... 4499

(Huella digital del pulgar derecho)

(Fotografía de frente)

**DATOS DEL TITULAR**

Nombre: CARLES DOUGLAS PHILLIPS

Nacionalidad: ESTADOUNIDENSE

Fecha de nacimiento: __27 AGOSTO 1942__

Lugar de nacimiento: ARKANSAS, U.S.A.

Sexo: MASCULINO            Estado civil: CASADO

Actividad autorizada: CAPITAN DE LA BARCAZA "ENERGY - 1
ZAPOTECA", UBICADA EN LAS INSTALACIONES DE
"CELASA", TUXPAN, VER.

Firma del interesado

Página 5

This document facilitates to your title to permanence in the country, in the category of No immigrant for 180 days, as NO IMMIGRANT, VISITOR
LUCRATIVE ACTIVITIES (WORK PERMIT) UNTIL: 10 FEBRUARY, 2001, in agreement to article 42, fraction III, of the General Law of Population in force, according to the office of authorization of this Secretary
Number 26D/318 of the date 11 AUGUST, 2000..

The right amount paid $ 318.00 and $1,362.00.

Official Receipt Number : S/N on the date of 16 AUGUST, 2000.
                                         Tuxpan, Ver. 16 August, 2000
                                         Subdelegation, Local of I.N.M.


SEAL
Secretary of the Government
National Institute of Immigation
Local Delegation
Tuxpan, Veracruz                      Lic., Orlando Saucedo Hernandez
                                      Signature of Functionary

---

PHOTO              THUMBPRINT                    No. 4499

                   INFORMATION OF ENTITLED

Name:      Charles Douglas Phillips
Nationality: United States
Date of Birth: 27 August, 1942
Place of Birth: Arkansas, U. S. A
Sex: Male      Marital State:  Married
Authorized Activities:  Captain of the vessel "Energy Zapoteca", located
At the installation of "Celasa", Tuxpan, Veracruz.

                            _____
                            Signature of the interested party