# DOCUMENT NO. 12

# Welcome to Nordisk Skibsrederforening's homepage

Click **news** to get a short update of recent developments at Nordisk or legal developments of significance.

Click **representatives** to find an updated list of our representatives throughout the world (click on the geographical area in the map or the areas listed at the bottom).

Click **attorneys** to get a list of the lawyers employed by Nordisk with their home numbers and mobile phone numbers.

Click **statutes** to get our statutes both in Norwegian and in English and with the ability to search for the subject you are looking for.



Nordisk headquarters in Oslo

## Latest news:

*6 January 2005*

STILLING LEDIG: Advokat/advokatfullmektig

Nordisk Skibsrederforening ønsker å utvide staben med en yngre advokat/advokatfullmektig. Klikk HER for å lese hele stillingsannonsen. Søknadfrist 24. januar 2005.

*9 November 2004*

NY ADMINISTRASJONSSJEF

Marius Juul (50) har takket ja til stillingen som ny administrasjonssjef i Nordisk. Klikk HER for å lese mer.

*18 October 2004*

JANTZENS FOND

The purpose of Jantzens Fond is to support Norwegian, Swedish and Finnish lawyers in their practical or scientific maritime law studies abroad. Click HERE to read more.

*13 July 2004*

Annual Report 2003 available in pdf format

## SECTION 1

1.1. Nordisk Skibsrederforening is a mutual Association whose object is to provide advice and assistance, in accordance with the provisions set out in these statutes, to its members in connection with questions of a legal nature which arise out of the members' business activi- ties. The Association will also take part in work to promote the use of standard form contracts and legal cer- tainty in the field of maritime law.   Object of the Association

1.2. In these statutes, «member» shall mean a person or company who has entered a ship or contract with the Association in accordance with section 2.   Member



1.3. The Members together with the Association shall also be members of Northern Shipowners' Defence Club (Bermuda) Ltd. which membership shall be governed by the Memorandum of Association and Bye-laws of Northern Shipowners' Defence Club (Bermuda) Ltd.   Northern Shipowners' Defence Club (Bermuda) Ltd.

## SECTION 2

2.1. Any person who owns, charters, has control over, has contracted for or purchased or is manager of a ship, can enter such ship with the Association. Contracts of affreightment and other contracts can also be entered with the Association even if these are not connected with a particular ship. All entries shall be approved by the Board.   Entry



2.2. In these statutes, «ship» shall include drilling vessels and other floating structures at sea which are used in connection with the exploitation of oil or gas.   Drilling vessels



2.3. A member may declare that all ships to be acquired, chartered or managed by itself or associated com- panies will be entered. Such a delaration can be given separately for ships to be acquired, chartered or managed, and also, with the approval of the Board, for a more closely defined proportion of the ships to be acquired, chartered or managed. Similarly, a declaration can be made that all contracts of affreightment or other contracts, whether or not they are connected with a particular ship, will be entered.   Declaration

2.4. The Board may refuse a request for membership without giving reasons therefor. The Board may, upon giving at least one month's notice, terminate any membership without giving reasons therefor.   Refusal/Termination

## SECTION 3

3.1. Each year the Association's Board shall set the premium for the following   Premium

calendar year, the shortest period premium shall be payable for, deductibles and the terms on which rebates, bonuses or supplementary calls shall be payable, including the conditions that must be fulfilled for any departure from the normal premium in special cases, or premium for limited cover.

The Association's membership shall be advised of the premium which is set and the details of the conditions relating to the assessment of premium in accordance with this provision, within a reasonable time before the expiry of the time limit for withdrawal set out in section 4.1., first paragraph.

3.2. If the Association's expenses cannot be met by the annual premium and the Association's other income, the deficit of the year shall be apportioned rateably according to the net premium paid in respect of the ships and contracts that have been entered in the course of that year. Any irrecoverable supplementary call may be recovered by an additional supplementary call levied on the other members. If the deficit is insignificant, the Board may decide not to make any supplementary call. — *Supplementary call*

3.3. If a ship is not entered with the Association for a whole calendar year because it has been entered in the course of the year or because the entry ceases in accordance with section 4.1 second paragraph, the premium shall be calculated proportionately in accordance with the number of days the ship was entered with the Association. Refundment of any overpaid premium shall be made as soon as possible. — *Return of premium*

The Association's Board shall set the level of any laid-up returns and the conditions for allowing laid-up returns.

3.4. Premium shall be calculated on a calendar year basis and fall due for payment on entry and otherwise in advance on the first working day of each calendar year. — *Payment*

If the premium is not paid within 2 months of the due date, the member concerned shall lose his membership in respect of such ship or contract for which premium has not been paid. Furthermore, section 4.2. shall apply.

The Board shall set the due date for payment of any supplementary call. In the event that such supplementary call is not paid in due time, the same provisions shall pertain as apply in respect of the annual premium.

## SECTION 4

4.1 Save as provided for in the second paragraph of this section, a member may only withdraw a ship upon notice given one month before the expiry of the calendar year. Withdrawal shall take effect from the beginning of the following calendar year. The Board may, however, approve the withdrawal of a ship without the required notice if there are special reasons for doing so. — *Cesser or suspension of membership*

If a member, in the course of a year, ceases to operate a ship because it is lost, sold or redelivered, membership shall cease in respect of that ship.



A member is liable for the annual premium and any supplementary call in accordance with section 3 notwithstanding that the membership has ceased.

4.2. If a member fails to pay premium, supplementary call, any deductible or any other amount the member may owe to the Association within 14 days of the due date for payment, interest shall become payable on any such amount at the rate applicable from time to time to business transactions, in accordance with the Norwegian Interest on Overdue Payments Act nr. 100 of 17.12.1976, provided that the minimum rate shall be 1.5% per full month. If the amount owing is not paid within 14 days after demand, the administration may cease to handle one or more of the cases the Association for the time being, is handling for the member and, further, may suspend the Association's cover until such time as the amount owing and the interest thereon has been paid.

*Non-payment*

4.3. The Association's obligation to take over new cases or to prosecute cases already taken over shall cease in the event of the member becoming insolvent, suspending payments or taking steps towards dissolving his business (except in cases of amalgamation) or otherwise ceasing to carry on business or taking steps towards winding it up. In special cases the Board may nevertheless decide that a particular case shall be taken over or prosecuted.

*Insolvency etc.*

## SECTION 5

*Members' rights when disputes arise*

5.1. The Association shall cover the costs, in accordance with the provisions in Section 6, of handling any dispute arising in connection with the entered ship or contract, provided that the Board in its discretion accepts the case as being suitable. The Association shall provide assi- stance in collecting the member's debts, defending the member against claims and shall otherwise contribute to resolving disputes of a legal nature.

The Association shall not cover disputes:

1. Which arose before the ship or contract was ente- red in the Association, unless a declaration has been made in accordance with Section 2.3. For the purposes of these statutes a dispute is treated as arising when the factual circumstances giving rise to the dispute occur,
2. which concern the member's internal affairs, including, if the dispute does not concern a con- tract for the carriage of goods or the hire of a ship, any relationship with the member's joint venture or pool partners,
3. which concern the ship's officers or crew,
4. which concern claims, loss or liability which are, or normally are covered by insurance, but the Association will nonetheless cover disputes which in their entirety are below the amount of usual deductibles,
5. which concern claims for tax, except freight tax in countries other than the country where the ship is re- gistered or with which the ship or owner has parti- cular connections.

5.2. The Board may refuse to cover costs or may reduce the level of cover if, in the opinion of the Board, such measures are justified in the particular circumstances.

*Reduced cover and withdrawal of cover*

The Board will normally refuse to cover costs or will reduce cover if, in the opinion of the Board:

1. the member is not sufficiently likely to succeed in litigation;
2. the amount in dispute is disproportionate to the cost of the litigation;
3. the other party's financial standing, the venue of proceedings or other reasons render the prospects of recovering the amount of the claim or of resisting liability disproportionate to the costs; or
4. such measures are justified by the size of the case or the amount of the costs.

## SECTION 6

6.1. When a member wants the Association to handle a dispute, he shall give a detailed account of the matter, accompanied by any relevant documents. To the extent that it is reasonable for him to do so, the member shall, for his own account, obtain information, make calculations and assist in the drafting of pleadings etc., insofar as the work can be done by persons in his employment or in the employment of a manager appointed by the member or who are permanently retained for such services. Expenses in connection with the calling of his employees as witnesses shall also be paid by the member.

*Reporting of cases*

6.2. The Association may decide that the handling of a case shall be conducted wholly or in part by Nordisk Legal Services, which is a separate division of the Association, and/or by other lawyers and/or agents and/or experts. The case will be handled by the Association on behalf of the member as its agents, and the Association will not be a party to any dispute handled by it for the member. All costs and expenses, including work performed by Nordisk Legal Services, shall be for the member's account.

*The Association's handling of cases*

6.3. When the facts of a case are sufficiently known, the matter shall be put before the Board which will decide to what extent the Association will indemnify the member against the costs of the case. The Board can decide that a case shall be put before the Board again at any stage. The Board may in reviewing the case make a new decision in respect of whether and to what extent the Association will indemnify the member against the costs of the case, and may change the previous decision if the Board in its discretion decides that this will be appropriate, and is not bound by its previous decision in respect of cover.

*Board's decision on indemnification*

The Board will determine the amount of the deductible payable to the Association for all costs incurred in handling a case, including, but not limited to costs of handling the case pursuant to clause 6.2. Any deductible established by the Board shall be paid to the Association upon request. In the event of non-payment, section 4.2 shall apply.

6.4. The Association will only generally cover costs which have been incurred after the case was presented to the Association. However the Board may also decide that costs incurred before the case was presented to the Association, shall be covered in whole or in part to the extent that they were necessarily incurred to protect the member's interests, before it was possible to present the case to the Association. The Association will not cover the member's liability for the other side's legal costs unless the Board decides that the Association will cover these costs wholly or partly. — Cover of costs

If witnesses, documents, information and other evidence which is realised to be necessary during the handling of the dispute and which is in the possession of the member, or can only be obtained by the member, is not obtained, or when information of significance to the case is withheld, the Board may refuse to cover the costs of the case. The same shall apply if the member's organisation and staff situation is such that the Association does not receive sufficient assistance in the handling of the case.

If it becomes necessary during the handling of a case to instruct lawyers, agents, consultants or other experts, they shall be instructed by the Association on behalf of the member and communication with them shall be conducted through the Association.

6.5. In cases where both parties are covered by the Association, the Association will instruct independent lawyers who will be responsible for the handling of the case. Either party may, however, ask the Association to give an opinion in the case for the guidance of the parties. Such an opinion will normally be given by three of the lawyers permanently employed by the Association. If the parties cannot come to an agreement based on such an opinion, the opinion shall not be referred to in any later arbitration or court proceedings. — Disputes between members

The Board's decision about taking over the costs in cases covered by the foregoing paragraph shall, for both parties, be made in the usual way in accordance with these statutes.

6.6. When the Association's assistance is sought by a member without there being a dispute, for example in contract negotiations or the like, the Association will provide assistance to a reasonable extent. In such circumstances the administration shall decide, in accordance with principles laid down by the Board, whether and to what extent the member shall contribute to the Association's external and internal expenses of handling the case. — Contract, negotiations etc.

6.7. The Board may wholly or in part revise its decisions under this Section if new information or the development of the case appears to the Board to warrant such revision. — Revision

**SECTION 7**

When a member, whose case has been taken over in accordance with Section 6, refuses to accept a settlement which in the opinion of the Board ought to be accepted or refuses to make an offer which in the opinion of the Board ought to be made, the Board may decide that all future costs in the case, together with liability for the other side's costs, shall be for the member's own account. The Board may also decide that the Association should withdraw from the further handling of the case. — Settlement

## SECTION 8

8.1. If a case is won and the member is awarded costs which cover the expenses the Association has paid or will pay, the costs shall be paid directly to the Association. If a case is settled in such circumstances that the member (the Association) would normally have been awarded his costs wholly or in part, either as a separate amount or as part of the settlement, a like amount shall be paid to the Association. If it is not apparent how much is attributable to costs, the Board shall in its discretion decide how much of the settlement amount shall be paid to the Association by way of costs. — Costs

8.2. When security for the other side's costs is demanded in a case which has been taken over by the Associaton, such security shall be provided by the Association only with the approval of the Board. Otherwise, the Association shall not provide guarantees or deposits of any kind. — Security for costs

## SECTION 9

The Association shall not be liable for errors com- mitted by its employees or by lawyers, experts, or agents appointed by the Assocation, nor for the correct acco- unting and settlement of amounts due to the member by those entrusted with the collection of such amounts. — Liability

## SECTION 10

10.1. The Association shall be based in Oslo. — Base of the Association

10.2. The daily business shall be administered by a Managing Director and a Deputy Managing Director both of whom shall be appointed by the Board and who shall, in every respect, follow the instructions of the Board. — Administration

The Managing Director or the Deputy Managing Director shall bind the Association by their signature.

## SECTION 11

11.1. The Board shall be elected by the General Meeting upon

recommendations from the Election Committee and shall consist of a Chairman, a Vice Chairman and 3 or more members.

*The Board*

Members of the Board shall serve for two years.

No one may be elected or re-elected after reaching the age of 67.

In the event of a vacancy, the Board may appoint a replacement until the next General Meeting.

11.2. A decision by the Board must be supported by the majority of those members of the Board who have participated in the handling of the case. In case of an equality of votes, the Chairman of the Board's vote shall be decisive, or in his absence the Vice Chairman's vote. In special circumstances, the Chairman of the Board may order that a matter be decided by circulation of the relevant documents.

*Board decisions*

The remuneration of the Board shall be fixed by the General Meeting.

11.3. The Board's decision making powers under these statutes may be delegated by the Board to the Association's Administration. The Board may decide which tasks shall be delegated, stipulate guidelines for the Administration's decisions and otherwise give it such orders and directions as the Board may from time to time find expedient. If the Administration of the Association, in the exercise of such delegated powers, makes a decision which affects a member's account with the Association, including the question of whether a case will be taken over, or the size of the deductible, the member shall have the right to demand that the matter be put be- fore the Board for decision, provided that in any such case the member shall follow the Administration's decision until the Board has made a ruling.

*Delegation*

## SECTION 12

The Board shall exercise control over the management of the Association by the Administration, which shall report to and take instructions from the Board.

*Control and administration*

## SECTION 13

Each year the General Meeting shall appoint an Election Committee of three members. The Election Committee shall, before 1st April each year, propose candidates for election to the Board, decisors and, if necessary, the post of auditor.

*Election Committee*

## SECTION 14

14.1. An appeal against decisions made by the Board under Sections 4, 5, 6, 7 and 8 of these statutes may be made to an Appeal Committee consisting of three of the Association's members. The member bringing the appeal shall nominate one member of the Appeal Committee, the Board one member, and the two so nominated shall jointly nominate the Chairman of the Appeal

*Appeal Committee*

Committee. If the two nominated members are unable to agree on the appointment of a Chairman within 14 days of the nomination of the last member, either party may demand that the nomination be made by the General Secretary of the Baltic and International Maritime Conference (BIMCO).

14.2. The decision of the Appeal Committee shall be in writing and shall give reasons and shall also state which of the parties shall bear the costs of the appeal. The decision of the Appeal Committee shall be final and binding and shall not be subject to appeal.   *Decision by the Appeal Committee*

## SECTION 15

15.1. The General Meeting shall appoint an auditor who shall examine the accounts of the Association. The auditor's remuneration shall be determined by the General Meeting.   *Audit*

15.2. The General Meeting shall appoint two decisors who shall examine the audit and make recommendations to the General Meeting about the proposed accounts. The decisors may temporarily remove the auditor from office until the next General Meeting, should they consider this necessary.   *Decisors*

## SECTION 16

The General Meeting shall be the highest authority in the Association's affairs. It shall be convened each year at a time and place to be decided by the Board, although in no case later than 30th September. The audited accounts for the previous calendar year shall be laid before the General Meeting together with the proposals from the decisors, the Board's Annual Report and any other matter the Board wishes to put to the General Meeting. Each year, the General Meeting shall lay down guidelines for any changes in the Association's premium structure based on recommendations from the Board. Proposals from members for motions to be put to the General Meeting must be sent to the Board before the end of March.   *General Meeting*

## SECTION 17

The General Meeting shall be convened by written notice to each member with a short summary of the agenda, and by advertisement in a daily paper with widespread circulation in maritime circles in those countries from which members of the Board have been elected. The validity of the notice shall be solely dependent on the news- paper advertisement referred to being placed at least one month prior to the meeting.   *Notice*

### SECTION 18

An extraordinary General Meeting may be called by the Board at any time, in the same way as provided for in Section 17, and shall be convened when called for by members representing at least one tenth of the aggregate votes in the Association.

*Extraordinary General Meeting*

### SECTION 19

Members shall have one vote for each thousand kroner, or part thereof, paid by way of annual premium four weeks before the General Meeting is held.

*Voting rights*

Members who do not attend the General Meeting personally may vote by written proxy given to a member attending the meeting.

### SECTION 20

The statutes may be amended by a majority of two thirds of the votes represented at the General Meeting, provided that at least one quarter of the aggregate votes in the Association have voted in favour. If the required number of votes are not represented at the General Meeting, amendments may be carried by a two thirds majority of the votes represented at a new General Meeting, either ordinary or extraordinary.

*Amendments to the rules*

Section 20 may only be amended in the same way as dissolution may be decided upon under Section 21.1.

### SECTION 21

21.1 Dissolution of the Association may only take place if three quarters of the aggregate number of votes in the Association are cast in favour at a General Meeting. If the required number of votes are not represented at the General Meeting, the question shall be put to a new ordinary General Meeting where the decision can be taken by a majority of three quarters of the votes there represented, provided that at least one half of the aggregate votes in the Association are represented at that General Meeting.

*Dissolution*

21.2. If a resolution calling for dissolution of the Association is passed in accordance with Section 21.1, the General Meeting shall decide by simple majority how the Association's assets shall be distributed.

*Assets of the Association*

### SECTION 22

These statutes shall be governed by Norwegian law. The privileges enjoyed by members under these statutes do not constitute a policy of insurance and the Norwegian statute of 16 June 1989 no. 69 regulating insurance policies is not applicable. Any dispute arising between the Association and one or more

*Choice of law and litigation*

of its members con- cerning the rights and obligations of the parties in relation to these statutes shall be decided by the Oslo City Court, to whose jurisdiction the parties hereby agree.

# DOCUMENT NO. 13

ORIGINAL



REPUBLICA DE PANAMA
AUTORIDAD MARITIMA DE PANAMA
PANAMA MARITIME AUTHORITY
DIRECCION GENERAL DE MARINA MERCANTE
DIRECTORATE GENERAL OF MERCHANT MARINE

PRORROGA No. 08-2001
(EXTENSION No.)

El suscrito, LA SUSCRITA DIRECTORA GENERAL DE LA DIRECCION GENERAL DE MARINA MERCANTE
The undersigned,

CONSIDERANDO:
CONSIDERING

Que el señor PATTON, MORENO & ASVAT en su capacidad
That mr. in the capacity

de REPRESENTANTE LEGAL ha solicitado se prorrogue la Patente PROVISIONAL
of has applied for extension of the certificate of registration

de Navegación No. 28909-PEXT-1 expedida el 9 DE MAYO DEL 2000
for navigation No. issued on the

a la nave ENERGY ZAPOTECA
to the vessel

Que se ha comprobado que esta nave ha pagado impuesto y tasa única anual hasta el 4 de MAYO del 2001
That it has been attested that the said vessel has cancelled consular and annual taxes until the

Que la Dirección General de Marina Mercante ha concedido la prórroga de la patente antes expresada.
That the Directorate General of Merchant Marine has granted the extension of said certificate of registration.

RESUELVE
RESOLVES

Prorrogase por el término de TRES (3) MESES contados desde el 4 DE ENERO DEL 2001
To extend for a period of as of

hasta el 4 DE ABRIL DEL 2001 la validez de
until the the validity of

la Patente PROVISIONAL de Navegación No. 28909-PEXT-1 expedida el
Certificate of Registration for Navigation No. issued on the

9 DE MAYO DEL 2000 a la nave ENERGY ZAPOTECA
for the vessel

del porte de 2,661.00 toneladas netas y
of net tons and

3,675.00 toneladas brutas, de propiedad de
gross tons, owned by

ZAPOTECA ENERGY INC.

Expedida y firmada en PANAMA al (los) DIEZ (10)
Issued and signed in on the (day)

ENERO DOS MIL UNO (2001)
Mes (month) Año (year)

NUMERAL A. C. 42
Derechos separados B/. 150.00
F.ees right US $

Comprobante No. y fecha LIQ. 26246
Receipt No. and date 5-1-2001

a1/ (SELLO)
(SEAL)

LIC. MARIXENIA DE BARRIOS
Nombre y firma del Funcionario
Name and signature of Officer

DISTRIBUCION: ORIGINAL Y DUPLICADO - INTERESADO
TRIPLICADO - DIRECCION GRAL. DE MARINA MERCANTE
CON EL INFORME MENSUAL
CUADRUPLICADO - ARCHIVO, CONSULADO

P-99- No. 1343

AMP-99