United States District Court
Southern District of Texas
FILED

FEB 2 4 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC. | § | |
| | § | |
| VS. | § | CIVIL NO. B-04-048 |
| | § | In Admiralty; Rule 9(h) |
| CHARLES DOUGLAS PHILLIPS, et al. | § | |

**MEXICAN CREWMEMBERS' REPLY TO ZAPOTECA'S RESPONSE AND FIRST AND SECOND SUPPLEMENTAL RESPONSES IN OPPOSITION TO THEIR MOTION TO INTERVENE**

TO THE HONORABLE JUDGES OF SAID COURT

COMES NOW, Jaime Arturo Castellanos Diaz, Alejandres Diaz Cobos, Pedro Meijalima, Fernando Trejomar, Marco Antonio Lizama Rodriguez, Ciro Elorza Martinez, Jose Munoz Lopez, and Candido Maldonado (hereinafter sometimes referred to "the "Crew" or "the Mexican Crewmembers,") and files this their reply to Zapoteca's Response in opposition to their motion to intervene and Zapoteca's First Supplement and Second Supplement to its response in opposition to their motion to intervene, respectfully submitting as follows:

I. **CORRECTING ZAPOTECA'S MISREPRESENTATIONS**

Zapoteca in its Response and its First Supplement (and its affidavit of Mr. Ostbye, attached as Exhibit "A" to the first supplement), makes a number of statements that are factually incorrect. Zapoteca's Second Supplement (and the affidavit of Mr. Maillard, attached as Exhibit "A" to its Second Supplement) also contain factual misstatements

and misrepresentations.[1]  To correct those misstatements and provide additional critical information to the Court, we provide the following:

## II.  THERE IS NO BOND POSTED FOR THE TWO CREWMEMBERS' CLAIMS

Zapoteca contends that there is adequate security already posted to protect the crewmembers' claims in the Mexican Labor Court and in particular that the claims of eight crewmembers and later four additional crewmembers (for a total of 12) were merged into a single case, which now has a bond of 1,800,000 pesos, or $180,000 USD, to protect and secure the amount of all those claims (see ¶¶ 2-6 of Mr. Ostbye's affidavit of January 10, 2005 and ¶¶ 4 and 7 of Mr. Maillard's <u>unnotarized</u> "declaration" of February 18, 2005, which were attached respectively as Exhibit "A" to Zapoteca's respective Supplements).  Such in fact is not the case.  Rather, initially there was a lawsuit pending in Mexico by ten crewmembers (not twelve), in which the Mexican Labor Court initially ordered Zapoteca to post a 7,000,000 peso bond (i.e., 700,000 USD).  At the request of Zapoteca's counsel, the court then reduced that bond to 1,800,000 pesos, to which Zapoteca promptly posted a 1,800,000 peso bond (i.e., 180,000 USD).  The ten Crewmembers' attorney then had three days to ask the Mexican labor court to reconsider and increase the amount of that bond.  However, the Rig departed Mexico during that three-day interim, so there was no opportunity to seek a

---

[1] We are not presently ready provide an affidavit to correct each misstatement contained in Mr. Maillard's declaration, but we do note that it is not notarized, nor proved under Mexican authentication laws. We also understand that Mr. Maillard was not Zapoteca's attorney during the time the labor cases were active, as the crewmembers have never heard of him or seen him attend any hearings (The Zapoteca attorneys were: Hector Del Campo and Victor Hugo Rutz; See Exhibit "B: below).  We suspect Zapoteca once again (as with Mr. Ostbye's affidavits) has secured the affidavits of a person who was not involved at the time the events made the basis of the representatives actually occurred. We do know that the $180,000 bond, which was posted for the 8 crewmembers' claims, will expire in April of 2005, and that there is no security whatsoever posted for the claims of the 2 of the crewmembers (Elorza and Meijalima). These items are addressed in more detail below.

reconsideration of the amount of that bond or its increase, back to a proper level (See Exhibit "A"). Consequently, the amount of the these ten crewmembers' claims is secured by the 1,800,000 peso ($180,000 USD equivalent) bond only.

But there was a second case, in which two other crewmembers (Elorza and Meijalima) filed suit a short period later, also pending before the labor court in Mexico. In that case, Zapoteca posted a 400,000 peso bond (equal to approximately $40,000 USD) (See Exhibit "B"). However, the Mexican labor court then ordered Zapoteca to post a larger amount, 635,000 peso (equal to approximately $63,500 USD). In response to that order, the Zapoteca attorney asked for and was provided with the original of the 400,000 peso bond, indicating that he needed to return that bond to the bonding company in order to get the new bond, for 635,000 pesos, issued (See Exhibit "C"). That $400,000 bond was signed out to Zapoteca's labor attorneys in Mexico. However, <u>the 635,000 peso bond was not provided thereafter</u>. Consequently, to date there is <u>no bond pending to secure the claims of these two crewmembers</u> (both of whom are intervenors in this case). We are advised that the Mexican Labor Court has scheduled three hearings on the matter, intending to order Zapoteca's counsel to in fact post the 635,000 peso bond as security for the claims of these two crewmembers, but Zapoteca's counsel has failed to appear for those hearings. To date, there is no security whatsoever being posted for the claims of these two crewmembers.

In addition, the $180,000 USD bond, which secures the claims of ten crewmembers (and not at all for 2 of the 8 crewmembers here), will expire of its own terms in April of 2005, and there is no reason to believe Zapoteca will renew or increase it. Moreover, the amount of the bond now is ruefully inadequate. The current value of

3

the eight crewmembers' claims is approximately 10,520,000 pesos (equal to 1,052,000 U.S. Dollars), which is <u>over 5 times the amount of the bond</u> posted for the 10 crewmembers' claims. In addition, those claims increase dramatically as time passes, it being the statutory intent of the relevant Mexican labor code to encourage employers to seek a quick resolution of those outstanding wage claims, or the amount of those claims increases rapidly over time. That is exactly what has occurred here; it has been over nine months since those claims were filed, and the amount of the original security now is <u>far below the current value</u> of those claims and the current amount of any proper bond that would be required to provide security for the claims, given their current value. (See Exhibit "D", February 18, 2005, affidavit of 8 crewmembers/intervenors.

### III.   THE EIGHT MEXICAN CREWMEMBERS HAVE NO ATTORNEY IN MEXICO.

Zapoteca next contends (without citing any evidence) that it understands that the Mexican Crewmembers have a labor lawyer in Mexico who is representing them in their labor claims. That is incorrect. The Court will recall that their former counsel died. However, since then, they have not been successful in securing new counsel, and to date still do not have any lawyers engaged to prosecute their claims in the Mexican Labor Court (See Exhibit "D"). As discussed in this Reply, there are very real impediments to the crewmembers' ability to proceed against Zapoteca or its inadequate or withdrawn bond, which may be why they have not been successful in engaging adequate legal counsel to represent them or prosecute those labor cases in Mexico, since their former counsel died.

Moreover, the crewmembers now realize they have no greater security than the $180,000 USD (a portion of which applies, at most, to 6 of the 8 crewmembers here), and

4

even that security will expire in some 2 months. As to the $180,000 bond, even that amount would need to be split with 4 other crewmembers, who are not intervenors in this case. Even so, there are two intervenors here with <u>no security at all</u> in the Mexican labor court, despite the judge's having ordered Zapoteca to post that security.

In short, the Mexican crewmembers wish to pursue their claims in this Court, where they believe that adequate security can be ordered and will be posted; where Zapoteca has appeared and can be provided with further pleadings; and where Zapoteca's counsel will be obligated to attend hearings and respond to court orders directing Zapoteca to take certain actions.

The crewmembers believe that this Court also should hear their case because several of them were <u>living and working in Brownsville</u>, Texas, in the Fall of 2003 and the Spring of 2004, and <u>where they were fired in March of 2004</u>.

### IV.   THE CREWS' VITAL DOCUMENTS WERE ORDERED TO BE SENT HERE

The Court will recall Zapoteca's initial request (TRO and preliminary injunction), the initial hearings in the case, and the Court's Order of March 18, 2004. Zapoteca requested, and the Court ordered, that all of the documents under the control of Captain Phillips, <u>including</u> all documents which in turn were under the control of "the current and former crewmembers of the ENERGY ZAPOTECA" (See Exhibit "E" enclosed) be turned over immediately to Zapoteca's local agent in Tuxpan, Mexico, who in turn was to provide those documents promptly to Dix Shipping in Brownsville, Texas. Significantly, Zapoteca requested and the Court ordered that the Mexican Crewmembers not retain the original of any of those documents, <u>or make photocopies</u> of such documents, before

5

turning them over and having them sent to Brownsville (see Court's Order of March 18, 2004).

At the time the Court may not have realized the consequence of that Order (although Zapoteca would have) on the Mexican Crewmembers' claims in Mexico, but the effect of that Order is that all of the various documents crewmembers would rely on in prosecuting their claims in Mexico (including documents indicating the date they were hired, the positions aboard the Rig they were hired to perform, how much they were to be paid, how and when their pay was to be calculated, what the employment agreement was regarding payment or reimbursement of their living expenses, travel expenses, etc.) are included within the documents for which this Court ordered to be sent to Brownsville, Texas.

The originals of all those documents in fact were turned over pursuant to the Court's Order, and the Mexican Crewmembers at this point <u>do not have copies of any documents</u> from Zapoteca, P.D. Gram or the Rig confirming their employment, on describing what pay was to be provided, with the sole exception of the termination letter they received in Brownsville, Texas, on March 9, 2004. They also are missing the critical documents establishing the amounts of money that were not paid and still are due.

Without these documents, it will be difficult if not impossible for their claims to proceed before the Labor Court in Mexico. As this Court probably is aware, the legal effect of employment-related documents, particularly those from the employer itself, has substantial and nearly conclusive effect in Mexican law procedures. Conversely, the absence of such documents makes it difficult (if not impossible) for the crewmembers to be able to proceed on their claims. Under Mexican law and procedure, a photocopy of a

document is not admissible until it is "notarized" or "apostilled" by a Mexican notary public, and that person will issue such a notarized copy only upon personally inspecting the original. As a consequence, once the crewmembers turned over are the original of all those employment-related documents, without being able to arrange for legally binding copies (which also was precluded by this Court's Order), they will have difficulty, at best, pursuing their labor claims before the Mexican labor court.

Conversely, the documents those crewmembers now need were ordered by this Court to be maintained by Zapoteca's local ship's agent, Dix Shipping, in Brownsville. During the hearing on May 7, 2004, Zapoteca's counsel asked that the documents previously turned over in Mexico then be sent from Dix Shipping to Zapoteca's counsel's office in Houston. (See Transcript of May 7, 2004 hearing, copies attached as Exhibit "F"). In response to that request, the Court allowed Zapoteca to have those documents moved to Houston and in fact those documents allegedly were moved to Houston thereafter, pursuant to that Order (Captain Phillips recently learned that in fact Zapoteca previously had moved those documents to Houston, despite its representations to the Court.[2] Those documents continue to be under the Court's supervision and this Court

---

[2] In the hearing on May 7, 2004, the Court asked Zapoteca's counsel where the Rig was at that time, but Zapoteca did not answer the question (See p. 2 of the transcript). The Court then asked Zapoteca if the documents previously turned over in Mexico, where still in Mexico or were those boxes of documents on the Rig in Sabine Pass: Zapoteca 's counsel answered: "No, those boxes are not on the rig. Those boxes are still, as far as I know, in Tuxpan with Meritus' office as per the order." (In the hearing on May 7, 2004, the Court also ordered the documents being held at Dix Shipping be moved to the office of Ed Nelson in Houston, Texas.) "When we have time and are ready, we will bring the documents up [to Texas], give them here." Zapoteca even went so far as to tell the Court: "You have access to them in Meritus office, as provided by the order." Unknown to the Court or Captain Phillips at the time of the hearing on May 7, 2004, Zapoteca previously had shipped 14 of the 22 boxes to the office of Ed Nelson at Mesa Drilling in Houston, Texas, on April 27, 2004, <u>9 days earlier</u>. Those boxes of documents had been sitting in Ed Nelson's office for 9 days before the hearing on May 7, 2004. Attached as Exhibit "F" is the excerpt from the Court's hearing on May 7, 2004, and as Exhibit "G" is a copy of the FedEx receipt, showing delivery of 14 boxes in Houston on April 24, 2004. (Curiously, there still are 7 boxes of documents missing today.)

alone (as opposed to any labor court in Mexico) can order Zapoteca to produce documents related to the Mexican Crewmembers' claims, so that those claims can be investigated and pursued in this case.

As this Court may be aware, when a person files a labor case in Mexico, the labor court president sends several clerks from the labor court to the office of the company where the person worked. The labor clerks review the complete files (everything). They including the payroll records, social security payments, tax records, and work records. The clerks take a typewriter with them to make out a full report of their findings. The employer is given a copy of the report. However, when the crew filed their labor case in Mexico, the Zapoteca office was closed. Thus, there was no office for the labor clerks to visit, and no records to review, which would support the crews' claims. (Moreover, if the labor clerks had gone to the office of Meritus, Meritus would have told the clerks that that was not the office of Zapoteca.) Consequently, there are no documents the labor court or its clerks have reviewed or now can review. Since there is no civil discovery in Mexican proceedings, as are available in this Court, there is no way for the Mexican crewmembers to compel Zapoteca to produce documents or information in the Mexican labor cases.

The Mexican Crewmembers now realize that part of the reason Zapoteca requested on March 18, 2004, that those documents be gathered and sent to Brownsville, and later that they be sent to Zapoteca's office in Houston, was to get those documents <u>out of the hands of the Mexican Crewmembers</u>, so that those crewmembers would be hampered in their ability to proceed with their claims in Mexico. The consequence of Zapoteca's request is that these documents have been brought up to the Southern District

8

of Texas, and now sit in Zapoteca's rented office space in Houston. As a result, the crew is greatly prejudiced in its ability to proceed with its claims in Mexico, since the critical underlying documents are no longer within their custody or control or within the jurisdiction (or subpoena power) of the Mexican Labor Court.

## V. THE COURT SHOULD GRANT THE MEXICAN CREWMEMBERS' INTERVENTION NOW BECAUSE THE CREWMEMBERS ARE BEING APPROACHED IN MEXICO BY REPRESENTATIVES OF ZAPOTECA.

As Zapoteca is well aware, undersigned counsel represents the eight Mexican Crewmembers who are seeking to intervene in this case. (See letter of Zapoteca's counsel, demanding copies of the powers of attorney for each of the eight Mexican Crewmembers, along with undersigned counsel's response, attached as Exhibits "H" and "I" hereto). In addition, Zapoteca's counsel and Mr. Ostbye, the current corporate representative of Zapoteca, were present during the hearing on December 13, 2004, during which the claims of the Mexican Crewmembers and undersigned counsel's representation of them was discussed.

Despite that, undersigned counsel has been advised that various persons, purporting to represent Zapoteca directly and who are not attorneys, have approached one or more of the Mexican crewmembers, directly and personally, in Mexico, seeking to arrange "a quick settlement" of their claims. We first were advised of Zapoteca's efforts to talk directly with the crewmembers on January 12, 2005, which is the reason we immediately wrote Zapoteca's counsel and asked him to communicate to his client and confirm that <u>no further efforts,</u> discussion or attempted negotiation of settlement should occur with the Mexican Crewmembers, but instead should occur through only undersigned counsel (See letter of January 12, 2005, copy attached as Exhibit "J"). In

response, Zapoteca's counsel wrote back that there were absolutely no communications between any representative of Zapoteca and the Crewmembers directly, but that Zapoteca might still communicate between <u>Mexican counsel for Zapoteca</u> and <u>Mexican counsel for the Mexican Crewmembers</u> (See Mr. Klawetter's letter of January 13, 2005, attached as Exhibit "K").

Despite all these communications confirming the legal representation of the Mexican Crewmembers, underlying counsel was advised on January 12, 2005 that later on the same day of Mr. Klawetter's letter of January 13, 2005, there had been another, even more direct attempt by a Zapoteca corporate representative, purporting to act on behalf of Zapoteca, directly (and not as an attorney) approached one of the crewmembers directly in Mexico and attempted to arrange in essence a "quick settlement of all the crews' claims for the amount of the bond, $180,000." Specifically, Bill McDermitt, whom the Court may recall was the "owners representative" engaged by Zapoteca in July of 2000 (See Mr. Kongsli's letter of July 6, 2000, copy attached as Exhibit "L"), approached one of the Mexican Crewmembers who was seeking to intervene in this case, Alexandro Diaz Cobos, late in the day of January 13, 2005, and said that he had been <u>advised by Zapoteca to arrange settlement</u> of the claims with them personally and directly and that <u>he had been requested to do so by Mr. Erik Ostbye</u>, whom the Court will recall has attended various hearings and who now is the designated representative of Zapoteca (See paragraph 1 of his Exhibit "A" affidavit, attached to Zapoteca's First Supplement). Mr. McDermitt approached Mr. Cobas, one of the intervenor crewmembers in this case, and told him that he had been called by Mr. Ostbye that morning and instructed by him

"to approach the crewmembers and try to get them to agree to a quick settlement of their labor claims against Zapoteca."

This approach, by a party's corporate representative directly to an adverse party, when the person knows the other party is also represented by counsel (who has advised that all communications should be only between the parties' identified and designated counsel, and concerning the very issues that are the subject of dispute, in an effort to secure "a quick settlement" of those claims; is inappropriate and unethical, at the least. Given the extent of Mr. Ostbye's familiarity with the case, plus the lawyers letters to each other about this very issue (See Exhibits "H" and "L"), it can hardly be said that he or other representatives of Zapoteca believed it was proper for them to approach the crewmembers directly. However, given that development and the fact that Zapoteca has approached these same crewmembers repeatedly thereafter, in an attempt to settle the case with these unsophisticated seamen and behind the back of their counsel, the Mexican Crewmembers ask the Court to immediately permit them to intervene in this case and to order or admonish Zapoteca and its representatives (including specifically Mr. Ostbye and Mr. McDermott) <u>not</u> to approach or discuss anything with the crewmembers in any manner other than through their counsel of record in this case.

### VI.   THE MEXICAN CREWMEMBERS ARE ENTITLED TO INTERVENTION OF RIGHT.

Zapoteca contends that the Mexican Crewmembers are not entitled to intervention of right under FRCP 24(a) because they do not have a "direct, substantial or legally protectable interest in the proceding." Zapoteca again is incorrect. The crew's interests in this proceeding includes seeking and arranging for adequate security for their claims before this Court, which is sitting in Admiralty and can issue whatever maritime and

equitable orders are appropriate regarding the Rig, security for their claims, and over Zapoteca personally (who is here and has counsel who will attend hearings and follow court orders).

In addition, Zapoteca has contended repeatedly (and incorrectly) that it is amenable to *in personam* jurisdiction, which if accurate means the Mexican crewmembers can pursue it for their claims or make additional claims against Zapoteca only in this Court. Conversely, they cannot make the same claims in the Mexican labor case, since Zapoteca is no longer in Mexico and has no officers, employees, vessels, property or presence in Mexico

The Mexican Crewmembers' claims and interest in this case also are substantial, since those claims form the entire basis of their entitlement to payment of due and owing seaman's wages, severance pay and related benefits, all of which are included within the definition of crew's wages under U.S. and Panamanian maritime law and Mexican labor law.

The Mexican Crewmembers also have a direct interest in these proceedings, since this Court's findings regarding the status of the Rig as a vessel in navigation may be determinative of seamen status and maritime liens issues in the Mexican labor cases, the issues of seamen's status maritime liens which are or may come before the Court in the Mexican labor cases. As those issues already are presented before this Court, and this Court will have to address them in order to resolve this case, the Mexican Crewmembers have a direct, substantial and legally protectable interest in the consideration and resolution of those issues before this Court, particularly because those rulings may affect

and possibly even preclude their being able to proceed in this Court or any other proceedings.

Zapteca also challenges the crewmembers' claims for permissive intervention, contending that they did not file a timely motion, that they have no independent grounds for jurisdiction, and that there is no common question of law or fact between their claims and the claims in the main action. Such contentions are patently false, as shown below.

First, as stated above, the claims of both Captain Phillips and the crewmembers involve questions as to whether the Rig is a vessel in navigation; whether Captain Phillips (and in turn the Mexican Crewmembers) are the master and members of the crew of that vessel and whether they are entitled to penalty wages and severance benefits. Indeed, the commonality of these issues is constantly illustrated by the fact that in previous documents Zapoteca described the intervenors them as "crew," and that Zapoteca now calls them "laborers." It would be hard to find a case in which the questions of law and fact are more common than these arising from the claims of Captain Phillips and the intervenors.

In addition, the Mexican Intervenors have filed a Motion to Intervene as soon as they possibly could, and only a few weeks after their attorney in Mexico died.

The Mexican Crewmembers also have an independent grounds for jurisdiction, since they have maritime lien claims against the Rig for non-payment of their crewmembers' wages. That lien has been called "sacrosanct" or "sacred," and it is given priority over the claims of other entities (See Captain Phillips' Brief Regarding Maritime Liens, filed February 11, incorporated herein). That is a portion of the seaman's claims which are closely guarded by federal courts and courts sitting in Admiralty, since such

crewmembers (such as the Mexican Crewmembers here) are considered the "wards" of the Admiralty court whose rights and claims are jealously guarded and protected by Admiralty courts in the United States.

Finally, because the very employment-related documents on which the Mexican crewmembers will rely to prosecute their wage claims were ordered by this Court to be brought to Texas, the <u>only</u> proper court in which they now can prosecute their claims is here, since both they and the Mexican labor court have lost access to over these documents. Moreover, since there is no civil discovery under Mexican procedure, as exists in this Court, there is no way for the crew to request, or the Mexican Labor Court to compel, Zapoteca to provide information or documents relevant to their cases. Here, however, such discovery can be conducted, and enforced by Court order, if needed. This Court also has issued orders as to those same documents, and can order Zapoteca to produce these, as this Court deems appropriate. This Court alone can compel the production of those documents, without which the crewmembers may not be able to pursue their claims.

For the reasons described above, it is apparent that the interests of these crewmembers should be protected from the unscrupulous conduct of their employer/former employer, such that the Court should grant their intervention, either of right or as permissive intervention, under FRCP 24(b).

## VIII. ONLY THIS COURT CAN ISSUE ADDITIONAL EQUITY AND STATUS QUO ORDERS.

As the Court probably knows, the Mexican Labor Court can order Zapoteca to post bonds to secure the claims, and in fact has done so. Zapoteca however has disregarded at least one of those orders and thus far has failed to post any current security at all as to the claims of two crewmembers/intervenors herein, Pedro Meijalima and Ciro Elorza Martinez. Given that three hearings have been scheduled by the Mexican Labor Court to address Zapoteca's failure to post the security in that case, and on each occasion the Zapoteca attorney has failed to appear, it is evident that Zapoteca does not intend to respond to the Court's Orders or to post any valid security for those two crewmembers' claims. In addition, it is extremely unlikely that Zapoteca will post any additional security for the claims of the other ten crewmembers, even though the assessment of a knowledgeable Mexican labor lawyer is that the 1,800,000 peso bond (approximately $180,000 USD) is woefully inadequate for those ten crewmembers' claims. [see affidavit]

In addition, since the Mexican labor court no longer has *in rem* or maritime seizure/embargo remedies available to it (since the Rig has departed Mexico and now is in Texas), the judicial remedies available to the Mexican Court are limited. Likewise, there are no officers, employees or agents of Zapoteca in Mexico who can be compelled by the Court to appear, answer the claims of the crew, answer the Court's question why the court-ordered security has not been posted, etc. The Mexican labor court also has lost jurisdiction over the vessel and crew-related documents, which this Court ordered be brought to Texas. Conversely, this Court is not so limited, and the full panoply of equitable, Admiralty and other remedies are fully available to this Court. For example,

this Court can continue in effect the "status quo" Order of July 8, 2004, and thereby provide the Mexican Crewmembers with some sense of security that their claims, after being reduced to judgment, will not be worthless. This Court, and this Court alone, can order Zapoteca and its officers, agents and representatives not to communicate with the crew except through undersigned counsel. This Court can order Zapoteca to produce the documents that the crew produced in Mexico. Those and other remedies are precisely the sort that this Court, exercising its Admiralty and equitable jurisdiction, can issue, but are no longer available to the Mexican labor court. Consequently, whatever orders are necessary to protect the claims of the Mexican Crewmembers until the various issues pending before the Court can be addressed are available only in this Court. Thus, it is appropriate that this Court permit the Mexican Crewmembers' claims in Intervention be filed and the merits of their claims considered by this Court.

WHEREFORE, premises considered, the Mexican Crewmembers ask that the Court promptly grant their Motion to Intervene and that the Court direct Zapoteca and its corporate representatives to refrain from approaching, communicating with or attempting to settle the claims of the Mexican Crewmembers in any manner except through and between Zapoteca's counsel and the Mexican Crewmembers' counsel in this case.

Respectfully submitted,

**THE LANIER LAW FIRM, P.C.**

BY: _/s/ Charles F. Herd, Jr. w/ permission by C. _____
CHARLES F. HERD, JR.
TSB# 09504480
ATTORNEY IN CHARGE
LAWRENCE P. WILSON
TSB # 21704100
KEVIN P. PARKER
SBN #15494020
P. O. Box 691408
Houston, TX 77269-1408
(713) 659-5200
Fax: (713) 659-2204

**ATTORNEYS FOR DEFENDANT/COUNTER CLAIMANT, CHARLES D. PHILLIPS AND MEXICAN CREWMEMBERS: JAIME ARTURO CASTELLANOS DIAZ, ALEJANDRES DIAZ COBOS, PEDRO MEIJALIMA, FERNANDO TREJOMAR, MARCO ANTONIO LIZAMA RODRIGUEZ, CIRO ELORZA MARTINEZ, JOSE MUNOZ LOPEZ, AND CANDIDO MALDONADO**

**LOCAL COUNSEL:**

Mr. C. Frank Wood
SANCHEZ, WHITTINGTON, JANIS
& ZABARTE, L.L.P.
100 North Expressway 83
Brownsville, Texas 78521-2284

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel in accordance with the Federal Rules of Civil Procedure on this the 24th day of February, 2005.

Mr. Robert W. Klawetter
EASTHAM, WATSON, DALE & FORNEY, L.L.P.
808 Travis, 20th Floor
Houston, Texas 77002
**ATTORNEYS FOR PLAINTIFF
ZAPOTECA ENERGY, INC.**

C. Frank Wood