United States District Court
Southern District of Texas
FILED

FEB 2 5 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC. | § | |
| | § | |
| VS. | § | CIVIL NO. B-04-048 |
| | § | In Admiralty; Rule 9(h) |
| CHARLES DOUGLAS PHILLIPS, et al. | § | |

### CAPTAIN PHILLIPS' RESPONSE TO ZAPOTECA'S REQUEST TO MODIFY THE ORDER OF JULY 8, 2004

TO THE HONORABLE JUDGES OF SAID COURT:

COMES NOW, Captain Charles Phillips, and files this his Response to Zapoteca's various requests to have the Court's "Status Quo" Order of July 8, 2004, lifted, to allow it to move and/or sell the Rig ENERGY ZAPOTECA, respectfully submitting as follows:

**I.     ZAPOTECA'S REQUEST IS MOOT**

As the Court is aware, Nabors provided the Court with a copy of the Freezing Injunction, issued by the London Arbitration Panel on February 14, 2004. (See copy of letter dated February 15, 2004, enclosing the Freezing Injunction, attached as Exhibit "A"). In that order Zapoteca is "must not. . . in any way dispose of, deals with, or diminish the value of any of its assets," including "in particular the ENERGY ZAPOTECA jack-up offshore oil rig believed to be located at the Sabine Shipyard, Sabine Pass, Texas, USA." (See ¶¶ 5(2), and 7(1). The Freezing Order prohibits Zapoteca from doing exactly what it is trying to do in its motion to modify the Court's Order, which is to sell and move the Rig.

With the entry of the freezing order, Zapoteca cannot do precisely what it seeks to do by virtue of the present motion. Consequently, the present motion is moot.

## II.     NO SALE DETAILS PROVIDED

In the event the Court wants to consider the merits of any of Zapoteca's requests, it will note that Zapoteca has provided no details whatsoever regarding the alleged "sale" of the Rig. Zapoteca does not even provide the name of the purchaser, does not disclose the essential terms of sale, does not enclose a copy of the sale document, etc. Without those details, it is impossible to determine whether the so-called sale is real or is simply another effort by Zapoteca to have the July 8, 2004, Order lifted. Absent a showing of an honest to goodness arms-length sale, there is nothing for the Court to consider and Zapoteca's motion should be denied.

## III.    THIS AT BEST IS A JOINT VENTURE

While Zapoteca contends initially in its pleading that it has arranged a sale of the Rig, it later describes the transaction as a "joint venture." Again, no details whatsoever are provided. However, if what Zapoteca is in the process of negotiating is in fact a joint venture, then Zapoteca can negotiate that transaction to allow the Rig to stay where it is until the present matter is resolved. Zapoteca apparently contends that some repair or modification of the Rig is anticipated under this unspecified joint venture. If that is the case, there is no reason why that work cannot be performed on the Rig, with the Rig remaining in its current location in Sabine Pass, Texas. The Rig does not need to move elsewhere for repair or modification work to be conducted, and Zapoteca has not demonstrated such a need.

### IV. WON'T ZAPOTECA SIMPLY LEAVE TEXAS WATERS?

Captain Phillips and the Mexican Crewmembers are concerned that if the Rig is allowed to move and head downstream toward the Gulf of Mexico, there is little to keep Zapoteca from continuing out into the Gulf of Mexico and leaving Texas waters. That leaves Captain Phillips and the Mexican Crewmembers' claims even less secured than presently exists. Zapoteca likely would contend that it would not depart Texas waters, but given the history of the case, there is little reason to believe it. Below are some of the highlights of Zapoteca's misrepresentations in this case which have come to light thus far:

   A.   <u>Zapoteca Misrepresented to the Court the Court's Jurisdiction</u>.

As the Court is well aware, Zapoteca initially pled that the Court had Admiralty Jurisdiction when it first filed its TRO, asserting among other things that the Court is dealing with critical vessel-related property and "the Master of the Rig ENERGY ZAPOTECA, which is a jack-up oil rig." Zapoteca now contests that jurisdiction, but only <u>after</u> the Court issued the TRO and turnover orders that Zapoteca requested; pursuant to that same jurisdiction.

   B.   <u>Zapoteca Misrepresented to the Court the Destination of the Rig.</u>

As the Court is well aware, Zapoteca told the Court in its initial pleadings and the supporting declaration of Mr. Kongsli, that the Rig was bound for Brownsville, Texas, and would be "coming up here very soon." Indeed, it was in part on that representation that the Court asserted its jurisdiction and venue and granted Zapoteca the relief it requested. In fact, we now know that the Rig was not bound for Post Isabel or Brownsville, Texas, and Zapoteca knew that at the time it filed its pleadings on March

3

12, 2004. Nevertheless, Zapoteca has yet to disclose the Court or to Captain Phillips when it decided to take the Rig to Sabine Pass, Texas.

C. <u>Zapoteca Misrepresented to the Court the Urgency of the Documents and Equipment Captain Phillips and the Crewmembers Held.</u>

Zapoteca asserted that those documents and equipment must be turned over urgently, because the Rig was "about to depart" on its voyage to Brownsville. In fact, the Rig did not leave Tuxpan, Mexico, until April 5, 2004, some three weeks after the initial pleadings were filed and two weeks after the TRO was granted by this Court. The reason the Rig did not leave until April 5, 2004, is because of various maritime liens/embargos which were pending against the Rig in Mexico and which precluded her leaving earlier. Those matters were not within the control of Captain Phillips or the crew, and in fact (Zapoteca had made clear that it would handle all of those legal issues itself. Zapoteca also has presented no evidence that the items Captain Phillips or the Crewmembers turned over were critical to the Rig's departure, although it contended such in its original pleadings;

D. <u>Zapoteca Misrepresented to the Court the Master's Status and the Vessel's Status.</u>

As the Court is well aware, Zapoteca's new counsel now asserts that the Rig is not a vessel and that Captain Phillips is not a master. That contention is absurd and is refuted by Zapoteca's own records (see for example, the July 6, 2000 letter, from Christian Kongsli, which repeatedly identifies the Rig as "our vessel" and Captain Phillips as the vessel's "captain" (which is the same thing as Master) (attached as Exhibit "B").

4

E. <u>Zapoteca Misrepresented to the Court the Crew's Status.</u>

As the Court knows, Zapoteca now is contending that the Crewmembers are not crewmembers at all, but now are "laborers." That contention is also refuted by Zapoteca's own documents. See for example, the letter prepared by Zapoteca's attorney, Ed Nelson, <u>after</u> suit was filed, which was attached to the Court's Order of March 18, 2004, and the original of which was signed by Captain Phillips, with the vessel's stamp attached (attached as Exhibit "C");

F. <u>Zapoteca Misrepresented to the Court and to Captain Phillips the True Destination of the Rig.</u>

As the Court is aware, Zapoteca contended to the Court, and to Captain Phillips, that the Rig was bound for Port Isabel/Brownsville, Texas, and no other location. In fact, the Rig departed Mexico on April 5, 2005, and arrived in Sabine Pass, Texas, on April 12, 2005. Despite that, Zapoteca's counsel continued to fail to disclose to the Court or to Captain Phillips' counsel that in fact the Rig was not bound for Brownsville, even as late as the Court's hearing on May 7, 2004, which was some three weeks <u>after</u> the vessel had arrived in Sabine Pass, Texas. Moreover, we now have discovered records that indicate that on March 12, 2004, the very day that Zapoteca filed its TRO, Zapoteca was issuing instructions and making preparation for the Rig to go to Sabine Pass, Texas. (See letter from Erik Ostbye, dated March 12, 2004 (attached as Exhibit "D"; see also, Affidavit of Mr. Arkley, (attached as Exhibit "E") dated May 27, 2004, in which he states (item 14, p. 3) that he was directed on March 12, 2004, to do some survey work or related work to the site survey for the Rig's arrival in Sabine Pass, Texas);

5

G.  <u>Zapoteca Misrepresented to the Court the Location of the Turned-Over Documents.</u>

Zapoteca told the Court during the May 7, 2004, hearing that the documents, which Captain Phillips and the Mexican Crewmembers had turned over, earlier were still in Mexico. However, 14 boxes of documents, which previously were turned over by Captain Phillips or the Crewmembers in Mexico, had been delivered to Zapoteca' office in Houston on April 27, 2004. That was nine days before the hearing. (See copies of the Federal Express receipt showing delivery of 14 boxes in Houston, Texas, on April 27, 2000, copy attached as Exhibit "F").

Zapoteca also has failed to account for the location of the remaining 7-8 boxes. According to Zapoteca, a total of 22 boxes were sent from Mexico to Zapoteca's temporary office in Houston. However, only 14 boxes arrived (that means that 7-8 boxes are still missing and Zapoteca has failed to account for these boxes, and to date we still do not know where they are.)

Zapoteca also has failed to explain why it tore the binders apart, which Captain Phillips and Ms. Phillips had carefully prepared and which were included within the 14 boxes that were sent from Mexico to Zapoteca's office in Houston. As is well known, FCRP 34(b) provides the procedure for producing documents for inspection. It concludes: "A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." When Zapoteca permitted Captain and Mrs. Phillips to come inspect their documents, which were produced by Zapoteca "as they are kept in the usual course of business," Captain and Mrs. Phillips were startled to see that the documents, binders and files were being disassembled and commingled before their very

6

eyes. When they asked that the documents be maintained in their original manner, they were told not to interfere. Those 14 boxes of documents now have been so rearranged and altered by Zapoteca's representatives (that it will be difficult if not impossible to determine what documents actually are included there;

    H.    <u>Zapoteca Has Misrepresented to the Court Mr. Ostbye's "Personal Knowledge."</u>

The Court will recall that Zapoteca has submitted various "declarations" signed by Erik Ostbye, by which he states that he has "personal knowledge" of the matters contained in those statements. However, Mr. Ostbye was not even involved in the ENERGY ZAPOTECA until mid-January of 2004, so would have had <u>no</u> personal knowledge of any matters occurring before then. (See February 24, 2005, Affidavit of Captain Phillips, attached as Exhibit "G"). To Captain Phillips' knowledge, the person on behalf of Zapoteca or P.D. Gram & Co., who in fact would have the greatest personal knowledge about the matters that were at issue at the time would not be Mr. Ostbye, but would be Christian Kongsli, Captain Phillips' immediate supervisor. Significantly, Mr. Kongsli has submitted no declarations or affidavits whatsoever since the one he signed on March 11, 2004, which was attached to the request for TRO; that would be because his version of events, if truthful, would be much different than the "uninformed" declaration of Mr. Ostbye. As evidence of Mr. Kongsli's stated knowledge, see the first paragraph of his declaration dated March 11, 2004; Mr. Kongsli states: "I have been intimately involved in all aspects of the business of Zapoteca and the Rig ENERGY ZAPOTECA as the same relates to Charles Douglas Phillips (hereinafter "Phillips")."

I.  *Zapoteca Misrepresented to the Crew's Counsel that Communication with the Crew Would be Through Counsel Only*

As indicated in the Mexican Crewmembers' Reply to Zapoteca's Response and First and Supplemental Responses in Opposition to their Motion to Intervene, we, as the Mexican Crewmembers' counsel, were advised by Zapoteca's counsel that the Crewmembers would no longer be approached directly, but would be approached, if at all, only through their counsel, here or in Mexico. As the Mexican Crewmembers have no counsel in Mexico, that initially was considered by the undersigned to be sufficient assurance that the crewmembers would no longer be approached by corporate representatives of Zapoteca or by Mexican counsel engaged or instructed by Zapoteca. However, those efforts by Zapoteca to settle directly with the crew have continued, despite assurances to the contrary from its counsel. (See Declaration of Castellanos and Eloria, dated February 23, 2005, attached as Exhibit "H").

One could go on, but suffice it to say that there is no reason to believe that Zapoteca, once it gets the Rig underway, would not simply leave Texas waters, despite written assurances from it or its counsel that it would not do so.

V.  **REGARDLESS, ZAPOTECA SHOULD PRODUCE COURT-ORDERED DOCUMENTS FIRST.**

As the Court is well aware, during the telephone hearing on January 19, 2005, the Court ordered Zapoteca to produce most if not all of the items Captain Phillips requested However, Zapoteca did not produce all those court-ordered documents. In particular, Zapoteca did not produce the port captain's file (which would contain vessel-related documents covering the period May 2000 - April 5, 2004), the package of export documents, or the package of departure documents. What Zapoteca produced was only

8

the one-page cover letter, which originally enclosed various ship-related documents, approximately 2-3 inches thick. (See copy of the cover letter, attached as Exhibit "I"). On page 7 of the transcript of that hearing, Zapoteca's counsel agreed to provide the port captain's file (even if that file still is in Mexico) which we understand contains a copy of those 2-3" thick file of documents. (See excerpts from the transcript, attached as Exhibit "J"). However, that file has not been produced.

Likewise, we have requested all documents regarding the Tug GULF DUKE, which Zapoteca hired to tow the Rig from Mexico to Texas, and we believe specifically to Sabine Pass, Texas. Without a doubt, Zapoteca (or the vessel's managers, P.D. Gram, or the vessel's P&I club, Nordisk, all of whom are part of the "vessel interest" group which Zapoteca's counsel represents), have those documents. In particular, the operators of the GULF DUKE would have sent an invoice supported by a charter party, towing logs, daily vessel logs, etc., in order to be paid for its voyage down to Mexico. As we understand the tug's operators Tidewater, was paid for those services, it is absurd to say that Zapoteca, P.D. Gram or Nordisk do not have those records. However, Zapoteca's counsel has failed to produce anything about the GULF DUKE's voyage, the proposed tow, the proposed destination of a tow, etc. Zapoteca did produce brochures and specifications on the GULF DUKE, but nothing more.) That is item 9 on the Request for Production, discussed in part on pages 14 and 15 of the hearing transcript.

Request No. 11 and 12 seeks documents from local agents, outside of Tuxpan, Mexico, which address where the Rig was bound or which address steps were being taken to prepare the Rig to go. Zapoteca did not produce all those records. What we seek to determine is which ports in Texas or elsewhere Zapoteca was considering moving the

9

Rig and what communications to or from local agents discussed that and when those communications occurred. What documents Zapoteca did produce (see Exhibit "B") indicates that on March 12, 2004, Zapoteca was taking steps to move the Rig to Sabine Pass. But there must have been earlier communications as well.

Request No. 20 seeks all documents reflecting the agreements or contract terms between Zapoteca and the current watch keeping/storage facility for the vessel, Sabine Industries. In response Zapoteca produced only two documents, attached as Exhibits "K" and "L". Exhibit "K" appears to be re-typed and curiously is not dated or signed and does not indicate that it was mailed or faxed, e-mailed, etc. It appears to be an "edited" version or compilation of some previous documents, rather than the actual documents themselves. Zapoteca was not ordered to edit or create summaries of documents, but to turn over the documents themselves. It still should do so.

In addition, after the hearing on January 19, 2004, undersigned counsel became concerned that Zapoteca's counsel would not insure that the documents described above or elsewhere in Captain Phillips' requests for production would be sought from P. D. Gram & Co., the vessel's mangers, Nordisk, the vessel's defense and insurance association, or Zapoteca's hired surveyors, London Offshore Consultants, including Mr. Chris Arkley, whom Zapoteca now has hired as a "consultant" and who is involved with various Rig survey and site inspection matters, including the one at Sabine Pass). Given that concern, undersigned counsel sent the enclosed letter (Exhibit "M") to Zapoteca's counsel on January 31, 2005, asking him to be sure that he gathers relevant records not only from Zapoteca itself, but also from its agents, representatives, contractors and

affiliates in the matter, including P.D. Gram and Nordisk, its and contractors, including LOC and Tidewater Marine, which owned and operated the Tug GULF DUKE.

Sadly, Zapoteca did not accept that request and has not produced the relevant records, which are in the hands of P.D. Gram, Nordisk, LOC, Tidewater, or any other affiliates.[1] These documents, in the hands of P.D. Gram, Nordisk or one of the Zapoteca's other agents, representatives or contractors, certainly "are in the possession, custody and control of the party upon whom the request if served," as provided by F.R.C.P. 34(a), and all that would be required for those entities to produce the documents would be for Zapoteca to request them. As Zapoteca obviously did not do so, it did not respond fully to Captain Phillips request for production on the Court's order compelling production of the documents.

A review of relevant case laws confirms that Zapoteca should produce responsive documents held by Gram, Nordisk, LOC and Tidewater. A party should produce documents and tangible things within its possession, custody, or control. FRCP 34(a)(1). Legal ownership is not necessary to make documents discoverable. *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995). "Control" is defined as the legal right, authority, or ability to obtain documents on demand. *Cochran Consulting v. Uwatec USA, Inc.*, 102 F.3d, 1224, 1229-30 (Fed Cir. 1996); *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). If the party has a legal right to obtain the documents, it has "control" of the documents, even if they are in the possession of a nonparty. *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D. N.Y. 1994); see, e.g., *Poole v. Textron, Inc.*, 192

---

[1] For example, Zapoteca produced no site approvals for any of the proposed storage or stacking locations: (1) APITUX; (2) Port Isabel; (3) Brownsville; (4) Freeport; or (5) Sabine Pass. Zapoteca also did not produce the LOC tow report, which would have been issued to the Rig's insurance underwriters or the vessel's managers, P.D. Gram & Co.

11

F.R.D. 494, 501 (D. Md. 2000) (documents in possession, custody, or control of party's attorney or former attorney are within party's control for purposes of FRCP 34).

Given the above, and particularly given the very close relationship between Zapoteca and P.D. Gram, which manages the vessel on behalf of Zapoteca, it is disingenuous for Zapoteca to contend that it "does not have" or "cannot locate" the documents that have been requested, when its affiliates, agents, contractors, subcontractors, etc. do have those documents. The Court should direct Zapoteca to produce those records, including the ones in the hands of the vessel's manager, P&I/defense club, agents, contractors and subcontractors, in response to the request and the Court's Order, of January 19, 2005. Zapoteca should not be heard to complaint that it did not receive the records, when they routinely are provided to and maintained by its affiliates, agents, representatives, contractors, and consultants, all of which Zapoteca has "control" over or at least for purposes of production of documents.

It is inequitable for Zapoteca to be requesting further affirmative relief when it knowingly fails to provide responsive documents by failing to secure those documents from its affiliates, agents, contractors and representatives. This Court therefore should not consider the merits of Zapoteca's request to modify the July 8, 2004, Order, until at a miniumum Zapoteca and its affiliates, agents, representatives, and contractors have responded fully to Captain Phillips' prior requests for production.

WHEREFORE, premises considered, Captain Phillips asks the Court not to modify its Order of July 8, 2004, but to keep that Order in effect until other matters presently pending before the Court can be resolved.

Respectfully submitted,

THE LANIER LAW FIRM, P.C.

BY: *[signature]* W/ PERMISSION BY C. Hilton
CHARLES F. HERD, JR.
TSB# 09504480
ATTORNEY IN CHARGE
LAWRENCE P. WILSON
TSB # 21704100
KEVIN P. PARKER
SBN #15494020
P. O. Box 691408
Houston, TX 77269-1408
(713) 659-5200
Fax: (713) 659-2204

**ATTORNEYS FOR DEFENDANT/COUNTER CLAIMANT, CHARLES D. PHILLIPS AND MEXICAN CREWMEMBERS: JAIME ARTURO CASTELLANOS DIAZ, ALEJANDRES DIAZ COBOS, PEDRO MEIJALIMA, FERNANDO TREJOMAR, MARCO ANTONIO LIZAMA RODRIGUEZ, CIRO ELORZA MARTINEZ, JOSE MUNOZ LOPEZ, AND CANDIDO MALDONADO**

**LOCAL COUNSEL:**

Mr. C. Frank Wood
SANCHEZ, WHITTINGTON, JANIS
& ZABARTE, L.L.P.
100 North Expressway 83
Brownsville, Texas 78521-2284

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel in accordance with the Federal Rules of Civil Procedure on this the 25 day of February, 2005.

Mr. Robert W. Klawetter
EASTHAM, WATSON, DALE & FORNEY, L.L.P.
808 Travis, 20th Floor
Houston, Texas 77002
**ATTORNEYS FOR PLAINTIFF
ZAPOTECA ENERGY, INC.**

_____
~~C. Frank Wood~~  Charles F. Head Jr.