# EXHIBIT "G"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ZAPOTECA ENERGY INC.

VS                                         CIVIL NO. B-04-048
                                           In Admiralty/Rule 9 (h)
CHARLES DOUGLAS PHILLIPS, et al.


### AFFIDAVIT OF CHARLES D. PHILLIPS

STATE OF TEXAS

COUNTY OF HARRIS

Before me, the undersigned officer, on this day personally appeared Charles D. Phillips who after first being duly sworn, deposes and says on oath as follows:

1.    My name is Charles D. Phillips. I am over the age of 21 years. I have never been convicted of a felony or a crime of moral turpitude, and I am not otherwise disqualified from making this affidavit. Except where otherwise stated, I have personal knowledge of every fact to which I testify in this affidavit, and every fact to which I testify in this affidavit is true and correct to my personal knowledge.

2.    I am 62 years old and a U.S. Citizen. My home address is 14227 Misty Meadow Lane, Houston, Texas 77079.

3.    I have approximately 29 years experience working on Jackup Rigs. Over that time, I have served in the capacity of Master, Barge Engineer, Insurance Surveyor, Certified Rig Mover, Inspector, Jackman, Electrician, and Owners Representative.

4.    I was based in Tuxpan, Mexico, for Southern International, Inc./Zapotec Energy, Inc., from May 29, 2000, until May 28, 2003. On May 28, 2003, my wife and I had to leave

Mexico because false criminal charges were filed against me by Javier Gerardo Gonzalez Pastrana, an officer of Construcciones Y Equipos Latinoamericanos S A. De C.V. (Celasa). From June 2003, to March 10, 2004, I was, first, based in McAllen, Texas, and later relocated to South Padre Island, Texas.

5.     Throughout the period from May 29, 2000, to January 12, 2004, I never met Erik Ostybe, nor did I exchange any correspondence to or from Erik Ostybe, nor did I ever speak with Erik Ostybe, nor, to my knowledge, was Erik Ostybe copied on any correspondence between me and the Owners of the "ENERGY ZAPOTECA," including its Managers, P. D. Gram & Co., and Christian Kongsli, in whatever capacity he had.

6.     I met Erik Ostybe for the first time on January 13, 2004, at the offices of Mesa Drilling, in Houston, Texas. (These are the same offices that my supervisor, Christian Kongsli, refers to as the Blystad offices in Houston, Texas). On January 13 and 14, 2004, I attended meetings at the Mesa Drilling office in Houston, Texas, with Christian Kongsli, Arturo Bazaldua Erik Ostybe, Ed Nelson, and Per Johansen.

7.     As I understand it, Erik Ostybe has filed a total of three (3) affidavits in this case during the period from February 2004, to December 2004, dated February 27, 2004, May 3, 2004, and December 13, 2004. Ostybe stated in each of these affidavits: " I have personal knowledge of the facts stated herein, as I am representative of Zapoteca Energy Inc."; in another affidavit, Ostybe continues with "and to the best of my knowledge these facts are true and correct."

These three Ostybe affidavits are misleading and filled with misstatements of facts. Erik Ostybe was not even connected with Zapoteca Energy Inc. from May 2000 until sometime in January 2004. Ostybe never visited me in South Texas, the office of Energy Zapoteca in

Tuxpan, Mexico, or the Rig "ENERGY ZAPOTECA," itself, in Tuxpan, Mexico, at any time during the period from May 29, 2000, to March 10, 2004.

8.    If Erik Ostybe had personal knowledge of the facts, as he alleges, he would have known (a) that only the drilling package, drilling substructure, and cantilever, all of which were positioned 65 feet aft of the stern of the "Zapoteca," were destroyed in the "fire" he described; (b) that the Rig "Zapoteca" was <u>not</u> destroyed, or even seriously damaged, by the fire; (c) that after the fire, PMM/Protexa removed the accommodation unit from the Rig, placed it onboard one of their barges and then rented it to Pemex; (d) PMM/Protexa also removed the offshore Link-Belt cranes, and then rented and placed them onboard a McDermott barge; (e) PMM/Protexa also removed the helideck and placed it onboard one of their barges, and (f) that none of the Rig's accommodation platform, cranes, helideck, or other equipment were damaged by the fire he complains of, which occurred in 1989.

9.    If Erik Ostybe had personal knowledge of the facts, as he alleges, he would have known that Zapoteca Energy Inc., had been negotiating in the Spring of 2002, to the Summer of 2003, with Protexa for the return of one Link-Belt crane and the helideck, since both the crane and the helideck had considerable value, as they had not been damaged by any fire.  However, Zapoteca chose to give up the crane and the helideck, as part of the agreement to get the "export document" back from Protexa/Celasa.

10.    If Erik Ostybe had personal knowledge, he would have known that Bureau Veritas, the classification society in effect for the Rig, inspected the 3 jacking units with 36 gear/motors, and found no damage whatsoever was caused by a fire.  The aft 2 jacking units, which were in the area located closest to the fire, were 75 feet away, so they sustained no

damage.  The various inspection reports from Bureau Veritas were submitted to Zapoteca and still should be in the Zapoteca files.

11.    If Erik Ostybe had personal knowledge he would have known that on September 15, 1999, Perforaciones Maritimas Mexicanas, S.A. De C.V. ("PMM"), the previous Owners of the "ENERGY ZAPOTECA," were granted a temporary mooring permit for the "Zapoteca" from the Mexican Secretary of Communication and Transportation under the Laws of Navigation of Mexico, for the period of April 26, 1999, until June 1, 2000.

12.    If Erik Ostybe had personal knowledge, as he claims, he would have known that on March 2, 2000, Perforaciones Maritimas Mexicanas S.A. De C.V.,  the previous Owners of the Rig "ENERGY ZAPOTECA," reinstated the "Zapoteca" into Navigation.

13.    If Erik Ostybe had personal knowledge, as he claims, he would have known that on March 7, 2000, Christian Kongsli signed a Memorandum of Agreement with PMM to purchase the "Zapoteca" with an existing Panamanian flag and Navigation Certificate. This Memorandum of Agreement is a "Norwegian Shipbrokers Association's Memorandum of Agreement for Sale and Purchase of Ships, code name Saleform 1987." In number 5 of the agreement, it states: "Should the vessel become a total or constructive total loss before the delivery, the deposit shall immediately be released to Buyers and the contract thereafter considered null and void."

14.    These documents make clear that Zapoteca did not purchase a vessel that was a total or constructive total loss, as Zapoteca is now trying to assert.  (See transcript of hearing of December 14, 2004, page 13, line 23, where Zapoteca's counsel states: "the rig was declared a total loss.").  When Christian Kongsli signed the MOA to purchase the "Zapoteca" on March 7, 2000, it was no longer a total constructive loss.

15.    If Erik Ostybe had personal knowledge, he would have known that on May 7, 2000, Zapoteca Energy Inc. accepted "Delivery" of the Rig "ENERGY ZAPOTECA," as a non-self propelled self elevating jackup platform," formerly named "Zapoteca," from PMM, with a current Panamanian flag and Navigation Certificate.

16.    If Erik Ostybe had personal knowledge, he would have known that Zapoteca maintained a valid Panamanian Flag and Navigation Certificate for the Rig "ENERGY ZAPOTECA" from May 2000 to May 2004.

17.    If Erik Ostybe had personal knowledge, he would have known that in July 2000, Christian Kongsli, one of the Owners of the Rig ENERGY ZAPOTECA, assigned Charles Phillips as the Captain (Master) of the vessel Rig ENERGY ZAPOTECA.

18.    If Erik Ostybe had personal knowledge, he would have known that LeBourhis Marine Surveyors approved the Rig ENERGY ZAPOTECA/NABORS 660 for a manned tow from Tuxpan, Mexico, to Texas, in May, June, July, and August 2003.  He would have knowledge that the letter dated May 12, 2003, from LeBourhis to Christian Kongsli (with a copy to Dean Silvers with Nabors Industries), stated:

> Mr. Christian Kongsli:  This is confirmation of our second telephone conversation of this morning.  All the equipment onboard this jackup unit "ENERGY ZAPOTECA" were found to be properly installed and the unit is ready for the proposed relocation move in the Tuxpan Pantepec River, from present location at the Celasa Dock to alongside the APITUX Dock and subsequently for the towage onward to Freeport or Corpus Christi, Texas.  Our warranty surveyor, Captain Dennis Padron, will issue the corresponding warranty certificate of approval prior

to departure from present location and again for the ocean towage, and will attend onboard as it is common industry practice."

19. If Erik Ostybe had personal knowledge, he would have known that Kim Steimler with P.D. Gram & Co. as manager for Zapoteca, signed an Equipment Lease Agreement with Nabors Drilling International on December 19, 2003, to deliver the Rig Energy Zapoteca to Freeport, Texas, not to Port Isabelle, Texas.

20. In about September/October 2003, Zapoteca changed insurance companies for the Rig Energy Zapoteca. Blystad Shipping's insurance underwriters would now cover the Rig Energy Zapoteca on a month-by-month basis. In March 2004, the insurance policy shows a blank for the towing destination for the Rig Energy Zapoteca. This is highly irregular; in my 29 years experience, I cannot recall seeing a certificate of insurance issued with the destination left blank.

21. As of March 6, 2004, no preparations or notification had been given to the U.S. Coast Guard, Port Director of Port Isabelle, local pilots, or Dix Shipping, (the agents for P.D. Gram & Co.) of the expected arrival of the rig ENERGY ZAPOTECA into Port Isabelle, Texas. Nevertheless, Kevin Highfield of LOC stated that the tug GULF DUKE was preparing to tow the Rig to Port Isabelle, and was expected to arrive in Tuxpan on Wednesday, March 10, 2004, the same day I was fired.

22. On March 3, 2004, Christian Kongsli arrived in Brownsville, Texas, from Oslo Norway. On March 9 and 10, 2004, Christian Kongsli was meeting with the crew members' supervisors of the Rig ENERGY ZAPOTECA at his hotel in South Padre Island, Texas. Christian Kongsli, requested this meeting at the date and location. This is extremely unusual, especially since the key personnel for the Rig ENERGY ZAPOTECA were in Port Isabelle,

attending this meeting as requested by Mr. Kongsli, at the same time the Tug GULF DUKE was to be arriving in Tuxpan, Mexico.

23.     On March 10, 2004, the ocean going Tug GULF DUKE was scheduled to arrive in Tuxpan, Mexico. Even then, no preparations or notification had been given to the U.S. Coast Guard, Port Director of Port Isabel, local pilots, or Dix Shipping, the agents for P.D. Gram & Co., of the expected arrival of the Rig ENERGY ZAPOTECA into Port Isabelle.

24.     On March 10, 2004, I received a termination letter from Zapoteca's U.S. counsel, Ed Nelson.

25.     On the morning of March 11, 2004, Christian Kongsli checked out of his hotel in South Padre Island and took a taxi to the offices of Dix Shipping in Brownsville, Texas. Kongsli told the ship's agent, Cecilio Avila of Dix Shipping in Brownsville, that Charles Phillips "had no more power." Kongsli then left the Dix Shipping office and proceeded by taxi to the airport in Brownsville, for a flight to Houston, Texas.

26.     During the time period of March 3, 2004, when Christian Kongsli arrived in South Padre Island to March 10, 1994, Christian Kongsli never met with the Port Director of Port Isabelle, U.S. Coast Guard, local pilots, or the agents at Dix Shipping regarding the Rig ENERGY ZAPOTECA. No applications for the COFR certificate or inspections were filled out for the U.S. Coast Guard while Kongsli was in South Padre Island. Kongsli never wanted to see or visit the stacking location in Port Isabelle, where the Rig ENERGY ZAPOTECA allegedly was to be placed. Christian Kongsli is one of the owners of the ENERGY ZAPOTECA and has full power of attorney to act on Zapoteca's behalf.

27.     On March 11, 2004, Christian Kongsli signed an affidavit stating: "The Rig ENERGY ZAPOTECA is presently located in Tuxpan, Mexico and Zapoteca is presently engaged in daily business and in operations for the sailing of the Rig ENERGY ZAPOTECA from Tuxpan, Mexico to Port Isabelle, Texas." Kongsli left Port Isabelle with the Tug GULF DUKE waiting in Tuxpan, without making any preparations or notification to anyone in Port Isabelle of the expected arrival of the Rig Energy Zapoteca.

28.     On March 12, 2004, Zapoteca filed a TRO in the Federal Court in Brownsville, Texas, also stating in its motion that the Rig ENERGY ZAPOTECA was sailing from Tuxpan, Mexico, to Port Isabelle, Texas.

29.     No instructions were given by Kim Steimler of P.D. Gram & Co., either to Dix Shipping to Christian Kongsli, or to me, to start any preparations or notifications, or to prepare documentation necessary so that the Rig ENERGY ZAPOTECA could enter U.S. waters and Port Isabelle, Texas.

30.     On May 27, 2004, Cliff Arkley, who is reflected now as a contractor for P.D. Gram & Co. (rather than his prior position, as a contractor for LOC, the surveyors for the insurance underwriters) signed an affidavit stating: "On Friday March 12, 2004, . . . I re-wrote my list of recommendations on the basis the rig would be wet towed, dead and unmanned, to the stacking site now going to be Sabine, South Texas."

31.     In response to my attorney's request to Zapoteca for production of documents, Zapoteca's counsel produced, on February 4, 2005, a letter from Erik Ostybe, dated March 12, 2004, to Gulf Coast Marine, confirming that the Rig was bound for Sabine Pass, Texas.

32.     On December 19, 2003, Kim Steimler with P.D. Gram & Co. AS, signed a lease agreement with Nabors Drilling International to deliver the Rig ENERGY ZAPOTECA to

Freeport, Texas, not Port Isabelle, Texas. (I was not aware of this agreement until July 2004). At no time did Kim Streimler with P.D. Gram & Co. or Christian Kongsli inform me that Zapoteca or P.D. Gram & Co., had signed an agreement with Nabors to deliver the Rig ENERGY ZAPOTECA to Freeport, Texas. Zapoteca and P.D. Gram & Co. made a business decision on December 19, 2003, when they signed an agreement with Nabors to deliver the Rig ENERGY ZAPOTECA to Freeport, Texas, instead of Port Isabelle, Texas. This agreement *states in part:*

> Preliminary provisions: (c)
>
> "The parties agree to meet in Houston, Texas at a mutually agreed date after arrival of the Rig in International waters for nonbinding discussions regarding Nabors Drilling International Limited possible purchase of the Rig."
>
> Lease Provisions: (6)
>
> "Return of Equipment: if the Purchase Option is not exercised, the Equipment will be delivered to Nabors Drilling International Limited at Port Freeport, Texas, USA. Zapoteca will notify NDIL upon the Rig's departure from Tuxpan and give at least three days' notice prior to arrival in Freeport." (emphasis added).

This agreement between Zapoteca and Nabors makes clear that Zapoteca never intended to take the Rig ENERGY ZAPOTECA to Port Isabelle, Texas, as they were leading everyone to believe.

33.    When Zapoteca filed its motion for a TRO on March 12, 2004, its own documents established that it knew that the Rig ENERGY ZAPOTECA was not sailing from Tuxpan, Mexico, to Port Isabelle, Texas.

34.    In the Court hearing on March 18, 2004, Zapoteca failed to inform the Court that the Rig ENERGY ZAPOTECA would be sailing to Sabine Pass, Texas, instead of Port Isabelle, Texas, as Zapoteca had stated in their motion for TRO filed on March 12, 2004. Zapoteca made no mention in the TRO filed on March 12, 2004, or in the Court hearing on March 18, 2004, that

the Tug GULF DUKE was already in Tuxpan, Mexico, waiting to tow the Rig ENERGY ZAPOTECA to Sabine Pass, Texas.

35.    In a letter from Zapoteca's counsel, Ed Nelson, to Christian Kongsli dated November 26, 2003, Ed Nelson states: "In developing the 'Plan' we were mindful of the possibility and risk someone will file yet another action against and attach the Rig EZ. The 'Plan' is designed to deceive anyone who might file an action and attach the Rig EZ into believing the Rig EZ would not be leaving Mexico until late January."

36.    Zapoteca and Erik Ostybe filed a motion and affidavit on December 13, 2004. The motion by Zapoteca and the affidavit by Erik Ostybe reflect the following:

Zapoteca and Erik Ostybe state:

"Zapoteca Energy, Inc.'s first notice and/or information whatsoever concerning the ENERGY EUROPA was received on or about November 22, 2004, upon its receipt of Charles Phillips' Response to Zapoteca's Motion for Rehearing filed herein." "Zapoteca Energy, Inc. has never been contacted by, nor had discussions with Intership Limited regarding marketing of the rig ENERGY ZAPOTECA under its actual name or an assumed name."

37.    In Zapoteca's counsel's own inventory list dated October 15, 2004, the ENERGY EUROPA file is listed on page 12, box 11, folder 7. Zapoteca, Christian Kongsli, and P.D. Gram & Co., were well aware of Intership and the ENERGY EUROPA throughout the period from 2002 to 2004, and its own document list confirms it.

38.    Zapoteca's relationship with Intership dates back to the Spring of 2002.

(a)    There is an e-mail dated March 7, 2002, from Charles Phillips to Christian

YA QUE LA PLATAFORMA SE ENCUENTRA EN LOS ESTADOS UNIDOS Y NO HAY
S UFICIENTE SEGURIDAD PARA SATISFACER NUESTROS RECLAMOS AQUI.

NOSOTROS NO TENEMOS REPRESENTACION JURIDICA EN MEXICO,
DESPUES DE QUE NOSOTROS CONTRATAMOS AL ABOGADO CHARLES HERD, PARA
REPRESENTARNOS, EN REPETIDAS OCACIONES VARIAS PERSONAS NOS HAN
ABORADO, QUIENES DICEN QUE ESTAN TRATANDO DE LLEGAR A UN ARREGLO , A
PETICION DE ZAPOTECA ENERGY INC., ESPECIFICAMENTE EL SR. ERIK OSTBYE, UN
ABOGADO EN POZA RICA Y EL OTRO FUE UNO DE LOS ANTIGUOS
REPRESENTANTES DE ZAPOTECA ENERGY INC., EL SR. BILL Mc DERMOTT, QUIEN
ACTUALMENTE VIVE EN LA CIUDAD DE TUXPAN. EL NOS DIJO QUE ERIK OSBYE LE
HABIA LLAMADO POR TELEFONO PARA PEDIRLE QUE TRATARA DE
CONVENCERNOS PARA LLEGAR A UN ARREGLO RAPIDO., NOSOTROS LES HEMOS
RESPONDIDO EN VARIAS OCACIONES DE QUE NOSOTROS NO DECEAMOS DISCUTIR
ESTO CON ELLOS, Y QUE ELLOS DEBEN LLAMAR A NUESTRO ABOGADO, EL SR.,
CHARLES HERD, EN HOUSTON, TEXAS. EL SEÑOR Mc DERMOTT NOS SIGUE
DICIENDO QUE EL SEÑOR ERIK OSBYE LE HA AUTORIZADO LLEGAR A UN ARREGLO
CON NOSOTROS . NOSOTROS NO QUEREMOS SER ACOSADOS YA MAS POR ESTAS
PERSONAS ., NOSOTROS QUEREMOS QUE TODA LA COMUNICACION SEA POR MEDIO
DE NUESTRO ABOGAD, EL SEÑOR CHARLES HERD.

RESPETUOSAMENTE PRESENTADA EL DIA 23 DE FEBRERO DEL 2005

JAIME A. CASTELLANOS DIAZ

CIRO B    K MARTINEZ.

FROM : Phillips                 FAX NO. : 2815891424        Feb. 24 2005 03:19PM P4

LICENCIADO LUIS LOPEZ CASANOVA, Titular de la Notaría Pública Número Uno de la Sexta Demarcación Notarial, en ejercicio; CERTIFICO; que ante mi presencia los señores JAIME ARTURO CASTELLANOS DIAZ Y CIRO ELORZA MARTINEZ, ratifican el contenido de este escrito y firman, siendo conformes en todas y cada una de sus partes, habiendo manifestado que dichas firmas son las que usan en todos sus asuntos público y privados, así mismo los firmantes se identifican con su credencial para votar con fotografía expedida por el Instituto Federal Electoral Folio Nacional Número 131421893 y 49041735 respectivamente, y por sus generales manifiestan ser mexicanos, el señor JAIME ARTURO CASTELLANOS DIAZ nació el once de marzo de mil novecientos cincuenta y nueve, soltero, traductor e intérprete de idiomas, con domicilio conocido en el Ejido Banderas de esta Ciudad y Puerto de Tuxpan Veracruz y el señor CIRO ELORZA MARTINEZ, nació el veintiséis de abril de mil novecientos cincuenta y seis, casado, con domicilio en andador "F" número tres de Infonavit Cenaso en esta Ciudad.- Expido esta Certificación en la Ciudad y Puerto de Tuxpan, Veracruz, a los veinticuatro días del mes de febrero del año dos mil cinco, dejando copia en el Libro de Certificaciones con el número 6,507 -------------------------------------------------------

                                                DOY FE:
                        EL NOTARIO PÚBLICO NÚMERO UNO.

                        LIC. LUIS LOPEZ CASANOVA.-
                        LOCL-20-10-23-685.-

## DECLARATION UNDER PROTEST

We, the undersigned, have personal knowledge of the facts stated
herein and every fact to which we testify is true and correct.

On March 18, 2004 a group of 16 crewmembers of the Rig
ENERGY ZAPOTECA filed a lawsuit in the Federal Labor Court # 44
in Poza Rica, Veracruz against Zapoteca Energy, Inc., P. D. Gram & Co.
A.S. , Captain Charles Douglas Phillips and others for SEVEN
MILLION PESOS ($7,000,000.00 pesos) which is equivalent to
$700,000.00 USD. Zapoteca Energy settled with 6 of the
crewmembers. That left 10 in the lawsuit. We were granted an
embargo. The Labor Court Judge reduced the amount of the embargo
to $1,800,000.00 pesos at the request of Zapoteca Energy, Inc.

A few days later two other crewmembers, Ciro Elorza Martinez and
Pedro Mejia Lima, also crewmembers aboard the Rig ENERGY
ZAPOTECA, filed their lawsuit and were granted an embargo.
Zapoteca posted a bond in the amount of $400,000.00 pesos which is
equivalent to $40,000.00 USD. On April 5, 2004 the President of the
Labor Court ordered that this bond was not sufficient to cover the
amount of the attachment of $635,142.85. The Court ordered Zapoteca
to post another bond in the amount of $635,142.85 pesos. In July, 2004,
Zapoteca requested the return of the $400,000.00 peso bond in order to
submit another bond. The bond was returned and Zapoteca, to this
date, has not posted the required bond.

The two cases were combined. However, the two bonds were ordered
to be kept separate. The Rig ENERGY ZAPOTECA left Tuxpan
without posting the ordered bond.

We have been told that because our attorney died in a car crash that
we would have to refile our case and the bond could be released. We
were also told that the bond for $1,800,000.00 is due to expire in April,
2005. We were told that we should go to the United States to try to
collect our claims since the rig is in the United States and there is not
enough security to satisfy our claims.

We do not have legal representation in Mexico. After we hired Mr.
Charles Herd to represent us, we have been repeatedly approached by
various people who say that they are trying to make a settlement at the
request of Zapoteca Energy, Inc. specifically, Erik Ostbye. One was an
attorney in Poza Rica. The other was the former Owners
Representative of Zapoteca Energy, Inc., Bill McDermott, who lives
in Tuxpan. He told us that Erik Ostbye has telephoned him and asked
him to convince us to make a quick settlement. We have repeatedly told
these people that we do not wish to discuss this with them and that
they should call our attorney, Mr. Charles Herd, in Houston, Texas. Mr.
McDermott keeps telling us that Erik Ostbye has authorized him to
settle with us. We do not want to be harassed any further by these
people. We want all communication to go through Mr. Charles Herd.

Respectfully submitted, on this the 23 day of February, 2005.


(Signed)
**JAIME A. CASTELLANOS DIAZ**

(Signed)
**CIRO ELORZA MARTINEZ**