# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZAPOTECA ENERGY, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. B-04-048 |
| | § | |
| CHARLES DOUGLAS PHILLIPS, | § | |
|     Defendant. | § | |

## CHARLES DOUGLAS PHILLIPS' FIRST AMENDED COUNTERCLAIM

TO THE HONORABLE DISTRICT JUDGE OF SAID COURT:

COMES NOW, pursuant to Rule 15 of the Federal Rules of Civil Procedure, CHARLES DOUGLAS PHILLIPS, Counter-Plaintiff, and files this his First Amended Counterclaim complaining of ZAPOTECA ENERGY, INC., *in personam,* and the Rig ENERGY ZAPOTECA, her engines, tackle, apparel, etc., *in rem*, and for cause of action would respectfully show unto the Court as follows:

## I.

## F.R.C.P. RULE 15

1.01.  CHARLES DOUGLAS PHILLIPS (herein "PHILLIPS") files this his First Amended Counterclaim only five (5) days after the filing of his Original Counterclaim and before any responsive pleading has been filed or served.

1.02. "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted

---

and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served." F.R.C.P. 15.

1.03. Accordingly, and pursuant to Rule 15 of the Federal Rules of Civil Procedure, it is not necessary for PHILLIPS to file Motion for Leave to File this pleading.

## II.

## PARTIES

2.01.    PHILLIPS is an individual citizen of the State of Texas.

2.02.    ZAPOTECA ENERGY, INC. is a Liberian corporation organized and existing pursuant to the Liberian Business Corporation Act, with a principal address at 80 Broad Street, Monrovia, Liberia. ZAPOTECA ENERGY, INC.'S Registered Agent for service of process is LISR Trust Company located at 80 Broad Street, Monrovia, Liberia. This Counter-Defendant is already a party to this action, and therefore may be served with a copy of this pleading through its attorney of record, EDWIN K. NELSON, IV, Attorney at Law at 3814 Sun Valley Drive, Houston, Texas 77025,(713)668-5100 (telephone), (713)668-5110 (fax), pursuant to the Federal Rules of Civil Procedure.

2.03.    The Rig ENERGY ZAPOTECA, her engines, tackle, apparel, etc., is a jack-up oil rig owned and operated by ZAPOTECA ENERGY, INC. Upon information and belief, during the pendency of this action, the Rig ENERGY ZAPOTECA will be within the Eastern District of Texas and within the jurisdiction of this Honorable Court, where service of process may be had by serving its master.

## III.

## JURISDICTION

3.01.  This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure as this matter centers around a jack-up oil rig designed and built for offshore drilling.  Accordingly, jurisdiction is vested in this honorable Court by 28 U.S.C.A. § 1333 and Supplemental Rule B.

3.02.  Additionally, jurisdiction is vested in this honorable Court by virtue of the fact that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.  28 U.S.C.A. § 1332.

## IV.

## VENUE

4.01.  Venue is proper in this honorable Court by virtue of the fact that this law suit was brought by ZAPOTECA ENERGY, INC. in the Southern District of Texas, Brownsville Division, and thus consented and availed itself to venue in this honorable Court.

## V.

## FACTS

5.01.  On or about June 2000, PHILLIPS was hired by ZAPOTECA ENERGY, INC. to act as Master on the Rig ENERGY ZAPOTECA in Tuxpan, Mexico.  In December of 2000, ZAPOTECA ENERGY, INC. appointed PHILLIPS the owners representative, and, in May of 2001, legal Representative to oversee the refurbishment of the Rig ENERGY ZAPOTECA in Tuxpan, Mexico.

5.02.  Under the terms of PHILLIPS' contract with ZAPOTECA ENERGY, INC. he was to receive wages in the amount of $12,000.00 per month, plus all living expenses, during the term of the refurbishment of the Rig ENERGY ZAPOTECA, and a $165,000.00 wage bonus at the end of his employment.  In addition, PHILLIPS was to receive a one month vacation during any twelve-month period and an additional two weeks vacation during the Christmas Holidays.

5.03.  On or about May 2003, and while PHILLIPS was working in Tuxpan, Mexico, ZAPOTECA ENERGY, INC. became embroiled in a legal action brought by the company which sold it the Rig ENERGY ZAPOTECA.  As a result of said legal action, PHILLIPS was eventually charged with a crime in the Country of Mexico and was forced to leave Tuxpan and return to the United States in the Summer of 2003.

5.04.  Despite numerous representations that ZAPOTECA ENERGY, INC. would assist PHILLIPS to have the criminal charges dropped, ZAPOTECA ENERGY, INC. failed to do so.

5.05.  Prior to the Rig ENERGY ZAPOTECA'S departure from Tuxpan, Mexico, ZAPOTECA ENERGY, INC. terminated PHILLIPS for failure to perform an illegal act.  Specifically, ZAPOTECA ENERGY, INC. wanted PHILLIPS to move the Rig ENERGY ZAPOTECA from where it was moored in the Port of Tuxpan to the Customs Clearing Dock ("APITUX") while there were labor court cases pending.

5.06.  Upon information and believe, it is illegal to move a vessel or rig, specifically the Rig ENERGY ZAPOTECA, in the Port of Tuxpan without the Port Master granting approval for such movement.  Additionally, as stated above, there were labor cases pending which had two (2) labor attachments and one (1) civil attachment against the Rig ENERGY ZAPOTECA preventing its movement without violation of Mexican law.

5.07. Upon PHILLIPS' wrongful termination, PHILLIPS was due and owing approximately ten (10) days wages, plus the $165,000.00 wage bonus, for work he performed on the Rig ENERGY ZAPOTECA. Additionally, PHILLIPS is entitled to credit for his unused vacation time and all expenses associated with PHILLIPS' repatriation (moving expenses).

5.09. Based on information and belief, at the time of filing this action, the Rig ENERGY ZAPOTECA has since departed Tuxpan, Mexico, and is presently moored at port within the jurisdiction of the Eastern District of Texas, namely Sabine Pass, Texas.

5.10. As stated above, ZAPOTECA ENERGY, INC. is a foreign corporation with no assets to satisfy PHILLIPS' claims other than the Rig ENERGY ZAPOTECA.

## VI.

## BREACH OF CONTRACT

6.01. PHILLIPS and ZAPOTECA ENERGY, INC. had a contract whereby PHILLIPS would act as Master of the Rig ENERGY ZAPOTECA, as well as the company's Representative to oversee the refurbishment of the Rig ENERGY ZAPOTECA in Tuxpan, Mexico.

6.02. PHILLIPS fully and completely performed all of his obligations under the terms of the contract with ZAPOTECA ENERGY, INC.

6.03. ZAPOTECA ENERGY, INC. has breached its contract with PHILLIPS by wrongfully terminating him for his failure to perform an illegal act and failing to pay him his last ten (10) days wages, plus $165,000.00 wage bonus, as well as extending him credit for all due and owing vacation time, and repatriation costs (or moving expenses).

6.04. As a result of ZAPOTECA ENERGY, INC.'S breach of contract, PHILLIPS has suffered damages in excess of $180,000.00.

## VII.

## WRONGFUL TERMINATION

7.01.  On or about March 10, 2004, ZAPOTECA ENERGY, INC. ordered PHILLIPS to move the Rig ENERGY ZAPOTECA from one location in the Port of Tuxpan to another location.

7.02.  In order to attempt to make said movement of the Rig ENERGY ZAPOTECA, PHILLIPS requested confirmation that the Tuxpan Port Master authorized the movement of the Rig ENERGY ZAPOTECA, as well as that the judge in the pending labor court action lifted the embargo to allow the movement of the Rig ENERGY ZAPOTECA.

7.03.  Based on information and belief, it is illegal to move a vessel or rig within the Port of Tuxpan without receiving authorization from the Tuxpan Port Master, and specifically, the Rig ENERGY ZAPOTECA could not legally be moved without a release of the embargo obtained in the labor court relating to owed crewman's wages.

7.04.  In light of the laws of the Country of Mexico, PHILLIPS refused to perform the illegal act of moving the Rig ENERGY ZAPOTECA without the foregone described authorizations.

7.05.  As a direct result of PHILLIPS' refusal to perform the illegal act described herein, ZAPOTECA ENERGY, INC. terminated PHILLIPS.

## VIII.

## QUANTUM MERUIT

8.01.  Additionally and alternatively, PHILLIPS has supplied and provided ZAPOTECA ENERGY, INC. and the Rig ENERGY ZAPOTECA certain services, namely crewman's services.

8.02.  PHILLIPS expected and anticipated to be paid for said services.

8.03.    ZAPOTECA ENERGY, INC. and the Rig ENERGY ZAPOTECA received the services and benefitted from said services.

8.04.    ZAPOTECA ENERGY, INC. and the Rig ENERGY ZAPOTECA would be unjustly enriched if it does not pay PHILLIPS for the services.

## IX.

## ARREST OF RIG PURSUANT TO SUPPLEMENTAL RULE B

9.01.    As stated above, ZAPOTECA ENERGY, INC. is a foreign corporation with little or no assets, other than the Rig ENERGY ZAPOTECA, to satisfy PHILLIPS' claims.

9.02.    Additionally, no property of ZAPOTECA ENERGY, INC. can be found within the United States, with the exception of the Rig ENERGY ZAPOTECA which is in the Eastern District of Texas.

9.03.    The Rig ENERGY ZAPOTECA is moored at the Port of Sabine Pass, Texas, and is expected to remain there only until it is re-supplied.

9.04.    Accordingly, in order to secure ZAPOTECA ENERGY, INC. has funds to pay PHILLIPS' claims, and pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure, PHILLIPS requests that the Rig ENERGY ZAPOTECA be ordered arrested.

9.05.    Further, PHILLIPS would respectfully request that a substitute custodian be appointed and once the Rig ENERGY ZAPOTECA is arrested, it be placed in custodial care, so that the Rig ENERGY ZAPOTECA will not be able to leave the jurisdiction of the Court, and the claims of PHILLIPS be protected.

# X.

## DAMAGES

10.01.  As a result of the foregoing incident, PHILLIPS has been damaged in an amount in excess of ONE HUNDRED EIGHTY THOUSAND AND NO/100 DOLLARS ($180,000.00), in addition to damages incurred as a result of PHILLIPS wrongful termination and the false charges brought against him in Mexico.

10.02.  Further, despite the fact that PHILLIPS has made demand for payment, the owner of the Rig ENERGY ZAPOTECA, ZAPOTECA ENERGY, INC. has refused to make payment for wages due PHILLIPS or even acknowledge that they will be responsible for the payment of said wages.

10.03.  For all said damages, PHILLIPS claims a Maritime Lien upon the Rig ENERGY ZAPOTECA.

# XI.

## ATTORNEYS' FEES

11.01.  PHILLIPS would further show the Court that by reason of the foregoing and in order to protect its interests, PHILLIPS has been required to retain the services of the undersigned attorney and is entitled to recoup reasonable attorney's fees, plus costs of suit in connection with the collection of the damages set forth herein.

WHEREFORE, PREMISES CONSIDERED, Counter-Plaintiff prays:

1.      that process in due form of law issue against Counter-Defendant ZAPOTECA ENERGY, INC., and Counter-Defendant the Rig ENERGY ZAPOTECA, her cargo, engines, equipment, tackle and apparel, etc.;

2.    that the Counter-Defendant the Rig ENERGY ZAPOTECA, her cargo, engines, equipment, tackle and apparel, etc., be arrested and condemned pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure hereinbefore described;

3.    that the maritime lien in favor of Counter-Plaintiff PHILLIPS be foreclosed and Counter-Defendant the Rig ENERGY ZAPOTECA, her cargo, engines, equipment, tackle and apparel sold to pay the demands and claims of the Counter-Plaintiff PHILLIPS herein;

4.    that the Court enter an order herein directing that said Counter-Defendant the Rig ENERGY ZAPOTECA, her cargo, engines, apparel, tackle, etc. be sold in the manner provided by law to answer the judgment for the amount alleged due to the Counter-Plaintiff herein;

5.    that all persons claiming an interest in the Rig ENERGY ZAPOTECA be cited to appear and answer on oath, all and singular, the matters aforesaid;

6.    that it be decreed that any and all persons, firms, or corporations claiming any interest in the vessel are forever barred, foreclosed of and from all right of equity or redemption or claim of, in or to the Rig ENERGY ZAPOTECA and any part thereof;

7.    that the Court render a judgment awarding Counter-Plaintiff PHILLIPS his damages against Counter-Defendant ZAPOTECA ENERGY, INC., *in personam,* and the Rig ENERGY ZAPOTECA, her cargo, engines, tackle, apparel, etc., *in rem,* together with prejudgment interest at the maximum rate allowed by law, expenses incidental to the necessary filing of this suit, including bonds, deposits, marshal's fees, and insurance, reasonable attorney's fees and costs of court;  and

8.    that Counter-Plaintiff PHILLIPS have such other and further relief, both at law and
in equity, to which it may be justly entitled.

Respectfully submitted,

SANCHEZ, WHITTINGTON, JANIS
& ZABARTE, L.L.P.
100 North Expressway 83
Brownsville, Texas 78521-2284
(956) 546-3731 - Telephone
(956) 546-3765 or 3766 - Fax

By

C. Frank Wood
State Bar No. 24028136
Federal Bar No. 29870
Dennis Sanchez
State Bar No. 17569600
Federal Bar No. 1594

ATTORNEYS FOR COUNTER-PLAINTIFF
CHARLES DOUGLAS PHILLIPS

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Charles Douglas Phillips' First Amended Counterclaim**
has been served upon counsel listed below ☒ by placing a true and correct copy of same in the United
States Mail, certified, return receipt requested, with postage fully prepaid, and/or ☐ by facsimile to
the number listed below, and/or ☐ by hand delivery, on this 26ᵗʰ day of
_____APRIL_____, 2004:

Mr. Edwin K. Nelson, IV
ATTORNEY AT LAW
3814 Sun Valley Drive
Houston, Texas 77025
Fax No. (713)668-5110

C. Frank Wood

## <u>VERIFICATION</u>

THE STATE OF TEXAS          §
                           §
COUNTY OF CAMERON          §

BEFORE ME, the undersigned authority, on this day personally appeared CHARLES

PHILLIPS, who being by me duly sworn on oath stated and said the following:

"My name is CHARLES PHILLIPS. I am party in the cause of action to which this

Verification is attached. I have read the foregoing pleading and I am familiar with the contents

thereof. I have personal knowledge of the facts stated in said pleading and the contents thereof are

true and correct."



_____
CHARLES PHILLIPS

SWORN TO AND SUBSCRIBED TO before me by the said CHARLES PHILLIPS, to
certify which witness my hand and seal of office, on this *13rd* day of *April*, 2004.

_____
Notary Public, State of Texas

My Commission Expires:

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ZAPOTECA ENERGY, INC.                    )
                                         )
                                         )
                                         ) CIVIL ACTION NO.
VS.                                      ) B-04-048
                                         )
CHARLES DOUGLAS PHILLIPS                 )
                                         )

MOTION HEARING
BEFORE THE HONORABLE ANDREW S. HANEN
FEBRUARY 28, 2005

APPEARANCES:

For the Plaintiff:          MR. ROBERT KLAWETTER
                            MR. SCOTT C. HALL
                            Eastham, Watson, Dale & Forney
                            Twentieth Floor
                            The Niels Esperson Building
                            808 Travis
                            Houston, Texas   77002

For C. Phillips:            MR. CHARLES HERD
                            The Lanier Firm
                            P.O. Box 691408
                            Houston, Texas   77269-1408


For C. Phillips:            MR. CHARLES FRANK WOOD
                            Sanchez, Whittington
                            100 North Expressway 83
                            Brownsville, Texas   78521


Also Present:  Mr. Erik Ostbye

Transcribed by:             BARBARA BARNARD
                            Official Court Reporter
                            600 E. Harrison, Box 301
                            Brownsville, Texas   78520
                            (956)548-2591

CERTIFIED
COPY

 1            THE COURT:  Be seated, gentlemen.

 2       All right.  We're here on B-04-48, Zapoteca Energy versus

 3  Phillips.  I want to get to the plaintiff's motion for me to

 4  change my order from July; but before I do that, I'm going to

 5  issue some rulings.  These are going to be, for the most part,

 6  contained in an opinion that I'm going to try to get out as soon

 7  as possible, but they'll set the parameters for what we're going

 8  to do in the future.

 9       With regard to jurisdiction, diversity has always been

10  conceded by the parties, and obviously no one has changed that

11  or argued opposite, so I'm certain I have diversity

12  jurisdiction.

13       I'm going to -- my opinion is going to find that

14  Mr. Phillips was a master, and his contract with Zapoteca was an

15  admiralty -- contract in admiralty and gives me admiralty

16  jurisdiction as well.  It also gives Mr. Phillips the right to a

17  maritime lien.

18       At the times in question, Rig Energy Zapoteca was a vessel,

19  and that it was not a dead vessel.

20       I'm going to rule that Phillips is entitled to the

21  combination of Rule B and state attachment to the rig under

22  Texas Civil Practice and Remedies Code, Chapter 76, because the

23  plaintiff is a foreign corporation trying to sell its primary

24  asset.  It may move its asset or the funds -- the result of the

25  sale of the asset, as it has done previously, contrary to the

35

1    that would be owed to the Mexican people that your client may be

2    liable for.   You're talking about money that Mr. Phillips is

3    owed --

4              MR. HERD:   Yes, sir.

5              THE COURT:   -- under Mexican law?

6              MR. HERD:   Exactly.

7              THE COURT:   Assuming I think Mexican law applies.

8              MR. HERD:   Well, there are two ways to approach it.   If

9    you view him as a ship's master or seaman under U.S. law, then

10   he may be eligible for the U.S. calculation of wages, which

11   includes the wage penalty calculation.   But he was hired

12   originally in Mexico, and most of the work that he performed was

13   in Mexico, and so I think a better argument would be made that

14   it -- that his wage calculation is under the Mexican Labor Code.

15             THE COURT:   Okay.

16             MR. HERD:   Which is what I --

17             THE COURT:   So we have three months salary at 36,000.

18             MR. HERD:   Right.   And the second element is 20 days per

19   year, which is $32,000.   The third element is 12 days per year,

20   which is $19,200.   The fourth element is vacation, which is one

21   month per year, which is $3,000.   Then there's a 25 percent

22   vacation bonus, which is $750.   Seven holidays per year over

23   four years, $11,200.   A Christmas bonus of $1,500.   Those are

24   all little pieces of the formula.

25             THE COURT:   I'm getting ready to change jobs.

1           MR. HERD:  Thank you, Judge.

2                           * * *

3       (End of requested transcript)

4                          -oOo-

5       I certify that the foregoing is a correct transcript from

6    the record of proceedings in the above matter.

7

8    Date:  March 7, 2005

9

10

11                          Signature of Court Reporter
                            Barbara Barnard
12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ZAPOTECA ENERGY INC,
  Plaintiff

§
§
§
VS.          §   Civil Number B-04-048
            §
CHARLES DOUGLAS PHILLIPS, §
  Defendant       §

## DECLARATION UNDER PENALTY OF PERJURY OF CLIFFORD ARKLEY

1. My name is Clifford Arkley. I am over eighteen years of age and have never been convicted of a felony. I am of sound mind and otherwise capable of making this Declaration. I have personal knowledge of the facts stated herein as I was a contractor to PD Gram & Co. AS, Technical Managers of the rig ENERGY ZAPOTECA .

### The Rig ENERGY ZAPOTECA

2. During October 2003, my company, London Offshore Consultants ("LOC"), was requested by PD Gram & Co. AS (as owners Technical Management for the Rig ENERGY ZAPOTECA) to carry out an inspection of the rig. The inspection and subsequent recommendations were with a view to the issuance of a Certificate of Approval for the movement of the unit from Tuxpan, Mexico to Port Isabel, South Texas. I was allocated as Marine Warranty Surveyor to this project.

3. On 19 October 2003, a dialogue was commenced with Mr. Charles Philips and plans made to visit him at his office in South Padre Island, then to travel on to Tuxpan via Renosa and Poza Rica for rig inspection.

4. On 16 October 2003, I proceeded to South Padre Island for discussions with Charles Philips and during the following week traveled on to Tuxpan where on Tuesday, Wednesday and Thursday I attended and inspected the rig.

5. I traveled back to Houston on Friday 31 October 2003 and issued a preliminary list of recommendations (some 41 items) written with the owner's request in mind that the unit was to be manned during the tow. The LOC stand was that an unmanned dead tow was the preferred option.

6. Essentially the rig was bereft of any SOLAS equipment. Certification was non-existent and all (including essential) machinery had been removed. There were

1

numerous holes and openings compromising the watertight integrity. Unknown and untraceable pipe work had been removed and in places cropped. Some areas of deck had wasted through and there was direct access to the tank spaces below. Some tank access covers were missing and in some locations temporary tank access spaces had been cut into the deck. These did not have approved covers or fitments. There was only temporary crew accommodation on deck and no suitable sanitary facilities, waste disposal or sewage holding tanks. There was no suitable cooking or food storage equipment. Temporary power supply was from a road transportable generator that was not suitable for sea service and had no back up. There was no communications equipment other than one VHF that had limited operation. A major concern was also the Rig's stability. Having been completely altered by the removal of a large amount of machinery and topside structure the accelerations on the legs and their ability to withstand these was in doubt and unproven at this time. The rig was in fact unfit for habitation, uncertificated and unseaworthy. Consequently it was not in condition to navigate or operate as a commercial unit.

7. During the ensuing month of November it became clear that the requirements for a manned tow were not going to be met. The problems of lack of fundamental equipment and certification would be prohibitively expensive and time consuming to overcome. It was recommended again by LOC that an unmanned dead tow be re-considered. A dry tow was also another consideration. It was made clear a Certificate of Approval to move the unit would not be issued for a manned tow.

8. During December 2003 attention and communication was afforded to the stacking site requirements in Port Isabel and on the outstanding requirements for an unmanned tow.

9. During January 2004 I attended a meeting with owners representatives with view to resolving all outstanding requirements for an unmanned, dead, wet tow. Items attended to were stability, jacking equipment, tow assembly, watertight integrity, stacking site and tow vessels.

10. Discussions, reviews and planning took place regularly during February 2004 between myself rig owners and the project manager (Charles Philips)

11. On owners instructions I traveled to Tuxpan on 7 March 2004 to re-inspect the rig and report back on readiness and progress. On Monday 6 March during a discussion with Charles Philips, I was informed that I was not allowed on the rig. On Tuesday 9 March I proceeded to the Rig but was refused access to it by a gangway security person. I discussed the situation with Charles Philips who implied that it would be risky for me to attempt to gain access to the rig as the security guards had instructions not to allow unauthorized persons onboard. Charles Phillips said I was not authorized and my personal safety could not be guaranteed.

12.    On Wednesday the 10 March, I accompanied various ENERGY ZAPOTECA owners representatives to the temporary company office in Tuxpan. None of the party was allowed access to the 'office'. I then proceeded to the rig with a police escort and what I understood to be a bailiff acting for ENERGY ZAPOTECA owners. None of our party was allowed onboard.

13.    On Thursday 11 March, I was requested to stay onsite until access to the rig was gained. This was expected in the next 24 hrs.

14.    On Friday 12 March access to the rig was gained and I carried out my inspection. There was some progress from my previous visit although there was still numerous items outstanding to make the vessel ready for sea. I re-wrote my list of recommendations on the basis the rig would be wet towed, dead and unmanned to the stacking site now going to be Sabine, South Texas.

15.    On Saturday 13 March I met with the newly appointed Towmaster/Bargemaster Mr. Austin (Rusty) Alexander. We toured the rig and he took over as owners representative on site. An action plan was prepared for further technical inspection (jacking gear, ballast tanks and rig structure) prior to the jacking down, flotation and tow of the rig to Sabine. Outstanding items already documented were to be dealt with. I departed for Houston the following day.

16.    I attended the rig again from 18 to 24 March 2004, being instructed to return to Houston as delays were expected due to legal problems. During this period Austin Alexander tested jacking equipment and controls. He also inspected all other rig equipment from a technical and operational standpoint, Communicating with myself on several occasions on his findings and progress readying the rig. The towing vessel 'Martha Eugenia' was also inspected and approved for the towing operation during this time.

17.    I returned to Tuxpan on Sunday 4 April. After inspecting the Rig in the company of Austin Alexander it was decided the close out of required items was nearing completion and the tow vessel was ordered for next day.

18.    I completed a final "walk through" at 1330 hrs the same day and a CoA was issued at 1400 hrs. This approved a single voyage under tow as a dead unmanned unit from Tuxpan to Sabine with no deviations. At 1430 the main tugboat was connected and the rig became afloat and underway at approximately 1500 hrs. At 1700 all leg chocks were in place. A final check was carried out and all personnel departed the rig at 1745 hrs.

19.    The rig arrived at Sabine pilots stations during Sunday 11 April 2004 and berthed on 12 April. It is currently stacked at the arrival location.

3

PURSUANT TO 28 U.S.C. § 1746, I DECLARE (OR CERTIFY, VERIFY, OR STATE), UNDER PENALTY OF PURGERY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON 27 May 2004.

Cliff Arkley

4